**E-FILED**
Thursday, 17 January, 2008  04:08:49 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SWPLAZA III, LLC, an Illinois limited liability company, as successor to Illinois National Bank, as Trustee under Trust Agreement dated November 6, 2000 and known as Trust no. 00-0020, an Illinois banking institution,, | ) ) ) ) ) | |
| Plaintiff/Cross-Complainant, | ) ) ) | Case No.: 06-CV-3177 |
| v. | ) ) | |
| TSA STORES, INC., as successor to Gart Brothers Sporting Goods Company, a Delaware corporation,, | ) ) ) ) | |
| Defendant/Counter-Plaintiff. | ) ) | |

## TSA'S OPPOSITION TO PLAINTIFF'S MOTION TO BAR OPINION WITNESS

Defendant, TSA Stores, Inc., a Delaware corporation, as successor to Gart Bros. Sporting Goods ("TSA" or "Tenant"), by its attorneys, Hinshaw & Culbertson LLP, opposes the Motion to Bar Opinion Witness submitted by Plaintiff, SWPlaza III, LLC ("SWPlaza" or "Landlord"), prays that the Court deny the Motion, and states as follows:

## I.  INTRODUCTION

In requesting this Court to bar the opinions of the Tenant's expert, Jeffrey Wolford, the Landlord erroneously contends that Mr. Wolford's opinions are based upon insufficient facts or data, that Mr. Wolford failed to apply his methods to the facts, and that his testimony is speculative.  Contrary to those assertions, the record is clear that Mr. Wolford's opinions satisfy both Fed.R.Evid. 702 and the *Daubert* test.

First, Mr. Wolford indisputably possesses the qualifications, knowledge, skill, experience, and competence to render a reliable opinion on the costs of construction of a retail

store, especially a TSA store.[1]  Mr. Wolford has 30 years experience as a retail store contractor and nearly 20 years as a project/construction manager for the construction of retail stores, primarily TSA Stores.

Second, in forming his opinions, Mr. Wolford used information and facts from several sources, including TSA personnel, the disaster recovery company on site, and his own knowledge of the leasehold derived from submitting a proposal in 2001 to build the TSA leasehold in Springfield.

Third, the record reflects that his opinion is based upon a reliable methodology and that he applied that methodology to the facts.

Finally, Mr. Wolford's testimony will assist the trier of fact[2] in understanding the issues in dispute and the circumstances surrounding this matter.  Mr. Wolford was initially retained by TSA, not in anticipation of litigation, but for assisting TSA in determining whether its termination right under the Lease had been triggered.[3]  Testimony relating to Mr. Wolford's actions and opinions prior to TSA's exercising its option to terminate the Lease are necessary to enable the Court to evaluate the soundness and reasonableness of TSA's actions.   TSA

---

[1]  Unlike Mr. Wolford, the Landlord's expert had no knowledge that TSA had certain requirements and tenant specifications.

[2]  This case will be tried by the bench, and, consequently, the Court will be the trier of fact.  Although expert testimony in a bench trial is governed by *Daubert* and its progeny, the *Daubert* test is not applied with the same rigor:

> The primary purpose of the *Daubert* filter is to protect juries from being bamboozled by technical evidence of dubious merit (citation omitted), as is implicit in the court's insistence that the *Daubert* inquiry performs a "gatekeeper" function.  (Citation omitted.)  In a bench trial it is an acceptable alternative to admit evidence of borderline admissibility and give it the (slight) weight to which it is entitled. . . .  *Daubert* requires a binary choice – admit or exclude – and a judge in a bench trial should have discretion to admit questionable technical evidence. . . .

*SmithKline Beecham Corp. v. Apolex Corp.,* 247 F.Supp.2d 1011, 1042 (N.D. Ill. 2003) (subsequent history omitted), citing *Smith v. Ford Motor Co.,* 215 F.3d 713, 718 (7th Cir. 2000); *In re Salem,* 465 F.3d 767, 777 (7th Cir. 2006).

[3]  TSA disclosed Mr. Wolford as a witness under Fed.R.Civ.P. 26(a)(1)(a) and noted that he had, *inter alia,* information pertaining to damage assessment.  As a person not initially retained or specially employed to provide expert testimony, no written report was required from Mr. Wolford for this portion of his testimony.  *See Musser v. Gentiva Health Services,* 356 F.3d 751, 756-57 (7th Cir. 2004).  Mr. Wolford was subsequently retained to provide expert testimony, and he was disclosed as required under Fed.R.Civ.P. 26(a)(2), and his report was provided.

60169952v1 868372

subsequently retained Mr. Wolford to provide testimony under Fed.R.Evid. 702.    As demonstrated herein, Mr. Wolford's opinions, both as part of the decision-making process and as a person engaged to provide expert testimony, meet the *Daubert* standards.

Furthermore, Mr. Wolford's opinions have been tailored to stay within the bounds set by the Lease for determining whether the Tenant's option to terminate the Lease had been triggered. The Landlord originally attempted to place the focus, not on a cost of repairs analysis, but on the ratio of damage to certain physical components of the premises.  The Landlord then attempted to divert attention, not to what reasonable, reliable, and relevant information was available to the parties within the sixty-day window for the exercise of TSA's option to terminate, but to costs compiled after that period – and incomplete costs at that.[4]  Now, the Landlord is attempting to salvage its position by attacking Mr. Wolford.   Unlike the Landlord's expert, who formed opinions based upon his "gut feel[ing]" (Sorensen Deposition, p. 25), Mr. Wolford's opinions are both reliable and relevant.  To the extent that there are inadequacies in Mr. Wolford's testimony, as urged by the Landlord, they go to the weight to be given his opinions, rather than their admissibility and are subject to testing by cross examination.  Consequently, denial of the motion to bar Mr. Wolford's opinions is compelled.

## II.  ARGUMENT

### WOLFORD'S OPINIONS SATISFY FED.R.EVID. 702 AND THE *DAUBERT* TEST

The admission of expert testimony is specifically governed by Federal Rule of Evidence 702 and the principles announced in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed 2d 469 (1993).   Rule 702 states:  "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a

---

[4]    *See* TSA's Motion for Summary Judgment.

60169952v1 868372

fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

The Supreme Court in *Daubert* interpreted this rule to require that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589, 113 S.Ct. at 2795. In other words, as a threshold matter "a district court is required to determine (1) whether the expert would testify to valid scientific knowledge, and (2) whether that testimony would assist the trier of fact with a fact at issue." *Walker v. SOO Line R.R. Co.,* 208 F.3d 581, 586 (7th Cir. 2000), *cert denied,* 531 U.S. 930, 121 S.Ct. 311, 148 L.Ed.2d 250 (2000). When making these determinations, the district court functions as a "gatekeeper" whose role is "to keep experts within their proper scope, lest apparently scientific testimony carry more weight with the jury than it deserves." *DePaepe v. General Motors Corp.,* 141 F.3d 715, 720 (7th Cir. 1998), *cert. denied,* 525 U.S. 1054, 119 S.Ct. 617, 142 L.Ed.2d 557 (1998).

In analyzing the reliability of proposed expert testimony, the role of the court is to determine first whether the expert is qualified in the relevant field and to examine the methodology the expert has used. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 153, 119 S.Ct. 1167, 1177, 143 L.Ed.2d 238 (1999). An expert may be qualified by "knowledge, skill, experience, training, or education." Fed.R.Evid. 702. While "extensive academic and practical expertise" in an area is certainly sufficient to qualify a potential witness as an expert (*Bryant v. City of Chicago,* 200 F.3d 1092, 1098 (7th Cir. 2000), *cert. denied,* 531 U.S. 821, 121 S.Ct. 64, 148 L.Ed.2d 30 (2000)), Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based upon experience. *Kumho,* 526 U.S. at 156, 119 S.Ct. at 1178; *Smith v. Ford Motor Co.,* 215 F.3d 713, 718 (7th Cir. 200).

60169952v1 868372

Rather than the factual underpinnings or the substance of the expert's conclusions, the court must examine the expert's methodology. *Smith,* 215 F.3d at 718. The court must "consider whether the testimony has been subjected to the scientific method; it must rule out subjective belief or unsupported speculation." *United States v. Hall,* 165 F.3d 1095, 1102 (7th Cir. 1999), *cert. denied,* 527 U.S. 1029, 119 S.Ct. 2381, 144 L.Ed.2d 784 (1999).

Although *Daubert* identifies factors to be considered when evaluating the admissibility of expert testimony – including testing, peer review, error rates, and acceptability within the relevant professional community – these factors do not establish a definite checklist. *See United States v. Cruz-Velasco,* 224 F.3d 654, 660 (7th Cir. 2000) (subsequent history omitted). Rather, the applicability of the various *Daubert* factors depends on the particular facts and circumstances of each case. *Id.* The presence or absence of any one *Daubert* factor is not invariably necessary or dispositive. *Kumho,* 526 U.S. at 141, 119 S.Ct. 1171; *see also Smith,* 215 F.3d at 721 (reversing trial court exclusion of expert testimony that considered only the factor of peer review in analyzing the reliability of the expert's testimony). In some cases, the relevant reliability analysis focuses upon personal knowledge or experience. *United States v. Brumley,* 217 F.3d 905, 911 (7th Cir. 2000). Although bare conclusions are not admissible (*McMahon v. Bunn-O-Matic Corp.,* 150 F.3d 651, 658 (7th Cir. 1998)), the court's inquiry into methodology should include other applicable parts of the Federal Rules of Evidence, including Rule 703. *United States v. Hall,* 93 F.3d 1337, 1342 (7th Cir. 1996) (subsequent history omitted).

Finally, the court must determine whether the proposed expert testimony is relevant, *i.e.,* whether it will assist the trier of fact in understanding the evidence or determining a fact in issue. *Hall,* 93 F.3d at 1342.

In the matter *sub judice,* Mr. Wolford's proposed testimony meets each element of Rule 702 and *Daubert*. Accordingly, his opinions should be admissible.

5

60169952v1 868372

### A.    Wolford is Qualified to Serve as an Expert.

Both in his expert witness report and his deposition, Mr. Wolford described his extensive experience and background in the field of constructing retail stores. His report is attached as Exhibit 1 and is referred to as the "Wolford Report," and relevant portions of his deposition, referred to as the "Wolford Deposition," are attached as Exhibit 2.

Mr. Wolford attended the Pratt Institute – School of Architecture in New York for four years. Wolford Deposition, p. 14; Wolford Report, Exhibit A. He is a vested member of Carpenters Union Local #839 and a member of the International Council of Shopping Centers. Wolford Report, par. 3, Wolford Report, Exhibit A. Mr. Wolford has more than 20 years experience supervising, managing, and coordinating numerous construction projects of retail stores, including the Polo Shop, the Coach Store, the Gap, Gap Kids, Banana Republic, Williams & Sonoma, and the Pottery Barn. Wolford Report, Exhibit A. As a project manager/estimator, Mr. Wolford has significant experience in awarding bids, negotiating prices, and preparing budgets for the retail construction of retail stores. Wolford Report, Exhibit A.

For the past 2.5 years, Mr. Wolford has operated his own construction company as a "big box contractor, retail contractor." Wolford Deposition, p. 13. On behalf of his own company and others, Mr. Wolford has served as the retail project manager and estimator on numerous projects for TSA. Wolford Deposition, p. 51; Wolford Report, par. 1. As an estimator, Mr. Wolford prepares estimates of the costs of construction projects. Wolford Deposition, p. 51.

With his extensive practical experience in the area of retail construction, Mr. Wolford is clearly qualified to render expert opinions with respect to construction costs.

### B.    Wolford's Methodology is Reliable.

The thrust of the Landlord's attack on Mr. Wolford pertains to his methodology. The Landlord contends that Mr. Wolford had insufficient facts to reach his opinion, that he failed to

apply his methods to the facts, and that his opinion is speculative.  In each instance, the Landlord's assertions are wholly without merit.

### i)    Wolford Possessed Sufficient Information to Form an Opinion.

Mr. Wolford was first contacted by David Frieder of TSA on or about March 27, 2006. Mr. Frieder explained that TSA desired a preliminary budget for reconstruction of TSA's Springfield store.  Wolford Deposition, p. 5.  Mr. Frieder provided Mr. Wolford information on the work scope at that time.  Wolford Deposition, p. 6.

In addition, during April 2006, Mr. Wolford conferred with Jeff Krone[5] of Cotton USA, the national disaster recovery firm retained by TSA after the tornado.  Mr. Krone described to Mr. Wolford the damage to the premises.  Wolford Deposition, p. 12.

Moreover, Mr. Wolford already possessed very specific information regarding TSA's leasehold in Springfield.  In 2001, he examined specifications and drawings for the construction of the Sports Authority store in Springfield.  Although he was not awarded the project, he prepared and submitted proposals for the original construction.  After TSA terminated the Lease, Mr. Wolford visited the Springfield store and confirmed the relative substance of his opinion. Wolford Deposition, p. 9 (noting that the final budget "wasn't far off" the original), P. 24.

Under Fed.R.Evid. 703, an expert may testify to an opinion formed upon information provided to him.  For example, in case of *In the Matter of James Wilson Associates,* 965 F.2d 160 (7th Cir. 1992), an architect planned to testify about the physical condition of a building based upon information obtained by a consulting engineer.  Although the information provided to the architect would not be admissible as hearsay for other purposes, it was appropriate information to serve as the basis for expert opinion:

---

[5]    Mr. Krone was disclosed by TSA as a person having information regarding the damage to the premises.

7

An expert is of course permitted to testify to an opinion formed on the basis of information that is handed to rather than developed by him – information of which he lacks first-hand knowledge and which might not be admissible in evidence no matter by whom presented. Fed.R.Evid. 703. And in explaining his opinion an expert witness normally is allowed to explain the facts underlying it, even if they would not be independently admissible. But the judge must make sure that the expert isn't being used as a vehicle for circumventing the rules of evidence. *Gong v. Hirsch,* 913 F.2d 1269, 1272-73 (7th Cir. 1990). The fact that inadmissible evidence is the (permissible) premise of the expert's opinion does not make that evidence admissible for other purposes, purposes independent of the opinion. . . . The architect could use what the engineer told him to offer an opinion within the architect's domain of expertise, but he could not testify for the purpose of vouching for the truth of what the engineer had told him – of becoming in short the engineer's spokesman. . . .

*Id.* at 172-73.

In *Spearman Industries, Inc. v. St. Paul Fire and Marine Insurance Co.,* 138 F.Supp.2d 1088 (N.D.Ill. 2001) (subsequent history omitted), an insurer and the insured litigated insurance coverage for damage to the roof of a building. The insurer moved to bar testimony of the insured's roofing expert contending, *inter alia,* that the methodology was unreliable. In allowing the testimony of the insured's expert, named Diederich, the court held:

In analyzing whether an expert's methodology is reliable, the court should determine merely whether "[i]t was appropriate for [the expert] to rely on the test that he administered and upon the sources of information which he employed." (Citation omitted.) The court's gatekeeping function focuses on an examination of the expert's methodology, while "[t]he soundness of the factual underpinnings o the expert's analysis and the correctness of the expert's conclusion basis on that analysis are factual matters to be determined by the trier of facts…." (Citation omitted.)

. . . In some cases, the relevant reliability analysis focuses upon personal knowledge or experience. *United States v. Brumley,* 217 F.3d 905, 911 (7th Cir. 2000) (citing *Kumho Tire,* 526 U.S. at 150, 119 S.Ct. 1167).

Although Diederich's opinion may not be derived from "hard science," his opinions are based on his specialized knowledge of roofing and roofing materials, and his extensive practical experience endows him with the kind of expertise recognized by the Seventh Circuit. Diederich personally inspected the roof in question and in light of his extensive practical roofing experience installing and repairing roofs, distributing roofing materials, and working as a roofing contractor – he formed an opinion as to the cause of damage to the roof. *See Brumley,* 217

F.3d at 911 (finding that an expert's opinion was based on professionally sound and reliable underlying methodology because it "was based on his extensive investigative experience."). Diederich's opinion is well within his competency as an experienced roofer. *See Kumho,* 526 U.S. at 156, 119 S.Ct. 1167 (finding that "an expert might draw a conclusion from a set of observations based on extensive and specialized experience"). Again, St. Paul is entitled to cross-examine Diederich and to put its own expert on the witness stand to offer a counter opinion.

*Id.* at 1097.

The Landlord cites *Zenith Electronics Corp. v. WH-TV Broadcasting Corpo.,* 395 F.3d 416 (7th Cir. 2005), *Ancho v. Pentek Corp.,* 157 F.3d 512 (7th Cir. 1998), and *In re Salem,* 465 .3d 767 (7th Cir. 2006), as authority for the point that an expert's methodology must include a personal viewing of the site. The Landlord's reliance is misplaced.

In *Zenith,* an electronics manufacturer sued a broadcaster to recover payment for certain equipment. The broadcaster sought to admit opinion testimony on lost profits. Rather than make projections based upon potential subscriber base or data from other markets, the proposed expert relied only upon his subjective views, which the court interpreted to be no method.[6] Consequently, the opinion testimony was stricken. *Zenith* is inapposite to this matter.

*Ancho* is a products liability case where the proposed expert recommended modifications to a piece of machinery. The court excluded his testimony, not merely because the expert had failed to view the item in question, as the Landlord implies in its brief, but also because he failed to observe any similar machinery. *Ancho,* 157 F.3d at 517. In the matter *sub judice,* Wolford was familiar with retail construction in general, TSA retail stores in particular, and the TSA Springfield leasehold from his previous activities. Moreover, Mr. Wolford compared the Springfield project to another comparable project:

---

[6]　Similarly, the Landlord's expert has formed opinions on his "gut feel[ing], which is to say that he had no method.

60169952v1 868372

Q.    How is it that you're familiar with the construction costs of the Springfield area?

A.    Besides originally bidding the project and having substantial bid coverage and that means subcontractor coverage for each trade originally and my past history working in multiple markets throughout the country, union and nonunion and a very parallel market in Delafield, Wisconsin which is a union market and the labor rates are very consistent with that I was able to formalize and that assisted me in this budget, this replacement budget.

Q.    When you were talking about familiarity with it originally you're talking back in 2001?

A.    That is correct.

Q.    So those numbers wouldn't be good anymore?

A.    With pricing the Sports Authority work all over the country doing them in 12 or 14 different states, knowing the Springfield, Illinois market with comparable markets I felt that the budget that I produced was very comprehensive budget and the past history.

Wolford Deposition, p. 29-30.

The Landlord can find no succor in *Salem* either. In that case the court allowed the testimony of an appraiser of real property. The court noted that the appraiser was experienced, had visited the house twice, made appraisals on the standard forms, and had used quantitative sales comparison. *Salem*, 465 F.3d at 777. The court, however, did not state that a personal visit was mandatory, and if it had, that decision would directly conflict with Fed.R.Evid. 703.

Over the course of his involvement with the TSA store in Springfield, Mr. Wolford prepared a proposal for the stores construction, received information from TSA's vice-president

60169952v1 868372

of construction, David Frieder, regarding the damage to the store from the tornado, and received information of the same type from Jeff Krone of the disaster recovery firm. After the termination of the Lease, Mr. Wolford visited the site, and, although he made refinements, refined the estimate, he essentially confirmed his original estimate. Mr. Wolford had sufficient facts to form a reliable opinion.[7]

### ii) Wolford Applied a Reliable Methodology.

The Landlord asserts that, since Mr. Wolford thinks a site visit is important, he failed to apply his own methodology to reach his opinions. TSA agrees that a site visit is indeed important. Consequently, it urged Mr. Wolford to visit the site, and he did so on May 4, 2006. Wolford Deposition, p. 24. That visit and other information he obtained subsequent to preparation of the original budget estimate confirmed and did not materially alter his original budget estimate. Wolford Deposition, p. 9.

Although a site visit is useful, it is not the only acceptable method for an expert to derive information to form an opinion. *In the Matter of James Wilson Associates*, 965 F.2d at 127-73 (an architect can use information from an engineer to form an opinion within the architect's domain of expertise).

---

[7] The Landlord's timeline beginning at page 2 of its brief, while certainly interesting, has absolutely no relevance to whether Mr. Wolford may offer opinion testimony. Moreover, it is factually flawed and inaccurate. Mr. Wolford testified that he delivered to TSA an original budget on April 19, 2006. Wolford Deposition, p. 10. The Landlord failed to include that date in its timeline. Nonetheless, any confusion as to the preparation of budget estimates goes to weight and not to admissibility, and may be challenged by the Landlord in cross-examination..

60169952v1 868372

In this matter Mr. Wolford is experienced in the field, has prepared a bid for the construction of the project a few years before, and made quantitative comparisons to similar markets. His testimony is clearly reliable.[8]

### iii)    Wolford's Opinions Do Not Constitute Speculation.

Based upon his expertise and the actions he took, it is patent that Mr. Wolford's opinions are not speculative. To demonstrate the reliability and soundness of Mr. Wolford's opinions, the Landlord's own expert compared Mr. Wolford's estimates with his actual construction costs. Sorensen Deposition, page 49-58, and Exhibit 5 to Sorensen Deposition (Exhibit C to the Sorensen Expert Report), attached as Exhibit 3. Mr. Sorensen's results for several items follow:

| ITEM | WOLFORD ESTIMATE | ACTUAL COST |
| --- | --- | --- |
| Shoring-Stabilizing | $18,500 | $14,439 |
| Selective Demolition-Balance of Damage | $37,400 | $32,128 |
| Structural-124'lf Bar Joist & Deck | $57,600 | $46,951 |
| Replace 124' Structural Masonry Wall | $21,500 | $29,218 |
| HVAC repair existing units | $9,600 | $16,426 |
| Drywall/Finish Taping Perimeter 4'/ U/S of Deck | $31,600 | $18,205 |
| Minor ACT'S – T-Bar Replacement | $5,900 | $2,570 |
| Light Fixture Installation Only | $18,500 | $25,322 |
| Light Fixtures | $4,485 | $10,678 |
| Paint to match at lower levels | $9,800 | $27,812 |
| RR-Plumbing Re-Installation | $1,200 | $4,096 |
| Millwork | $26,000 | $1,777 |
| Dumpsters | $4,100 | $5,616 |
| Misc. Rental Equipment | $8,200 | $7,908 |

The total for the fourteen selected items under the Wolford estimate is $254,385, while Mr. Sorensen's actual costs total for the same items is $243,146, a differential of less than 5%. Mr.

---

[8]  In *Zelinski v. Columbia 300, Inc.,* 335 F.3d 633 (7th Cir. 2003), the court affirmed the admission of an expert's opinions based on a methodology that the court found to be odd but held that the expert fully explained his methodology and that the party challenging his opinions failed to "present evidence that would suggest an expert wouldn't use this technique." *Id.* at 640. Other than Mr. Wolford's deposition testimony that he requires his subcontractors to visit a construction site prior to submitting bids, the Landlord has offered no evidence to suggest that Mr. Wolford's technique was inadequate.

60169952v1 868372

Wolford's estimates are not the product of speculation, but, rather are the result of experience, knowledge, and relevant analysis.

C.　　**Wolford's Opinions Fit the Circumstances of the Case.**

The final consideration of an expert's testimony is whether it is relevant, *i.e.*, whether it is sufficiently tied to the facts of the case. *Daubert*, 509 U.S. at 591, 113 S.Ct. at 2796. In this case, the Lease provided that the Tenant may terminate the Lease if, after a casualty, the premises sustained damage, the cost of repair or reconstruction of which equaled or exceeded 35% of the then-total reconstruction cost of the premises. Mr. Wolford provided an analysis to assist TSA in that mathematical calculation. He did not rely upon his gut feeling, and he did not estimate the proportion of the physical components damaged. Rather, based upon his experience as a project manager/estimator and contractor, from his previous knowledge of the premises, from his knowledge of comparable markets, and from information provided by TSA's vice-president of construction and the disaster recovery company, he prepared a budget estimate. Although that budget was refined over time, it was never materially altered. His expert opinions are both reliable and relevant.

<u>**CONCLUSION**</u>

Although the weight and credibility to be accorded Mr. Wolford's expert testimony are properly left to the trier of fact, his proffered opinion testimony satisfies Fed.R.Evid. 702 and the

60169952v1 868372

*Daubert* principles. Accordingly, it is admissible, and the Landlord's motion to bar that testimony must be denied.

Dated: January 17, 2008

Respectfully submitted,

TSA Stores, Inc, as successor to Gart Bros.
Sporting Goods Company, A Delaware Corp.

BY: /s/Charles R. Schmadeke
      J. William Roberts, No. 2351714
      Charles R. Schmadeke, No. 2489813
      Hinshaw & Culbertson LLP
      400 S. 9th St., Suite 200
      Springfield, IL 62701
      Phone: 217-528-7375
      Fax: 217-528-0075
      E-mail: broberts@hinshawlaw.com
      E-mail: cschmadeke@hinshawlaw.com
      Attorneys for TSA Stores, Inc.

60169952v1 868372

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2008, I electronically filed TSA's Opposition to Plaintiff's Motion to Bar Opinion Witness with the Clerk of Court using the CM/ECF system that will send notification of such filing(s) to the following:

David A. Rolf          Email: darolf@sorlinglaw.com
R. Lee Allen           Email: rlallen@sorlinglaw.com


/s/Charles R. Schmadeke
J. William Roberts, No. 2351714
Charles R. Schmadeke, No. 2489813
Hinshaw & Culbertson LLP
400 S. 9th St., Suite 200
Springfield, IL 62701
Phone: 217-528-7375
Fax: 217-528-0075
E-mail: broberts@hinshawlaw.com
E-mail: cschmadeke@hinshawlaw.com
Attorneys for TSA Stores, Inc.

60169952v1 868372

**E-FILED**
Thursday, 17 January, 2008 04:09:09 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

SWPLAZA III, LLC, an Illinois limited )
liability company, as successor to Illinois )
National Bank, as Trustee under Trust )
Agreement dated November 6, 2000 and )
known as Trust No. 00-0020, an Illinois )
banking institution, )
)
              Plaintiff/Counter-Defendant, )    Case No.  06-CV-3177
)
    vs. )
)
TSA STORES, INC., as successor to Gart )
Brothers Sporting Goods Company, a )
Delaware corporation, )
)
            Defendant/Counter-Plaintiff. )

## EXPERT WITNESS REPORT OF JEFFREY WOLFORD

    I, Jeffrey Wolford, hereby submit the following report regarding the valuation of the repair and reconstruction costs to the Premises as defined herein, as a result of the tornadoes that damaged the SWPlaza and the TSA Store located therein on or about March 12, 2006.

## INTRODUCTION

1.    My name is Jeffrey Wolford. I am the president of Wolford Retail Builders, Inc., located in Prospect Heights, Illinois., and has been incorporated in the state of Illinois and Florida since 2005. I have more than twenty-nine years experience in the construction industry of retail/ commercial projects throughout the United States, including Illinois. In addition, the following are recent Sports Authority projects that have been completed or are under contract to be completed by Wolford Retail Builders, Inc. Those projects include:

- Sports Authority #478 – Riverhead, NY (interior) 45,049 s.f. – date: 9/27/06
- Sports Authority #457 – Riverdale, NJ (interior) 40,627 s.f. – date: 9/27/06
- Sports Authority #477 – Paramus, NJ (interior) 51,106 s.f. – date: 8/4/05
- Sports Authority #174 – Somerville, MA (interior) 45,669 s.f. – date: 3/9/06

60159970v1 868372

## EXHIBIT 1

- SportMart #629 – Delafield, WI (interior) 40,934 s.f. – date: 3/2/06
- Sports Authority #176 – Milford, MA (interior) 46,266 s.f. – date: 9/25/05
- Sports Authority #511–Baltimore, MD (exterior,site,interior) 50,122 s.f.– date:7/13/06
- Sports Authority #178–Holyoke, MA (interior) 46,322 s.f. – date: 2/22/07
- Sports Authority #583- Lombard, IL (interior 2 levels) 47,013 s.f- date: 7/27/07
- Sports Authority #376- Port St. Lucie, FL  (interior) 39,334 s.f. - date:  9/13/07
- Sports Authority #604- Oak Lawn, IL  (exterior facade only) date:  4/24/06
- Sports Authority #394 – Cape Coral, FL (interior) 29,359 s.f. – date:  08/23/07

2.     My educational and work experience is set forth in my biographical sketch, attached hereto as Exhibit A and by reference made a part hereof, and includes other projects. My experience began in 1977 as a union carpenter. Since 1989 I have had extensive experience working for other general contractor's as a project/ construction manager and have successfully completed many other retail stores throughout the United States, including Illinois.

3.     In addition, I am a member of the following professional organizations: Vested member of Carpenters union local #839 and a member #1329502 of the ICSC- The International Council of Shopping Centers

4.     Unless otherwise specified, the terms used herein are defined as set forth in the Lease which is the subject of the above-referenced action.

5.     Based upon my review of the Premises after the March 12, 2006 tornadoes, the material described herein, my knowledge of the costs of construction, including the costs of construction of the Premises originally in 2001, and the increased costs of labor and materials, and the information and data set forth herein, it is my opinion, based upon a reasonable certainty, that the estimated repair and reconstruction costs of the Premises as a result of the damage caused by the tornadoes of March 12, 2006, exceeded 35% of the then-total reconstruction costs of the Premises.

6.     In 2001, on behalf of Capitol Construction Group, Inc., of which I was then affiliated as project manager, I examined specifications dated June 27, 2001, and drawings

2

pertaining thereto, for the construction of The Sports Authority Store at the South West Plaza Shopping Center in Springfield, Illinois. Based upon that review, I submitted a proposal for the construction dated July 26, 2001, and a revised proposal dated July 30, 2001. The proposals submitted by me on behalf of Capitol Construction Group are attached hereto as Exhibit B and by reference made a part hereof.

## ANALYSIS

7.    On Tuesday, May 2, 2006, I was asked by TSA Stores, Inc., to review the Premises and certain other matters identified herein to provide an opinion as to the extent of the damage caused by the tornadoes of March 12, 2006, the total reconstruction costs of the Premises, and the proportion of the total reconstruction costs that the damage represented.

8.    I visited the premises on Thursday, May 4, 2006.

9.    During my visit to the Premises, I observed the contractor engaged in the reconstruction of miscellaneous work-scopes. Although TSA had demobilized and/or relocated all merchandise from its store, all sales floor fixturing and shelving from the TSA Store had not been fully dismantled and removed from the site. The emergency disaster recovery services contractor retained by TSA had provided all water and debris clean/haul off, moisture tests, disinfecting/ glass shard extraction, dismantling/ staging of OSF store metal fixtures, selective demolition, floor finish adhesive removal, required temporary emergency protection, and barricading/re-securing of space. The contractor retained by the landlord was performing but, not limited to the following work during my site visit: roofing, repair of structural steel and bar joists, miscellaneous electrical rework and reconstruction of effected drywall common to perimeter walls. The project and/or reconstruction was well underway from the total original damage caused by the tornadoes of March 12, 2006.

10.    I also reviewed the following:

60159970v1 868372

a)     the disaster recovery services rendered by Cotton USA at the Premises as a result of the tornadoes of March 12, 2006, and the costs associated therewith;

b)     the original construction costs of the Premises and the Shopping Center from 2001 as defined by the general contractor of record, Vancil Contracting; and

c)     the Associated General Contractor's Construction Inflation Index prepared by economist Ken Simonson, which established an inflation factor for that period of 32% for the period from 2001 to 2006.

Copies of those documents are attached hereto as Exhibits C, D, and E respectively, and included herewith.

11.     Based upon my review set forth above, I am familiar with the damages to the Premises, the costs of construction (labor and materials) in the area, and the items needed to be repaired or reconstructed at the Premises as a result of the tornadoes of March 12, 2006.

12.     Based upon my review and my experience with and knowledge of construction costs for retail stores such as this, and my prior knowledge of the original 32,308 square feet project of July 2001, it is my opinion, based upon a reasonable certainty, that the total building replacement costs on or about March 12, 2006 were $1,841,856.00.

13.     Based upon my review of the Premises and the aforementioned items, I formed an opinion, based upon a reasonable degree of certainty, and issued a report dated May 1, 2006, indicating that the premises sustained 'direct costs damage' with the values as a result of the tornadoes of March 12, 2006, $743,944.00, as indicated in my Budget Estimate which is attached hereto as Exhibit F and made a part hereof.

14.     It is my opinion based upon my experience in the construction industry of retail stores, that certain services, projects, and tasks performed by Cotton USA must be considered as part of the legitimate costs of reconstruction and repair of the premises. Those services, projects, and tasks were a necessary component to restore the premises to their condition before the tornadoes of March 12, 2006, or were a necessary prerequisite to construction. Services,

4

projects, or tasks performed by Cotton USA solely directed at preserving or removing TSA's inventory or fixtures should not be included as reconstruction or repair costs. In addition, after reviewing Cotton USA's final costs I have made an adjustment due to overlap workscope/ costs included in my May 7, 2006 budget proposal and Cotton USA's actual work performed. Using pro-ration and percentages these deduct costs totaled $118,201.00 and is reflected in line 12.

15.    Even if all costs attributed to Cotton USA *i.e.*, $319,428, were excluded from the costs of repairs and reconstruction, which in my opinion would not be proper, the remaining reasonable reconstruction costs exceeds 35% of the total replacement cost.

## ANALYSIS OF PLAINTIFF'S EXPERT REPORT

16.    At the request of TSA, I have also conducted a review of the "Rule 26(a)(2) Expert Witness Report of Mark Sorensen," submitted by SWPlaza III, LLC. To that end, I analyzed the report as well as the documents submitted as part of the report. Because of the errors listed below, I have concluded that Mr. Sorensen's report cannot be considered as a reliable budgeting evaluation of the actual damages to the Premises for the purposes of this lawsuit as a result of the March 12, 2006 tornadoes.

17.    The report appears to outline the actual repair and construction costs to the Premises or common areas from the March 12, 2006 tornadoes.

18.    The information provided by Mr. Sorensen indicates that the actual repair and reconstruction work continued for a period greater than sixty (60) days from the occurrence of the tornadoes. My understanding of the Lease is that the Tenant's option to terminate the Lease by reason of casualty had to be exercised within sixty (60) days of the casualty. Since repair and reconstruction was not completed within that sixty (60) day period, the actual repair and reconstruction costs were not and would not have been available for either Landlord or Tenant to consider with respect to the Lease.

5

19.    In my opinion, the most important error in Mr. Sorensen's report, even with respect to actual reconstruction and repair costs, is that it is not supported with appropriate sworn statements by subcontractors and material suppliers, and the certified payroll. Rather the report is based upon running "in-house" activity and entry reports from the general contractor. The reports submitted are not consistent with the American Institute of Architects (AIA) format or title company for lien waivers for payment to contractors and materials suppliers. Although I am not suggesting that either Mr. Sorensen or Jones-Blyth failed to include items that should have been included or failed to specify the correct value for each item, the in-house activity and entry reports may reflect whatever a general contractor wants it to, including costs from other same site/ center projects. Such reports are used for the internal purposes of the general contractor only and are not relied upon for the purposes of making payments to contractors, laborers, and material providers. Also, they do not necessarily reflect the quality and quantity of materials actually used in the construction process.

## CONCLUSION

20.    For services in reviewing this matter and preparing this report, I am being compensated by TSA in the amount of $2500. No compensation has been determined for any testimony I may give in this matter.

21.    I have authored no publications in the preceding ten years.

22.    I have not testified as an expert at trial or by deposition within the preceding four years.

Pursuant to 28 U.S.C. §1746, I declare, certify, verify, and state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed: May 31, 2007

6

Jeffrey Wofford

7

## CERTIFICATE OF SERVICE

The foregoing Expert Witness Report of Jeffrey Wolford was served upon Plaintiff/Counter-Defendant by hand-delivering a copy thereof to:

David A. Rolf
R. Lee Allen
Sorling Northrup Hanna Cullen & Cochran LTD
Illinois Building
607 E. Adams Street, Suite 800
Springfield, IL 62701

on this 1st day of June, 2007.

*Barbara L. Rogersly*

Subscribed and sworn to before me
this 1st day of June, 2007.

*Virginia M Heyen*
Notary Public

NOTARY PUBLIC
OFFICIAL SEAL
STATE OF ILLINOIS
VIRGINIA M. HEYEN
MY COMMISSION EXPIRES
SEPTEMBER 18, 2009

J. William Roberts (#2351714)
Charles R. Schmadeke (#2489813)
HINSHAW & CULBERTSON LLP
400 South Ninth Street, Suite 200
Springfield, IL 62701
217/528-7375 (phone)
217/528-0075 (fax)

60159970v1 868372

# JEFFREY B. WOLFORD

1105 N. Meadow Lane
Mt. Prospect, IL 60056
847-253-8133

---

Dear Sirs:

Enclosed is my resume; I am looking for a position in the field of Construction Management. Below is a short list of the most important points regarding my experience and goals. I would appreciate hearing from you concerning positions in my field of interest.

Position Pursued: Superintendent/Project Manager

Attributes Highlighted: I am highly aware of quality issues involving construction and construction management, and have had a great deal of experience with the clerical and record-keeping aspects of the field. In addition, I have knowledge of computer programs, such as WordPerfect/DOS, and Windows software.

Circumstances: I have been in New York City for the past 6 years working as a superintendent and project manager. While employed, I attended classes in night school at Pratt Institute School of Architecture, to increase my knowledge and understanding of construction and construction management.

Comments: I have been in the construction industry for the past 18 years. My resume indicates more recent employment information. I am seeking a position with an employer who will offer long-term employment opportunities; I am interested in the "long-haul". I am fully capable of taking any interior project, from permits to punchlist, as either a field superintendent or as a project manager.

Please contact me at the above number regarding opportunities for employment.

Yours sincerely,

Jeffrey B. Wolford

EXHIBIT A

# JEFFREY B. WOLFORD

1105 N. Meadow Lane
Mt. Prospect, IL 60056
847-253-8133

## OBJECTIVE

To secure a position that will utilize and challenge past experience and acquired expertise in the field of PROJECT MANAGEMENT positively effecting company growth and profitability.

## PROFILE

- Multi-dimensional Project Manager with strong Managerial and Administrative skills
- Background in General Contracting and Field Supervision, with training in Architecture
- Proven ability to communicate clearly and effectively with clients, sub-contractors, and vendors
- Strong organizational and planning skills
- Ability to prioritize work schedules and accomplish tasks simultaneously
- Highly knowledgeable of construction, contractor pricing & bills, building regulations and permits
- Able to remain calm under pressure, troubleshoot and resolve problems
- Consistent achievement record in timely project completion within established budgetary objectives
- Background in industry since 1977

## RELEVANT EXPERIENCE

1996-Present

### CROWN CONSTRUCTION, INC, Chicago, IL
*Construction Superintendent*
- Projects with budgets $500,000 and higher
- Involved in buying out projects as required
- Projects included: *The Glens, Zarosta (restaurants).*

1992 - 1995

### FISHER DEVELOPMENT CORPORATION, New York, NY
(construction management company with offices in New York, Chicago, Washington DC, and San Francisco)
*Project Manager/Estimator*
- Write contracts, award bids and negotiate best prices based upon budgeting factors.
- Manage the renovation and construction for *388 GAP, GAP Kids* and *Banana republic* stores in the Tri-state area with projects ranging from $50,000 to $2,000,000; also manage projects for *Williams Sonoma, Pottery Barn*, and *Hold Everything* stores.
- Communicate with stores regarding initial project specifications and budget.
- Develop list of available and appropriate subcontractors through established list or referrals.
- Communicate regularly with stores regarding schedules, complaints, damage, instructions, etc.
- Perform site and Building Department visits to ensure that schedules and specifications are maintained
- Selected by company to administer high profile jobs.

1987 - 1990

### JOHNSEN CARPENTRY, INC, Dyer, IN
*Construction Superintendent*
- Managed concurrent projects throughout the Chicago area.
- Projects included: *The Polo Shop, The Coach Store, Chicago Health Clubs, Rosenthal Furs, Circle Gallery,   Spiaggia Cafe*, and *One Magnificent Mile Building.*
- Assisted in pre-construction planning, budget evaluation, and monitoring of field activities.
- Held project responsibilities ranging from carpentry superintendent through field superintendent, fully accountable   for all trades.

1986 - 1987

### PEPPER CONSTRUCTION, Chicago, IL
*Field Superintendent*
- Supervised all trades, coordinating crews of 10-30 as well as participating in project planning and reporting activities.
- Projects included: *John Marshall Law School*, Chicago, IL and *Hampton Inns* (two locations).

## EDUCATION

Pratt Institute - School of Architecture, New York, 1990 - 1994
Carpenters Local 839, Member in good standing, 18 years
Home Inspectors Certification, 1988
OSHA, Construction Safety & Health Certification, 1988

COMMUNITY SERVICE
Project Manager, Gilda's Club, New York

*References will be furnished upon request.*

JEFF WOLFORD
Sr. Project Manager / Business Development

## GENERAL BACKGROUND

Mr. Wolford has over twenty-eight years of experience within the construction industry in multi-family residential, national and regional retail tenant improvement projects.

## RECENT EXPERIENCE

TSA Corporation- multiple Sportmart- Sports Authority new tenant improvement projects- 35,000 – 42,000 square foot retail spaces in Fresno, CA, Folsom, CA, Matteson, IL, Frankfort, IL, Bolingbrook, IL, Crystal Lake, IL, Woburn, MA, Plymouth, MA, N. Haven, CT, Kirkwood, MO, Farmers Branch, TX, McKinney, TX, Mays Landing, NJ, etc.   The store specializes in supplying a large selection of name brand sporting goods equipment for its customers.  Both projects consisted of new MEP's, Partitions, ACT ceilings, lighting, multiple floor finishes, millwork, fixturing, decorating, roofing and all related owner supplied materials and equipment. All projects were completed between a 5 week through (11) week `fast track` construction.

Chico's, Multiple Locations – Five New Locations in Atlanta GA, Lincoln NE, Philadelphia PA, Grand Rapids MI and Detroit MI. The store specializes in women's dress and formal wear.  The projects consisted of new MEP's, stainless steal storefront, partitions, ceilings, lighting, millwork, fixturing, paint finishes, wood flooring, signage and adjacent mall finishes.  All projects were completed in six (6) weeks.

Holiday Inn Plaza, Rosemont, IL- New Plaza, and Site Construction Project.  This project consisted of the following: new light well corridor tying into to new existing atrium, new 5,000 square foot two level free standing storage facility, new plaza and gazebo. Other components of this two acre project includes, excavation of existing site, concrete planters, all landscaping, ground lighting, curtain wall system, roofing, custom pavers, awnings, decorating, MEP's, waterproofing and all adjacent finishes to existing building hotel. The project duration was 6 months.

TSA Corporation- Gart Sports, Orem, UT – New 42,000 square foot retail space.  The store specializes in sporting goods equipment including Skiing, hunting, fishing and firearms. The project consisted of new MEP's, roofing, partitioning, floor finishes, `Compasso` ceilings, owner millwork installation, lighting, decorating and glazing.
This project was completed in nine (9) weeks.

Krueger International, Merchandise, Chicago, IL- Tenant improvements for 5,500 square foot sales showroom office space.  This client specializes in high-end office movable partitioning, furniture and fixtures.  The `design build` project consisted of demolition, carpentry, drywall partitioning, floor coverings, ceilings, decorating and modifications to existing MEP's.  For the last two (2) years the project/space was complete prior to and before the NEOCON show and was a commercial success.

Victoria's Secret, Brookdale Center, MN – New 5,200 square foot retail space.  The store specializes in women's lingerie, cosmetics and accessories.  The project consisted of demolition of the old space, new MEP'S, fire alarm system, millwork installation, partitioning, tile, wood flooring system, painting and wall covering, fixturing, lighting, complete storefront assembly, glazing/mirrors and adjacent mall finishes.  The project duration was fourteen weeks.

The Children's Place, Two New Locations in Terra Haute, IN and Evergreen Park, IL.  The store specializes in infant and children's apparel. The projects consisted of demolition of the existing tenant space, new MEP's, fire alarm system, storefront glazing, partitioning, carpentry, owner millwork installation, decorating, floor coverings, ACT ceilings, owner signage and adjacent mall finishes. Both projects were approx. 5,000 square feet and had six (6) week duration.

Cont.

TSA Corporation- Oshman's SS's, Houston and Austin. TX – New 33,000 square feet retail space. Both stores specializes in sporting goods including camping, fishing, hunting and including a large selection of fire arms. The project consisted of and also included the complete exterior `tear off` of the front and back facades, concrete, steel, masonry, carpentry, dryvit/stucco, light gg framing, storefront glazing, roofing, dock equipment, partitioning, ACT ceilings, floor finishes, mirrors, plumbing, fire protection, HVAC, fire alarm system, electrical and installation of owner supplied store fixturing. The project was completed in thirteen (13) weeks.

Lerner's New York, Lincolnwood, IL – New 4,300 square foot retail space. The store specializes in women's casual and dress apparel, footwear and accessories. The project consisted of demolition of existing space, new MEP's, carpentry, storefront assembly, glazing/mirrors, floor coverings, wall coverings, painting, owner millwork installation, drywall partitioning and adjacent mall finishes. The project was completed in eleven (11) weeks.


## EDUCATION

Pratt Institute – Brooklyn, NY
School of Architecture- 1989 through 1993

| Store Location | Date Completed | Square Footage | Type |
|---|---|---|---|
| **Jeff Wolford- Retail Project Manager- Estimator for other General Contractors** | | | |
| Sportmart #608- Orland Park, IL | 6/30/1999 | 39,885 | New Store - Tenant Improvement |
| Gart Sports #321- Orem, UT | 6/4/2001 | 38,202 | New Store - Tenant Improvement |
| Sportmart #321- Crystal Lake, IL | 11/10/2001 | 35,533 | New Store - Tenant Improvement |
| Sportmart #607- Folsom, CA | 6/11/2002 | 28,598 | New Store - Tenant Improvement |
| Sportmart #673- Folsom, CA | 6/22/2002 | 28,927 | Remodel - Tenant Improvement |
| Sportmart #605- Schaumburg, IL | 10/30/2002 | 33,567 | New Store - Exterior Façade - Tenant Improvement |
| Oshman's #240 - Houston, X | 10/4/2002 | 35,894 | New Store - Tenant Improvement |
| Sportmart #674 - Fresno, CA | 1/27/2003 | 39,909 | Remodel - Tenant Improvement |
| Sportmart #612 - North Riverside | 3/23/2003 | 42,201 | New Store - Tenant Improvement |
| Sportmart #600 - Bolingbrook, IL | 5/2/2003 | 38,851 | New Store - Tenant Improvement |
| Sportmart #626 - Matteson, IL | 4/13/2003 | 39,102 | Remodel - Tenant Improvement |
| Sportmart #604 - Oak Lawn, IL | 4/4/2003 | 44,837 | Remodel - Tenant Improvement |
| Sportmart #608 - Orland Park, IL | 5/2/2003 | 41,175 | New Store - Tenant Improvement |
| Sportmart #692 - Phoenix, AZ | 8/5/2003 | 38,404 | New Store - Tenant Improvement |
| Oshman's #242 - Austin, TX | 4/11/2003 | 37,748 | Remodel - Tenant Improvement |
| Sportmart #601 - Niles, IL | 8/22/2003 | 18,465 | Remodel - Tenant Improvement |
| Sportmart #617 - N. LaSalle St. Chicago, IL | 6/8/2003 | 34,898 | Remodel - Tenant Improvement |
| Sportmart #614 - Vernon Hills, IL | 8/8/2003 | 35,884 | New Store - Tenant Improvement |
| Sports Authority #753 - Kirkwood, MO | 10/24/2003 | 35,196 | New Store - Tenant Improvement |
| Sportmart #627 - Frankfort, IL | 10/3/2003 | 38,218 | Remodel - Tenant Improvement |
| Sportmart #615 - Glendale Hts., IL | 2/19/2004 | 46,249 | New Store - Exterior Façade - Tenant Improvement |
| Oshman's #207 - Farmers Branch, TX | 3/14/2004 | 43,459 | Remodel - Tenant Improvement |
| Sports Authority #464 - W Long Branch, NJ | 4/7/2004 | 40,097 | Remodel - Tenant Improvement |
| Sports Authority #471 - Brick | 3/31/2004 | 43,136 | Remodel - Tenant Improvement |
| Sports Authority $470 - Ledgewood, NJ | 12/7/2004 | 52,760 | New Store - Tenant Improvement |
| Sports Authority #153 - N Heven, CT | 10/1/2004 | 43,975 | New Store - Tenant Improvement |
| Sports Authority #459 - Mays Landing, NJ | 6/4/2004 | 41,815 | Remodel - Tenant Improvement |
| Sportmart #702 - Minnetonka, MN | 6/16/2004 | 44,173 | Remodel - Tenant Improvement |
| Sportmart #704 - Richfield, MN | 6/23/2004 | 42,801 | Remodel - Tenant Improvement |
| Sportmart #701 - Roseville, MN | 9/17/2004 | 49,713 | New Store - Tenant Improvement |
| Sports Authority #165 - Woburn, MA | 10/12/2004 | 38,407 | New Store - Tenant Improvement |
| Sports Authority #166 - Plymouth, MA | 3/10/2005 | 38,106 | New Store - Tenant Improvement |
| Oshman's #205 - McKinney, TX | 4/3/2005 | 40,130 | New Store - Tenant Improvement |
| Sports Authority #474 - Clifton, NJ | 3/6/2005 | 44,620 | Remodel - Tenant Improvement |
| **Wolford Retail Builders, Inc completed TSA/Gart work** | | | |
| Sports Authority #478 - Riverhead, NY | 9/27/2006 | 45,049 | New Store - Tenant Improvement |
| Sports Authority #457 - Riverdale, NJ | 9/27/2006 | 40,627 | New Store - Tenant Improvement |
| Sports Authority #477 - Paramus, NJ | 8/4/2005 | 51,106 | New Store - Tenant Improvement |
| Sports Authority #174 - Somerville, MA | 3/9/2006 | 45,669 | New Store - Tenant Improvement |
| Sportmart #829 - Delafield, WI | 3/2/2006 | 40,934 | New Store - Tenant Improvement |
| Sports Authority #176 - Milford, MA | 9/25/2005 | 46,266 | New Store - Tenant Improvement |
| Sports Authority #511 - Baltimore, MD | 7/13/2006 | 50,122 | New Store - Exterior Façade - Tenant Improvement |
| Sports Authority #178 - Holyoke, MA | 2/27/2007 | 46,322 | New Store - Tenant Improvement |
| Sports Authority #583 - Lombard, IL | new store under construction | 47,013 | New Store - Tenant Improvement |
| Sports Authority #604 - Oak Lawn, IL | 4/24/2008 | | Exterior Façade |
| Sports Authority #376 - Port St Lucie, FL | new store under contract | 39,334 | New Store - Tenant Improvement |
| Sports Authority #628 - Willowbrook, IL | currently competitively bidding | 40,122 | New Store competively bids 5/24/07 |
| Sports Authority #394 - Cape Coral, FL | currently competitively bidding | 39,359 | New Store competively bid on 5/15/07 |

# GART SPORTS COMPANY

STORE #618                                          Date: 7/26/01

CENTER 3211 SOUTH VETERANS PARKWAY, SPRINGFIELD, ILLINOIS Contractor: Capitol Const. Group

| ITEM | MATERIAL | LABOR | PRICE/SQ.FT | TOTAL |
|---|---|---|---|---|
| **BID BREAKDOWN** | | | | |
| 1. Barricade | NIC | | | N/A |
| 2. Demolition | N/A | | | N/A |
| 3. Bond | N/A | | | N/A |
| 4. Concrete | 738.00 | 695.00 | 2.09 | 1,433.00 |
| 5. Carpentry/Rough Carpentry | 16,140.00 | 4,570.00 | 1.55 | 20,714.00 |
| 6. Studs and Drywall | 38,505.00 | 66,972.00 | 2.46 | 105,477.00 |
| 7. Storefront Glass | By Shell Contr. | | | NIC |
| 8. Interior Mirrors | 701.00 | 799.00 | 15.00 | 1,400.00 |
| 9. Acoustical Ceiling | 10,564.00 | 4,401.00 | 1.68 | 14,965.00 |
| 10. Store Fixtures/Finish Carpe | 31,235.00 | 11,300.00 | 0.76 | 42,533.00 |
| 11. Painting/Concrete Sealer | 13,310.00 | 4,162.00 | 0.55 | 17,472.00 |
| 12. Carpet Installation | 39,429.57 | 6,540.45 | 2.46 | 45,400.00 |
| 13. Vinyl Tile and Base | 7,293.00 | 3,162.00 | 6.59 | 11,200.00 |
| 14. Plumbing | 60,199.00 | 2,135.00 | 1.16 | 32,390.00 |
| 15. Sprinklers | 30,552.00 | 34,638.00 | 2.02 | 55,990.00 |
| 16. Electrical | 63,748.00 | 58,800.00 | 3.80 | 116,338.00 |
| 17. Fire Alarm System | 7,302.00 | 5,720.00 | 0.40 | 12,225.00 |
| 18. HVAC/Ventilation | 82,409.00 | 32,194.00 | 3.55 | 114,603.00 |
| 19. Rubber Flooring /Sealer | 39,855.00 | 9,671.48 | 4.90 | 51,000.00 |
| 20. Insurance | | | | 6,899.00 |
| 21. Supervision/Travel/Per Diem | | | | 18,400.00 |
| 22. General Conditions (Itemize) | | | | 14,253.00 |
| 23. Other (Itemize below) | | | | 14,080.00 |
| SUBTOTAL | 441,978.57 | 245,759.93 | 48.97 | 696,772.00 |
| 24. Profit & Overhead (5.25%) | | | | 36,581.00 |
| 25. Taxes (Sales/State/Local) | | | | INCLUDED |
| TOTAL | $0 | $0 | $0 | 733,353.00 |
| List Itemizing below: (#22 - Gen Cond.) | | | | ▓▓▓▓▓▓▓ |
| 1. Final Cleaning | | | | 2,400.00 |
| 2. Temporary Phones | | | | 1,000.00 |
| 3. Tool Rental | | | | 1,000.00 |
| List Itemizations below: (#23 - Other) | | | | ▓▓▓▓▓▓▓ |
| 1. Toilet Partitions/Accessories | | | | 1,900.00 |
| 2. Total Materials | | | | 10,265.00 |
| 3. Misc. Const. Materials & Equipment | | | | 3,815.00 |
| 4 | | | | |
| Site Verification (please circle): | | We have / have not verified site | | |
| UNION   100%   /   NON-UNION | | Amount of time to procure permit: | | NIC wks. |
| % of Union increase:          % | | Amount of time for construction : | | 8 wks. |
| Qualifications to be listed on separate sheet | | | | |

EXHIBIT B

# BID SPREADSHEET

**PROJECT:** Southpart #6816
**LOCATION:** 8611 South Richards Plt
**CITY, STATE:** Springfield, IL

**PM:** Jeff Wexford
**AM:**
**PC:** Mark Erickson

Union: Yes

**Estimate/Job #** 23155

**BID DUE:** 07/26/01

Sta. Ft.: 32,308
Start: 8
Completes: 
Project Duration: 8

\* COMPETITORS:

| TRADE | | | | | BUDGET | REVISED |
|---|---|---|---|---|---|---|
| Concrete Infill | | | | | $19,433 | $19,433 |
| Display / Fixtures | | | | | $1,400 | $1,400 |
| Carpentry | | | | | $20,714 | $20,714 |
| Millwork | | | | | $44,533 | $44,533 |
| Drywall/Metal Studs | | | | | $105,477 | $105,477 |
| Acoustical | | | | | $14,965 | $14,965 |
| Rubber Roofing | | | | | $32,100 | $32,100 |
| V.C.T. / Vinyl Base | | | | | $11,200 | $11,200 |
| Carpet | | | | | $45,400 | $45,400 |
| Painting / Drywall Finish | | | | | $17,472 | $17,472 |
| Toilet Partitions / Accessories | | | | | $1,900 | $1,900 |
| Finishing / Case Pricing | | | | | $32,390 | $32,390 |
| Sprinkler | | | | | $83,190 | $83,190 |
| HVAC | | | | | $114,603 | $114,603 |
| Electrical | | | | | $116,338 | $116,338 |
| Fire Alarm / Life Safety | | | | | $12,225 | $12,225 |
| **BUDGET TOTAL** | | | | SUBTOTAL | $665,340 | $643,140 |
| | | | | change $/Bldg exp. | | ($13,200.00) |
| | | | | % of change | | -3.51% |

## SUMMARY

| | | |
|---|---|---|
| Trailer | | |
| Material | | |
| SuperVision, Travel & Per Diem | | |
| General Conditions (itemized) | | |
| | SUBTOTAL | |
| General Conditions | | |
| Insurance | 4.00% | |
| | SUBTOTAL | |
| Fee | 8.25% | |
| | **TOTAL** | |
| Gross Required Area | | |
| Cost / Sq.Ft | | $32.70 |
| **GRAND TOTAL** | | $733 |

approval _____ date _____



**Construction Group**

## FAX COVER SHEET

| | |
|---|---|
| Fax Number: 303-832-4738 | No. of Pages (including cover sheet): 1 |
| To: Mike Quaintance | Company Name: Gart Sports |
| From: Jeff Wolford | |
| Date: July 9, 2001 | |
| Subject: Sportmart #618, Springfield, Illinois; Capitol Project #23158 | |

Message: Mike clarifications are needed on this project:

1. In the specifications, there is no Table of Contents. Is this done for a specific reason?

2. Also in the specifications, there is no Division 4 and Division 5. Should I proceed?

Please call me at 847-215-5345.

July 26, 2001

Mr. Ken Parker
Steckel – Parker Architects, Inc.
2451 West Monroe
Springfield, IL  62704

Re:     Gart Sportmart #618
        Springfield, IL
        Capitol Project #23158

Dear Mr. Parker:

Capitol Construction Group, Inc. is pleased to propose the sum of SEVEN HUNDRED SEVENTY-ONE THOUSAND SEVEN HUNDRED FORTY-FIVE and No/100 Dollars ($771,745.00) for the new construction of the above referenced project based in accordance with the Specifications dated June 27, 2001 and the following drawings; A0.1, A0.2, F.1, A2.1, A2.2, A2.3, A4.1, A5.0, A5.1, A5.2, A5.3, A5.5, A5.6, A5.7, M1, M2, P1.0, P2.1, E0.0, E0.1, E0.3, E2.0, E2.1,  all dated 6/27/01 and prepared by SEM Architects, Inc.

Our proposal is subject to the enclosed Clarifications and Inclusions.

We appreciate the opportunity to bid on this work and look forward to working with you towards a timely and successful completion.  If you have any questions please feel free to contact me.

Sincerely,

CAPITOL CONSTRUCTION GROUP, INC.



Jeffrey Wolford
Project Manager

JW/cm

Enc.

Cc:     Mark Ericksen, W/Encl.
        Capitol Construction Group, Inc.

        File, W/Enc.

Mr. Ken Parker                                                    July 26, 2001
Page 2

GART SPORTMART #618
SPRINGFIELD, ILLINOIS
CAPTIOL PROJECT #23158

CLARIFICATIONS AND EXCLUSIONS

A.    The following Clarifications shall supercede all other contract documents where
conflicts may exist:

1.    Our proposal is based upon reaching equitable contract and payment terms
with the Owner/Developer.

2.    Any and all work not reflected on the drawings that might be required due to
field conditions.

3.    All work to be during normal working hours (7:00 am – 3:30pm).

4.    Work to be done during normal 40-hour workweek.

5.    This proposal is based upon and we will comply with the information
provided on the bid documents only and SEM clarifications and
specification book.

6.    Taxes are included.

7.    Telephone service primary conduit only is included.

8.    Owner supplied items are to be on site in a timely manner.

9.    Priced per union shop.

10.   Our proposal is based on an 8-week work schedule.

11.   Capitol Construction will provide and install the national vendor packages
as follows:

| | |
|---|---|
| Electrical Gear | Loeb Electric |
| Lighting | Loeb Electric |
| Flooring | Shaw Contract Flooring |
| Roof Top Mechanical Unit | Trane Company |
| Interior Drs, Frms & HDW | Colorado Doorways, Inc. |
| Millwork | Premier Eurocase, Inc. |

12.   Ontario Store Fixture package and Pallet Rack System will be purchased
and installed by Gart Sports, Capitol Construction will receive and stage.

13.   The following items as noted on sheet A0.2 shall be provided and installed
by the Landlord:
Metal Bike Rack
Metal Bench
Metal Trash Receptacle

14.   All low bid subcontractors by request of Capitol Construction has performed
a site visit prior to pricing.

Mr.Ken Parker                                July 26, 2001
Page 3

GART SPORTMART#618
SPRINGFIELD, ILLINOIS
CAPTIOL PROJECT #23158

CLARIFICATIONS AND EXCLUSIONS

B.   The following exclusions are included in this proposal:

    1.   Temporary heating as none will be required.
    2.   Permit fees are not included.
    3.   Abatement work of any kind is not included.
    4.   No overtime is included.
    5.   No storefront glass or any automatic entry doors.
    6.   Fireproofing (spray on).
    7.   No demolition as none will be required.
    8.   Site Protection.

C.   May we suggest the following add alternates/deducts:

    Alternate supplier for Drs, Frms & HDW          -  ($ 2,800.00)

July 30, 2001


Mr. Michael Quaintance
Gart Sports
1000 Broadway
Denver, CO 80203

Re:    **REVISED BID**
       Gart Sportmart #618
       Springfield, IL
       Capitol Project #23158

Dear Mike:

Capitol Construction Group, Inc. is pleased to propose the sum of SEVEN HUNDRED THIRTY-THREE THOUSAND THREE HUNDRED FIFTY THREE and No/100 Dollars ($733,353.00) for the new construction of the above referenced project based in accordance with the Specifications dated June 27, 2001 and the following drawings; A0.1, A0.2, F.1, A2.1, A2.2, A2.3, A4.1, A5.0, A5.1, A5.2, A5.3, A5.5, A5.6, A5.7, M1, M2, P1.0, P2.1, E0.0, E0.1, E0.3, E2.0, E2.1, all dated 6/27/01 and prepared by SEM Architects, Inc.

Our proposal is subject to the enclosed Clarifications and Inclusions.

We appreciate the opportunity to bid on this work and look forward to working with you towards a timely and successful completion. If you have any questions please feel free to contact me.

Sincerely,

CAPITOL CONSTRUCTION GROUP, INC.



Jeffrey Wolford
Project Manager

JW/cm

Enc.

Cc:    Mark Ericksen, W/Encl.
       Capitol Construction Group, Inc.


       File, W/Enc.

Mr. Michael Quaintance                                    July 30, 2001
Page 2

## GART SPORTMART #618
## SPRINGFIELD, ILLINOIS
## CAPTIOL PROJECT #23158

## CLARIFICATIONS AND EXCLUSIONS

A.  The following Clarifications shall supercede all other contract documents where conflicts may exist:

1.  Our proposal is based upon reaching equitable contract and payment terms with the Owner/Developer.
2.  Any and all work not reflected on the drawings that might be required due to field conditions.
3.  All work to be during normal working hours (7:00 am – 3:30pm).
4.  Work to be done during normal 40-hour workweek.
5.  This proposal is based upon and we will comply with the information provided on the bid documents only and SEM clarifications and specification book.
6.  Taxes are included.
7.  Telephone service primary conduit only is included.
8.  Owner supplied items are to be on site in a timely manner.
9.  Priced per union shop.
10. Our proposal is based on an 8-week work schedule.
11. Capitol Construction will provide and install the national vendor packages as follows:

    | Electrical Gear | Loeb Electric |
    | Lighting | Loeb Electric |
    | Flooring | Shaw Contract Flooring |
    | Roof Top Mechanical Unit | Trane Company |
    | Interior Drs, Frms & HDW | Colorado Doorways, Inc. |
    | Millwork | Premier Eurocase, Inc. |

12. Ontario Store Fixture package and Pallet Rack System will be purchased and installed by Gart Sports, Capitol Construction will receive and stage.
13. The following items as noted on sheet A0.2 shall be provided and installed by the Landlord:

    Metal Bike Rack
    Metal Bench
    Metal Trash Receptacle

14. All low bid subcontractors by request of Capitol Construction has performed a site visit prior to pricing.
15. The electric price includes 30 feet of feeder cable and pipe to transformer pad only.

Mr.Michael Quaintance                                    July 30, 2001
Page 3

# GART SPORTMART#618
# SPRINGFIELD, ILLINOIS
# CAPTIOL PROJECT #23158

## CLARIFICATIONS AND EXCLUSIONS

16.  Fire protection number includes back flow preventor and 20 foot water storage capacity as per drawings.

17.  The plumbing price is all inclusive of gas piping but excludes gas meter and meter bar.

18.  Electric price does not include any underground/in slab piping as this has, or is to be done by shell contractor.

B.  The following exclusions are included in this proposal:

1.  Temporary heating as none will be required.
2.  Permit fees are not included.
3.  Abatement work of any kind is not included.
4.  No overtime is included.
5.  No storefront glass or any automatic entry doors.
6.  Fireproofing (spray on).
7.  No demolition as none will be required.
8.  Site Protection/Barricade work.
9.  No floor prep as this will be a new slab and none shall be required.

C.  May we suggest the following add alternates/deducts:

Alternate supplier for Drs, Frms & HDW          -    ($ 2,800.00)

Mr. Michael Quaintance                                          July 30, 2001
Page 4

## GART SPORTMART #618
## SPRINGFIELD, ILLINOIS
## CAPTIOL PROJECT #23158
## REVISED
## TRADE BREAKDOWN

| | |
|---|---|
| BARRICADE | N/A |
| DEMOLITION | N/A |
| BOND | N/A |
| CONCRETE | 1,433.00 |
| CARPENTRY/ROUGH CARPENTRY | 20,714.00 |
| STUDS & DRYWALL | 105,477.00 |
| STOREFRONT GLASS | NIC |
| INTERIOR MIRRORS | 1,400.00 |
| ACOUSTICAL CEILING | 14,965.00 |
| STORE FIXTURES/FINISH CARPENTRY | 42,533.00 |
| PAINTING/CONCRETE SEALER | 17,472.00 |
| CARPET INSTALLATION | 45,400.00 |
| VINYL TILE & BASE | 11,200.00 |
| PLUMBING | 32,390.00 |
| SPRINKLERS | 55,990.00 |
| ELECTRICAL | 116,338.00 |
| FIRE ALARM SYSTEM | 12,225.00 |
| HVAC/VENTILATION | 114,603.00 |
| RUBBER FLOORING/SEALER | 51,000.00 |
| INSURANCE | 6,899.00 |
| SUPERVISION/TRAVEL /PER DIEM | 18,400.00 |
| GENERAL CONDITIONS | 14,253.00 |
| TOTAL MATERIALS | 14,080.00 |
| SUBTOTAL | 696,772.00 |
| PROFIT & OVERHEAD (5.25%) | 36,581.00 |
| TAXES | INCLUDED |
| **TOTAL** | 733,353.00 |



# FAX COVER SHEET

| | |
|---|---|
| Fax Number: 303-832-4738 | No. of Pages (including cover sheet): 1 |
| To: Mike Quaintance | Company Name: Gart Sports |
| From: Jeff Wolford | |
| Date: July 9, 2001 | |
| Subject: Sportmart #618, Springfield, Illinois; Capitol Project #23158 | |

Message: Mike clarifications are needed on this project:

1. In the specifications, there is no Table of Contents. Is this done for a specific reason?

2. Also in the specifications, there is no Division 4 and Division 5. Should I proceed?

Please call me at 847-215-5345.

1400 South Wolf Road • Building 100 • Wheeling, Illinois 60090
847-215-2500   FAX 847-215-5331



# FAX COVER SHEET

Fax Number: 303-832-4738       No. of Pages (including cover sheet): 1

To: Mike Quaintance              Company Name: Gart Sports

From: Jeff Wolford

Date: July 9, 2001

Subject: Sportmart #618, Springfield, Illinois; Capitol Project #23158

Message: Mike clarifications are needed on this project:

1. In the specifications, there is no Table of Contents. Is this done for a specific reason?

2. Also in the specifications, there is no Division 4 and Division 5. Should I proceed?

Please call me at 847-215-5345.

05/10/2006 14:02 FAX 3038842102    GART SPORTS    ☒001

*#618*
*Storefiles*



### COTTON
*National Disaster Recovery Services*

| | | | |
|---|---|---|---|
| | | Date: | 03/31/06 |
| Name | Mike Mavelle | Invoice #: | 1408722 |
| Company | Sports Authority | Terms: | Net 10 |
| Address | 1050 W. Hampton Ave. | Fed Id: | 76-0628204 |
| City, State, Zip | Englewood, CO 80110 | | |
| Tel: | (720) 475-3285 | | |
| Fax: | (720) 475-3285 | | |

| | | | |
|---|---|---|---|
| Loss Address: | 3211 South Veterans Parkway | Insurance Co: | Liberty Mutual Property |
| City, State, Zip | Springfield, Il. 62704 | Insurance Adj: | Ton Tiernan |
| Tel: | (217) 546-0132 | Claim #: | X69A-003155-00 |
| Fax: | (217) 546-1073 | | |
| Re: | Tornado Damages in Springfield, IL    #618 | | |
| Re: | Final Bill With Not To Exceed Amount: | | |

*Not To Exceed Amount of $250,000.00 Set-Forth and agreed upon by the following parties:*
*Liberty Mutual Adjuster (TOM TIERNAN) Sports Authority POC (MIKE MAVELLE) & Cotton U.S.A. (JEFF KRONE)*

| | | |
|---|---|---|
| | $ | 319,428.67 |
| EMERGENCY SERVICES FINAL STIPULATED INVOICE SUM AMOUNT: | $ | (100,000.00) |
| COTTON HAS RECEIVED A INITIAL DRAW OF: | | |
| *REMAINING BALANCE* | $ | 219,428.67 |
| **SUBTOTAL** | $ | 219,428.67 |
| **TOTAL DUE AND PAYABLE** | | |

THE ABOVE CHARGES ARE CONSISTANT WITH THE SERVICES PERFORMED BY COTTON USA, LLC
IN ACCORDANCE WITH THE SCOPE OF THE PROJECT

Any queries regarding this invoice should be sent to us within ten days of receipt of this
invoice otherwise we will expect prompt payment under our Invoicing and Payment Terms.

All expenses received after final billing will be invoiced at a later date

For questions concerning your account, Please contact:

Please remit payment to:
Cotton USA, LLC
14345 Northwest Freeway
Houston, Texas 77040

\*\*Please include the invoice number on check\*\*

03/31/06

## EXHIBIT C

TSA RULE 26 DISCLOSURES
0052

05/10/2008 14:02 FAX 3038542102          GART SPORTS                                                ☐ 002

## Bonnie Cochran

From:           Bonnie Cochran
Sent:           Wednesday, April 05, 2006 4:13 PM
To:             David Frieder
Subject:        RE: Sports Authority invoice 1-A(STIPULATED).xls


week ending 3/19/06:

Labor Totals:  54,453.38
Total for reimbursables:  3,410.23
Total for equipment:  43,248.75
Total for consumables:  9,494.82
Subtotal for Vendors (subcontractors)  51,545.21
Cotton USA mark up:  10,824.49
Total for Vendors (subcontractors)  62,369.70


week ending 3/26/06:

Labor Total:  20,855.38
Total for reimbursables:  2,181.19
Total for equipment:  41,336.50
Total for consumables:  3,039.62
Subtotal for Vendors (subcontractors):     103.96
Cotton USA markup:  21.83
Total for Vendors (subcontractors)  125.79


week ending 4/2/06:

Labor Totals:  1,807.50
Total for reimbursables:  99.00
Total for equipment  -0-
Total for consumables:  -0-
Subtotal for Vendors (subcontractors)  235.27
Cotton USA mark up:  49.41
Total for Vendors (subcontractors)   284.68



Invoice from Cotton:

Emergency services final stipulated invoice sum amount:  319,428.67
Cotton has received an initial draw of:                  (100,000.00)
Remaining Balance:                                        219,428.67


1

TSA RULE 26 DISCLOSURES
0033

05/10/2006 14:02 FAX 3038842102   GARY SPORTS   ☒004

**Canon USA**
Contract # 8488374 Sports Authority
Labor Summary
Period Ended 03/19/06

| Name | Classification | | Std Rate O/T Prem | Mon 03/13 | Tues 03/14 | Wed 03/15 | Thurs 03/16 | Fri 03/17 | Sat 03/18 | Sun 03/19 | Total Hours | Total Charged |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Knox, Jeff | Project Coordinator | Travel $ | 95.00 | 3 | | | | | | | 8.0 | 760.00 |
| | | Regular $ | 95.00 | | 10.5 | 11 | | | | | 23.5 | 2,232.50 |
| | | Overtime $ | 142.50 | | | | | | | | 0.0 | |
| Chao, Brian | Project Manager | Travel $ | 80.00 | 8 | | | | | | | 8.0 | 640.00 |
| | | Regular $ | 80.00 | | 12 | 12 | 10.5 | 5.5 | 11 | 11 | 40.0 | 3,200.00 |
| | | Overtime $ | 120.00 | | | | | 8.5 | | | 30.5 | 3,660.00 |
| Castillo, Phillip | Asst Project Manager | Travel $ | 75.00 | 19 | | | | | | | 19.0 | 1,425.10 |
| | | Regular $ | 75.00 | | 13 | 12 | 12 | 13 | 7 | | 40.0 | 3,000.00 |
| | | Overtime $ | 112.50 | | | | | | 10 | 11 | 32.0 | 3,600.00 |
| Parsons, Shannon | Restoration Supervisor | Travel $ | 45.00 | 19 | | | | | | | 19.0 | 855.00 |
| | | Regular $ | 45.00 | | 12 | 10 | | | 3 | 11 | 25.0 | 1,125.00 |
| | | Overtime $ | 67.50 | | | | | | | | 0.0 | |
| Smith, Brad | Restoration Supervisor | Travel $ | 45.00 | 5 | | | | | | | 5.0 | 225.00 |
| | | Regular $ | 45.00 | | | | | | | | 0.0 | |
| | | Overtime $ | 67.50 | | | | | | | | 0.0 | |
| Laishram, Bud | Restoration Supervisor | Travel $ | 45.00 | | 8 | | | | | | 8.0 | 360.00 |
| | | Regular $ | 45.00 | | | 12 | 12 | 13 | 11 | 11 | 27.0 | 1,215.00 |
| | | Overtime $ | 67.50 | | | | 10.5 | | 7 | | 11.0 | 1,113.00 |
| Rasicka, Khuy | Restoration Supervisor | Travel $ | 45.00 | | | | | | | | 0.0 | |
| | | Regular $ | 45.00 | | | | | | | | 40.0 | 1,800.00 |
| | | Overtime $ | 67.50 | | | | | | | 6 | 6.0 | 405.00 |
| Espino, Luke | Restoration Supervisor | Travel $ | 45.00 | | | | | | | | 0.0 | |
| | | Regular $ | 45.00 | | | 8 | 8.5 | 9.5 | 11.5 | 9.5 | 40.0 | 1,800.00 |
| | | Overtime $ | 67.50 | | | | | | | | 6.0 | 405.00 |
| Thangiat, Jeffry | Skilled Labor | Regular $ | 28.50 | | 9.5 | 10.5 | 8.5 | 11.5 | 10 | 9.5 | 40.0 | 1,140.00 |
| | | Overtime $ | 42.75 | | | | | | | | 14.5 | 619.88 |
| King, Rachel | Skilled Labor | Regular $ | 28.50 | | | 8.5 | | 9.5 | 10 | 3.5 | 40.0 | 1,140.00 |
| | | Overtime $ | 42.75 | | | | | | | 4.5 | 4.5 | 192.38 |
| Scionti, John | Skilled Labor | Regular $ | 28.50 | | 9 | 8 | 5.5 | 11.5 | | | 34.0 | 969.00 |
| | | Overtime $ | 42.75 | | | | | | | | 0.0 | |
| Brown, Yannis | Skilled Labor | Regular $ | 28.50 | | 9 | 9.5 | 8.5 | 9.5 | 3.5 | 10.5 | 40.0 | 1,140.00 |
| | | Overtime $ | 42.75 | | | | | | 6.5 | | 17.0 | 726.75 |
| McDougal, James | Skilled Labor | Regular $ | 28.50 | | 9 | 9.5 | 8.5 | 9.5 | 3.5 | 10.5 | 40.0 | 1,140.00 |
| | | Overtime $ | 42.75 | | | | | | 6.5 | | 17.0 | 726.75 |
| Brownfield, Arthur | Skilled Labor | Regular $ | 28.50 | | | 10.5 | 8.5 | 9.5 | 9.5 | | 37.5 | 1,068.75 |
| | | Overtime $ | 42.75 | | | | | | | | 0.0 | |
| Boljkovac, Gary | Skilled Labor | Regular $ | 28.50 | | | | | | 9 | | 9.0 | 256.50 |
| | | Overtime $ | 42.75 | | | | | | | | 0.0 | |

05/10/2006 14:03 FAX 3038842102          GART SPORTS          ☑005

| Name | | Regular $ | Overtime $ | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Edward, Marvin | Skilled Labor | 28.50 | 42.75 | 9 | | | | | $ 16.0 | $ 0.0 | 256.50 |
| Davison, Robert | Skilled Labor | 28.50 | 42.75 | 9 | | | | | $ 16.0 | $ 0.0 | 236.50 |
| Wiggins, Travis | Skilled Labor | 28.50 | 42.75 | 9 | | | | | $ 9.0 | $ 0.0 | 255.90 |
| Hawkins, Abdul | Skilled Labor | 28.50 | 42.75 | | | | | | $ 4.5 | $ 0.0 | 128.25 |
| Charley, Shawn | Skilled Labor | 28.50 | 42.75 | 5.5 | | | | | $ 5.5 | $ 0.0 | 156.75 |
| Edwards, Tracy | Skilled Labor | 28.50 | 42.75 | 5.5 | | | | | $ 5.5 | $ 0.0 | 116.25 |
| Glaser, Ray | Skilled Labor | 28.50 | 42.75 | 5 | | | | | $ 5.0 | $ 0.0 | 143.50 |
| Antowniun, Virian | Skilled Labor | 28.50 | 42.75 | 5 | | | | | $ 5.0 | $ 0.0 | 142.50 |
| Johnson, Peace | Skilled Labor | 28.50 | 42.75 | 6 | | | | | $ 6.0 | $ 0.0 | 171.00 |
| Jackson, Gary | Skilled Labor | 28.50 | 42.75 | 6 | | | | | $ 6.0 | $ 0.0 | 171.00 |
| Erneden, Samantha | Skilled Labor | 28.50 | 42.75 | 0.1 | | | | | $ 0.5 | $ 0.0 | 14.25 |
| Weatherspoon, Jason | Skilled Labor | 28.50 | 42.75 | 4.5 | | | | | $ 4.5 | $ 0.0 | 128.25 |
| Taskron, Brace | Skilled Labor | 28.50 | 42.75 | | | 8 | | | $ 8.0 | $ 0.0 | 228.00 |
| Morrow, James | Skilled Labor | 28.50 | 42.75 | | | 8.5 | | | $ 8.5 | $ 0.0 | 242.25 |
| Williams, Charles | Skilled Labor | 28.50 | 42.75 | | | 8 | | | $ 16.0 | $ 0.0 | 456.00 |
| Wilson, Nancy | Skilled Labor | 28.50 | 42.75 | | | 8 | | | $ 8.0 | $ 0.0 | 212.25 |
| Hollenbeck, Russell | Skilled Labor | 28.50 | 42.75 | | | 8.5 | | | $ 8.0 | $ 0.0 | 228.00 |
| Thomson, Ralph | Skilled Labor | 28.50 | 42.75 | | 9.5 | 8.5 | 2.5 | 10 | $ 40.0 | $ 0.0 | 1,140.00 |
| Richmond, Alfred | Skilled Labor | 28.50 | 42.75 | | | | | 2.5 | $ 4.0 | $ 0.0 | 112.60 |
| Brown, John | Skilled Labor | 28.50 | 42.75 | 6 | | | | 8 | $ 8.0 | $ 0.0 | 111.00 |

TSA RULE 26 DISCLOSURES
0036

05/10/2006 14:03 FAX 3038542102          GART SPORTS          ☑006

| Name | Type | Rate | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Sexton, Al | Skilled Labor | Regular $ 28.50 | | | 8 | | 8.5 | | | 26.0 $ | $ 741.00 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 $ | |
| Halog, Izzy | Skilled Labor | Regular $ 28.50 | | 10.5 | | 8.5 | | | 3.5 | 49.0 $ | $ 1,140.00 |
| | | Overtime $ 42.75 | | | | | | | 5.5 | 5.5 $ | 231.11 |
| Stevenson, Barry | Skilled Labor | Regular $ 28.50 | | | 11 | 1.5 | | | | 21.5 $ | $ 671.75 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 $ | 214.33 |
| Winter, Alva | Skilled Labor | Regular $ 28.50 | | 8.5 | | | | 10 | | 27.0 $ | $ 768.50 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 $ | |
| Wahn, Richard | Skilled Labor | Regular $ 28.50 | | 9.5 | | | | | | 9.5 $ | $ 270.75 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 $ | |
| Carroll, Gramm | Skilled Labor | Regular $ 28.50 | 10.5 | | 10 | 9.5 | | | | 30.0 $ | $ 855.00 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 $ | |
| Shayer, Jeremiah | Skilled Labor | Regular $ 28.50 | 8 | | 5.5 | | | | | 11.5 $ | $ 327.75 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 $ | |
| Hamilton, Robert | Skilled Labor | Regular $ 28.50 | 6 | | 5.5 | | | | | 11.5 $ | $ 327.75 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 $ | |
| Cuny, Xavier | Skilled Labor | Regular $ 28.50 | | | 5.5 | | | 9 | | 14.5 $ | $ 156.75 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 $ | |
| Dahba, David | Skilled Labor | Regular $ 28.50 | | | 8.5 | | | | 10.5 | 28.5 $ | $ 812.25 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 $ | |
| McDonald, Chris | Skilled Labor | Regular $ 28.50 | | | 6.5 | | 9.5 | | | 9.5 $ | $ 182.11 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 $ | |
| Walsen, Jim | Skilled Labor | Regular $ 28.50 | | | | | | | | 9.5 $ | $ 270.75 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 $ | |
| Ward, George | Skilled Labor | Regular $ 28.50 | | | | 9.5 | | | | 9.5 $ | $ 270.75 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 $ | |
| Quezada, Cmdr | Skilled Labor | Regular $ 28.50 | | | | 9.5 | | | | 9.5 $ | $ 270.75 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 $ | |
| Reed, Carrie | Skilled Labor | Regular $ 28.50 | | | | | 9.5 | | | 9.5 $ | $ 270.75 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 $ | |
| White, Leon | Skilled Labor | Regular $ 28.50 | | | | | 9.5 | | | 9.5 $ | $ 270.75 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 $ | |
| Williams, Vin | Skilled Labor | Regular $ 28.50 | | | | | | 10 | | 10.0 $ | $ 285.00 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 $ | |
| Fagen, Nick | Skilled Labor | Regular $ 28.50 | | | | | | 10 | | 10.0 $ | $ 285.00 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 $ | |
| Gillie, Terrence | Skilled Labor | Regular $ 28.50 | | | | | | 8 | | 8.0 $ | $ 228.00 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 $ | |

| Name | | Regular $ | Overtime $ | | | Hrs | | | Total |
|------|------|-----------|------------|---|---|-----|---|---|-------|
| Stone, Victor | Skilled Labor | | 42.75 | | | | | 0.0 | |
| | | Regular $ | 28.50 | | | 10 | 10.0 | 0.0 | 285.60 |
| | | Overtime $ | 42.75 | | | | 0.0 | 0.0 | |
| Kuckmany, Eric | Skilled Labor | Regular $ | 28.50 | | | 10 | 10.0 | 0.0 | 285.60 |
| | | Overtime $ | 42.75 | | | | 0.0 | 0.0 | |
| Chilby, Christopher | Skilled Labor | Regular $ | 28.50 | | | 9 | 9.0 | 0.0 | 266.50 |
| | | Overtime $ | 42.75 | | | | 0.0 | 0.0 | |
| Jones, David | Skilled Labor | Regular $ | 28.50 | | | 10 | 10.0 | 0.0 | 285.80 |
| | | Overtime $ | 42.75 | | | | 0.0 | 0.0 | |
| Crafton, James | Skilled Labor | Regular $ | 28.50 | | | 10.5 | 10.5 | 0.0 | 299.25 |
| | | Overtime $ | 42.75 | | | | 0.0 | 0.0 | |
| Lethbridge, Annie | Skilled Labor | Regular $ | 28.50 | | | 10.5 | 10.5 | 0.0 | 299.25 |
| | | Overtime $ | 42.75 | | | | 0.0 | 0.0 | |
| Anderson, Martin | Skilled Labor | Regular $ | 28.50 | | | 10.5 | 10.5 | 0.0 | 299.25 |
| | | Overtime $ | 42.75 | | | | 0.0 | 0.0 | |
| Alexander, Dan | Skilled Labor | Regular $ | 28.50 | | | 10.5 | 10.5 | 0.0 | 299.25 |
| | | Overtime $ | 42.75 | | | | 0.0 | 0.0 | |
| Blaylock, Tiffany | Skilled Labor | Regular $ | 28.50 | | | 7 | 7.0 | 0.0 | 199.50 |
| | | Overtime $ | 42.75 | | | | 0.0 | 0.0 | |
| Lenachman, Chad | Skilled Labor | Regular $ | 28.50 | | | 9 | 9.0 | 0.0 | 256.50 |
| | | Overtime $ | 42.75 | | | | 0.0 | 0.0 | |
| Johnson, Thomas | Skilled Labor | Regular $ | 28.50 | | | 10.5 | 10.5 | 0.0 | 299.25 |
| | | Overtime $ | 42.75 | | | | 0.0 | 0.0 | |
| Morris, Kevin | Skilled Labor | Regular $ | 28.50 | | | 10.5 | 10.5 | 0.0 | 299.25 |
| | | Overtime $ | 42.75 | | | | 0.0 | 0.0 | |
| Eck, Jerome | Skilled Labor | Regular $ | 28.50 | | | 10.5 | 10.5 | 0.0 | 299.25 |
| | | Overtime $ | 42.75 | | | | 0.0 | 0.0 | |
| Longanbecker, Robert | Skilled Labor | Regular $ | 28.50 | | | 9 | 9.0 | 0.0 | 256.50 |
| | | Overtime $ | 42.75 | | | | 0.0 | 0.0 | |
| Lagarde, Jason | Skilled Labor | Regular $ | 28.50 | | | 9 | 9.0 | 0.0 | 256.50 |
| | | Overtime $ | 42.75 | | | | 0.0 | 0.0 | |
| Giroud, Larry | Skilled Labor | Regular $ | 28.50 | | | 9 | 9.0 | 0.0 | 256.50 |
| | | Overtime $ | 42.75 | | | | 0.0 | 0.0 | |
| Neuss | Skilled Labor | Regular $ | 28.50 | | | | 0.0 | 0.0 | |
| | | Overtime $ | 42.75 | | | | 0.0 | 0.0 | |
| Neuss | Skilled Labor | Regular $ | 28.50 | | | | 0.0 | 0.0 | |
| | | Overtime $ | 42.75 | | | | 0.0 | 0.0 | |
| Napa | Skilled Labor | Regular $ | 28.50 | | | | 0.0 | 0.0 | |
| | | Overtime $ | 42.75 | | | | 0.0 | 0.0 | |

TSA RULE 26 DISCLOSURES
0038

05/10/2006 14:04 FAX 3038542102        GART SPORTS        ☑ 008

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Name | Skilled Labor | Regular $ | 28.50 | | | | | | | | | | 0.0 |
| | | Overtime $ | 42.75 | | | | | | | | | | 0.0 |
| Name | Skilled Labor | Regular $ | 28.50 | | | | | | | | | | 0.0 |
| | | Overtime $ | 42.75 | | | | | | | | | | 0.0 |
| Name | Skilled Labor | Regular $ | 28.50 | | | | | | | | | | 0.0 |
| | | Overtime $ | 42.75 | | | | | | | | | | 0.0 |
| Name | Skilled Labor | Regular $ | 28.50 | | | | | | | | | | 0.0 |
| | | Overtime $ | 42.75 | | | | | | | | | | 0.0 |
| Name | Skilled Labor | Regular $ | 28.50 | | | | | | | | | | 0.0 |
| | | Overtime $ | 42.75 | | | | | | | | | | 0.0 |
| Name | Skilled Labor | Regular $ | 28.50 | | | | | | | | | | 0.0 |
| | | Overtime $ | 42.75 | | | | | | | | | | 0.0 |
| Name | Skilled Labor | Regular $ | 28.50 | | | | | | | | | | 0.0 |
| | | Overtime $ | 42.75 | | | | | | | | | | 0.0 |
| Labor Ready | Temporary Labor | Regular $ | 17.51 | | | | | | | | | | 0.0 |
| | | Overtime $ | 26.37 | | | | | | | | | | 0.0 |
| Total Personnel | | | | | | | | | | | | | 0 |
| Management Fee | Client Name | | | | | | | | | | | | $ |
| Labor Totals | | | | | | | | | | | | | $4,452.51 |

TSA RULE 26 DISCLOSURES
0039

Corona USA
Contract #1408/121 Sports Authority
Reimbursable Summary
Period Ended 03/19/06

| | | Mon 03/13 | Tues 03/14 | Wed 03/15 | Thurs 03/16 | Fri 03/17 | Sat 03/18 | Sun 03/19 | Total Charges |
|---|---|---|---|---|---|---|---|---|---|
| Gear, Bruce | per diem | $ 30.00 | $ 30.00 | $ 30.00 | $ 30.00 | $ 30.00 | $ 30.00 | $ 30.00 | $ 210.00 |
| | hotel | $ 78.10 | $ 78.10 | $ 78.10 | $ 78.10 | $ 78.10 | $ 78.10 | $ 78.10 | $ 468.79 |
| | airfare | | | | | | | | $ 511.15 |
| Castillo, Phillip | per diem | $ 30.00 | $ 30.00 | $ 30.00 | $ 30.00 | $ 30.00 | $ 30.00 | $ 30.00 | $ 210.00 |
| | hotel | $ 78.10 | $ 78.10 | $ 78.10 | $ 78.10 | $ 78.10 | $ 78.10 | $ 78.10 | $ 468.79 |
| | airfare | | | | | | | | $ 511.15 |
| Parsons, Shannon | per diem | | $ 30.00 | $ 30.00 | $ 30.00 | $ 30.00 | $ 30.00 | | $ 90.00 |
| | hotel | | $ 59.05 | $ 59.05 | $ 59.05 | $ 59.05 | | | $ 156.90 |
| | airfare | | | | | | | | |
| Banks, Minor | per diem | $ 30.00 | $ 30.00 | | | | | | $ 90.00 |
| | hotel | $ 59.05 | $ 59.05 | | | | | | $ 195.25 |
| | airfare | | | | | | | | 120.00 |
| Estilos, Lupe | per diem | | | | $ 30.00 | $ 30.00 | $ 30.00 | $ 30.00 | $ 90.00 |
| | hotel | | | | $ 59.05 | $ 59.05 | $ 59.05 | $ 78.10 | $ 78.10 |
| | airfare | | | | | | | | |
| Henderson, Rod | per diem | | | $ 30.00 | $ 30.00 | $ 30.00 | $ 30.00 | $ 30.00 | $ 180.00 |
| | hotel | | | $ 59.05 | $ 47.29 | $ 47.29 | $ 47.29 | $ 47.29 | $ 267.26 |
| | airfare | | | | | | | | |
| Sierra Rental Car | REIMA101074A1 | | | | | | | 665.21 | 665.25 |
| | | | | | | | | | |
| Subtotal for Reimbursables | | | | | | | | | 3,108.01 |
| Corona USA Markup | | | | | | | | | 310.03 |
| Total for Reimbursables | | | | | | | | | 3,419.11 |

TSA RULE 26 DISCLOSURES
0040

05/10/2006 14:04 FAX 3038642102          GART SPORTS          @010

Cnress USA
Contract # 140472-j Spares Authority
Equipment Summary
Period Ended 03/19/06

| Equipment Description | Unit | Rate | Mon 03/13 | Tue 03/14 | Wed 03/15 | Thurs 03/16 | Fri 03/17 | Sat 03/18 | Sun 03/19 | Total Units | Total Charges |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Air Compressor | Ea | $ 30.00 | | | | | | | | 0 | $ |
| Air Mover | Ea | $ 11.50 | | | | 16 | 29 | 20 | 53 | 109 | $ 2,497.50 |
| Bobcat | Ea | $ 177.00 | | | | | | | | 0 | $ |
| Buffer, Floor | Ea | $ 30.00 | | | 5 | | | | | 18 | $ 160.00 |
| Carb. Tile Demolition | Ea | $ 20.00 | | 1 | | | | | | 1 | $ 18.00 |
| Dolly, 2 Whl/4 Whl/Dual Walkway | Ea | $ 6.00 | | | | | | | | 0 | $ |
| Dry Cleaning Tool (Portable) | Ea | $ 85.00 | | | | | | | | 72 | $ 3,240.00 |
| Electrical Total Panel (Spider Box) | Ea | $ 43.00 | | 12 | 12 | 13 | 13 | 12 | 12 | 72 | $ 3,240.00 |
| Extension Cords 25'-100' | Ea | $ 4.40 | | 18 | 18 | 18 | 28 | 28 | 28 | 138 | $ 192.00 |
| Extraction Unit (Trailer) | Ea | $ 95.00 | | 4 | 4 | 4 | 5 | 4 | 4 | 15 | $ 3,173.00 |
| Refreshing Unit (Trailer) | Ea | $ 18.00 | | | | | | | | 0 | $ |
| Refreshing Unit (Trailer) | Ea | $ 18.00 | | | | | | | | 0 | $ |
| Floor Cleaning System (WAX Balance) | Ea | $ 150.00 | | | | | | | | 0 | $ |
| Engine (Thermal Unit Powered) | Ea | $ 45.00 | | 3 | | 3 | | | | 12 | $ 1,260.00 |
| Forklift, Electric | Ea | $ 21.00 | | | | | | | | 0 | $ |
| Generator (Diesel/Elec) | Ea | $ 106.00 | | | | | | | | 12 | $ 1,260.00 |
| Generator (Gas) | Ea | $ 103.00 | | | | | | | | 0 | $ |
| HEPA Filtration Unit/ Air Scrubber | Ea | $ 8.25 | | | | | | | | 21 | $ 173.25 |
| Backpack Pump Sprayer | Ea | $ 295.00 | | | | | | | | 0 | $ |
| HVAC Vacuum System | Ea | $ 12.00 | | 3 | 3 | 3 | | | | 38 | $ 356.00 |
| Ladder, Step/ Extension | Ea | $ 16.00 | | 8 | 8 | 8 | 8 | | | 0 | $ 408.00 |
| Light, Portable Demo/ Stand/ String | Ea | $ 4.00 | | | | | | | | 6 | $ 24.00 |
| John Blue Jet | Ea | $ 55.00 | | | | 1 | 1 | | | 6 | $ 339.00 |
| On Site Accessibly Package | Ea | $ 129.00 | | | | | | | | 0 | $ |
| Ozone Generator | Ea | $ 150.00 | | 3 | 3 | 3 | | | | 22 | $ 150.00 |
| Pocket Finder (UCblades) | Ea | $ 16.00 | | | | | | | | 0 | $ |
| Pump Basin 2" | Ea | $ 60.00 | | | | | | | | 0 | $ |
| Pump, Trash 1"-6" | Ea | $ 65.00 | | | | | | | | 0 | $ |
| Pressure Washer 2x8 off site damme | Ea | $ 20.00 | | 3 | | 2 | 2 | 2 | 2 | 10 | $ 500.00 |
| Safety Package | Ea | $ 30.00 | | | | | | | | 0 | $ |
| Personal Fall Protection (PFP) | Ea | $ 13.00 | | 19 | 24 | 21 | 20 | 11 | | 128 | $ 1,920.00 |
| Personal Protection Equipment (PPE) | Ea | $ 30.00 | | | | 2 | 2 | 2 | 2 | 10 | $ 300.00 |
| Personal Respiratory Equipment (PRE) | Ea | $ 60.00 | | | | | | | | 128 | $ 1,920.00 |
| Small Tools Charge | Ea | $ 18.00 | | 19 | 25 | 22 | 20 | 11 | 31 | 128 | $ 180.00 |
| Sprayer, Airless | Ea | $ 90.00 | | | | | | | | 19 | $ 1,239.00 |
| Gang Box Tool | Ea | $ 65.00 | | | | | | | | 0 | $ |
| Trailer (Freezer) | Ea | $ 125.00 | | | | | | | | 0 | $ |
| Trailer (Freezer) | Ea | $ 65.00 | | | | | | | | 0 | $ |
| Trailer 28'-30' | Ea | $ 90.00 | | | | | | | | 0 | $ |
| Trailer 18'-22' | Ea | $ 53.00 | | | | | | | | 0 | $ |
| Trailer (Office Trailer) | Ea | $ 105.00 | | | | | | | | 0 | $ |
| Truck - Pulling | Ea | $ 125.00 | | 1 | 1 | 1 | 1 | 1 | 1 | 6 | $ 570.00 |
| Truck, 24 ft. | Ea | $ 95.00 | | | | | | | | 0 | $ |
| Ultrasonic Bath, Large | Ea | $ 245.00 | | | | | | | | 0 | $ |
| Ultrasonic Bath, Small | Ea | $ 125.00 | | | | | | | | 0 | $ |
| Vacuum (Anti-Static) | Ea | $ 65.50 | | | | | | | | 0 | $ |
| Vacuum, HEPA | Ea | $ 85.00 | | | 3 | 3 | 3 | | | 13 | $ 1,105.00 |
| Vacuum, Wet/Dry | Ea | $ 25.00 | | | | | | | | 0 | $ |
| Van, Cargo / Company Owned | Ea | $ 125.00 | | | 1 | 1 | 1 | 1 | 1 | 9 | $ 120.00 |
| Company Sports Vehicle | Ea | $ 55.00 | | | | | | | | 1 | $ 115.00 |
| Wheel Truck, Large | Ea | $ 70.00 | | | | | | | | 0 | $ |
| Wheel, TX, Small | Ea | $ 35.00 | | | | | | | | 0 | $ |
| Washer, High Pressure (Cold) | Ea | $ 75.00 | | | | | | | | 0 | $ |

TSA RULE 26 DISCLOSURES
0041

05/10/2006 14:05 FAX 3038642102    GART SPORTS    @011

| Worker, Trab Pressure (Risk) | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Ea | $ | 195.00 | | | | | | 0 | $ |
| | | | | | | | | | | |
| Broiler Refrigerant Description | | $ | Daily | | | | | | 0 | $ |
| Tennis Courts | Ea | $ | 725.00 | | | | | | 0 | $ |
| Delamination Unit - 200 cfm | Ea | $ | 105.00 | | | | | | 3 | $ |
| Delamin/Freezer Unit - 300 cfm | Ea | $ | 115.00 | | | | | | 0 | $ 112.00 |
| Delamin/Unicatton Unit - 500 cfm | Ea | $ | 620.00 | | | | | | 0 | $ |
| Delamination Unit - 1111 cfm | Ea | $ | 875.00 | | | | | | 0 | $ |
| Delamin/Diffusion Unit - 2000/7110 cfm | Ea | $ | 1,185.00 | | | | | | 20 | $ 23,900.00 |
| Delamin/Medium Unit - 4500 ton | Ea | $ | 1,795.00 | | | | | | 0 | $ |
| Delamin/Freezer Unit - 920V 0000 cfm | Ea | $ | 875.00 | | | | | | 0 | $ |
| DX Unit - 20/25 ton | Ea | $ | 115.00 | | | | | | 0 | $ |
| Monthly Unit | Ea | | | | | | | | | $ |

**Total for Equipment**  $  43,148.75

TSA RULE 26 DISCLOSURES
0042

Cintas USA
Contract 14(082X) Sports Authority
Consumables Summary
Purps Period 03/12/06

| Chemical Description | Unit | Rate | Mon 03/13 | Tues 03/14 | Wed 03/15 | Thurs 03/16 | Fri 03/17 | Sat 03/18 | Sun 03/19 | Total Units | Total Charges |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Adhesive Remover | Gal | $ 77.00 | | | | | | | | 0.0 | $ |
| Alcohol Isopropyl | Gal | $ 34.83 | | | | | | | | 0.0 | $ |
| Cleaner, Stainless Steel | Gal | $ 32.00 | | | | | | | | 0.0 | $ |
| Cleaner, Carpet (Liquid) | Gal | $ 17.91 | | | | | | | | 0.0 | $ |
| Cleaner, Carpet (Powder) | Lb | $ 7.50 | | | | | | | | 0.0 | $ |
| Cleaner, Glass | Gal | $ 13.00 | | | | | | | | 0.0 | $ |
| Cleaner, Floor Surface | | | | | | | | | | | $ |
| 811 SKY (3M) | Gal | $ 22.10 | | | | | | | | 0.0 | $ |
| Cleaner, General Purpose Degreaser | Gal | $ 17.21 | | | | | | | | 0.0 | $ |
| Dish Soap | Gal | $ 11.25 | | | | | | | | 0.0 | $ |
| Hand Soap | Gal | $ 30.78 | | | | | | | | 0.0 | $ |
| Cleaner, HVAC Coil | Gal | $ 98.00 | | | | | | | | 0.0 | $ |
| Deodorizer | | | | | | | | | | | $ |
| Deodorizing Gel | Lb | $ 13.00 | | | | | | | | 0.0 | $ |
| Deodorizing Liquid | Gal | $ 37.82 | | | | | | | | 0.0 | $ |
| Deodorizing Block | Ea | $ 45.90 | | | | | | | | 0.0 | $ |
| Disinfectant/Biocide | Gal | $ 2.21 | | 4.0 | 5.0 | 6.0 | 6.0 | | 6.0 | 33.0 | $ 1,696.00 |
| Finish | Gal | $ 92.00 | | | | | | | | 0.0 | $ |
| Polish | Gal | $ 4.25 | | | | | | | | 0.0 | $ |
| Furniture Polish | Ea | $ 4.25 | | | | | | | | 0.0 | $ |
| Glaze Polish | Ea | $ 4.25 | | | | | | | | 0.0 | $ |
| Gloss Off | | | | | | | | | | | $ |
| Lubricant, Electrical | Gal | $ 23.75 | | | | | | | | 0.0 | $ |
| Lubricant, Electrical | | | | | | | | | | | $ |
| Fasteners, light | Gal | $ 19.10 | | | | | | | | 0.0 | $ |
| Lens/Foam Preserver, heavy | Gal | $ 19.50 | | | | | | | | 0.0 | $ |
| Metal Polishing Paste | Ea | $ 9.65 | | | | | | | | 0.0 | $ |
| Stainless Steel Polish | Ea | $ 8.21 | | | | | | | | 0.0 | $ |
| Rust Inhibitor/Lacquer | | | | | | | | | | | $ |
| Cleanable Cleaner | Gal | $ 34.00 | | | | | | | | 0.0 | $ |
| Degreaser | Gal | $ 19.00 | | | | | | | | 0.0 | $ |
| Sealant | | | | | | | | | | | $ |
| Duct Sealant Spray | Gal | $ 41.00 | | | | | | | | 0.0 | $ |
| Duct Sealant, Antimicrobial | Gal | $ 63.00 | | | | | | | | 0.0 | $ |
| Duct Sealant, Fire rated | Gal | $ 35.00 | | | | | | | | 0.0 | $ |
| Boot Sealant, Clear | Gal | $ 22.00 | | | | | | | | 0.0 | $ |
| Silver Copper/Tin Cleaner | Ea | $ 12.50 | | 1.0 | 5.0 | 5.0 | 5.0 | 7.0 | 9.0 | 32.0 | $ |
| Spray Adhesive | Ea | $ 5.15 | | | | | | | | 0.0 | $ 161.13 |

| Material Description | Unit | Rate | | | | | | | | Total Units | Total Charges |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bags, Acid Sack | Unit | $ 9.00 | | | | | | | | 0.0 | $ |
| Bags, Trash | Bl | $ 28.00 | | | 15.0 | 8.0 | 15.0 | 12.0 | 10.0 | 73.0 | $ 2,044.00 |
| Bags, Trash Environmental 4mil | Ea | $ 2.83 | 15.0 | | | | | | | 0.0 | $ |
| Box, Brooks/ Freeze Dry | Ea | $ 2.63 | | | | | | | | 0.0 | $ |
| | Ea | $ 5.45 | | | | | | | | 0.0 | $ |
| Paper, Corrugated | Bl | $ 87.50 | | | | | | | | 0.0 | $ |
| Brush, Impression 3mm | Bl | $ 10.00 | | | | | | | | 0.0 | $ |
| Brush, Impression small | Bl | $ 4.50 | | | | | | | | 0.0 | $ |
| Brush, Utilization small | Bl | $ 9.00 | | | | | | | | 0.0 | $ |
| Brush, Long Handled Brush | Ea | $ 8.00 | | | | | | | | 0.0 | $ |
| Dust, Lg/ Dust (500) | Bl | $ 375.00 | | | | | | | | 6.0 | $ 2,250.00 |

05/10/2006 14:08 FAX 3038642102          GART SPORTS                          Ⓩ013

| Item | Unit | Price | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Dust Mask, HEPA (N95/P100) | Bx | $ 8.00 | | | | | | | 0.0 | $ |
| Dust Mask | Bx | 14.96 | | | | | | | 16.0 | 592.00 |
| Filter Material | EU | 63.00 | | | | | | | 0.0 | |
| Filter Secondary | Ea | 1.90 | | | | | | | 0.0 | |
| Pre filter | Ea | 3.75 | | | | | | | 0.0 | |
| Furniture Blocks | Bx | 72.00 | | | | | | | 0.0 | |
| Furniture Pads | Bx | 84.00 | | | | | | | 0.0 | |
| Gloves, Cotton | Pr | 1.75 | 3.0 | 3.0 | 3.0 | 3.0 | 1.0 | 3.0 | 0.0 | |
| Gloves, Surgical Latex | Bx | 18.00 | | | | | | | 0.0 | |
| Gloves, Work/Rubber/Chemical | Pr | 5.25 | 18.0 | 23.0 | 32.0 | 20.0 | 11.0 | 11.0 | 128.0 | 672.00 |
| Hag Hinge | Bx | 15.00 | | | 2.0 | | 2.0 | | 2.0 | 30.00 |
| Inventory Tags | Bx | 95.00 | | | | | | | 0.0 | |
| Mop Heads | Bx | 5.95 | | | | 6.0 | | 4.0 | 11.0 | 63.00 |
| Non Eyelash Brushes, green (605) | Bx | 20.00 | 1.0 | 2.0 | 1.0 | 2.0 | 10.0 | 8.0 | 24.0 | 1,728.00 |
| Plastic Sheeting (10x12/100') | Bx | 73.00 | | | | | | | 11.0 | |
| Polishing Needle (4mil) | Bx | 18.25 | | | | | | | 1.0 | |
| Quick Feed Shirts (per 30) | Pkg | 24.00 | | | | | | | 0.0 | |
| Sponge, Dust Removal | Ea | 3.90 | | | | | | | 0.0 | |
| Spray Bottle w/ Trigger | Ea | 3.95 | | | | | | | 0.0 | |
| Tape, Dust | Ea | 7.50 | 5.0 | 10.0 | 6.0 | 8.0 | 15.0 | 15.0 | 57.0 | 399.00 |

TSA RULE 26 DISCLOSURES
D044

| | | | Mon 03/13 | Tues 03/14 | Wed 03/15 | Thurs 03/16 | Fri 03/17 | Sat 03/18 | Sun 03/19 | Total Charges |
|---|---|---|---|---|---|---|---|---|---|---|
| Tape, Blue | Rl | $ 12.71 | | | | | | | 0.0 | $ |
| Tape, HVAC (Alum 2mm) | Ea | $ 21.00 | | | | | | | 0.0 | $ |
| Tape, Poly Box | Rl | $ 2.60 | | | | | | | 0.0 | $ |
| Trash Bags | Rl | $ 0.24 | | | | | | | 0.0 | $ |
| Trash Bags | Ea | $ 7.25 | | | | | | 190.0 | 652.90 | $ |
| Wipes, Cotton Cloth | Lb | $ 4.11 | | | | | | | 0.0 | $ |
| Wipes, Lint Free | Bx | $ 24.00 | | | | | | | 0.0 | $ |
| Wipes, Shop | Rl | $ 7.00 | | | | | | | 0.0 | $ |
| Wipes, Wipe All | Rl | $ 9.01 | | | | | | | 0.0 | $ |
| Mop, Inddstr/Anti Static | Rl | $ 64.75 | | | | | | | 0.0 | $ |
| Wipes, Shake | Rl | $ 48.00 | | | | | | | 0.0 | $ |

**Total for Consumables** $ 9,494.82

Carton USA
Contract # 1405/7141 Space Authority
Vendor (Subcontractor) Summary?
Period Ended 03/19/06

| | Mon 03/13 | Tues 03/14 | Wed 03/15 | Thurs 03/16 | Fri 03/17 | Sat 03/18 | Sun 03/19 | Total Charges |
|---|---|---|---|---|---|---|---|---|
| Shareholder Materials (Proxy Cash & Credit Card Control) | $ 149.09 | | | | | | | $ 149.09 |
| Vista Truck Pass - Fuel | | $ 46.28 | | | | | | 46.28 |
| Jiffy Bags - Fuel | | $ 41.99 | | | | | | 41.99 |
| Lowes - Supplies | | | $ 16.14 | | | | | 16.14 |
| Lowes - Supplies | | | | $ 49.22 | | | | 49.22 |
| Lowes - Supplies | | | | | $ 37.31 | | | 37.31 |
| Office Depot-Supplies | | | | | | $ 13.75 | | 13.75 |
| Lowes - Supplies | | | | | | | $ 65.10 | 65.10 |
| Thomsons - Fuel | | | | | | | 7,437.42 | 7,437.42 |
| Morgan Distributing Inc.-Fuel Rx Generators | | | | | | | 3,466.00 | 3,466.00 |
| Waste Management - Dumpsters(14) | | | | | | | 1,063.92 | 1,063.92 |
| Sunbelt - Lull | | | | | | | 4,786.50 | 4,786.50 |
| Mobile Mini Inc - 3 Storage Containers for 8 Months | | | | | | | 2,333.55 | 2,333.55 |
| Sunbelt - Gas Front Stripper | | | | | | | 1,659.90 | 1,659.90 |
| Sunbelt - 39 Ft. Articulate Narrow Jib Boom Lift | | | | | | | 270.30 | 270.30 |
| Sunbelt - 1 Lull Drive | | | | | | | 3,564.00 | 3,564.00 |
| Sunbelt - (2) 5ffor Generators | | | | | | | 3,591.00 | 3,591.00 |
| Sunbelt - Distribution Cable | | | | | | | 6,000.00 | 6,000.00 |
| Sunbelt - 120Kw Generator | | | | | | | 6,060.00 | 6,060.00 |
| Sunbelt - 120Kw Generator | | | | | | | 382.80 | 382.80 |
| Sunbelt - 2 Electric Walk Behind Floor Strippers | | | | | | | 1,030.00 | 1,030.00 |
| Iocsa Plumbing | | | | | | | 7,500.00 | 7,500.00 |
| EFI - Structural Inspection | | | | | | | | |

| | |
|---|---|
| Subtotal for Vendors (Subcontractors) | $ 1,442.21 |
| Ocean TSA Markup | $ 10,824.49 |
| Total for Vendors (Subcontractors) | $ 62,369.70 |

TSA RULE 26 DISCLOSURES
0046

05/10/2006 14:06 FAX 3038942102

GART SPORTS

☑ 016

**Carico USA**
**Contract # 166721; Sports Authority**
**Labor Summary**
**Period Ended 03/26/06**

| | Classification | Std. Rate O/T Types | Mon 03/20 | Tues 03/21 | Wed 03/22 | Thurs 03/23 | Fri 03/24 | Sat 03/24 | Sun 03/26 | Total Hours | Total Charges |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kroening, Jeff | Project Coordinator | Travel $ 96.00 | | | | | | | | 0.0 | $ |
| | | Regular $ 95.00 | 2 | | | | | | | 2.0 | $ 190.00 |
| | | Overtime $ 142.50 | | | | | | | | 0.0 | $ |
| Gaag, Bruce | Project Manager | Travel $ 80.00 | | | | | | | | 0.0 | $ |
| | | Regular $ 80.00 | | | | | | | | 0.0 | $ |
| | | Overtime $ 120.00 | 13 | 10 | 7 | | | | | 36.0 | $ 2,488.00 |
| Castino, Phillip | Asst. Project Manager | Travel $ 75.00 | | | | | | | | 0.0 | $ |
| | | Regular $ 75.00 | 13 | 10 | 11 | 4 | | | | 40.0 | $ 3,000.00 |
| | | Overtime $ 112.50 | | | | | | | | 0.0 | $ |
| Furnax, Shannon | Restoration Supervisor | Travel $ 45.00 | | | | | | | | 0.0 | $ |
| | | Regular $ 45.00 | | | | | | | | 0.0 | $ |
| | | Overtime $ 67.50 | | | | 1 | | | | 1.0 | $ 67.50 |
| Furnax, Shannon | Restoration Supervisor | Travel $ 45.00 | | | | | | | | 0.0 | $ |
| | | Regular $ 45.00 | | | | | | | | 0.0 | $ |
| | | Overtime $ 67.50 | | | | | | | | 0.0 | $ |
| Pearson, Shannon | Restoration Supervisor | Travel $ 45.00 | | | | | | | | 0.0 | $ |
| | | Regular $ 45.00 | | | | | | | | 0.0 | $ |
| | | Overtime $ 67.50 | | | | | | | | 0.0 | $ |
| Keishmer, Bud | Restoration Supervisor | Travel $ 45.00 | | | | | | | | 0.0 | $ |
| | | Regular $ 45.00 | | | | | | | | 0.0 | $ |
| | | Overtime $ 67.50 | | | | | | | | 0.0 | $ |
| Bostick, Miker | Restoration Supervisor | Travel $ 45.00 | | | | | | | | 0.0 | $ |
| | | Regular $ 45.00 | 11 | 10 | 11 | 8 | | | | 40.0 | $ 1,800.00 |
| | | Overtime $ 67.50 | | | | | | | | 3.0 | $ 202.50 |
| Dahlin, Luke | Restoration Supervisor | Travel $ 45.00 | | | | | | | | 0.0 | $ |
| | | Regular $ 45.00 | | | | | | | | 0.0 | $ |
| | | Overtime $ 67.50 | | | | | | | | 0.0 | $ |
| Dizengola, Jeffrey | Skilled Labor | Travel $ 28.50 | | | | | | | | 0.0 | $ |
| | | Regular $ 28.50 | 10 | 9 | | | | | | 19.0 | $ 541.50 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 | $ |
| King, Rachel | Skilled Labor | Travel $ 28.50 | | | | | | | | 0.0 | $ |
| | | Regular $ 28.50 | 9 | 9 | 9 | 10 | | | | 37.0 | $ 1,051.50 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 | $ |
| Schulte, Erica | Skilled Labor | Travel $ 28.50 | | | | | | | | 0.0 | $ |
| | | Regular $ 28.50 | | | | | | | | 0.0 | $ |
| | | Overtime $ 42.75 | | | | | | | | 0.0 | $ |
| Brown, Tremaine | Skilled Labor | Travel $ 28.50 | | | | | | | | 0.0 | $ |
| | | Regular $ 28.50 | 10 | 9 | 10.5 | 10 | | | | 39.5 | $ 1,125.75 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 | $ |
| McDougal, James | Skilled Labor | Travel $ 28.50 | | | | | | | | 0.0 | $ |
| | | Regular $ 28.50 | 10 | 9 | 10.5 | | | | | 29.5 | $ 840.75 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 | $ |
| Honenfeld, Arthur | Skilled Labor | Travel $ 28.50 | | | | | | | | 0.0 | $ |
| | | Regular $ 28.50 | | | | | | | | 0.0 | $ |
| | | Overtime $ 42.75 | | | | | | | | 0.0 | $ |
| Hillenbeck, Russell | Skilled Labor | Travel $ 28.50 | | | | | | | | 0.0 | $ |
| | | Regular $ 28.50 | 10 | | | | | | | 10.0 | $ 285.00 |
| | | Overtime $ 42.75 | | | | | | | | 0.0 | $ |

05/10/2008 14:06 FAX 3038542102                                    ☒ 017

| Name | | Regular $ | Overtime $ | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Hammers, Ralph | Skilled Labor | 28.50 | 42.75 | | | | | | | | | 0.0 $ | 0.0 $ | |
| Seaton, Al | Skilled Labor | 28.50 | 42.75 | | 4.75 | | | | | | | 17.5 $ | 0.0 $ | 491.63 |
| Dabbs, David | Skilled Labor | 28.50 | 42.75 | 9 | | | | | | | | 9.0 $ | 0.0 $ | 256.50 |
| Williams, Van | Skilled Labor | 28.50 | 42.75 | 9 | | | | | | | | 9.0 $ | 0.0 $ | 256.50 |
| Rykea, Andre | Skilled Labor | 28.50 | 42.75 | 10 | | | | | | | | 10.0 $ | 0.0 $ | 285.00 |
| Crafton, Nace | Skilled Labor | 28.50 | 42.75 | 10 | | | | | | | | 10.0 $ | 0.0 $ | 285.00 |
| Cole, Billian | Skilled Labor | 28.50 | 42.75 | 9.5 | | 10.5 | | 10 | | | | 39.0 $ | 0.5 $ | 1,111.50 |
| Gonzalez, David | Skilled Labor | 28.50 | 42.75 | 10 | | | | | | | | 10.0 $ | 0.0 $ | 285.00 |
| Whiting, Phillip | Skilled Labor | 28.50 | 42.75 | | | | | | | | | 9.0 $ | 0.0 $ | 255.90 |
| Eagan, Nick | Skilled Labor | 28.50 | 42.75 | 10 | 9 | | 5.5 | | | | | 29.5 $ | 0.0 $ | 940.75 |
| Culm, Terrance | Skilled Labor | 28.50 | 42.75 | 9.5 | | 10.5 | | | | | | 9.5 $ | 0.0 $ | 270.75 |
| Read, Chris | Skilled Labor | 28.50 | 42.75 | 9 | 9 | 9 | 10 | | | | | 37.0 $ | 0.0 $ | 1,054.90 |
| Diaz, Steven | Skilled Labor | 28.50 | 42.75 | 9 | | | | | | | | 9.0 $ | 0.0 $ | 256.50 |
| McKinney, Eric | Skilled Labor | 28.50 | 42.75 | 8.5 | 9 | 10.5 | | | | | | 13.5 $ | 0.0 $ | 940.75 |
| Bloom, Victor | Skilled Labor | 28.50 | 42.75 | 8.5 | | 10.5 | | | | | | 8.5 $ | 0.0 $ | 247.25 |
| Lethbridge, Austin | Skilled Labor | 28.50 | 42.75 | | | | | | | | | 10.0 $ | 0.0 $ | 285.00 |
| King, Roy | Skilled Labor | 28.50 | 42.75 | 6 | 9 | | | | | | | 18.5 $ | 0.0 $ | 555.75 |
| Naza | Skilled Labor | 28.50 | 42.75 | | | | | | | | | 0.0 $ | 0.0 $ | |
| Name | Skilled Labor | 28.50 | 42.75 | | | | | | | | | 0.0 $ | 0.0 $ | |
| Times | Skilled Labor | 28.50 | 42.75 | | | | | | | | | 0.0 $ | 0.0 $ | |

TSA RULE 26 DISCLOSURES
0048

05/10/2006 14:07 FAX 3038842102          GART SPORTS                    @018

| Name | | | | |
|---|---|---|---|---|
| Skilled Labor | Regular $ | 28.50 | | 0.0 $ |
| | Overtime $ | 42.75 | | 0.0 $ |
| Skilled Labor | Regular $ | 28.50 | | 0.0 $ |
| | Overtime $ | 42.75 | | 0.0 $ |
| Skilled Labor | Regular $ | 28.50 | | 0.0 $ |
| | Overtime $ | 42.75 | | 0.0 $ |
| Skilled Labor | Regular $ | 28.50 | | 0.0 $ |
| | Overtime $ | 42.75 | | 0.0 $ |
| Skilled Labor | Regular $ | 28.50 | | 0.0 $ |
| | Overtime $ | 42.75 | | 0.0 $ |
| Skilled Labor | Regular $ | 28.50 | | 0.0 $ |
| | Overtime $ | 42.75 | | 0.0 $ |
| Skilled Labor | Regular $ | 28.50 | | 0.0 $ |
| | Overtime $ | 42.75 | | 0.0 $ |
| Skilled Labor | Regular $ | 28.50 | | 0.0 $ |
| | Overtime $ | 42.75 | | 0.0 $ |
| Skilled Labor | Regular $ | 28.50 | | 0.0 $ |
| | Overtime $ | 42.75 | | 0.0 $ |
| Skilled Labor | Regular $ | 28.50 | | 0.0 $ |
| | Overtime $ | 42.75 | | 0.0 $ |
| Skilled Labor | Regular $ | 28.50 | | 0.0 $ |
| | Overtime $ | 42.75 | | 0.0 $ |
| Skilled Labor | Regular $ | 28.50 | | 0.0 $ |
| | Overtime $ | 42.75 | | 0.0 $ |
| Skilled Labor | Regular $ | 28.50 | | 0.0 $ |
| | Overtime $ | 42.75 | | 0.0 $ |
| Skilled Labor | Regular $ | 28.50 | | 0.0 $ |

TSA RULE 26 DISCLOSURES
0049

06/10/2008 14:07 FAX 8038642102

GART SPORTS

☑019    E-FILED
Thursday, 17 January, 2008  04:09:31 PM
Clerk, U.S. District Court, ILCD

| Name | Skilled Labor | Regular $ | Overtime $ | | $ 0.0 | $ 0.0 |
|---|---|---|---|---|---|---|
| Name | Skilled Labor | 28.50 | 42.75 | | $ 0.0 | $ 0.0 |
| Name | Skilled Labor | 28.50 | 42.75 | | $ 0.0 | $ 0.0 |
| Name | Skilled Labor | 28.50 | 42.75 | | $ 0.0 | $ 0.0 |
| Name | Skilled Labor | 28.50 | 42.75 | | $ 0.0 | $ 0.0 |
| Name | Skilled Labor | 28.50 | 42.75 | | $ 0.0 | $ 0.0 |
| Name | Skilled Labor | 28.50 | 42.75 | | $ 0.0 | $ 0.0 |
| Name | Skilled Labor | 28.50 | 42.75 | | $ 0.0 | $ 0.0 |
| Name | Skilled Labor | 28.50 | 42.75 | | $ 0.0 | $ 0.0 |
| Name | Skilled Labor | 28.50 | 42.75 | | $ 0.0 | $ 0.0 |
| Name | Skilled Labor | 28.50 | 42.75 | | $ 0.0 | $ 0.0 |
| Name | Skilled Labor | 28.50 | 42.75 | | $ 0.0 | $ 0.0 |
| Name | Skilled Labor | 28.50 | 42.75 | | $ 0.0 | $ 0.0 |
| Name | Skilled Labor | 28.50 | 42.75 | | $ 0.0 | $ 0.0 |
| Name | Skilled Labor | 28.50 | 42.75 | | $ 0.0 | $ 0.0 |
| Name | Skilled Labor | 28.50 | 42.75 | | $ 0.0 | $ 0.0 |
| Name | Skilled Labor | 28.50 | 42.75 | | $ 0.0 | $ 0.0 |
| Name | Skilled Labor | 28.50 | 42.75 | | $ 0.0 | $ 0.0 |
| Name | Skilled Labor | 28.50 | 42.75 | | $ 0.0 | $ 0.0 |
| Name | Skilled Labor | 28.50 | 42.75 | | $ 0.0 | $ 0.0 |
| Name | Skilled Labor | 28.50 | 42.75 | | $ 0.0 | $ 0.0 |

TSA RULE 26 DISCLOSURES
9050

05/10/2006 14:08 FAX 3038842102                GART SPORTS                                    ☑ 020

| Name | | | | | | | | | | | | $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Skilled Labor | Regular $ | 28.50 | | | | | | | | | 0.0 |
| | | Overtime $ | 42.75 | | | | | | | | | 0.0 |
| Hours | Skilled Labor | Regular $ | 28.50 | | | | | | | | | 0.0 |
| | | Overtime $ | 42.75 | | | | | | | | | 0.0 |
| Hang | Skilled Labor | Regular $ | 28.50 | | | | | | | | | 0.0 |
| | | Overtime $ | 42.75 | | | | | | | | | 0.0 |
| Labor Ready | Temporary Labor | Regular $ | 17.58 | | | | | | | | | 0.0 |
| | | Overtime $ | 26.37 | | | | | | | | | 0.0 |
| Management Fee | Client Hours | | | | | | | | | | | |
| Total Personnel | | | | | | | | | | | | |
| Labor Totals | | | | | | | | | | | | $ 28,855.38 |

TSA RULE 26 DISCLOSURES
0051

05/10/2008 14:08 FAX 3038842102          GART SPORTS                    ☒ 021

Cintas USA
Contract # 1501724; Players Authority
Reimbursable Summary
Period Ended 03/26/06

| | | Mon 03/20 | Tues 03/21 | Wed 03/22 | Thurs 03/23 | Fri 03/24 | Sat 03/25 | Sun 03/26 | Total Charges |
|---|---|---|---|---|---|---|---|---|---|
| Garg, Bruce | per diem | $ 30.00 | $ 30.00 | | $ 30.00 | $ 30.00 | | | $ 120.00 |
| | hotel | | | | | | | | $ 112.49 |
| | airfare | | | | | | | | $ 253.58 |
| Cuellia, Phillip | per diem | | | | | | | | $ 180.00 |
| | hotel | $ 78.10 | $ 78.10 | $ 78.10 | $ 78.10 | $ 78.10 | $ 78.10 | | |
| | airfare | | | | | | | | $ 468.60 |
| Parsons, Shannon | per diem | $ 30.00 | $ 30.00 | $30 | $ 30.00 | $ 30.00 | | | |
| | hotel | $ 78.10 | $ 78.10 | $ 78.10 | $ 78.10 | $ 78.10 | | | |
| | airfare | | | | | $ 253.10 | | | |
| Brodick, Milton | per diem | $ 90.00 | $ 90.00 | $ 90.00 | $ 90.00 | $ 90.00 | | | $ 180.00 |
| | hotel | $ 78.10 | $ 78.10 | $ 78.10 | $ 78.10 | $ 78.10 | | | $ 598.50 |
| | airfare | | | | | | | | $ 90.00 |
| Endler, Luke | per diem | $ 30.00 | | | | | | | $ 30.00 |
| | hotel | $ 78.10 | | | | | | | $ 78.10 |
| | airfare | | | | | | | | |
| Leuchman, Bud | per diem | | | | | | | | |
| | hotel | | | | | | | | |
| | airfare | | | | | | | | |
| Hiers Rental | | | | | | | | | $ 1,982.90 |
| Subtotal for Reimbursement on Cintas USA Markup | | | | | | | | | $ 198.29 |
| Total for Reimbursement | | | | | | | | | $ 2,181.19 |

TSA RULE 26 DISCLOSURES
0052

05/10/2006 14:08 FAX 3038842102

GART SPORTS

**Cohen USA**
**Contract # 408776 Systems Authority**
**Equipment Summary**
**Period Ended 03/26/00**

| Equipment Description | Unit | Rate | Mon 03/20 | Tues 03/21 | Wed 03/22 | Thurs 03/23 | Fri 03/24 | Sat 03/25 | Sun 03/26 | Total Units | Total Charges |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Air Compressor | Ea | $ | 30.00 | | | | | | | 0 | $ |
| Air Mover | Ea | $ | 32.50 | 23 | 55 | 55 | 55 | 55 | | 273 | $ 8,142.50 |
| Bobcat | Ea | $ | 175.00 | | | | | | | 0 | $ |
| Boiler, Mini | Ea | $ | 30.00 | 10 | | | | | | 10 | $ 200.00 |
| Cart, Tilt / Demolition | Ea | $ | 20.00 | 5 | 9 | 2 | 2 | | | 4 | $ 24.00 |
| Dolly, 2 Way / 4 Way / Walkway | Ea | $ | 6.00 | 1 | | | | | | 4 | $ 3,160.00 |
| Dry Cleaning Unit (Portable) | Ea | $ | 45.00 | 12 | 12 | 28 | 31 | 4 | | 46 | $ 474.00 |
| Elevation Dust Panel (Guides Rac) | Ea | $ | 4.00 | 26 | 18 | 28 | 31 | | | 119 | $ 190.00 |
| Extension Unit (Portable) | Ea | $ | 95.00 | | | | | | | 2 | |
| Extension Cord (Reels) | Ea | $ | 14.00 | | | | | | | 0 | |
| Excavator Unit (Trailer) | Ea | $ | 14.00 | | | | | | | 0 | $ |
| Floor Cleaning System (Walk Behind) | Ea | $ | 18.00 | | | | | | | 0 | |
| Fogger, Thermal (Gas Powered) | Ea | $ | 18.00 | | | | | | | 0 | |
| Fogger, ULV / Thermal (Electric) | Ea | $ | 14.00 | | | | | | | 0 | |
| Generator (Less than 5kw) | Ea | $ | 106.00 | | | | | | | 1 | $ 66.00 |
| HEPA Filtration Unit / Air Scrubber | Ea | $ | 101.00 | | | | | | | 0 | |
| Indian Pump Sprayer | Ea | $ | 8.21 | | | | | | | 8 | |
| HVAC Vacuum System | Ea | $ | 295.00 | 1 | | 1 | 2 | 2 | | 19 | $ 225.00 |
| Ladder Step Extension | Ea | $ | 13.00 | 4 | 5 | | | | | 13 | $ 94.00 |
| Light, Diesel Drop Stand String | Ea | $ | 16.00 | 4 | | | | | | 17 | $ 34.00 |
| Mop Bucket | Ea | $ | 2.00 | | | | | | | 5 | $ 325.00 |
| Ozone Generating Fixtures | Ea | $ | 155.00 | | | | | | | 0 | |
| Ozone Generator (Daily) | Ea | $ | 20.00 | | | | | | | 0 | |
| Pump, Trash (2" - 4") | Ea | $ | 55.00 | | | | | | | 0 | |
| Pump, Trash 2" - 4" | Ea | $ | 65.00 | | | | | | | 0 | |
| Radio, 2 way - 8+8 site count | Ea | $ | 20.00 | | | | | | | 13 | $ 325.00 |
| Safety / Barrier | Ea | $ | | | | | | | | 0 | |
| Personal Fall Protection (PFP) | Ea | $ | 30.00 | 2 | 12 | | | | | 6 | $ 160.00 |
| Personal Protection Equipment (PPE) | Ea | $ | 13.00 | 21 | 12 | 10 | 2 | 9 | | 61 | $ 915.00 |
| Personal Respiratory Protection (PRP) | Ea | $ | 45.00 | | | | | | | 0 | |
| Small Tools Charge | Ea | $ | 10.00 | 4 | | 2 | | | | 10 | $ 220.00 |
| Sprayer, Airless | Ea | $ | 90.00 | | | | | | | 0 | $ 650.00 |
| Squeegee | Ea | $ | 125.00 | | | | | | | 0 | |
| Trailer (Box vans) | Ea | $ | 85.00 | 8 | 10 | 10 | 7 | 1 | | 0 | |
| Trailer 32' | Ea | $ | 95.00 | | | | | | | 0 | |
| Trailer 16' - 20' | Ea | $ | 105.00 | | 2 | 6 | 5 | 1 | | 0 | |
| Trailer 14'-27' | Ea | $ | 125.00 | | | | | | | 0 | $ 775.00 |
| Trailer (Office Trailer) | Ea | $ | 125.00 | | | | | | | 0 | |
| Truck F-Falling | Ea | $ | 95.00 | | | | | | | 0 | |
| Truck 24 ft. | Ea | $ | 245.00 | | | | | | | 0 | |
| Oversized Roll-A Large | Ea | $ | 145.00 | | | | | | | 26 | $ 3,210.00 |
| Oversized Roll, Small | Ea | $ | 135.00 | | | | | | | 0 | |
| Vacuum, Wet / Dry (Back Packed) | Ea | $ | 84.00 | | | | | | | 0 | |
| Vacuum, HEPA | Ea | $ | 83.00 | | | | | | | 5 | |
| Vacuum, PPPM / PPP | Ea | $ | 31.00 | | | | | | | 5 | |
| Van, Cargo / Company Owned | Ea | $ | 43.00 | | | | | | | 0 | |
| Company / Owned Vehicle | Ea | $ | 20.00 | | | | | | | 0 | |
| Vapor Tek Large | Ea | $ | | | | | | | | 0 | |
| Vapor Tek Small | Ea | $ | 53.00 | | | | | | | 0 | |
| Washer, High Pressure (Cold) | Ea | $ | 75.00 | | | | | | | 0 | $ 775.00 |

GART SPORTS

05/10/2006 14:08 FAX 3038642102                                    ☐ 023

| Value, High Pressure (Each) | | | Date | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Dryer Equipment Description | Unit | $ | 199.00 | | | | | 0 | $ | |
| Tempo Camera | Ea | $ | 233.00 | | | | | 0 | $ | |
| Delam/friction Unit - 200 cfm | Ea | $ | 105.00 | 1 | | | | 19 | $ | 1,995.00 |
| Delam/friction Unit - 500 cfm | Ea | $ | 183.00 | | | | | 0 | $ | |
| Delam/friction Unit - 1125 cfm | Ea | $ | 620.00 | | | | | 0 | $ | |
| Delam/filtration Unit - 2000/2350 cfm | Ea | $ | 877.20 | | | | | 20 | $ | 23,900.00 |
| Delam/filtration Unit - 4500 cfm | Ea | $ | 1,593.00 | | | | | 0 | $ | |
| Delam/filtration Unit - 9000/10000 cfm | Ea | $ | 173.00 | | | | | 0 | $ | |
| DX Unit - 20/25 Ton | Ea | $ | 123.00 | | | | | 0 | $ | |
| Lavatory Unit | Ea | | | | | | | | | |

Total for Equipment                                                      $    41,336.50

TSA RULE 26 DISCLOSURES
0054

05/10/2008 14:08 FAX 3038642102   GART SPORTS   @024

**Gart USA**
**Contract # 14857X14 Sports Authority**
**Consumable Summary**
**Period Ended 03/26/06**

| Critical Description | Unit | Rate | Mon 03/20 | Tues 03/21 | Wed 03/22 | Thurs 03/23 | Fri 03/24 | Sat 03/25 | Sun 03/26 | Total Units | Total Charges |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Adhesive Removers | Gal | $ | 17.00 | | | | | | | 0.0 | $ |
| Alcohol (Isopropyl) | Gal | $ | 14.53 | | | | | | | 0.0 | $ |
| Cleaner, Stainless Steel | Gal | $ | 13.57 | | | | | | | 0.0 | $ |
| Cleaner, Carpet (Liquid) | Gal | $ | 3.92 | | | | | | | 0.0 | $ |
| Cleaner, Carpet (Powder) | Lb | $ | 2.90 | | | | | | | 0.0 | $ |
| Cleaner, Glass | Gal | $ | 12.00 | | | | | | | 0.0 | $ |
| Cleaner, Head Surface | Lb | $ | | | | | | | | 0.0 | $ |
| BI-TAX (GPD) | Gal | $ | 22.10 | | | 1.0 | | | | 1.0 | $ 22.10 |
| General Purpose Degreaser | Gal | $ | 11.25 | | | | | | | 0.0 | $ |
| Dish Soap | Gal | $ | 11.25 | | | | | | | 0.0 | $ |
| Natura Sol | Gal | $ | 39.75 | | | | | | | 0.0 | $ |
| Classic HVAC Coil | Gal | $ | 33.00 | | | | | | | 0.0 | $ |
| Deodorizer | Lb | $ | | | | | | | | 0.0 | $ |
| Deodorizing Gel | Gal | $ | 15.60 | | | | | | | 0.0 | $ |
| Deodorizer, Liquid | Gal | $ | 27.90 | | | | | | | 0.0 | $ |
| Deodorizer, Light | Gal | $ | 41.00 | | | | | | | 0.0 | $ |
| Directional Blocks | Ea | $ | 34.25 | 4.0 | 4.0 | 11.0 | 4.0 | | | 28.0 | $ 958.00 |
| Bleach | Gal | $ | 2.75 | | | | | | | 1.0 | $ 2.75 |
| Throme Reg | Gal | $ | 3.00 | | | | | | | 0.0 | $ |
| Furniture Polish | Gal | $ | 9.20 | | | | | | | 0.0 | $ |
| Goof Off | Gal | $ | 6.25 | | | | | | | 0.0 | $ |
| Lubricant, Wheelset | Gal | $ | 23.73 | | | | | | | 0.0 | $ |
| Lubricant (Electrical) | Gal | $ | 91.10 | | | | | | | 0.0 | $ |
| Preserver, MPU | Gal | $ | 10.90 | | | | | | | 0.0 | $ |
| Long Term Preserver, heavy | Ea | $ | 9.67 | | | | | | | 0.0 | $ |
| Long Term Preserver | Ea | $ | 8.25 | | | | | | | 0.0 | $ |
| Red Antibacterial Remover | Gal | $ | | | | | | | | 0.0 | $ |
| Degreaser Cleaner | Gal | $ | 31.00 | | | | | | | 0.0 | $ |
| Deruster | Gal | $ | 10.00 | | | | | | | 0.0 | $ |
| Medium | Gal | $ | 41.00 | | | | | | | 0.0 | $ |
| Dust Sealant Spray | Gal | $ | 65.00 | | | | | | | 0.0 | $ |
| Dust Sealant, Anti Bacterial | Gal | $ | 22.00 | | | | | | | 0.0 | $ |
| Boot Sealant, Fire retardant | Gal | $ | 12.00 | | | | | | | 0.0 | $ |
| Shower Copper/Tile Cleaner | Can | $ | 5.26 | | | | | 1.0 | | 1.0 | $ 10.52 |
| Spray Adhesive | Ea | $ | | | | | | | | 0.0 | $ |
| Disinfect Disinfectant | Tmil | $ | 38.00 | | | | | | | 0.0 | $ |
| Bags, Anti Static | Ea | $ | 3.95 | 2.0 | 3.0 | 2.0 | 2.0 | 1.0 | | 16.0 | $ 442.00 |
| Bags, Trash | Ea | $ | 2.65 | | | | | | | 0.0 | $ |
| Boxes, Trash Environmental - dull | Ea | $ | 5.44 | | | | | | | 0.0 | $ |
| Box, Stretch/Freeze Dry | Ea | $ | 9.50 | | | | | | | 0.0 | $ |
| Boxes, Disk Pack | Ea | $ | 10.00 | | | | | | | 0.0 | $ |
| Brush, Concentrated | Ea | $ | 4.00 | | | | | | | 0.0 | $ |
| Brush, Dispersion - large | Ea | $ | 9.50 | | | | | | | 0.0 | $ |
| Brush, Low Density Scrub | Ea | $ | 8.00 | | | | | | | 0.0 | $ |
| Brush, New Combed | Ea | $ | | | | | | | | 0.0 | $ |
| Dust Lay Flat (500) | Ea | $ | 375.00 | | | | | | | 8.0 | $ |

TSA RULE 26 DISCLOSURES
0055

05/16/2008 14:09 FAX 3038542102

GART SPORTS

☒ 025

| Item | Unit | Price | | | | | | Total |
|---|---|---|---|---|---|---|---|---|
| Dust Mask, HEPA (N95/P100) | Ea | $ 8.00 | | 1.0 | | | $ 0.0 | $ 190.00 |
| Dust Mask | Ea | $ 24.50 | 2.0 | | | | $ 8.0 | $ |
| Filter Blank | Ea | $ 65.00 | | | | | $ 0.0 | $ |
| Filter Musial | Ea | $ 5.80 | | | | | $ 0.0 | $ |
| Filter Secondary | Ea | $ 3.75 | | | | | $ 0.0 | $ |
| Pre Filter | Ea | $ 77.00 | | | | | $ 0.0 | $ |
| Pre Filter | Bx | $ 84.00 | | | | | $ 0.0 | $ |
| Absorber Blocks | Bx | $ 1.75 | | | | 1.0 | $ 0.0 | $ 18.00 |
| Pardaloe Pads | Pr | $ 18.00 | | | | | $ 0.0 | $ 336.00 |
| Gloves Cotton | Pr | $ 5.21 | | | 1.0 | | $ 64.0 | $ |
| Gloves Surgical Latex | Bx | $ 15.00 | 24.0 | 12.0 | 10.0 | 8.0 | $ 0.0 | $ |
| Gloves Nytril Rubber Chemical | Bx | $ 97.00 | | | | | $ 0.0 | $ |
| Rag Bags | Bx | $ 5.53 | | 4.0 | 3.0 | | $ 15.0 | $ 78.71 |
| Inventory Tags | Ea | $ 20.60 | | | 5.0 | | $ 0.0 | $ |
| Moisture Meter | Ea | $ 72.00 | 3.0 | | 2.0 | | $ 2.0 | $ 360.00 |
| New Combust Residues, gross (996) | Bx | $ 18.25 | | | | | $ 0.0 | $ |
| Plastic Sheeting (QDX100') | Rl | $ 24.04 | | | | | $ 0.0 | $ |
| Plastic Sheeting (2 mil) | Rl | $ | | | | | $ 0.0 | $ |
| Quick Test Strips [set 50] | Pkg | $ 1.80 | | | | | $ 0.0 | $ |
| Sponges, Root Removal | Ea | $ | | | | | $ 0.0 | $ |
| Spray Bottle w/ Trigger | Ea | $ 7.30 | 5.0 | | | | $ 8.0 | $ 56.00 |
| Type. Duct | Rl | $ 3.55 | | | | | $ | $ |

05/10/2008 14:08 FAX 3038842102          GART SPORTS                    @028

| | | | Mon 03/20 | Tue 03/21 | Wed 03/22 | Thurs 03/23 | Fri 03/24 | Sat 03/25 | Sun 03/26 | Total Charge |
|---|---|---|---|---|---|---|---|---|---|---|
| Tape Blue | EA | $ | 8.75 | | | | | | | $ 8.75 |
| Tape HVAC (Aluminum) | EA | $ | 23.00 | | | | | | 1.0 | |
| Tape Fair Box | EA | $ | 2.60 | | | | | | 0.0 | |
| Paint | EA | $ | 0.26 | | | | | | 0.0 | |
| Paint | EA | $ | 7.25 | | | | | | 0.0 | |
| Tyvek Suits | EA | $ | 4.35 | | | | | | 135.0 | $65.75 |
| Wiens Cistern Cloth | EA | $ | 23.00 | 25.0 | 25.0 | 25.0 | 25.0 | | 0.0 | |
| Wipes | EA | $ | 72.00 | | | | | | 0.0 | |
| Wind Lint Free | EA | $ | 9.00 | | | | | | 0.0 | |
| Wreck Shop | Pkg | $ | 41.75 | | | | | | 0.0 | |
| Wreck Wipe All | EA | $ | | | | | | | | |
| Strip Wobble Ass Resin | EA | $ | | | | | | | | |
| Wrap Shrink | EA | $ | 48.00 | | | | | | 0.0 | |
| **Total for Consumables** | | | | | | | | | | $ 3,035.47 |

Contra DBA
Contract # 1468173, Sports Authority
Vendors (Subcontractors) Summary
Period Ended 03/26/06

| | Mon 03/20 | Tue 03/21 | Wed 03/22 | Thurs 03/23 | Fri 03/24 | Sat 03/25 | Sun 03/26 | Total Charge |
|---|---|---|---|---|---|---|---|---|
| Unsubsidized Materials (Petty Cash & Credit Card Control) | | | | | | | | |
| Thornhouse - Fuel | $ 13.01 | | | | | | | $ 13.01 |
| Lowes - Supplies | | $ 7.31 | | | | | | $ 7.31 |
| Thornhouse - Fuel | | | $ 7.79 | | | | | $ 7.79 |
| Thornhouse - Fuel | | | | $ 73.99 | | | | $ 73.99 |
| FedEx - Shipping | | | | $ 1.86 | | | | $ 1.86 |

T&A RULE 26 DISCLOSURES
0057

GART SPORTS

05/10/2008 14:10 FAX 3038642102 ☒027

Balance for Vendors (Subcontractors)

Cotton (3/4 Markup)

Trailer Vendors (Subcontractors)

103.96
21.83
115.79

TSA RULE 26 DISCLOSURES
0058

GART SPORTS

05/10/2006 14:10 FAX 3038842102

**Carton USA**
**Contract # 160872A Sports Availability**
**Labor Summary**
**Period Ended 04/02/06**

| Classification | SHA Rate O/T Prem | Mon 03/27 | Tue 03/28 | Wed 03/29 | Thurs 03/30 | Fri 03/31 | Sat 04/01 | Sun 04/02 | Total Hours | Total Charged |
|---|---|---|---|---|---|---|---|---|---|---|
| **Krauss, Jeff** — Project Coordinator | | | | | | | | | | |
| Travel $ | 95.00 | | | | | | | | 0.0 | $ |
| Regular $ | 95.00 | | | | | | | | 0.0 | $ |
| Overtime $ | 142.50 | | | | | | | | 0.0 | $ |
| **Ganz, Bruce** — Project Manager | | | | | | | | | | |
| Travel $ | 80.00 | | 6 | | | | | | 6.0 | $ |
| Regular $ | 80.00 | | | | | | | | 0.0 | $ |
| Overtime $ | 120.00 | | | | | | | | 0.0 | 480.00 |
| **Casillas, Phillip** — Asst. Project Manager | | | | | | | | | | |
| Travel $ | 75.00 | | | | | | | | 0.0 | $ |
| Regular $ | 75.00 | | | | | | | | 0.0 | $ |
| Overtime $ | 112.50 | | 16.5 | 8 | 5 | | | | 29.5 | 1,575.00 |
| **Parsons, Sharone** — Restoration Supervisor | | | | | | | | | | |
| Travel $ | 45.00 | | | | | | | | 0.0 | $ |
| Regular $ | 45.00 | | | | | | | | 0.0 | $ |
| Overtime $ | 67.50 | | | | | | | | 0.0 | $ |
| **Parsons, Shaqimi** — Restoration Supervisor | | | | | | | | | | |
| Travel $ | 44.00 | | | | | | | | 0.0 | $ |
| Regular $ | 45.00 | | | | | | | | 0.0 | $ |
| Overtime $ | 67.50 | | | | | | | | 0.0 | $ |
| **Lindeman, Bud** — Restoration Supervisor | | | | | | | | | | |
| Travel $ | 45.00 | | | | | | | | 0.0 | $ |
| Regular $ | 44.00 | | | | | | | | 0.0 | $ |
| Overtime $ | 67.50 | | | | | | | | 0.0 | $ |
| **Radick, Minor** — Restoration Supervisor | | | | | | | | | | |
| Travel $ | 45.00 | | | | | | | | 0.0 | $ |
| Regular $ | 45.00 | | | | | | | | 0.0 | $ |
| Overtime $ | 67.50 | | | | | | | | 0.0 | $ |
| **Bellino, Luke** — Skilled Labor | | | | | | | | | | |
| Regular $ | 28.50 | | | | | | | | 0.0 | $ |
| Overtime $ | 42.75 | | | | | | | | 0.0 | $ |
| **Dilangelo, Jeffrey** — Skilled Labor | | | | | | | | | | |
| Regular $ | 28.50 | | | | | | | | 0.0 | $ |
| Overtime $ | 42.75 | | | | | | | | 0.0 | $ |
| **King, Rachel** — Skilled Labor | | | | | | | | | | |
| Regular $ | 28.50 | | | | | | | | 0.0 | $ |
| Overtime $ | 42.75 | | | | | | | | 0.0 | $ |
| **Salazar, John** — Skilled Labor | | | | | | | | | | |
| Regular $ | 28.50 | | | | | | | | 0.0 | $ |
| Overtime $ | 42.75 | | | | | | | | 0.0 | $ |
| **Brown, Tomasie** — Skilled Labor | | | | | | | | | | |
| Regular $ | 28.50 | | | | | | | | 0.0 | $ |
| Overtime $ | 42.75 | | | | | | | | 0.0 | $ |
| **McDougal, James** — Skilled Labor | | | | | | | | | | |
| Regular $ | 28.50 | | | | | | | | 0.0 | $ |
| Overtime $ | 42.75 | | | | | | | | 0.0 | $ |
| **Broomfield, Arthur** — Skilled Labor | | | | | | | | | | |
| Regular $ | 28.50 | | | | | | | | 0.0 | $ |
| Overtime $ | 42.75 | | | | | | | | 0.0 | $ |
| **Hollinbeck, Barack** — Skilled Labor | | | | | | | | | | |
| Regular $ | 28.50 | | | | | | | | 0.0 | $ |
| Overtime $ | 42.75 | | | | | | | | 0.0 | $ |

| Name | | Regular $ | Overtime $ |
|---|---|---|---|
| Hornsrra, Ralph | Skilled Labor | 28.50 | 42.75 |
| Scales, Al | Skilled Labor | 28.50 | 42.75 |
| Dabbs, David | Skilled Labor | 28.50 | 42.75 |
| Willman, Van | Skilled Labor | 28.50 | 42.75 |
| Sykes, Andre | Skilled Labor | 28.50 | 42.75 |
| Erskine, Jason | Skilled Labor | 28.50 | 42.75 |
| Cole, Edicu | Skilled Labor | 28.50 | 42.75 |
| Gonzalez, David | Skilled Labor | 28.50 | 42.75 |
| Whitley, Phillip | Skilled Labor | 28.50 | 42.75 |
| Pappas, Nick | Skilled Labor | 28.50 | 42.75 |
| Foster, Terrance | Skilled Labor | 28.50 | 42.75 |
| Reed, Charlie | Skilled Labor | 28.50 | 42.75 |
| Chir, Steven | Skilled Labor | 28.50 | 42.75 |
| McKinney, Eric | Skilled Labor | 28.50 | 42.75 |
| Banks, Victor | Skilled Labor | 28.50 | 42.75 |
| Lethridge, Annie | Skilled Labor | 28.50 | 42.75 |
| King, Roy | Skilled Labor | 28.50 | 42.75 |
| Name | Skilled Labor | 28.50 | 42.75 |
| Name | Skilled Labor | 28.50 | 42.75 |
| Name | Skilled Labor | | |

TSA RULE 26 DISCLOSURES
0060

05/10/2006 14:10 FAX 303854210₂  GART SPORTS

| Name | | | |
|---|---|---|---|
| | Regular $ | 28.50 | 0.0 $ |
| | Overtime $ | 42.75 | 0.0 $ |
| Name | | | |
| | Regular $ | 28.50 | 0.0 $ |
| | Overtime $ | 42.75 | 0.0 $ |
| Name | | | |
| | Regular $ | 28.50 | 0.0 $ |
| | Overtime $ | 42.75 | 0.0 $ |
| Name | | | |
| | Regular $ | 28.50 | 0.0 $ |
| | Overtime $ | 42.75 | 0.0 $ |
| Name | | | |
| Skilled Labor | Regular $ | 28.50 | 0.0 $ |
| | Overtime $ | 42.75 | 0.0 $ |
| Name | | | |
| Skilled Labor | Regular $ | 28.50 | 0.0 $ |
| | Overtime $ | 42.75 | 0.0 $ |
| Name | | | |
| Skilled Labor | Regular $ | 28.50 | 0.0 $ |
| | Overtime $ | 42.75 | 0.0 $ |
| Name | | | |
| Skilled Labor | Regular $ | 28.50 | 0.0 $ |
| | Overtime $ | 42.75 | 0.0 $ |
| Name | | | |
| Skilled Labor | Regular $ | 28.50 | 0.0 $ |
| | Overtime $ | 42.75 | 0.0 $ |
| Name | | | |
| Skilled Labor | Regular $ | 28.50 | 0.0 $ |
| | Overtime $ | 42.75 | 0.0 $ |
| Name | | | |
| Skilled Labor | Regular $ | 28.50 | 0.0 $ |
| | Overtime $ | 42.75 | 0.0 $ |
| Name | | | |
| Skilled Labor | Regular $ | 28.50 | 0.0 $ |
| | Overtime $ | 42.75 | 0.0 $ |
| Name | | | |
| Skilled Labor | Regular $ | 28.50 | 0.0 $ |
| | Overtime $ | 42.75 | 0.0 $ |
| Name | | | |
| Skilled Labor | Regular $ | 28.50 | 0.0 $ |
| | Overtime $ | 42.75 | 0.0 $ |
| Name | | | |
| Skilled Labor | Regular $ | 28.50 | 0.0 $ |
| | Overtime $ | 42.75 | 0.0 $ |
| Name | | | |
| Skilled Labor | Regular $ | 28.50 | 0.0 $ |
| | Overtime $ | 42.75 | 0.0 $ |
| Name | | | |
| Skilled Labor | Regular $ | 28.50 | 0.0 $ |
| | Overtime $ | 42.75 | 0.0 $ |

TSA RULE 26 DISCLOSURES
0061

05/10/2006 14:11 FAX 3035642103                 GART SPORTS                                                    ☒031

| Name | Skilled Labor | Regular $ 28.50 | Overtime $ 42.75 | 0.0 $ | 0.0 $ |
|---|---|---|---|---|---|
| Name | Skilled Labor | Regular $ 28.50 | Overtime $ 42.75 | 0.0 $ | 0.0 $ |
| Name | Skilled Labor | Regular $ 28.50 | Overtime $ 42.75 | 0.0 $ | 0.0 $ |
| Name | Skilled Labor | Regular $ 28.50 | Overtime $ 42.75 | 0.0 $ | 0.0 $ |
| Name | Skilled Labor | Regular $ 28.50 | Overtime $ 42.75 | 0.0 $ | 0.0 $ |
| Name | Skilled Labor | Regular $ 28.50 | Overtime $ 42.75 | 0.0 $ | 0.0 $ |
| Name | Skilled Labor | Regular $ 28.50 | Overtime $ 42.75 | 0.0 $ | 0.0 $ |
| Name | Skilled Labor | Regular $ 28.50 | Overtime $ 42.75 | 0.0 $ | 0.0 $ |
| Name | Skilled Labor | Regular $ 28.50 | Overtime $ 42.75 | 0.0 $ | 0.0 $ |
| Name | Skilled Labor | Regular $ 28.50 | Overtime $ 42.75 | 0.0 $ | 0.0 $ |
| Name | Skilled Labor | Regular $ 28.50 | Overtime $ 42.75 | 0.0 $ | 0.0 $ |
| Name | Skilled Labor | Regular $ 28.50 | Overtime $ 42.75 | 0.0 $ | 0.0 $ |
| Name | Skilled Labor | Regular $ 28.50 | Overtime $ 42.75 | 0.0 $ | 0.0 $ |
| Name | Skilled Labor | Regular $ 28.50 | Overtime $ 42.75 | 0.0 $ | 0.0 $ |
| Name | Skilled Labor | Regular $ 28.50 | Overtime $ 42.75 | 0.0 $ | 0.0 $ |
| Name | Skilled Labor | Regular $ 28.50 | Overtime $ 42.75 | 0.0 $ | 0.0 $ |
| Name | Skilled Labor | Regular $ 28.50 | Overtime $ 42.75 | 0.0 $ | 0.0 $ |
| Name | Skilled Labor | Regular $ 28.50 | Overtime $ 42.75 | 0.0 $ | 0.0 $ |
| Name | Skilled Labor | Regular $ 28.50 | Overtime $ 42.75 | 0.0 $ | 0.0 $ |

GART SPORTS

06/10/2006 14:11 FAX 3035642102

| | Regular $ | Overtime $ | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Name — Skilled Labor | 24.50 | 42.75 | | | | | | | | | 0.0 |
| Name — Skilled Labor | 28.50 | 42.75 | | | | | | | | | 0.0 |
| Name — Skilled Labor | 28.50 | | | | | | | | | | 0.0 |
| Labor Ready — Temporary Labor | 17.58 | 26.57 | | | | | | | | | 0.0 |
| Management Fee — Clerical Hours | | | | | | | | | | | 0.0 |
| Total Personnel | | | | | | | | | | | |
| Labor Totals | | | | | | | | | | | 1,897.50 |

TSA RULE 26 DISCLOSURES
0063

05/10/2006 14:11 FAX 3036642102    GART SPORTS

**Code = USA**
**Cost Center # 14007121, Sports Authority**
**Reimbursable Expenses**
**Period Ended 04/02/06**

| | | Mon 03/27 | Tues 03/28 | Wed 03/29 | Thurs 03/30 | Fri 03/31 | Sat 04/01 | Sun 04/02 | Total Charges |
|---|---|---|---|---|---|---|---|---|---|
| Gray, Bruce | perdiem hotel airfare | | $ 30.00 | | | | | | $ 30.00 |
| Castillo, Phillip | perdiem hotel airfare | | | | | | | | $ |
| Pasquel, Shannon | perdiem hotel airfare | | $ 30.00 | $ 30.00 | | | | | $ 60.00 |
| Resnick, Ishmar | perdiem hotel airfare | | | | | | | | $ |
| Tokheim, Taka | perdiem hotel airfare | | | | | | | | $ |
| Linaldson, Paul | perdiem hotel airfare | | | | | | | | $ |
| Hertz Rental | | | | | | | | | $ |
| Subtotal for Reimbursables | | | | | | | | | $ 90.00 |
| Cotton USA Mark-up | | | | | | | | | $ 0.00 |
| Total for Reimbursables | | | | | | | | | $ 90.00 |

TSA RULE 26 DISCLOSURES
0064

05/10/2006 14:11 FAX 3035542102    GART SPORTS    ☑ 034

Cortum USA
Contract # 1498721, Sports Authority
Equipment Summary
Period Ended 04/02/06

| Equipment Description | Unit | Rate | Mon 03/27 | Tues 03/28 | Wed 03/29 | Thurs 03/30 | Fri 03/31 | Sat 04/01 | Sun 04/02 | Total Units | Total Charge |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Air Compressor | Ea | $ | 90.00 | | | | | | | 0 | $ |
| Air Compressor | Ea | $ | 22.50 | | | | | | | 0 | $ |
| Air Movers | Ea | $ | 175.00 | | | | | | | 0 | $ |
| Bobcat | Ea | $ | | | | | | | | 0 | $ |
| Buffer, Floor | Ea | $ | 10.00 | | | | | | | 0 | $ |
| Carpet, Floor | Ea | $ | 20.00 | | | | | | | 0 | $ |
| Cont. TNV Demolition | Ea | $ | 6.60 | | | | | | | 0 | $ |
| Daily 2x30/2x40Yd Dump/Haul/w/Haul | Ea | $ | 85.00 | | | | | | | 0 | $ |
| Dry Cleaning Unit (Portable) | Ea | $ | 45.00 | | | | | | | 0 | $ |
| Electrical Unit, Pedal (Spider Box) | Ea | $ | 45.00 | | | | | | | 0 | $ |
| Extension Cable (25' x 100') | Ea | $ | 45.00 | | | | | | | 0 | $ |
| Extraction Unit (Portable) | Ea | $ | 95.00 | | | | | | | 0 | $ |
| Extraction Unit (Truck) | Ea | $ | 185.00 | | | | | | | 0 | $ |
| Floor Cleaning System (Wash Rabbot) | Ea | $ | 185.00 | | | | | | | 0 | $ |
| Fogger, Thermal (Gas Powered) | Ea | $ | 45.00 | | | | | | | 0 | $ |
| Fogger, ULV/Thermal (Electric) | Ea | $ | 21.66 | | | | | | | 0 | $ |
| Generator (Each Unit) | Ea | $ | 105.00 | | | | | | | 0 | $ |
| HEPA Vacuum (w/Air Scrubbing) | Ea | $ | 105.00 | | | | | | | 0 | $ |
| Dehumidifier (Each Unit) | Ea | $ | | | | | | | | 0 | $ |
| Desiccant Rehumidifier | Ea | $ | 265.00 | | | | | | | 0 | $ |
| Leader, Truck Prasature | Ea | $ | | | | | | | | 0 | $ |
| Large Desiccant System | Ea | $ | 17.00 | | | | | | | 0 | $ |
| Light, Demco/Decon Stand/Setup | Ea | $ | 20.00 | | | | | | | 0 | $ |
| Mop Bucket | Ea | $ | | | | | | | | 0 | $ |
| On Site Acclimation Package | Ea | $ | 25.00 | | | | | | | 0 | $ |
| Ozone Generator | Ea | $ | 55.00 | | | | | | | 0 | $ |
| Padpod Rooms (Cellular) | Ea | $ | 125.00 | | | | | | | 0 | $ |
| Pump, Sump | Ea | $ | 65.00 | | | | | | | 0 | $ |
| Pump, Trash 2" - 4" | Ea | $ | 20.00 | | | | | | | 0 | $ |
| Radio, 2way / 800 Site Comm. | Ea | $ | | | | | | | | 0 | $ |
| Safety Package | Ea | $ | | | | | | | | 0 | $ |
| Personal Fall Protection (PFP) | Ea | $ | 90.00 | | | | | | | 0 | $ |
| Personnel Protection Equipment (PPE) | Ea | $ | 15.00 | | | | | | | 0 | $ |
| Personnel Respiratory Protection (PRP) | Ea | $ | 30.00 | | | | | | | 0 | $ |
| Small Tools Charge | Ea | $ | 10.00 | | | | | | | 0 | $ |
| Sprayer, Airless | Ea | $ | 90.00 | | | | | | | 0 | $ |
| Steel Box Tool | Ea | $ | | | | | | | | 0 | $ |
| Trailer (Freezer) | Ea | $ | 125.00 | | | | | | | 0 | $ |
| Trailer (Freezer) | Ea | $ | 65.00 | | | | | | | 0 | $ |
| Trailer (18' - 20') | Ea | $ | | | | | | | | 0 | $ |
| Trailer 36' | Ea | $ | 50.00 | | | | | | | 0 | $ |
| Trailer 14x32 | Ea | $ | 55.00 | | | | | | | 0 | $ |
| Trailer (Office Trailer) | Ea | $ | 105.00 | | | | | | | 0 | $ |
| Truck 24 ft | Ea | $ | 125.00 | | | | | | | 0 | $ |
| Truck Box | Ea | $ | 95.00 | | | | | | | 0 | $ |
| Directional Bulk Agent | Ea | $ | 245.00 | | | | | | | 0 | $ |
| Vacuum (Trash/Slurry) | Ea | $ | 65.00 | | | | | | | 0 | $ |
| Vacuum, HEPA | Ea | $ | 85.00 | | | | | | | 0 | $ |
| Welding, PENETPITI | Ea | $ | 125.00 | | | | | | | 0 | $ |
| Van, Charge / Company Owned | Ea | $ | 25.00 | | | | | | | 0 | $ |
| Company Owned Vehicles | Ea | $ | 70.00 | | | | | | | 0 | $ |
| Water Fork Lane | Ea | $ | | | | | | | | 0 | $ |
| Waser Pik, Seal | Ea | $ | 25.00 | | | | | | | 0 | $ |
| Wasler High Pressure (CRM) | Ea | $ | 75.00 | | | | | | | 0 | $ |

TSA RULE 26 DISCLOSURES
0065

| Washer, High Pressure (Ea) | Unit | Rate | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Ea | $ | 195.00 | | | | | $ |
| Drinks Dispenser/Distributor | Ea | $ | | | | | | $ |
| Thermo Covers | Ea | $ | | | | | | $ |
| Dehumidification Unit: 200 cfm | Ea | $ | 225.00 | | | | 0 | $ |
| Dehumidification Unit: 300 cfm | Ea | $ | 165.00 | | | | 0 | $ |
| Dehumidification Unit: 501 cfm | Ea | $ | 185.00 | | | | 0 | $ |
| Dehumidification Unit: 1125 cfm | Ea | $ | 420.00 | | | | 0 | $ |
| Dehumidification Unit: 1000/2150 cfm | Ea | $ | 675.00 | | | | 0 | $ |
| Dehumidification Unit: 4500 cfm | Ea | $ | 1,195.00 | | | | 0 | $ |
| Dehumidification Unit: 9000/19000 cfm | Ea | $ | 1,795.00 | | | | 0 | $ |
| HX Unit: 20/25 Ton | Ea | $ | 815.00 | | | | 0 | $ |
| Electric/Fan | Ea | $ | 725.00 | | | | 0 | $ |

Total for Equipment                                                $

TSA RULE 26 DISCLOSURES
0066

05/18/2006 14:12 FAX 3038842102

GART SPORTS

Chem USA
Contract # 1408781 Sports Authority
Consumables Summary
Period Ended 04/02/06

| Description | Unit | Rate | Mon 03/27 | Tue 03/28 | Wed 03/29 | Thurs 03/30 | Fri 03/31 | Sat 04/01 | Sun 04/02 | Total Usage | Total Charges |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Carpet Degreaser | Gal | 77.63 | | | | | | | | 0.0 | $ |
| Abrasive Renewer | Gal | 14.83 | | | | | | | | 0.0 | $ |
| Alcohol Isopropyl | Gal | 32.00 | | | | | | | | 0.0 | $ |
| Cleaner Stainless Steel | Gal | 19.91 | | | | | | | | 0.0 | $ |
| Cleaner Carpet (Liquid) | Lb | 2.50 | | | | | | | | 0.0 | $ |
| Shampoo Carpet (Powder) | Gal | 12.00 | | | | | | | | 0.0 | $ |
| Cleaner Glass | Gal | 22.10 | | | | | | | | 0.0 | $ |
| Cleaner's Hand Soap | Gal | 17.25 | | | | | | | | 0.0 | $ |
| Disc Soap (Open) | Gal | 11.15 | | | | | | | | 0.0 | $ |
| Degrease & Septic Digester | Gal | 29.75 | | | | | | | | 0.0 | $ |
| Dust Soap | Gal | 33.00 | | | | | | | | 0.0 | $ |
| Nylon Pad | | | | | | | | | | | |
| Cleaner HVAC Coil | Gal | 19.00 | | | | | | | | 0.0 | $ |
| Deodorizer | Lb | 19.01 | | | | | | | | 0.0 | $ |
| Deodorizing Gel | Ea | 34.00 | | | | | | | | 0.0 | $ |
| Deodorizing Liquid | Ea | 34.25 | | | | | | | | 0.0 | $ |
| Deodorizing Block | Ea | 2.79 | | | | | | | | 0.0 | $ |
| Disinfectant Blocks | Gal | 33.00 | | | | | | | | 0.0 | $ |
| Disinfectant Bleach | Gal | 5.25 | | | | | | | | 0.0 | $ |
| Bleach | Ea | 6.25 | | | | | | | | 0.0 | $ |
| Thermal Fog | Gal | | | | | | | | | 0.0 | $ |
| Furniture Polish | Ea | 25.13 | | | | | | | | 0.0 | $ |
| Goof Off | | | | | | | | | | | |
| Lubricant | Gal | 31.10 | | | | | | | | 0.0 | $ |
| Lubricant (Electrical) | | 19.90 | | | | | | | | | |
| Lubricant, Machinery | | 8.25 | | | | | | | | | |
| Preserve, light | Lb | | | | | | | | | | |
| Long Term Preserve, heavy | Ea | | | | | | | | | | |
| Metal Polishing Paste | | | | | | | | | | | |
| Stainless Steel Polish | Gal | 91.60 | | | | | | | | 0.0 | $ |
| Floor Buff/Burn/ Renewers | Gal | 30.00 | | | | | | | | 0.0 | $ |
| Complex Cleaner | | | | | | | | | | | |
| Degreaser | Gal | 41.00 | | | | | | | | 0.0 | $ |
| Sealant | Gal | 65.00 | | | | | | | | 0.0 | $ |
| Duct Sealant Spray | Gal | 33.00 | | | | | | | | 0.0 | $ |
| Pool Sealant (non-laminated) | Gal | 10.03 | | | | | | | | 0.0 | $ |
| Sink Sealant Dispenser | Gal | 22.00 | | | | | | | | 0.0 | $ |
| Sink Sealant Chart Dispenser | Ft | 12.00 | | | | | | | | 0.0 | $ |
| Shower Squeeze/Thru Cleaner | Cas | 5.74 | | | | | | | | 0.0 | $ |
| Spray Adhesive | | | | | | | | | | | |
| Mineral Digestion | Ea | 3.00 | | | | | | | | 0.0 | $ |
| Rings, Acid Blade | Ea | 28.00 | | | | | | | | 0.0 | $ |
| Brick, Thick | Ea | 1.95 | | | | | | | | 0.0 | $ |
| Brick, Trash Environmental-Gel | Ea | 2.65 | | | | | | | | 0.0 | $ |
| Boy Product Dry | Ea | 2.65 | | | | | | | | 0.0 | $ |
| Bare Tank Pads | Ea | 87.50 | | | | | | | | 0.0 | $ |
| Paper Compound | Ea | 10.00 | | | | | | | | 0.0 | $ |
| Blank, Dispensing - Large | Ea | 41.00 | | | | | | | | 0.0 | $ |
| Rinsh, Dispensing Small | Ea | 9.00 | | | | | | | | 0.0 | $ |
| Nylon Loop Handler Sanic | Ea | 9.00 | | | | | | | | 0.0 | $ |
| Rinsh, Hose Cleaner | Ea | 8.00 | | | | | | | | 0.0 | $ |
| Rinsh, Hose Cleaner | Ea | 8.00 | | | | | | | | 0.0 | $ |
| Desk Lev Dial (500) | Ea | 375.00 | | | | | | | | 0.0 | $ |

TSA RULE 26 DISCLOSURES
0067

05/10/2006 14:13 FAX 303854210.   GART SPORTS   ☑ 037

| Item | Unit | Price | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Dust Mask, HEPA (RES2P100) | Ea | $ 8.00 | | | | | | 0.0 | $ |
| Dust Mask | Bx | $ 24.90 | | | | | | 0.0 | $ |
| Filter Material | Rl | $ 65.00 | | | | | | 0.0 | $ |
| Filter Secondary | Ea | $ 3.40 | | | | | | 0.0 | $ |
| Pre Filter | Ea | $ 3.15 | | | | | | 0.0 | $ |
| Furniture Blocks | Bx | $ 71.00 | | | | | | 0.0 | $ |
| Furniture Pads | Ea | $ 84.00 | | | | | | 0.0 | $ |
| Gloves, Cotton | Pr | $ 1.75 | | | | | | 0.0 | $ |
| Gloves, Surgical Latex | Bx | $ 18.00 | | | | | | 0.0 | $ |
| Gloves, Work/ Rubber/ Chemical | Pr | $ 5.35 | | | | | | 0.0 | $ |
| Hog Rings | Bx | $ 15.00 | | | | | | 0.0 | $ |
| Jewellers Tape | Rl | $ 93.00 | | | | | | 0.0 | $ |
| Lamp Black | Ea | $ 3.15 | | | | | | 0.0 | $ |
| Paint Cleaner/ Solvent, area (950) | Bx | $ 20.00 | | | | | | 0.0 | $ |
| Paint Cleaner/ Solvent, area (950) | Rl | $ 72.00 | | | | | | 0.0 | $ |
| Paint Stripper (Paint) | Rl | $ 14.25 | | | | | | 0.0 | $ |
| Polisher/ Buffer (50 to 70) | Pkg | $ 24.00 | | | | | | 0.0 | $ |
| Quick/ Test Strips (per 10) | Ea | $ 1.80 | | | | | | 0.0 | $ |
| Schedule Root Removal | Ea | $ 5.95 | | | | | | 0.0 | $ |
| Schwartz Drain w/ Trigger | Rl | $ 7.00 | | | | | | 0.0 | $ |

TSA RULE 26 DISCLOSURES
0068

05/10/2006 14:18 FAX 3038842102

GART SPORTS

| Total for Consumables | | | Mon 03/27 | Tues 03/28 | Wed 03/29 | Thurs 03/30 | Fri 03/31 | Sat 04/01 | Sun 04/02 | Total Charge |
|---|---|---|---|---|---|---|---|---|---|---|
| Tape, Blue | R1 | $ 9.27 | | | | | | | 0.0 | |
| Tape, HVAC (Aluminum) | R1 | $ 21.66 | | | | | | | 0.0 | |
| Tape, Poly Box | R1 | $ 1.60 | | | | | | | 0.0 | |
| Tarp | Ea | $ 8.24 | | | | | | | 0.0 | |
| Dymo Rolls | Ea | $ 7.12 | | | | | | | 0.0 | |
| Wipes, Cotton Cloth | Ea | $ 4.55 | | | | | | | 0.0 | |
| Wipes, Lint Free | Box | $ 25.00 | | | | | | | 0.0 | |
| Wipes, Soap | R1 | $ 12.00 | | | | | | | 0.0 | |
| Wipes, Wipe All | Pkg | $ 9.00 | | | | | | | 0.0 | |
| Wrap, Bubble/ Anti Static | R1 | $ 64.13 | | | | | | | 0.0 | |
| Wrap, Shrink | R1 | $ 49.00 | | | | | | | 0.0 | |

Cabela USA
Contract # 105721; Sports Authority
Vendors (Subcontractors) Summary
Period Ended 04/2/06

Handheld Materials (Petty Cash & Credit Card Control)

| | Mon 03/27 | Tues 03/28 | Wed 03/29 | Thurs 03/30 | Fri 03/31 | Sat 04/01 | Sun 04/02 | Total Charge |
|---|---|---|---|---|---|---|---|---|
| Lowe - Fuel | $ 136.30 | | | | | | | 136.30 |
| Conoco - Fuel | $ 94.97 | | | | | | | 94.97 |

TSA RULE 26 DISCLOSURES
0069



**COTTON USA**
*National Disaster Recovery Services*
RESTORATION SERVICE AGREEMENT

STORE # 618

EFFECTIVE DATE OF AGREEMENT: MARCH 14TH 2006

CUSTOMER: THE SPORTS AUTHORITY

BILLING ADDRESS: 1050 W. HAMPDEN AVE

INSURANCE COMPANY: Liberty Mutual        CLAIM NO. XL9A-003155

PROPERTY ADDRESS ("Property"): 3211 VETERANS PARKWAY (SPRINGFIELD, IL)

TYPE OF LOSS (Fire/Water/Other): TORNADO DAMAGE

Cotton Commercial USA, L.P. d/b/a Cotton USA ("Cotton"), a Texas limited partnership, and the Customer agree as follows:

### ARTICLE I.
### CONTENTS OF AGREEMENT AND ASSIGNABILITY

**Section 1.1**    Nature of Agreement. This Agreement is a contract for restoration services between Cotton and the Customer, with the scope of services ("Work") to be provided as described in the written estimate ("Estimate") that will be provided by Cotton to the Customer and Customer's Insurance Company. This Agreement, the Estimate and all addenda issued prior to and all modifications issued after execution of this Agreement, constitute the entire agreement between Cotton and the Customer. The Customer shall not assign this Agreement without the prior written consent of Cotton. Cotton shall provide to the Customer certificate(s) of insurance upon request.

### ARTICLE II.
### DUTIES, COOPERATION AND AUTHORIZATION

**Section 2.1**    Services and Materials Provided. Cotton agrees to furnish all labor, supervision, materials, equipment, tools, supplies, subcontract work and services, which in Cotton's sole discretion is reasonably necessary to timely and fully perform and complete the Work in a good and workmanlike manner.

**Section 2.2**    Cooperation By Customer / Term of Agreement. The Customer agrees to cooperate with Cotton in the performance of the Work, and such duty shall last until completion of the Work, and the Customer agrees to fully cooperate with Cotton as is reasonably required by Cotton for completion of the Work.

**Section 2.3**    Removal of Contents. The Customer authorizes Cotton to remove contents and non-fixture parts of the building as necessary in accordance with the scope of work for the purposes of safekeeping, inventory, testing and/or appraisal of damages, cleaning of contents offsite, and such other purposes reasonably related to completing the Work. However, Cotton requires Customer (or Customer's tenant) to remove and secure all valuables and fragile items.

**Section 2.4**    Subcontractors Allowed. As Cotton is an independent general contractor, Cotton has exclusive authority to sub-contract and to utilize other contractors, as it deems necessary for completion of the Work. The Customer is hereby obligated to allow Cotton to sub-contract and to utilize other contractors, as it deems necessary for completion of the Work.

**Section 2.5**    Insurance. Cotton shall provide to the Customer certificate(s) of insurance upon request.

**Section 2.6**    Permits. Any federal, state or local permits or consents required for the performance of the Work are the responsibility of the Customer (notwithstanding Cotton assistance of Customer in obtaining same) and Customer shall bear all costs related to same.

**Section 2.7**    Hazardous Materials. Disposal of any Hazardous Materials (including specimens or samples) or any property that contains Hazardous Materials performed as a part of the Work will be made in the name of the Customer and under any applicable generator number or other identification assigned by the Customer or the applicable governmental authority.

**Section 2.8**    Authority of Customer. The Customer and the person signing below ("Signing Party") on behalf of Customer hereby represent and warrant that one of the following is true: (i) Customer is the absolute fee simple owner of the real property (the "Property") upon which the Work is to be performed and the Signing Party is an officer of Customer who is duly authorized to execute this Agreement on Customer's behalf and to bind Customer under the terms of this Agreement or (ii) Customer is the agent of the absolute fee simple owner of the Property, whose identity and contact information will be disclosed to Cotton upon Cotton's request for same, under a written property management agreement (or other written instrument) that will be provided to Cotton for inspection upon Cotton's request for same, and the Signing Party is an officer of Customer who is fully authorized to execute this Agreement on Customer's (and the absolute fee simple owner's) behalf and to bind Customer (and the absolute fee simple owner) under the terms of this Agreement.

1

TSA 00297

ARTICLE III.
TIME FOR PERFORMANCE OF WORK

Section 3.1     Work Performed. The Work shall be commenced within forty-eight (48) hours (or as soon as practical given the specifications of the Work) following execution of this Agreement and Cotton shall use reasonable efforts to substantially or fully complete the Work within a reasonable amount of time after beginning the Work. Should Cotton be delayed, hindered, interfered with or impeded by any act or omission of the Customer, or by any cause beyond Cotton's control and not a result of the delay, hindrance, interference or impediment not due to any act or omission of Cotton, then Cotton shall be entitled to a reasonable extension of time for completion of the Work.

ARTICLE IV.
CUSTOMER'S PAYMENT OF FEES AND COSTS

Section 4.1     Pricing and Invoicing. All work performed hereunder shall be priced at:

          Lump Sum Amount (See Estimate)

OR

    ✓     Time and Materials (See Rate Schedule)

The Customer shall pay Cotton an initial deposit of $ _____ as a condition to Cotton beginning performance of the Work contemplated by this Agreement. After the Work is begun, the Customer will receive progressive billings ("Invoices") for the Work performed for Customer lasting one month or more, unless more frequent billing is appropriate as determined in Cotton's sole discretion. All fees and costs ("Charges") as reflected on the Invoice shall be due fifteen (15) days after the date of the Invoice. There will be a service charge on all or any portion of the Charges reflected on the Invoice, which are not paid within thirty (30) days of the invoice date ("Delinquency") is reflected on the Invoice. Cotton shall submit to the Customer the final Invoice; provided, however, that delivery of such property and contents shall not be made until Cotton has received payment on such final Invoice and Customer has paid in full all previous Invoices (and any services charge accrued thereon) and there remains no Delinquency. The Customer agrees to pay Cotton in full for all Charges upon the receipt of an Invoice and agrees to be legally responsible for such payment regardless of whether the Customer is entitled to coverage or reimbursement from its insurance carrier or any third party. The cumulative sum of all Charges incurred by the Customer hereunder shall be considered the "Contract Price".

Section 4.2     Change Orders. Any modifications or change orders with respect to this Agreement shall be agreed to in writing by Cotton and the Customer and shall take effect upon execution of such modification or change order by Cotton and the Customer.

Section 4.3     Direct Pay Authorization. This Agreement shall serve as Customer's consent to its property and casualty insurance carrier to pay Cotton directly with respect to any amounts claimed by the Customer under any insurance policy covering the property that is the subject of the Work.

ARTICLE V.
MOLD REMEDIATION WORK; INDEMNIFICATION

Section 5.1     Mold Remediation Work. With respect to any portion of the Work to be performed by Cotton that involves the remediation of mold ("Mold Remediation Work"), Customer agrees as follows:

     (a) Testing. Customer shall engage the services of a person or firm ("Mold Expert") specializing in the investigation, testing and analysis of mold spores and microbial contamination ("Mold") occurring within buildings and other structures of a like-kind and nature as the project site and shall have the Mold Expert test the Site for microbial contamination prior to commencement of the Mold Remediation Work. The scope of the Mold Remediation Work will be specified in a mold analysis report ("Report") that the Customer receives from the Mold Expert. The Customer shall be solely responsible for having the Mold Expert test ("Pretest") the Property for Mold prior to commencement of the Work and preparing the Report. In performance of the Mold Remediation Work, Cotton will not be required to perform any testing or analysis of the site. Cotton will perform the Mold Remediation Work to substantial completion in keeping with the specifications of the Report, and after notice by Cotton to Customer of substantial completion of the Mold Remediation Work (or portion/phase thereof), Customer shall cause the Mold Expert to again test ("Post-test") the site (or portion/phase thereof).

     (b) Work Completion. Customer acknowledges that mold spores are naturally occurring substances and that after the Mold Remediation Work is substantially complete, the site may still contain traces of Mold or other microbial elements. Notwithstanding, once the Mold Expert completes the Post-test and provides Customer with a statement that the Mold at the site (or portion/phase of the site tested) has been remediated to within acceptable industry standards or limits, Cotton's Mold Remediation Work shall be deemed fully complete as to the site (or portion/phase of the site tested), and going forward, Customer assumes all risks as to the site (or portion/phase of the site tested) with respect to the presence of Mold and other microbial elements, and Cotton will have no further obligation or liability to Customer with respect to the Mold Remediation Work at the site (or portion/phase of the site tested). In the event that Post-test is not performed at the site (or any portion/phase thereof), the Mold Remediation Work shall be deemed fully complete as to the site (or portion/phase thereof) at such time that Cotton notifies Customer of substantial completion of the Mold Remediation Work.

Section 5.2     Release. CUSTOMER HEREBY RELEASES AND AGREES TO HOLD HARMLESS COTTON, ITS PARENT, AFFILIATE AND SUBSIDIARY COMPANIES, AND THEIR RESPECTIVE OFFICERS, DIRECTORS,

*(handwritten)* PHASE 1

*(handwritten)* EMERGENCY SERVICES

2

EMPLOYEES, SHAREHOLDERS PARTNERS, MEMBERS, MANAGERS, AND AGENTS FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, LOSSES, DAMAGES, CAUSES OF ACTION, SUITS, JUDGMENTS, AWARDS, COSTS AND EXPENSES, INCLUDING REASONABLE ATTORNEYS' FEES AND RELATED FEES OF EVERY KIND OR CHARACTER (COLLECTIVELY REFERRED TO AS DAMAGES) IN RESPECT OF PERSONAL OR BODILY INJURY TO, SICKNESS, DISEASE, DEATH OR OTHER DAMAGES SUFFERED OR INCURRED BY CUSTOMER AND/OR THE CUSTOMER'S EMPLOYEES, OFFICERS, DIRECTORS, SHAREHOLDERS OR AGENTS, OR THOSE OF ITS PARENT, AFFILIATE AND SUBSIDIARY COMPANIES RESULTING OR ARISING FROM OR ARISING OUT OF OR IN CONNECTION WITH THE WORK DONE BY COTTON UNLESS THE DAMAGES RESULT FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF COTTON. IT IS THE INTENT OF BOTH COTTON AND CUSTOMER THAT THE FOREGOING INDEMNITY PROVISIONS WILL OPERATE WITHOUT REGARD TO ANY LEGAL THEORY OF NEGLIGENCE OR FAULT, INCLUDING BUT NOT LIMITED TO JOINT AND/OR CONCURRENT NEGLIGENCE OF THE INDEMNITEE.

**Section 5.3**   No Consequential Damages. Customer agrees that under no circumstance shall Cotton be liable to the Customer for incidental, consequential or special damages, including but not limited to lost revenue, lost profits, lost business, business interruptions, lost business opportunities or any other special, punitive, exemplary or consequential damages.

## ARTICLE VI.
## TERMINATION

**Section 6.1**   Termination By Cotton. Cotton has the right to terminate the Agreement at any time and to be paid the reasonable value of the Work thus far performed.

**Section 6.2**   Termination By Customer. In the event the Customer terminates the Agreement, the Customer shall be legally responsible to pay Cotton the for all Charges up to and including the date of such termination, regardless of whether Customer has received a Invoice for such Charges prior to such termination.

## ARTICLE VII
## DISPUTE RESOLUTION

**Section 7.1**   Non-binding Mediation.  Any controversy, dispute or claim arising out of this Agreement or the Work done hereunder (which can not be amicably resolved by senior management representatives of Cotton and the Customer), shall first be submitted to non-binding mediation. Both parties shall share equally in the expense of such mediation in which a non-interested mediator shall serve to facilitate the resolution of the dispute. If such controversy, dispute or claim can not be settled or resolved by non-binding mediation, either party may then submit such dispute for resolution by binding arbitration in accordance with the terms of this Article VII, provided, however, that in circumstances where equitable (non-monetary) relief is sought, such dispute may be submitted to a court of competent jurisdiction sitting in equity who may issue injunctive relief or other equitable remedy.

**Section 7.2**   Attorneys' Fees and Costs. If any legal action or other legal proceeding relating to the enforcement of any provision of this Agreement is brought against either party, including arbitration, the prevailing party shall be entitled to recover reasonable attorneys' fees, costs and disbursements (in addition to any other relief to which the prevailing party may be entitled).

## ARTICLE VIII.
## GOVERNING LAW; VENUE

**Section 8.1**   Jurisdiction. This Agreement shall be construed in accordance with the laws of the State of Texas, without giving effect to conflict of laws.

**Section 8.2**   Venue. In any legal action relating to this Agreement, the Customer agrees (a) to the exercise of jurisdiction over it by a state or federal court in the County in which the work is performed; provided, however, that the requirement to arbitrate all controversies, disputes and claims arising under this Agreement shall supercede the provisions of this paragraph.

COTTON:                                                    CUSTOMER:

By: JEFF KRONE                                             By: _____
Name: Jeff Krone                                           Name: _____
Title: Regional Director                                   Title: _____
Date Signed: 3-14-06                                       Date Signed: _____

Commercial Restoration Services - USA (Rev. 6-2005)

8

Jeff Krone

Mike Mavelle

From: Jeff Krone [jeffk@cottonteam.com]
Sent: Monday, March 20, 2006 8:39 AM
To: Thomas.Tiernan@LibertyMutual.com
Cc: Mike Mavelle

Jeff Krone
National Restoration Director
Cotton USA

5432-A Crenshaw St.
Tampa, FL. 33634

Bus: 813-887-3942
Cell: 813-299-7489
Fax: 813-887-3943

24hr call center: (877) 511-2962

jeffk@cottonteam.com

Please visit our website @
www.cottoncompanies.com

**TOM & MIKE-**

HER IS THE SCOPE OF WORK FOR THE STORE IN SPRINGFIELD, IL

PLEASE REVIEW AND LET ME KNOW IF YOU HAVE ANY QUESTIONS. MIKE I AM GOING TO SEND YOU A INITIAL DRAW REQUEST IN THE AMOUNT OF $100,00.00. I HAVE SPOKE TO TOM AND LET HIM KNOW I WAS GOING TO REQUEST THIS SO HE COULD TAKE IN ACCOUNT IS WOULD BE ASKING FOR IT.

THANKS GUYS PLEASE DON'T HESITATE TO CALL WITH ANY QUESTIONS-PROGRESS IS STILL MOVING FULL SPEED AHEAD AND PLAN TO BE BACK ON SITE THIS THURSDAY FOR A WALK THU.

THANKS AGAIN
JEFF KRONE

*Sent To D. Frich  3-20-06*

TSA 00300



National Disaster Recovery Services

<Attachment A>

DATE: 3-14-06

TO:   MIKE MAVELLE – THE SPORTS AUTHORITY VP OF RISK MANAGEMENT
      DAVID FRIEDER – THE SPORTS AUTHORITY VP OF CONSTRUCTION
      TOM TIERNAN – LIBERTY MUTUAL EXECUTIVE GENERAL ADJUSTER

FROM: JEFF KRONE

RE: TORNADO DAMAGE TO STORE # 618

Cotton viewed the CATASTROPHIC loss located at 3211 VETERANS PARKWAY in SPRINGFIELD, IL. Mike Mavelle of THE SPORTS AUTHORITY requested the site inspection.

The following information is respectfully submitted as our view of the necessary services required restoring the structure and contenting to their pre-loss or better condition. The following material is presented in an order that insures all affected areas are properly addressed from a procedural point of view. The chronological sequence of events, in which these procedures will be performed, is discussed later in this proposal under Critical Path Management Program (CPM). The Scope of Service is broken into the following general areas of concern.

**SCOPE OF WORK:**

- *BRIEF SCENARIO OF THE LOSS:  ON 3-12-06 A TORNADO TOUCHED DOWN IN THE VICINITY OF THE SPORTS AUTHORITY LOCATED IN SPRINGFIELD, ILLINOIS. THE TORNADO CAUSED EXTENSIVE DAMAGE TO SEVERAL AREAS OF THE STORE. THE SOUTHWEST CORNER OF THE ROOF HAS BEEN COMPROMISED TO THE EXTEND OF A 30 X 50 FT SECTION WAS DESTROYED. EXTENSIVE FLOODING WAS CAUSED DUE TO THE OUTSIDE ELEMENTS ALONG WITH A RUPTURED WATER LINE. COTTON USA WAS CALLED IN TO PERFORM EMERGENCY SERVICES ALONG WITH SECURING THE BUILDING FROM A SECURITY AND A LIFE HEALTH SAFETY ASPECT.*

- *BELOW IS A DETAILED SCOPE OF WORK THAT WAS WALKED AND APPROVED BY JEFF KRONE- COTTON USA, TOM TIERNAN-LIBERTY MUTUAL & MIKE MAVELLE- THE SPORTS AUTHORITY. THIS SCOPE WILL BE BROKEN OUT INTO A PER AREA BASIS OF THE STORE.*

**CRITICAL ITEMS:**

- □ *COTTON WILL PROVIDE SAFETY MEETING DAILY. ALL MEETING WILL BE LOGGED FOR ASHA COMPLIANCE.*
- □ *LIFE, HEATH, SAFETY ISSUES WILL BE ENFORCED. THE SITE HAS BEEN DEEMED A CONSTRUCTION SITE.*
- □ *COTTON WILL PROVIDE ALL LABOR TO PERFORM EMERGENCY SERVICES.*
- □ *WEARING A COTTON LOGGED SHIRT WILL IDENTIFY ALL COTTON EMPLOYEES.*
- □ *DAILY MEETINGS WILL BE PERFORMED BY COTTON'S ON SITE PROJECT MANGER (BRUCE GEAR) AND A REPRESENTATIVE OF JONES-BLYTHE CONSTRUCTION COMPANY TO HAVE UP-DATE MEETINGS SO COTTON CAN INFORM THE POWERS TO BE ON THE PROGRESS OF THE BUILDING AND COTTONS PROGRESS.*
- □ *PORTABLE GENERATORS WILL BE UTILIZED TO RUN TEMPORARY LIGHTING IN THE STORE*
- □ *TRADK LIGHTS WILL BE PLACED THROUGHOUT THE FACILITY.*
- □ *COTTON WILL WORK HAND-IN-HAND WITH THE BUILDING CONTRACTOR IN THE BEST INTEREST OF THE SPORTS AUTHORITY*
- □ *COTTON WILL ALSO WORK WITH THE SALVAGE COMPANY TO HELP GET ALL CONTENTS FROM POINT A TO POINT B IF NEEDED.*
- □ *COTTON WILL PROVIDE (3) PORTABLE STORAGE CONTAINERS FOR STORAGE OF THE UN-DAMAGED RACKS*
- □ *COTTON WILL COORDINATE A STRUCTURAL ENGINEER TO HELP EVALUATE THE STRUCTURE IN THE BEST INTEREST OF LIBERTY MUTUAL AND THE SPORTS AUTHORITY*

TSA 00301



> DUE TO THE EXTENSIVE CONTENTS AND THE HIGH PROFILE NATURE OF THIS LOSS COTTON
> AND LIBERTY MUTUAL CAME TO THE AGREED UPON DEHUMIDIFICATION SCOPE TO HELP DRY
> THE STRUCTURE OF THE BUILDING AND TO HELP CLIMATIZE AND PROTECT ALL THE UN-
> DAMAGED PRODUCT REMAINING IN THE STORE.

INSTALL THE FOLLOWING: (FRONT OF THE STORE)

> (2) 5000 CFM DESICCANTS
> (35) PORTABLE AIR MOVERS TO HELP FACILITATE DRYING
> INSTALL LAY-FLAT DUCTING TO HELP DISTRIBUTE AIR FLOW. ALL LAY-FLAT WILL BE
> SUSPENDED FROM THE CEILING.
> INSTALL (Y) ADAPTORS TO SPLIT DUCTING TO COVER FRONT LEFT, FRONT RIGHT, AND MIDDLE
> OF THE STORE.
> FLEX DUCTING WILL BE INSTALLED FROM THE DESICCANT TO THE BUILDING
> HOLES WILL BE CUT OUT OF THE PLYWOOD TO TUNNEL IN THE DESICCANT DRY AIR.
> INSTALL (1) 320KW GENERATOR TO RUN BOTH DESICCANTS
> INSTALL JUNCTION BOXES WITH QUAD BOXES TO DISTRIBUTE POWER THROUGHOUT THE
> STORE TO RUN PORTABLE DRYING EQUIPMENT TO INCLUDE AIR MOVERS AND PORTABLE
> DEHUMIDIFIERS WHERE DESICCANTS CANNOT PROVIDE DRYING.
> COTTON WILL COORDINATE FUELING SCHEDULE FOR GENERATORS
> EXTENSION CORDS WILL BE UTILIZED FOR PORTABLE AIR MOVERS AND DEHUMIDIFIERS.

INSTALL THE FOLLOWING: (BACK OF THE STORE)

> (2) 5000 CFM DESICCANTS
> (35) PORTABLE AIR MOVERS TO HELP FACILITATE DRYING
> INSTALL LAY-FLAT DUCTING TO HELP DISTRIBUTE AIR FLOW. ALL LAY-FLAT WILL BE
> SUSPENDED FROM THE CEILING.
> INSTALL (Y) ADAPTORS TO SPLIT DUCTING TO COVER BACK LEFT, BACK RIGHT, AND MIDDLE
> OF THE STORE.
> FLEX DUCTING WILL BE INSTALLED FROM THE DESICCANT TO THE BUILDING
> HOLES WILL BE CUT OUT OF THE PLYWOOD TO TUNNEL IN THE DESICCANT DRY AIR FROM THE
> NORTH DOORWAY TO THE WAREHOUSE AREA.
> INSTALL (1) 320KW GENERATOR TO RUN BOTH DESICCANTS
> INSTALL JUNCTION BOXES WITH QUAD BOXES TO DISTRIBUTE POWER THROUGHOUT THE
> STORE TO RUN PORTABLE DRYING EQUIPMENT.
> EXTENSION CORDS WILL BE UTILIZED FOR PORTABLE AIR MOVERS
> COTTON WILL COORDINATE FUELING SCHEDULE FOR GENERATORS

EXTERIOR OF THE STORE

> CLEAN ALL THE DEBRIS DISPOSE INTO COTTON PROVIDED DUMPSTERS
> SWEEP UP ALL THE GLASS FROM FRONT OF STORE
> ROPE OFF WITH CAUTION TAPE THE PERIMETER OF THE BUILDING TO KEEP TRAFFIC DOWN TO
> A MINIMUM

ROOF

> COTTON WILL EVALUATE THE ROOFTOP FOR DAMAGE. COTTON TO COORDINATE WITH (EFI-
> GLOBAL) ON INSPECTION.
> COTTON WILL EVALUATE ALL THE ROOFTOP UNITS.
> COTTON TO HELP SEAL OFF THE HOLE IN THE CORNER OF THE ROOF FOR CLIMITIZATION
> PURPOSES.
> COTTON WILL BUILD A BARRIER IN THE EXERCISE AREA TO HELP ELIMINATE AND MOISTURE.

FITNESS AREA EXERCISE

> SEAL OFF THIS AREA WITH CAUTION TAPE FOR LIFE HEALTH SAFETY ISSUES.
> ALL PERSONNEL ENTERING THIS AREA IS REQUIRED TO WEAR ALL SAFETY EQUIPMENT:
>    □ HARD HATS
>    □ EYE GLASSES
>    □ DUST MASKS

- STEEL TOED SHOES
  - EAR PROTECTION
- CUT DOWN ALL HANGING DEBRIS
  - FLORESCENT LIGHTS
  - CONDUIT LINES
  - MONITORS
  - CAB SPRINKLER LINES
  - ELECTRICAL LINES
  - SPORT AUTHORITY SIGNAGE
  - PARTS OF THE ROOF DECKING
- UTILIZE KNUCKLE BOOM AND SCISSOR LIFTS TO CUT HANGING DEBRIS
- WET VAC ALL STANDING WATER
- TARP CORNER OF DEPARTMENT TO HELP SEAL OFF TO THE OUTSIDE ELEMENTS
- REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
- REMOVE AND DISCARD THE RUBBER MATTING
- SCRAPE ALL REMAINING GLUE FROM THE SLAB
- REMOVE ALL THE SATURATED SHEETROCK AND ANY ADDITIONAL SHEETROCK THAT WILL ALLOW ASSESSMENT OF POTENTIALLY DAMAGED CINDER BLOCK WALL THAT IS COMMON TO GORDMANS DEPARTMENT STORE.
- HEPA VAC ALL DUST DEBRIS PARTICLES
- REMOVE AND DISCARD ALL AFFECTED INSULATION
- MANIPULATE ALL THE EXERCISE EQUIPMENT AWAY FROM THE DAMAGED AREA
- REMOVE ALL THE RUBBERIZED ISLES WITH SCRAPPERS
- DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE
- WORK WITH REGIS ON THE INVENTORY COUNTING
- WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.
- UTILIZE THE ABOVE DRYING SCOPE
- TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
- DAILY MOISTURE LOGS WILL BE REQUIRED

- ❖ *THESE CONTENTS ARE TO BE SALVAGED DAMAGED DUE TO GLASS SHARDS SPREAD THROUGHOUT THE STORE.*

**FIELD SPORTS**

- MANIPULATE ALL THE CONTENTS AWAY FROM THE DAMAGED AREA
- WET VAC ALL STANDING WATER
- REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
- REMOVE AND DISCARD THE RUBBER MATTING
- REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
- SCRAPE ALL REMAINING GLUE FROM THE SLAB
- DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE
- REMOVE ALL THE SATURATED SHEETROCK TO A HEIGHT OF 4' UP FROM THE FLOOR TO ALLOW QUICKER REPLACEMENT.
- HEPA VAC ALL DUST DEBRIS PARTICLES
- REMOVE AND DISCARD ALL AFFECTED INSULATION
- WORK WITH REGIS ON THE INVENTORY COUNTING
- WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.
- UTILIZE THE ABOVE DRYING SCOPE
- TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
- DAILY MOISTURE LOGS WILL BE REQUIRED

- ❖ NOTE- *SOME MATTING/CARPET WILL REMAIN UNDER THE RACKS UNTIL ALL CONTENTS HAVE BEEN INVENTORIED MOVED, AND THE RACKS DISASSEMBLED.*

- ❖ *THESE CONTENTS ARE TO BE SALVAGED DAMAGED DUE TO GLASS SHARDS SPREAD THROUGHOUT THE STORE.*

**OUTDOORS**

- MANIPULATE ALL THE CONTENTS
- WET VAC ALL STANDING WATER
- REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS

- REMOVE AND DISCARD THE RUBBER MATTING
- REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
- SCRAPE ALL REMAINING GLUE FROM THE SLAB
- DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE AS WELL AS COUNTER DISPLAYS AND DISCARD DUE TO EXTENSIVE DAMAGE AND SPORTS AUTHORITY AUTHORIZATION
- REMOVE ALL THE SATURATED SHEETROCK TO A HEIGHT OF 4' UP FROM THE FLOOR TO ALLOW QUICKER REPLACEMENT
- HEPA VAC ALL DUST DEBRIS PARTICLES
- REMOVE AND DISCARD ALL AFFECTED INSULATION
- WORK WITH REGIS ON THE INVENTORY COUNTING
- WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION
- UTILIZE THE ABOVE DRYING SCOPE
- TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
- DAILY MOISTURE LOGS WILL BE REQUIRED

- *THESE CONTENTS ARE NOT DAMAGED AND WILL NOT BE SALVAGED. FOCUS ON THESE CONTENTS FROM A RESTORATION STAND POINT TO MANIPULATE AND RESTORE.*

- MANIPULATE ALL THE CONTENTS
- WET VAC ALL STANDING WATER
- REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
- REMOVE AND DISCARD THE RUBBER MATTING
- REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
- SCRAPE ALL REMAINING GLUE FROM THE SLAB
- DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE
- REMOVE AND DISPOSE OF COUNTER CHECKOUT CASES THAT ARE SEVERELY WATER DAMAGED
- REMOVE ALL THE SATURATED SHEETROCK TO A HEIGHT OF 4' UP FROM THE FLOOR TO ALLOW QUICKER REPLACEMENT.
- HEPA VAC ALL DUST DEBRIS PARTICLES
- REMOVE AND DISCARD ALL AFFECTED INSULATION
- WORK WITH REGIS ON THE INVENTORY COUNTING
- WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.
- UTILIZE THE ABOVE DRYING SCOPE
- TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
- DAILY MOISTURE LOGS WILL BE REQUIRED

- *THESE CONTENTS ARE NOT DAMAGED AND WILL NOT BE SALVAGED. FOCUS ON THESE CONTENTS FROM A RESTORATION STAND POINT TO MANIPULATE AND RESTORE.*

- MANIPULATE ALL THE CONTENTS
- WET VAC ALL STANDING WATER
- REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
- REMOVE AND DISCARD THE RUBBER MATTING
- REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
- SCRAPE ALL REMAINING GLUE FROM THE SLAB
- DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE. AT THE DIRECTION OF SPORTS AUTHORITY.
- FREE STANDING RACKS WILL BE TAGGED AND STORED INTO STORAGE CONTAINERS FOR OPTIONS A OR B.
  - A. TAGGED AND SALVAGE COMPANY WILL TAKE
  - B. TAGGED AND STORED FOR THE SPORTS AUTHORITY TO RE-USE IN THE SPRINGFIELD STORE OR SHIP TO OTHER STORES IN THE AREA.
- REMOVE ALL THE SATURATED SHEETROCK TO A HEIGHT OF 4' UP FROM THE FLOOR TO ALLOW QUICKER REPLACEMENT.
- HEPA VAC ALL DUST DEBRIS PARTICLES
- REMOVE AND DISCARD ALL AFFECTED INSULATION
- WORK WITH REGIS ON THE INVENTORY COUNTING
- WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.

- UTILIZE THE ABOVE DRYING SCOPE
- TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
- DAILY MOISTURE LOGS WILL BE REQUIRED

❖ *THESE CONTENTS ARE TO BE SALVAGED DAMAGED DUE TO GLASS SHARDS SPREAD THROUGHOUT THE STORE.*

**CIRCUIT CITY**

- MANIPULATE ALL THE CONTENTS
- WET VAC ALL STANDING WATER
- REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
- REMOVE AND DISCARD THE RUBBER MATTING
- REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
- SCRAPE ALL REMAINING GLUE FROM THE SLAB
- DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE. AT THE DIRECTION OF SPORTS AUTHORITY.
- REMOVE ALL THE SATURATED SHEETROCK ABOVE THE DOORWAY
- HEPA VAC ALL DUST DEBRIS PARTICLES
- REMOVE AND DISCARD ALL AFFECTED INSULATION
- WORK WITH REGIS ON THE INVENTORY COUNTING
- WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.
- UTILIZE THE ABOVE DRYING SCOPE
- TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
- DAILY MOISTURE LOGS WILL BE REQUIRED

❖ *THESE CONTENTS ARE TO BE SALVAGED DAMAGED DUE TO GLASS SHARDS SPREAD THROUGHOUT THE STORE.*

**CUSTOMER SERVICE**

- MANIPULATE ALL THE CONTENTS
- WET VAC ALL STANDING WATER
- REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
- REMOVE AND DISCARD THE RUBBER MATTING
- REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
- SCRAPE ALL REMAINING GLUE FROM THE SLAB
- DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE. AT THE DIRECTION OF SPORTS AUTHORITY.
- REMOVE ALL THE SATURATED SHEETROCK AROUND DOORWAY DUE TO ROOF LEAKS
- HEPA VAC ALL DUST DEBRIS PARTICLES
- REMOVE AND DISCARD ALL AFFECTED INSULATION
- WORK WITH REGIS ON THE INVENTORY COUNTING
- WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.
- UTILIZE THE ABOVE DRYING SCOPE
- TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
- DAILY MOISTURE LOGS WILL BE REQUIRED

❖ *THESE CONTENTS ARE TO BE SALVAGED DAMAGED DUE TO GLASS SHARDS SPREAD THROUGHOUT THE STORE.*

**YOUR SPORT GOODS**

- MANIPULATE ALL THE CONTENTS
- WET VAC ALL STANDING WATER
- REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
- REMOVE AND DISCARD THE RUBBER MATTING
- REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
- SCRAPE ALL REMAINING GLUE FROM THE SLAB
- COVER RACKS WITH PLASTIC TO ALLOW FOR SHEETROCK REMOVAL WHILE PROTECTING RESALABLE MERCHANDISE.
- DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE

TSA 00305

> FREE STANDING RACKS WILL BE TAGGED AND STORED INTO STORAGE CONTAINERS FOR
> OPTIONS A OR B.
>> A.  TAGGED AND SALVAGE COMPANY WILL TAKE
>> B.  TAGGED AND STORED FOR THE SPORTS AUTHORITY TO RE-USE IN THE SPRINGFIELD
>>     STORE OR SHIP TO OTHER STORES IN THE AREA.
> REMOVE ALL THE SATURATED SHEETROCK
> HEPA VAC ALL DUST DEBRIS PARTICLES
> REMOVE AND DISCARD ALL AFFECTED INSULATION
> WORK WITH REGIS ON THE INVENTORY COUNTING
> WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS
> FOR TRANSPORTATION.
> UTILIZE THE ABOVE DRYING SCOPE
> TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
> DAILY MOISTURE LOGS WILL BE REQUIRED

❖  *THESE CONTENTS ARE TO BE SALVAGED DAMAGED DUE TO GLASS SHARDS SPREAD*
*THROUGHOUT THE STORE.*

> MANIPULATE ALL THE CONTENTS
> WET VAC ALL STANDING WATER
> REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
> REMOVE AND DISCARD THE RUBBER MATTING
> REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
> SCRAPE ALL REMAINING GLUE FROM THE SLAB
> DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE
> FREE STANDING RACKS WILL BE TAGGED AND STORED INTO STORAGE CONTAINERS FOR
> OPTIONS A OR B.
>> A.  TAGGED AND SALVAGE COMPANY WILL TAKE
>> B.  TAGGED AND STORED FOR THE SPORTS AUTHORITY TO RE-USE IN THE SPRINGFIELD
>>     STORE OR SHIP TO OTHER STORES IN THE AREA.
> REMOVE ALL THE SATURATED SHEETROCK
> HEPA VAC ALL DUST DEBRIS PARTICLES
> REMOVE AND DISCARD ALL AFFECTED INSULATION
> WORK WITH REGIS ON THE INVENTORY COUNTING
> WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS
> FOR TRANSPORTATION.
> UTILIZE THE ABOVE DRYING SCOPE
> TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
> DAILY MOISTURE LOGS WILL BE REQUIRED

❖  *THESE CONTENTS ARE TO BE SALVAGED DAMAGED DUE TO GLASS SHARDS SPREAD*
*THROUGHOUT THE STORE.*

> MANIPULATE ALL THE CONTENTS
> WET VAC ALL STANDING WATER
> REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
> REMOVE AND DISCARD THE RUBBER MATTING
> REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
> SCRAPE ALL REMAINING GLUE FROM THE SLAB
> DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE
> FREE STANDING RACKS WILL BE TAGGED AND STORED INTO STORAGE CONTAINERS FOR
> OPTIONS A OR B.
>> A.  TAGGED AND SALVAGE COMPANY WILL TAKE
>> B.  TAGGED AND STORED FOR THE SPORTS AUTHORITY TO RE-USE IN THE SPRINGFIELD
>>     STORE OR SHIP TO OTHER STORES IN THE AREA.
> REMOVE ALL THE SATURATED SHEETROCK
> HEPA VAC ALL DUST DEBRIS PARTICLES
> REMOVE AND DISCARD ALL AFFECTED INSULATION
> WORK WITH REGIS ON THE INVENTORY COUNTING
> WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS
> FOR TRANSPORTATION.

> UTILIZE THE ABOVE DRYING SCOPE
> TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
> DAILY MOISTURE LOGS WILL BE REQUIRED

❖ *THESE CONTENTS ARE TO BE SALVAGED DAMAGED DUE TO GLASS SHARDS SPREAD THROUGHOUT THE STORE*

**BIKES**

> MANIPULATE ALL THE CONTENTS
> WET VAC ALL STANDING WATER
> REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
> REMOVE AND DISCARD THE RUBBER MATTING
> REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
> SCRAPE ALL REMAINING GLUE FROM THE SLAB
> DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE
> FREE STANDING RACKS WILL BE TAGGED AND STORED INTO STORAGE CONTAINERS FOR OPTIONS A OR B.
>   A.  TAGGED AND SALVAGE COMPANY WILL TAKE
>   B.  TAGGED AND STORED FOR THE SPORTS AUTHORITY TO RE-USE IN THE SPRINGFIELD STORE OR SHIP TO OTHER STORES IN THE AREA.
> REMOVE ALL THE SATURATED SHEETROCK TO A HEIGHT OF 4' UP FROM THE FLOOR TO ALLOW QUICKER REPLACEMENT.
> HEPA VAC ALL DUST DEBRIS PARTICLES
> REMOVE AND DISCARD ALL AFFECTED INSULATION
> WORK WITH REGIS ON THE INVENTORY COUNTING
> WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.
> UTILIZE THE ABOVE DRYING SCOPE
> TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
> DAILY MOISTURE LOGS WILL BE REQUIRED

❖ *THESE CONTENTS ARE NOT DAMAGED AND WILL NOT BE SALVAGED. FOCUS ON THESE CONTENTS FROM A RESTORATION STAND POINT TO MANIPULATE AND RESTORE.*

❖ NOTE- *SOME MATTING/CARPET WILL REMAIN UNDER THE RACKS UNTIL ALL CONTENTS HAVE BEEN INVENTORIED MOVED, AND THE RACKS DISASSEMBLED.*

**FOOTWEAR**

> MANIPULATE ALL THE CONTENTS
> WET VAC ALL STANDING WATER
> REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
> REMOVE AND DISCARD THE RUBBER MATTING
> REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
> SCRAPE ALL REMAINING GLUE FROM THE SLAB
> DISASSEMBLE ALL THE RACKS ON THE NORTH WALL AND RE-LOCATE TO OTHER AREAS OF THE STORE
> FREE STANDING RACKS WILL BE TAGGED AND STORED INTO STORAGE CONTAINERS FOR OPTIONS A OR B.
>   A.  TAGGED AND SALVAGE COMPANY WILL TAKE
>   B.  TAGGED AND STORED FOR THE SPORTS AUTHORITY TO RE-USE IN THE SPRINGFIELD STORE OR SHIP TO OTHER STORES IN THE AREA.
> REMOVE ALL THE SATURATED SHEETROCK TO A HEIGHT OF 4' UP FROM THE FLOOR TO ALLOW QUICKER REPLACEMENT.
> HEPA VAC ALL DUST DEBRIS PARTICLES
> REMOVE AND DISCARD ALL AFFECTED INSULATION
> WORK WITH REGIS ON THE INVENTORY COUNTING
> WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.
> UTILIZE THE ABOVE DRYING SCOPE
> TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
> DAILY MOISTURE LOGS WILL BE REQUIRED

- *THESE CONTENTS ARE NOT DAMAGED AND WILL NOT BE SALVAGED FOCUS ON THESE CONTENTS FROM A RESTORATION STANDPOINT TO MANIPULATE AND RESTORE*

- *THE DISPLAY SHOES WILL BE SALVAGED BUT ALL REMAINING BOXED SHOES WILL REMAIN*

- *NOTE: SOME MATTING/CARPET WILL REMAIN UNDER THE RACKS UNTIL ALL CONTENTS HAVE BEEN INVENTORIED MOVED. AND THE RACKS DISASSEMBLED*

## SHOE DEPARTMENT

- MANIPULATE ALL THE CONTENTS
- WET VAC ALL STANDING WATER
- REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
- REMOVE AND DISCARD THE RUBBER MATTING
- REMOVE AND DISCARD ALL THE LAMINATE WOOD FLOORING
- SCRAPE ALL REMAINING GLUE FROM THE SLAB
- REMOVE ALL AFFECTED CEILING TILES IN THIS AREA AND DISCARD INTO COTTON PROVIDED DUMPSTERS
- REMOVE ALL THE CEILING GRID AND DISCARD INTO COTTON PROVIDED DUMPSTERS.
- DISASSEMBLE ALL THE RACKS AND RELOCATE TO OTHER AREAS OF THE STORE
- FREESTANDING RACKS WILL BE TAGGED AND STORED INTO STORAGE CONTAINERS FOR OPTIONS A OR B.
    - C.   TAGGED AND SALVAGE COMPANY WILL TAKE
    - D.   TAGGED AND STORED FOR THE SPORTS AUTHORITY TO RE-USE IN THE SPRINGFIELD STORE OR SHIP TO OTHER STORES IN THE AREA.
- REMOVE ALL THE SATURATED SHEETROCK TO THE HEIGHT OF 4' UP FROM THE FLOOR TO ALLOW FOR A QUICKER REPLACEMENT TO INCLUDE THE WALLS OF THE PRACTICE DRIVING RANGE.
- HEPA VAC ALL DUST DEBRIS PARTICLES
- REMOVE AND DISCARD ALL AFFECTED INSULATION
- WORK WITH REGIS ON THE INVENTORY COUNTING
- WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.
- UTILIZE THE ABOVE DRYING SCOPE
- TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
- DAILY MOISTURE LOGS WILL BE REQUIRED

- *THESE CONTENTS ARE QUESTIONABLE DUE TO THE SEVERITY OF THE DAMAGES. LIBERTY MUTUAL WILL HAVE TO MAKE THE CALL ON THESE CONTENTS.*

- NOTE- *SOME MATTING/CARPET WILL REMAIN UNDER THE RACKS UNTIL ALL CONTENTS HAVE BEEN INVENTORIED MOVED. AND THE RACKS DISASSEMBLED.*

## CRITICAL PATH MANAGEMENT

Understanding the sense of urgency inherent in projects of this nature, a flexible approach to the restoration project is mandatory. Following acceptance of this scope of work, a Critical Path Management (CPM) Program will be established that will outline the definitive sequence of events and their corresponding time frames for completion of each event. This CPM Program will be formulated based solely on the sense of urgency as reflected by Mike Mavelle, considering each phase of this operation. Coordination of all phases of this restoration project is critical to the successful, timely and cost effective completion of the work. The sequence in which the work will be performed will be discussed following determination of the Critical Path.

## IMPORTANT POINTS

This scope is an overview of the total project. Some cleaning procedures outlined above may be changed at the discretion of *COTTON* management to maximize effectiveness and efficiency. This scope is not intended to be a sequential outline of work but rather an overview of the total project. Any changes or alterations to this scope at the request of building management may cause an adjustment in the total project cost. All changes must be submitted in writing and approved by all parties involved before they become binding.

It is assumed that *COTTON* will have necessary access to the facility. Common utilities such as water and electrical power must be readily available in suitable quantities. All work and services provided for in this scope are based on initial inspections of the damage. Due to the unknowns in dealing with losses of this nature, some methods of the cleaning effort may require adjustment as the job progresses. All work provided for in this scope is intended to be accomplished under "best effort" circumstances.

Daily communication is critical for the success of any project. In an effort to keep all interested parties apprised of the status of this project, we request that the *COTTON'S* on-site Project Manager (Bruce Gear) and a designated representative from The Sports Authority meet daily. It is preferable that this representative have decision-making authority regarding any changes, either additions or deletions, to this scope of work.

At the request of management, *COTTON* will provide Material Safety Data Sheets (MSDS) on all chemicals brought on-site and used in the restoration, cleaning/decontamination process. All chemicals used are biodegradable. Proof of insurance will also be provided at the customer's request.

An outside contractor licensed and bonded in accordance with local and federal regulations will provide all asbestos work. Costs for abatement are not figured in this proposal.

## PRICING

*COTTON* proposes to perform the scope of services as outlined above on a time and materials contract based on the attached Schedule of Rates. Cotton and Liberty Mutual have set a not to exceed amount on this loss. **The Not to Exceed price is: $ 350,000.00** Cotton will require an up-front draw in the amount of **$100,000.00** after the sports Authority has received there initial advance.

## SCHEDULING

*COTTON* will approach this project on a best-effort basis. The estimated completion time is 11 working days based on a 12-hour workday.

It has been *COTTON* pleasure to submit this proposal to Mike Mavelle and Tom Tieman. Thank you for your consideration and cooperation.

Respectfully Submitted,

*JEFF KRONE*
*COTTON USA*
*REGIONAL RESTORATION DIRECTOR*
*SOUTHEAST REGION*

*813-887-3942 OFFICE*
*813-887-3943 FAX*

*813-299-7489 CELL*
*877-511-2962 (24hr CALL CENTER)*

TSA  00309

| EXPENSE ITEM PURCHASE ORDER | | | REC[...] | | PURCHASE ORDER NUMBER 125RM891 |
|---|---|---|---|---|---|
| The Sports Authority Inc. 1050 W. Hampden Ave • Englewood, CO 80110 Phone (303) 200-5050 | | | REQUESTING DEPT/STORE # Risk Management-968 | | ACCOUNT TO BE CHARGED TO 968-639-120 |
| | | | DATE OF ORDER 3/21/2006 | | DELIVERY REQUIRED BY |
| Cotton Catastrophe Address to: | | | | | |

| QUANTITY | STOCK NUMBER | DESCRIPTION | | | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|---|
| | 1408722 | emergency clean up and repair (insurance deductible) | | | | $ 100,000.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | Total | $ 100,000.00 |

*[signature]* 3-21-06

TSA 00310

TO:17204752118      P.2



| | | | |
|---|---|---|---|
| Name | Mike Mavelle | Date: | 3/20/2006 |
| Corp. Company | The Sports Authority | Invoice #: | 1408722 |
| Corp. Address | 1050 W. Hampden Ave. | Terms: | Net 10 |
| City, State, Zip | Englewood, Colorado 80110 | Fed Id: | 76-0628204 |
| Tel: | (720) 475-2285 | | |
| Fax: | (720) 475-2118 | | |

| | | | |
|---|---|---|---|
| Loss Address: | 3211 Veterans Parkway | Store Number: | # 618 |
| City, State, Zip | Springfield, IL 62704 | | |
| Tel: | (217) 546-0132 | Insurance Company: | Liberty Mutual Property |
| Fax: | (217) 546-1073 | Insurance Adjuster: | Tom Tiernan - EGA |

**RE:**          DRAW REQUEST # 1

*EMERGENCY SERVICES DRAW REQUEST AS A RESULT OF TORNADO DAMAGE TO THE ABOVE*        $       100,000.00
*MENTIONED LOSS ADDRESS:*

| | | |
|---|---|---|
| SUBTOTAL | $ | 100,000.00 |
| TAX | $ | - |
| TOTAL DUE AND PAYABLE | $ | 100,000.00 |

THE ABOVE CHARGES ARE CONSISTANT WITH THE SERVICES PERFORMED BY COTTON CATASTROPHE
IN ACCORDANCE WITH THE SCOPE OF THE PROJECT

Any queries regarding this invoice should be sent to us within ten days of receipt of this

invoice otherwise we will expect prompt payment under our invoicing and Payment Terms.

*All expenses received after final billing will be invoiced at a later date*

*For questions concerning your account, Please contact:*

Please remit payment to:

Cotton Catastrophe

4345 Northwest Freeway

Houston, Texas 77040

**\*\*Please include the invoice number on check\*\***

TSA 00311

**EXPENSE ITEM PURCHASE ORDER**

| | | PURCHASE ORDER NUMBER |
| --- | --- | --- |
| | | 125RM911 |

The Sports Authority, Inc.
1050 W. Hampden Ave., Englewood, CO 80110
Phone (303) 200-5050

| REQUESTING DEPT/STORE | ACCOUNT TO BE CHARGED TO |
| --- | --- |
| Risk Management - 960 | 610-650-120 |
| DATE OF ORDER | DELIVERY REQUIRED BY |
| 4/19/2006 | |

Cotton Catastrophe

Address to:

| QUANTITY | STOCK NUMBER | DESCRIPTION | UNIT PRICE | AMOUNT |
| --- | --- | --- | --- | --- |
| | 1498722 | remainder of emergency Services for Roof damage | | 219,428.67 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | faxed to Jack 4-26-06 | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | $ | 219,428.67 |

Please Process
ASAP

_Neil Ullell_  4-26-06

x _Nk Am_  4.26.06

TSA 00312



**National Disaster Recovery Services**

| | | | |
|---|---|---|---|
| Name | Mike Mavelle | Date: | 03/31/06 |
| Company | Sports Authority | Invoice #: | 1408722 |
| Address | 1050 W. Hampton Ave. | Terms: | Net 10 |
| City, State, Zip | Englewood, CO 80110 | Fed Id: | 76-0628204 |
| Tel: | (720) 475-3285 | | |
| Fax: | (720) 475-3285 | | |

| | | | |
|---|---|---|---|
| Loss Address: | 3211 South Veterans Parkway | Insurance Co: | Liberty Mutual Property |
| City, State, Zip | Springfield, Il. 62704 | Insurance Adj: | Tom Tiernan |
| Tel: | (217) 546-0132 | Claim #: | X69A-003155-00 |
| Fax: | (217) 546-1073 | | |
| Re: | Tornado Damages in Springfield, IL | | |
| Re: | Final Bill With Not To Exceed Amount: | | |

Not To Exceed Amount of $350,000.00 Set-Forth and agreed upon by the following parties:

Liberty Mutual Adjuster (TOM TIERNAN) Sports Authority POC (MIKE MAVELLE) & Cotton U.S.A. (JEFF KRONE)

| | | |
|---|---|---|
| EMERGENCY SERVICES FINAL STIPULATED INVOICE SUM AMOUNT: | $ | 319,428.67 |
| COTTON HAS RECEIVED A INITIAL DRAW OF: | $ | (100,000.00) |
| **SUBTOTAL**                        *REMAINING BALANCE* | $ | 219,428.67 |
| **TOTAL DUE AND PAYABLE** | $ | 219,428.67 |

THE ABOVE CHARGES ARE CONSISTANT WITH THE SERVICES PERFORMED BY COTTON USA, LLC

IN ACCORDANCE WITH THE SCOPE OF THE PROJECT

Any queries regarding this invoice should be sent to us within ten days of receipt of this

invoice otherwise we will expect prompt payment under our Invoicing and Payment Terms.

All expenses received after final billing will be invoiced at a later date

For questions concerning your account, Please contact:

Please remit payment to:

Cotton USA, LLC

14345 Northwest Freeway

Houston, Texas 77040

**Please include the invoice number on check**

03/31/06

TSA 00313



## COTTON USA
*National Disaster Recovery Services*

### RESTORATION SERVICE AGREEMENT

STORE #
618

EFFECTIVE DATE OF AGREEMENT:  MARCH 14th, 2006

CUSTOMER:  THE SPORTS Authority

BILLING ADDRESS:  1050 W. HAMPDEN AVE

INSURANCE COMPANY:  Liberty Mutual          CLAIM NO. X169A-003155

PROPERTY ADDRESS ("Property"):  3211 Veterans Parkway   (Springfield, IL)

TYPE OF LOSS (Fire/Water/Other):  Tornado Damage

Cotton Commercial USA, L.P. d/b/a Cotton USA ("Cotton"), a Texas limited partnership, and the Customer agree as follows:

### ARTICLE I.
### CONTENTS OF AGREEMENT AND ASSIGNABILITY

**Section 1.1**    Nature of Agreement. This Agreement is a contract for restoration services between Cotton and the Customer, with the scope of services ("Work") to be provided as described in the written estimate ("Estimate") that will be provided by Cotton to the Customer and Customer's Insurance Company. This Agreement, the Estimate and all addenda issued prior to and all modifications issued after execution of this Agreement, constitute the entire agreement between Cotton and the Customer. The Customer shall not assign this Agreement without the prior written consent of Cotton. Cotton shall provide to the Customer certificate(s) of insurance upon request.

### ARTICLE II.
### DUTIES, COOPERATION AND AUTHORIZATION

**Section 2.1**    Services and Materials Provided. Cotton agrees to furnish all labor, supervision, materials, equipment, tools, supplies, subcontract work and services, which in Cotton's sole discretion is reasonably necessary to timely and fully perform and complete the Work in a good and workmanlike manner.

**Section 2.2**    Cooperation By Customer / Term of Agreement. The Customer agrees to cooperate with Cotton in the performance of the Work, and such duty shall last until completion of the Work, and the Customer agrees to fully cooperate with Cotton as is reasonably required by Cotton for completion of the Work.

**Section 2.3**    Removal of Contents. The Customer authorizes Cotton to remove contents and non-fixture parts of the building as necessary in accordance with the scope of work for the purposes of safekeeping, inventory, testing and/or appraisal of damages, cleaning of contents offsite, and such other purposes reasonably related to completing the Work. However, Cotton requires Customer (or Customer's tenant) to remove and secure all valuables and fragile items.

**Section 2.4**    Subcontracting Allowed. As Cotton is an independent general contractor, Cotton has exclusive authority to sub-contract and to utilize other contractors, as it deems necessary for completion of the Work. The Customer is hereby obligated to allow Cotton to sub-contract and to utilize other contractors, as it deems necessary for completion of the Work.

**Section 2.5**    Insurance. Cotton shall provide to the Customer certificate(s) of insurance upon request.

**Section 2.6**    Permits. Any federal, state or local permits or consents required for the performance of the Work are the responsibility of the Customer (notwithstanding Cotton assistance of Customer in obtaining same) and Customer shall bear all costs related to same.

**Section 2.7**    Hazardous Materials. Disposal of any Hazardous Materials (including specimens or samples) or any property that contains Hazardous Materials performed as a part of the Work will be made in the name of the Customer and under any applicable generator number or other identification assigned by the Customer or the applicable governmental authority.

**Section 2.8**    Authority of Customer. The Customer and the person signing below ("Signing Party") on behalf of Customer hereby represent and warrant that one of the following is true: (i) Customer is the absolute fee simple owner of the real property (the "Property") upon which the Work is to be performed and the Signing Party is an officer of Customer who is duly authorized to execute this Agreement on Customer's behalf and to bind Customer under the terms of this Agreement or (ii) Customer is the agent of the absolute fee simple owner of the Property, whose identity and contact information will be disclosed to Cotton upon Cotton's request for same, under a written property management agreement (or other written instrument) that will be provided to Cotton for inspection upon Cotton's request for same, and the Signing Party is an officer of Customer who is duly authorized to execute this Agreement on Customer's (and the absolute fee simple owner's) behalf and to bind Customer (and the absolute fee simple owner) under the terms of this Agreement.

1

TSA 00297

ARTICLE III.
TIME FOR PERFORMANCE OF WORK

**Section 3.1**    Work Performed. The Work shall be commenced within forty-eight (48) hours (or as reasonably practical given the specifications of the Work) following execution of this Agreement, and Cotton shall use progressive efforts to substantially or fully complete the Work within a reasonable amount of time after beginning the Work. Should Cotton be delayed, hindered, interfered with or impeded by any act or omission of the Customer, or by any cause beyond Cotton's control, and if a cause of the delay, hindrance, interference or impediment is not due to any act or omission of Cotton, then Cotton shall be entitled to a reasonable extension of time for completion of the Work.

ARTICLE IV.
CUSTOMER'S PAYMENT OF FEES AND COSTS

**Section 4.1**    Pricing and Invoicing. All work performed hereunder shall be priced at:

_____ Lump Sum Amount (See Estimate)

OR

✓ Time and Materials (See Rate Schedule)

*PHASE 1*

*EMERGENCY SERVICES*

The Customer shall pay Cotton an initial deposit of $_____ as a condition to Cotton beginning performance of the Work contemplated by this Agreement. After the Work is begun, the Customer will receive progressive billings ("Invoice") for the Work performed for Customer lasting one month or more, unless more frequent billing is appropriate as determined in Cotton's sole discretion. All fees and costs ("Charges") as reflected on the Invoice shall be due fifteen (15) days after the date of the Invoice. There will be a service charge on all or any portion of the Charges reflected on the Invoice, which are not paid within thirty (30) days of the Invoice date ("Delinquency"), which shall be the sum of 1.5% of the Delinquency for each month (i.e., thirty days) the payment is delinquent. Prior to the delivery of the Customer's property and contents (i.e., items removed from the dwelling/building), Cotton shall submit to the Customer the final Invoice, provided, however, that delivery of such property and contents shall not be made until Cotton has received payment on such final Invoice and Customer has paid in full all previous Invoices (and any services charge accrued thereon) and there remains no Delinquency. The Customer agrees to pay Cotton in full for all Charges upon the receipt of an Invoice and agrees to be legally responsible for such payment regardless of whether the Customer is entitled to coverage or reimbursement from its insurance carrier or any third party. The cumulative sum of all Charges incurred by the Customer hereunder shall be considered the "Contract Price".

**Section 4.2**    Change Orders. Any modifications or change orders with respect to this Agreement shall be agreed to in writing by Cotton and the Customer and shall take effect upon execution of such modification or change order by Cotton and the Customer.

**Section 4.3**    Direct Pay Authorization. This Agreement shall serve as Customer's consent to its property and casualty insurance carrier to pay Cotton directly with respect to any amounts claimed by the Customer under any insurance policy covering the property that is the subject of the Work.

ARTICLE V.
MOLD REMEDIATION WORK; INDEMNIFICATION

**Section 5.1**    Mold Remediation Work. With respect to any portion of the Work to be performed by Cotton that involves the remediation of mold ("Mold Remediation Work"), Customer agrees as follows:

     (a) Testing. Customer shall engage the services of a person or firm ("Mold Expert") specializing in the investigation, testing and analysis of mold spores and microbial contamination ("Mold") occurring within buildings and other structures of a like-kind and nature as the project site and shall have the Mold Expert test the Site for microbial contamination prior to commencement of the Mold Remediation Work. The scope of the Mold Remediation Work will be specified in a mold analysis report ("Report") that the Customer receives from the Mold Expert. The Customer shall be solely responsible for having the Mold Expert test ("Pretest") the Property for Mold prior to commencement of the Work and preparing the Report. In performance of the Mold Remediation Work, Cotton will not be required to perform any testing or analysis of the site. Cotton will perform the Mold Remediation Work to substantial completion in keeping with the specifications of the Report, and after notice by Cotton to Customer of substantial completion of the Mold Remediation Work (or portion/phase thereof), Customer shall cause the Mold Expert to again test ("Post-test") the site (or portion/phase thereof).

     (b) Work Completion. Customer acknowledges that mold spores are naturally occurring substances and that after the Mold Remediation Work is substantially complete, the site may still contain traces of mold or other microbial elements. Notwithstanding, once the Mold Expert completes the Post-test and provides Customer with a statement that the Mold at the site (or portion/phase of the site tested) has been remediated to within acceptable industry standards or limits, Cotton's Mold Remediation Work shall be deemed fully complete as to the site (or portion/phase of the site tested), and going forward, Customer assumes all risks as to the site (or portion/phase of the site tested) with respect to the presence of Mold and other microbial elements, and Cotton will have no further obligation or liability to Customer with respect to the Mold Remediation Work at the site (or portion/phase of the site tested). In the event that a Post-test is not performed at the site (or any portion/phase thereof), the Mold Remediation Work shall be deemed fully complete as to the site (or portion/phase thereof) at such time that Cotton notifies Customer of substantial completion of the Mold Remediation Work.

**Section 5.2**    Release. CUSTOMER HEREBY RELEASES AND AGREES TO HOLD HARMLESS COTTON, ITS PARENT, AFFILIATE AND SUBSIDIARY COMPANIES, AND THEIR RESPECTIVE OFFICERS, DIRECTORS,

TSA 00298

EMPLOYEES, SHAREHOLDERS, PARTNERS, MEMBERS, MANAGERS, AND AGENTS FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, LOSSES, DAMAGES, CAUSES OF ACTION, SUITS, JUDGMENTS, AWARDS, COSTS AND EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) AND LIABILITIES OF EVERY KIND OR CHARACTER (COLLECTIVELY REFERRED TO AS "DAMAGES"), IN RESPECT TO PERSONAL OR BODILY INJURY TO, SICKNESS, DISEASE, DEATH OR OTHER DAMAGES SUFFERED OR INCURRED BY CUSTOMER AND/OR THE CUSTOMER'S EMPLOYEES, OFFICERS, DIRECTORS, SHAREHOLDERS OR AGENTS OR THOSE OF ITS PARENT, AFFILIATE AND SUBSIDIARY COMPANIES RESULTING OR ARISING FROM OR ARISING OUT OF OR IN CONNECTION WITH THE WORK DONE BY COTTON, UNLESS THE DAMAGES RESULT FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF COTTON. IT IS THE INTENT OF BOTH COTTON AND CUSTOMER THAT THE FOREGOING INDEMNITY PROVISIONS WILL OPERATE WITHOUT REGARD TO ANY LEGAL THEORY OF NEGLIGENCE OR FAULT, INCLUDING BUT NOT LIMITED TO JOINT AND/OR CONCURRENT NEGLIGENCE OF THE INDEMNITEE.

**Section 5.3    No Consequential Damages.** Customer agrees that under no circumstance shall Cotton be liable to the Customer for incidental, consequential or special damages including but not limited to lost revenue, lost profits, lost business, business interruptions, lost business opportunities or any other special, punitive, exemplary or consequential damages.

### ARTICLE VI.
### TERMINATION

**Section 6.1    Termination By Cotton.** Cotton has the right to terminate the Agreement at any time and to be paid the reasonable value of the Work thus far performed.

**Section 6.2    Termination By Customer.** In the event the Customer terminates the Agreement, the Customer shall be legally responsible to pay Cotton for all Charges up to and including the date of such termination, regardless of whether Customer has received an Invoice for such Charges prior to such termination.

### ARTICLE VII.
### DISPUTE RESOLUTION

**Section 7.1    Non-binding Mediation.** Any controversy, dispute or claim arising out of this Agreement or the Work done hereunder (which can not be amicably resolved by senior management representatives of Cotton and the Customer), shall first be submitted to non-binding mediation. Both parties shall share equally in the expense of such mediation in which a non-interested mediator shall serve to facilitate the resolution of the dispute. If such controversy, dispute or claim can not be settled or resolved by non-binding mediation, either party may then submit such dispute for resolution by binding arbitration in accordance with the terms of this Article VII, provided, however, that in circumstances where equitable (non-monetary) relief is sought, such dispute may be submitted to a court of competent jurisdiction sitting in equity who may issue injunctive relief or other equitable remedy.

**Section 7.2    Attorneys' Fees and Costs.** If any legal action or other legal proceeding relating to the enforcement of any provision of this Agreement is brought against either party, including arbitration, the prevailing party shall be entitled to recover reasonable attorneys' fees, costs and disbursements (in addition to any other relief to which the prevailing party may be entitled).

### ARTICLE VIII.
### GOVERNING LAW; VENUE

**Section 8.1    Jurisdiction.** This Agreement shall be construed in accordance with the laws of the State of Texas, without giving effect to conflict of laws.

**Section 8.2    Venue.** In any legal action relating to this Agreement, the Customer agrees (s) to the exercise of jurisdiction over it by a state or federal court in the County in which the work is performed; provided, however, that the requirement to arbitrate all controversies, disputes and claims arising under this Agreement shall supercede the provisions of this paragraph.

COTTON:                                                      CUSTOMER:

By: _JEFF KRONE_                                             By: _____
Name: _Jeff Krone_                                          Name: _____
Title: _Regional Director_                                  Title: _____
Date Signed: _3-14-06_                                       Date Signed: _____

Commercial Restoration Services - USA (Rev. 6-2005)

3

TSA 00299

Jeff Krone

Mike Mavelle

**From:** Jeff Krone [jeffk@cottonteam.com]
**Sent:** Monday, March 20, 2006 8:39 AM
**To:** Thomas.Tieman@LibertyMutual.com
**Cc:** Mike Mavelle

Jeff Krone
National Restoration Director
Cotton USA

5432-A Crenshaw St.
Tampa, FL. 33634

Bus: 813-887-3942
Cell: 813-299-7489
Fax: 813-887-3943

24hr call center: (877) 511-2962

jeffk@cottonteam.com

Please visit our website @
www.cottoncompanies.com



<u>TOM & MIKE-</u>

HER IS THE SCOPE OF WORK FOR THE STORE IN SPRINGFIELD,IL

PLEASE REVIEW AND LET ME KNOW IF YOU HAVE ANY QUESTIONS. MIKE I
AM GOING TO SEND YOU A INITIAL DRAW REQUEST IN THE AMOUNT OF
$100,00.00.I HAVE SPOKE TO TOM AND LET HIM KNOW I WAS GOING TO
REQUEST THIS SO HE COULD TAKE IN ACCOUNT IS WOULD BE ASKING FOR
IT.

THANKS GUYS PLEASE DON'T HESITATE TO CALL WITH ANY QUESTIONS-
PROGRESS IS STILL MOVING FULL SPEED AHEAD AND PLAN TO BE BACK ON
SITE THIS THURSDAY FOR A WALK THU.

THANKS AGAIN
JEFF KRONE

_Sent to D Frith 3-20-06_



National Disaster Recovery Services

&lt;Attachment A&gt;

DATE: 3-14-06

TO: MIKE MAVELLE – THE SPORTS AUTHORITY VP OF RISK MANAGEMENT
DAVID FRIEDER – THE SPORTS AUTHORITY VP OF CONSTRUCTION
TOM TIERNAN – LIBERTY MUTUAL EXECUTIVE GENERAL ADJUSTER

FROM: JEFF KRONE

RE: TORNADO DAMAGE TO STORE # 618

Cotton viewed the CATASTROPHIC loss located at 3211 VETERANS PARKWAY in SPRINGFIELD, IL. Mike Mavelle of THE SPORTS AUTHORITY requested the site inspection.

The following information is respectfully submitted as our view of the necessary services required restoring the structure and contenting to their pre-loss or better condition. The following material is presented in an order that insures all affected areas are properly addressed from a procedural point of view. The chronological sequence of events, in which these procedures will be performed, is discussed later in this proposal under Critical Path Management Program (CPM). The Scope of Service is broken into the following general areas of concern.

- BRIEF SCENARIO OF THE LOSS: ON 3-12-06 A TORNADO TOUCHED DOWN IN THE VICINITY OF THE SPORTS AUTHORITY LOCATED IN SPRINGFIELD, ILLINOIS. THE TORNADO CAUSED EXTENSIVE DAMAGE TO SEVERAL AREAS OF THE STORE. THE SOUTHWEST CORNER OF THE ROOF HAS BEEN COMPROMISED TO THE EXTEND OF A 30 X 50 FT SECTION WAS DESTROYED. EXTENSIVE FLOODING WAS CAUSED DUE TO THE OUTSIDE ELEMENTS ALONG WITH A RUPTURED WATER LINE. COTTON USA WAS CALLED IN TO PERFORM EMERGENCY SERVICES ALONG WITH SECURING THE BUILDING FROM A SECURITY AND A LIFE HEALTH SAFETY ASPECT.

- BELOW IS A DETAILED SCOPE OF WORK THAT WAS WALKED AND APPROVED BY JEFF KRONE-COTTON USA, TOM TIERNAN-LIBERTY MUTUAL-& MIKE MAVELLE- THE SPORTS AUTHORITY. THIS SCOPE WILL BE BROKEN OUT INTO A PER AREA BASIS OF THE STORE.

- COTTON WILL PROVIDE SAFETY MEETING DAILY. ALL MEETING WILL BE LOGGED FOR ASHA COMPLIANCE.
- LIFE, HEATH, SAFETY ISSUES WILL BE ENFORCED. THE SITE HAS BEEN DEEMED A CONSTRUCTION SITE.
- COTTON WILL PROVIDE ALL LABOR TO PERFORM EMERGENCY SERVICES.
- WEARING A COTTON LOGOED SHIRT WILL IDENTIFY ALL COTTON EMPLOYEES.
- DAILY MEETINGS WILL BE PERFORMED BY COTTON'S ON SITE PROJECT MANGER (BRUCE GEAR) AND A REPRESENTATIVE OF JONES-BLYTHE CONSTRUCTION COMPANY TO HAVE UP-DATE MEETINGS SO COTTON CAN INFORM THE POWERS TO BE ON THE PROGRESS OF THE BUILDING AND COTTONS PROGRESS.
- PORTABLE GENERATORS WILL BE UTILIZED TO RUN TEMPORARY LIGHTING IN THE STORE
- TRACK LIGHTS WILL BE PLACED THROUGHOUT THE FACILITY.
- COTTON WILL WORK HAND IN HAND WITH THE BUILDING CONTRACTOR IN THE BEST INTEREST OF THE SPORTS AUTHORITY
- COTTON WILL ALSO WORK WITH THE SALVAGE COMPANY TO HELP GET ALL CONTENTS FROM POINT A TO POINT B IF NEEDED.
- COTTON WILL PROVIDE (3) PORTABLE STORAGE CONTAINERS FOR STORAGE OF THE UN-DAMAGED RACKS
- COTTON WILL COORDINATE A STRUCTURAL ENGINEER TO HELP EVALUATE THE STRUCTURE IN THE BEST INTEREST OF LIBERTY MUTUAL AND THE SPORTS AUTHORITY

TSA 00301

▓▓▓▓▓▓▓▓▓▓▓

     ▫   *DUE TO THE EXTENSIVE CONTENTS AND THE HIGH PROFILE NATURE OF THIS LOSS COTTON AND LIBERTY MUTUAL CAME TO THE AGREED UPON DEHUMIDIFICATION SCOPE TO HELP DRY THE STRUCTURE OF THE BUILDING AND TO HELP CLIMATIZE AND PROTECT ALL THE UN-DAMAGED PRODUCT REMAINING IN THE STORE.*

## INSTALL THE FOLLOWING: (FRONT OF THE STORE)

- ➤ (2) 5000 CFM DESICCANTS
- ➤ (35) PORTABLE AIR MOVERS TO HELP FACILITATE DRYING
- ➤ INSTALL LAY-FLAT DUCTING TO HELP DISTRIBUTE AIR FLOW. ALL LAY-FLAT WILL BE SUSPENDED FROM THE CEILING.
- ➤ INSTALL (Y) ADAPTORS TO SPLIT DUCTING TO COVER FRONT LEFT, FRONT RIGHT, AND MIDDLE OF THE STORE.
- ➤ FLEX DUCTING WILL BE INSTALLED FROM THE DESICCANT TO THE BUILDING
- ➤ HOLES WILL BE CUT OUT OF THE PLYWOOD TO TUNNEL IN THE DESICCANT DRY AIR.
- ➤ INSTALL (1) 320KW GENERATOR TO RUN BOTH DESICCANTS
- ➤ INSTALL JUNCTION BOXES WITH QUAD BOXES TO DISTRIBUTE POWER THROUGHOUT THE STORE TO RUN PORTABLE DRYING EQUIPMENT TO INCLUDE AIR MOVERS AND PORTABLE DEHUMIDIFIERS WHERE DESICCANTS CANNOT PROVIDE DRYING.
- ➤ COTTON WILL COORDINATE FUELING SCHEDULE FOR GENERATORS
- ➤ EXTENSION CORDS WILL BE UTILIZED FOR PORTABLE AIR MOVERS AND DEHUMIDIFIERS.

## INSTALL THE FOLLOWING: (BACK OF THE STORE)

- ➤ (2) 5000 CFM DESICCANTS
- ➤ (35) PORTABLE AIR MOVERS TO HELP FACILITATE DRYING
- ➤ INSTALL LAY-FLAT DUCTING TO HELP DISTRIBUTE AIR FLOW. ALL LAY-FLAT WILL BE SUSPENDED FROM THE CEILING.
- ➤ INSTALL (Y) ADAPTORS TO SPLIT DUCTING TO COVER BACK LEFT, BACK RIGHT, AND MIDDLE OF THE STORE.
- ➤ FLEX DUCTING WILL BE INSTALLED FROM THE DESICCANT TO THE BUILDING
- ➤ HOLES WILL BE CUT OUT OF THE PLYWOOD TO TUNNEL IN THE DESICCANT DRY AIR FROM THE NORTH DOORWAY TO THE WAREHOUSE AREA.
- ➤ INSTALL (1) 320KW GENERATOR TO RUN BOTH DESICCANTS
- ➤ INSTALL JUNCTION BOXES WITH QUAD BOXES TO DISTRIBUTE POWER THROUGHOUT THE STORE TO RUN PORTABLE DRYING EQUIPMENT.
- ➤ EXTENSION CORDS WILL BE UTILIZED FOR PORTABLE AIR MOVERS
- ➤ COTTON WILL COORDINATE FUELING SCHEDULE FOR GENERATORS

▓▓▓▓▓▓▓▓▓

- ➤ CLEAN ALL THE DEBRIS DISPOSE INTO COTTON PROVIDED DUMPSTERS
- ➤ SWEEP UP ALL THE GLASS FROM FRONT OF STORE
- ➤ ROPE OFF WITH CAUTION TAPE THE PERIMETER OF THE BUILDING TO KEEP TRAFFIC DOWN TO A MINIMUM

▓▓▓▓

- ➤ COTTON WILL EVALUATE THE ROOFTOP FOR DAMAGE. COTTON TO COORDINATE WITH (ER-GLOBAL) ON INSPECTION.
- ➤ COTTON WILL EVALUATE ALL THE ROOFTOP UNITS.
- ➤ COTTON TO HELP SEAL OFF THE HOLE IN THE CORNER OF THE ROOF FOR CLIMITIZATION PURPOSES .
- ➤ COTTON WILL BUILD A BARRIER IN THE EXERCISE AREA TO HELP ELIMINATE AND MOISTURE.

▓▓▓▓▓▓▓▓

- ➤ SEAL OFF THIS AREA WITH CAUTION TAPE FOR LIFE HEALTH SAFETY ISSUES.
- ➤ ALL PERSONNEL ENTERING THIS AREA IS REQUIRED TO WEAR ALL SAFETY EQUIPMENT:
  - ▫ HARD HATS
  - ▫ EYE GLASSES
  - ▫ DUST MASKS

TSA 00302

- ❑ STEEL TOED SHOES
- ❑ EAR PROTECTION
- ➢ CUT DOWN ALL HANGING DEBRIS
  - ❑ FLORESCENT LIGHTS
  - ❑ CONDUIT LINES
  - ❑ MONITORS
  - ❑ CAP SPRINKLER LINES
  - ❑ ELECTRICAL LINES
  - ❑ SPORT AUTHORITY SIGNAGE
  - ❑ PARTS OF THE ROOF DECKING
- ➢ UTILIZE KNUCKLE BOOM AND SCISSOR LIFTS TO CUT HANGING DEBRIS
- ➢ WET VAC ALL STANDING WATER
- ➢ TARP CORNER OF DEPARTMENT TO HELP SEAL OFF TO THE OUTSIDE ELEMENTS
- ➢ REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
- ➢ REMOVE AND DISCARD THE RUBBER MATTING
- ➢ SCRAPE ALL REMAINING GLUE FROM THE SLAB
- ➢ REMOVE ALL THE SATURATED SHEETROCK AND ANY ADDITIONAL SHEETROCK THAT WILL ALLOW ASSESSMENT OF POTENTIALLY DAMAGED CINDER BLOCK WALL THAT IS COMMON TO GORDMANS DEPARTMENT STORE.
- ➢ HEPA VAC ALL DUST DEBRIS PARTICLES
- ➢ REMOVE AND DISCARD ALL AFFECTED INSULATION
- ➢ MANIPULATE ALL THE EXERCISE EQUIPMENT AWAY FROM THE DAMAGED AREA
- ➢ REMOVE ALL THE RUBBERIZED ISLES WITH SCRAPPERS
- ➢ DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE
- ➢ WORK WITH REGIS ON THE INVENTORY COUNTING
- ➢ WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.
- ➢ UTILIZE THE ABOVE DRYING SCOPE
- ➢ TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
- ➢ DAILY MOISTURE LOGS WILL BE REQUIRED

- ❖ *THESE CONTENTS ARE TO BE SALVAGED DAMAGED DUE TO GLASS SHARDS SPREAD THROUGHOUT THE STORE.*

███████████

- ➢ MANIPULATE ALL THE CONTENTS AWAY FROM THE DAMAGED AREA
- ➢ WET VAC ALL STANDING WATER
- ➢ REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
- ➢ REMOVE AND DISCARD THE RUBBER MATTING
- ➢ REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
- ➢ SCRAPE ALL REMAINING GLUE FROM THE SLAB
- ➢ DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE
- ➢ REMOVE ALL THE SATURATED SHEETROCK TO A HEIGHT OF 4' UP FROM THE FLOOR TO ALLOW QUICKER REPLACEMENT.
- ➢ HEPA VAC ALL DUST DEBRIS PARTICLES
- ➢ REMOVE AND DISCARD ALL AFFECTED INSULATION
- ➢ WORK WITH REGIS ON THE INVENTORY COUNTING
- ➢ WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.
- ➢ UTILIZE THE ABOVE DRYING SCOPE
- ➢ TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
- ➢ DAILY MOISTURE LOGS WILL BE REQUIRED

- ❖ NOTE- *SOME MATTING/CARPET WILL REMAIN UNDER THE RACKS UNTIL ALL CONTENTS HAVE BEEN INVENTORIED/MOVED, AND THE RACKS DISASSEMBLED.*

- ❖ *THESE CONTENTS ARE TO BE SALVAGED DAMAGED DUE TO GLASS SHARDS SPREAD THROUGHOUT THE STORE.*

███████████

- ➢ MANIPULATE ALL THE CONTENTS
- ➢ WET VAC ALL STANDING WATER
- ➢ REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS



TSA 00303

- REMOVE AND DISCARD THE RUBBER MATTING
- REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
- SCRAPE ALL REMAINING GLUE FROM THE SLAB
- DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE AS WELL AS COUNTER DISPLAYS AND DISCARD DUE TO EXTENSIVE DAMAGE AND SPORTS AUTHORIZATION.
- REMOVE ALL THE SATURATED SHEETROCK TO A HEIGHT OF 4' UP FROM THE FLOOR TO ALLOW QUICKER REPLACEMENT.
- HEPA VAC ALL DUST DEBRIS PARTICLES
- REMOVE AND DISCARD ALL AFFECTED INSULATION
- WORK WITH REGIS ON THE INVENTORY COUNTING
- WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.
- UTILIZE THE ABOVE DRYING SCOPE
- TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
- DAILY MOISTURE LOGS WILL BE REQUIRED

❖ *THESE CONTENTS ARE NOT DAMAGED AND WILL NOT BE SALVAGED, FOCUS ON THESE CONTENTS FROM A RESTORATION STAND POINT TO MANIPULATE AND RESTORE.*

████████

- MANIPULATE ALL THE CONTENTS
- WET VAC ALL STANDING WATER
- REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
- REMOVE AND DISCARD THE RUBBER MATTING
- REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
- SCRAPE ALL REMAINING GLUE FROM THE SLAB
- DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE
- REMOVE AND DISPOSE OF COUNTER CHECK/OUT CASES THAT ARE SEVERELY WATER DAMAGED
- REMOVE ALL THE SATURATED SHEETROCK TO A HEIGHT OF 4' UP FROM THE FLOOR TO ALLOW QUICKER REPLACEMENT.
- HEPA VAC ALL DUST DEBRIS PARTICLES
- REMOVE AND DISCARD ALL AFFECTED INSULATION
- WORK WITH REGIS ON THE INVENTORY COUNTING
- WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.
- UTILIZE THE ABOVE DRYING SCOPE
- TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
- DAILY MOISTURE LOGS WILL BE REQUIRED

❖ *THESE CONTENTS ARE NOT DAMAGED AND WILL NOT BE SALVAGED, FOCUS ON THESE CONTENTS FROM A RESTORATION STAND POINT TO MANIPULATE AND RESTORE.*

████████

- MANIPULATE ALL THE CONTENTS
- WET VAC ALL STANDING WATER
- REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
- REMOVE AND DISCARD THE RUBBER MATTING
- REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
- SCRAPE ALL REMAINING GLUE FROM THE SLAB
- DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE. AT THE DIRECTION OF SPORTS AUTHORITY.
- FREE STANDING RACKS WILL BE TAGGED AND STORED INTO STORAGE CONTAINERS FOR OPTIONS A OR B.
  - A. TAGGED AND SALVAGE COMPANY WILL TAKE
  - B. TAGGED AND STORED FOR THE SPORTS AUTHORITY TO RE-USE IN THE SPRINGFIELD STORE OR SHIP TO OTHER STORES IN THE AREA.
- REMOVE ALL THE SATURATED SHEETROCK TO A HEIGHT OF 4' UP FROM THE FLOOR TO ALLOW QUICKER REPLACEMENT.
- HEPA VAC ALL DUST DEBRIS PARTICLES
- REMOVE AND DISCARD ALL AFFECTED INSULATION
- WORK WITH REGIS ON THE INVENTORY COUNTING
- WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.

TSA 00304

> UTILIZE THE ABOVE DRYING SCOPE
> TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
> DAILY MOISTURE LOGS WILL BE REQUIRED

✧ *THESE CONTENTS ARE TO BE SALVAGED DAMAGED DUE TO GLASS SHARDS SPREAD THROUGHOUT THE STORE.*

███████████

> MANIPULATE ALL THE CONTENTS
> WET VAC ALL STANDING WATER
> REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
> REMOVE AND DISCARD THE RUBBER MATTING
> REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
> SCRAPE ALL REMAINING GLUE FROM THE SLAB
> DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE. AT THE DIRECTION OF SPORTS AUTHORITY.
> REMOVE ALL THE SATURATED SHEETROCK ABOVE THE DOORWAY
> HEPA VAC ALL DUST DEBRIS PARTICLES
> REMOVE AND DISCARD ALL AFFECTED INSULATION
> WORK WITH REGIS ON THE INVENTORY COUNTING
> WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.
> UTILIZE THE ABOVE DRYING SCOPE
> TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
> DAILY MOISTURE LOGS WILL BE REQUIRED

✧ *THESE CONTENTS ARE TO BE SALVAGED DAMAGED DUE TO GLASS SHARDS SPREAD THROUGHOUT THE STORE.*

███████████

> MANIPULATE ALL THE CONTENTS
> WET VAC ALL STANDING WATER
> REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
> REMOVE AND DISCARD THE RUBBER MATTING
> REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
> SCRAPE ALL REMAINING GLUE FROM THE SLAB
> DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE. AT THE DIRECTION OF SPORTS AUTHORITY.
> REMOVE ALL THE SATURATED SHEETROCK AROUND DOORWAY DUE TO ROOF LEAKS
> HEPA VAC ALL DUST DEBRIS PARTICLES
> REMOVE AND DISCARD ALL AFFECTED INSULATION
> WORK WITH REGIS ON THE INVENTORY COUNTING
> WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.
> UTILIZE THE ABOVE DRYING SCOPE
> TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
> DAILY MOISTURE LOGS WILL BE REQUIRED

✧ *THESE CONTENTS ARE TO BE SALVAGED DAMAGED DUE TO GLASS SHARDS SPREAD THROUGHOUT THE STORE.*

███████████

> MANIPULATE ALL THE CONTENTS
> WET VAC ALL STANDING WATER
> REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
> REMOVE AND DISCARD THE RUBBER MATTING
> REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
> SCRAPE ALL REMAINING GLUE FROM THE SLAB
> COVER RACKS WITH PLASTIC TO ALLOW FOR SHEETROCK REMOVAL WHILE PROTECTING RESALABLE MERCHANDISE.
> DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE

TSA 00305

- ➢ FREE STANDING RACKS WILL BE TAGGED AND STORED INTO STORAGE CONTAINERS FOR OPTIONS A OR B.
  - A. TAGGED AND SALVAGE COMPANY WILL TAKE
  - B. TAGGED AND STORED FOR THE SPORTS AUTHORITY TO RE-USE IN THE SPRINGFIELD STORE OR SHIP TO OTHER STORES IN THE AREA.
- ➢ REMOVE ALL THE SATURATED SHEETROCK
- ➢ HEPA VAC ALL DUST DEBRIS PARTICLES
- ➢ REMOVE AND DISCARD ALL AFFECTED INSULATION
- ➢ WORK WITH REGIS ON THE INVENTORY COUNTING
- ➢ WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.
- ➢ UTILIZE THE ABOVE DRYING SCOPE
- ➢ TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
- ➢ DAILY MOISTURE LOGS WILL BE REQUIRED

❖ *THESE CONTENTS ARE TO BE SALVAGED DAMAGED DUE TO GLASS SHARDS SPREAD THROUGHOUT THE STORE.*

- ➢ MANIPULATE ALL THE CONTENTS
- ➢ WET VAC ALL STANDING WATER
- ➢ REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
- ➢ REMOVE AND DISCARD THE RUBBER MATTING
- ➢ REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
- ➢ SCRAPE ALL REMAINING GLUE FROM THE SLAB
- ➢ DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE
- ➢ FREE STANDING RACKS WILL BE TAGGED AND STORED INTO STORAGE CONTAINERS FOR OPTIONS A OR B.
  - A. TAGGED AND SALVAGE COMPANY WILL TAKE
  - B. TAGGED AND STORED FOR THE SPORTS AUTHORITY TO RE-USE IN THE SPRINGFIELD STORE OR SHIP TO OTHER STORES IN THE AREA.
- ➢ REMOVE ALL THE SATURATED SHEETROCK
- ➢ HEPA VAC ALL DUST DEBRIS PARTICLES
- ➢ REMOVE AND DISCARD ALL AFFECTED INSULATION
- ➢ WORK WITH REGIS ON THE INVENTORY COUNTING
- ➢ WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.
- ➢ UTILIZE THE ABOVE DRYING SCOPE
- ➢ TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
- ➢ DAILY MOISTURE LOGS WILL BE REQUIRED

❖ *THESE CONTENTS ARE TO BE SALVAGED DAMAGED DUE TO GLASS SHARDS SPREAD THROUGHOUT THE STORE.*

- ➢ MANIPULATE ALL THE CONTENTS
- ➢ WET VAC ALL STANDING WATER
- ➢ REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
- ➢ REMOVE AND DISCARD THE RUBBER MATTING
- ➢ REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
- ➢ SCRAPE ALL REMAINING GLUE FROM THE SLAB
- ➢ DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE
- ➢ FREE STANDING RACKS WILL BE TAGGED AND STORED INTO STORAGE CONTAINERS FOR OPTIONS A OR B.
  - A. TAGGED AND SALVAGE COMPANY WILL TAKE
  - B. TAGGED AND STORED FOR THE SPORTS AUTHORITY TO RE-USE IN THE SPRINGFIELD STORE OR SHIP TO OTHER STORES IN THE AREA.
- ➢ REMOVE ALL THE SATURATED SHEETROCK
- ➢ HEPA VAC ALL DUST DEBRIS PARTICLES
- ➢ REMOVE AND DISCARD ALL AFFECTED INSULATION
- ➢ WORK WITH REGIS ON THE INVENTORY COUNTING
- ➢ WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.

> UTILIZE THE ABOVE DRYING SCOPE
> TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
> DAILY MOISTURE LOGS WILL BE REQUIRED

❖ *THESE CONTENTS ARE TO BE SALVAGED DAMAGED DUE TO GLASS SHARDS SPREAD THROUGHOUT THE STORE.*

■■■

> MANIPULATE ALL THE CONTENTS
> WET VAC ALL STANDING WATER
> REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
> REMOVE AND DISCARD THE RUBBER MATTING
> REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
> SCRAPE ALL REMAINING GLUE FROM THE SLAB
> DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE
> FREE STANDING RACKS WILL BE TAGGED AND STORED INTO STORAGE CONTAINERS FOR OPTIONS A OR B.
  - A. TAGGED AND SALVAGE COMPANY WILL TAKE
  - B. TAGGED AND STORED FOR THE SPORTS AUTHORITY TO RE-USE IN THE SPRINGFIELD STORE OR SHIP TO OTHER STORES IN THE AREA.
> REMOVE ALL THE SATURATED SHEETROCK TO A HEIGHT OF 4' UP FROM THE FLOOR TO ALLOW QUICKER REPLACEMENT.
> HEPA VAC ALL DUST DEBRIS PARTICLES
> REMOVE AND DISCARD ALL AFFECTED INSULATION
> WORK WITH REGIS ON THE INVENTORY COUNTING
> WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.
> UTILIZE THE ABOVE DRYING SCOPE
> TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
> DAILY MOISTURE LOGS WILL BE REQUIRED

❖ *THESE CONTENTS ARE NOT DAMAGED AND WILL NOT BE SALVAGED. FOCUS ON THESE CONTENTS FROM A RESTORATION STAND POINT TO MANIPULATE AND RESTORE.*

❖ *NOTE- SOME MATTING/CARPET WILL REMAIN UNDER THE RACKS UNTIL ALL CONTENTS HAVE BEEN INVENTORED MOVED, AND THE RACKS DISASSEMBLED.*

■■■

> MANIPULATE ALL THE CONTENTS
> WET VAC ALL STANDING WATER
> REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
> REMOVE AND DISCARD THE RUBBER MATTING
> REMOVE AND DISCARD ALL COMMERCIAL GLUE DOWN CARPET
> SCRAPE ALL REMAINING GLUE FROM THE SLAB
> DISASSEMBLE ALL THE RACKS ON THE NORTH WALL AND RE-LOCATE TO OTHER AREAS OF THE STORE
> FREE STANDING RACKS WILL BE TAGGED AND STORED INTO STORAGE CONTAINERS FOR OPTIONS A OR B.
  - A. TAGGED AND SALVAGE COMPANY WILL TAKE
  - B. TAGGED AND STORED FOR THE SPORTS AUTHORITY TO RE-USE IN THE SPRINGFIELD STORE OR SHIP TO OTHER STORES IN THE AREA.
> REMOVE ALL THE SATURATED SHEETROCK TO A HEIGHT OF 4' UP FROM THE FLOOR TO ALLOW QUICKER REPLACEMENT.
> HEPA VAC ALL DUST DEBRIS PARTICLES
> REMOVE AND DISCARD ALL AFFECTED INSULATION
> WORK WITH REGIS ON THE INVENTORY COUNTING
> WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.
> UTILIZE THE ABOVE DRYING SCOPE
> TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
> DAILY MOISTURE LOGS WILL BE REQUIRED

TSA 00307

❖ *THESE CONTENTS ARE NOT DAMAGED AND WILL NOT BE SALVAGED. FOCUS ON THESE CONTENTS FROM A RESTORATION STAND POINT TO MANIPULATE AND RESTORE.*

❖ *THE DISPLAY SHOES WILL BE SALVAGED BUT ALL REMAINING BOXED SHOES WILL REMAIN*

❖ NOTE- *SOME MATTING/CARPET WILL REMAIN UNDER THE RACKS UNTIL ALL CONTENTS HAVE BEEN INVENTORIED MOVED, AND THE RACKS DISASSEMBLED.*

> MANIPULATE ALL THE CONTENTS
> WET VAC ALL STANDING WATER
> REMOVE AND DISPOSE ALL DEBRIS INTO COTTON PROVIDED DUMPSTERS
> REMOVE AND DISCARD THE RUBBER MATTING
> REMOVE AND DISCARD ALL THE LAMINATE WOOD FLOORING
> SCRAPE ALL REMAINING GLUE FROM THE SLAB
> REMOVE ALL AFFECTED CEILING TILES IN THIS AREA AND DISCARD INTO COTTON PROVIDED DUMPSTERS
> REMOVE ALL THE CEILING GRID AND DISCARD INTO COTTON PROVIDED DUMPSTERS.
> DISASSEMBLE ALL THE RACKS AND RE-LOCATE TO OTHER AREAS OF THE STORE
> FREE STANDING RACKS WILL BE TAGGED AND STORED INTO STORAGE CONTAINERS FOR OPTIONS A OR B.
>> C. TAGGED AND SALVAGE COMPANY WILL TAKE
>> D. TAGGED AND STORED FOR THE SPORTS AUTHORITY TO RE-USE IN THE SPRINGFIELD STORE OR SHIP TO OTHER STORES IN THE AREA.
> REMOVE ALL THE SATURATED SHEETROCK TO THE HEIGHT OF 4' UP FROM THE FLOOR TO ALLOW FOR A QUICKER REPLACEMENT TO INCLUDE THE WALLS OF THE PRACTICE DRIVING RANGE.
> HEPA VAC ALL DUST DEBRIS PARTICLES
> REMOVE AND DISCARD ALL AFFECTED INSULATION
> WORK WITH REGIS ON THE INVENTORY COUNTING
> WORK WITH SALVAGE COMPANY TO MANIPULATE CONTENTS AND HELP LOAD INTO TRUCKS FOR TRANSPORTATION.
> UTILIZE THE ABOVE DRYING SCOPE
> TREAT ALL AREAS WITH A ANTI-MICROBIAL AGENT
> DAILY MOISTURE LOGS WILL BE REQUIRED

❖ *THESE CONTENTS ARE QUESTIONABLE DUE TO THE SEVERITY OF THE DAMAGES. LIBERTY MUTUAL WILL HAVE TO MAKE THE CALL ON THESE CONTENTS.*

❖ NOTE- *SOME MATTING/CARPET WILL REMAIN UNDER THE RACKS UNTIL ALL CONTENTS HAVE BEEN INVENTORIED MOVED, AND THE RACKS DISASSEMBLED.*

## CRITICAL PATH MANAGEMENT

Understanding the sense of urgency inherent in projects of this nature, a flexible approach to the restoration project is mandatory. Following acceptance of this scope of work, a Critical Path Management (CPM) Program will be established that will outline the definitive sequence of events and their corresponding time frames for completion of each event. This CPM Program will be formulated based solely on the sense of urgency as reflected by Mike Mavelle, considering each phase of this operation. Coordination of all phases of this restoration project is critical to the successful, timely and cost effective completion of the work. The sequence in which the work will be performed will be discussed following determination of the Critical Path.

## IMPORTANT POINTS

This scope is an overview of the total project. Some cleaning procedures outlined above may be changed at the discretion of COTTON management to maximize effectiveness and efficiency. This scope is not intended to be a sequential outline of work but rather an overview of the total project. Any changes or alterations to this scope at the request of building management may cause an adjustment to the total project cost. All changes must be submitted in writing and approved by all parties involved before they become binding.

It is assumed that COTTON will have necessary access to the facility. Common utilities such as water and electrical power must be readily available in suitable quantities. All work and services provided for in this scope are based on initial inspections of the damage. Due to the unknowns in dealing with losses of this nature, some methods of the cleaning effort may require adjustment as the job progresses. All work provided for in this scope is intended to be accomplished under "best effort" circumstances.

Daily communication is critical for the success of any project. In an effort to keep all interested parties apprised of the status of this project, we request that the COTTON'S on-site Project Manager (Bruce Gear) and a designated representative from The Sports Authority meet daily. It is preferable that this representative have decision-making authority regarding any changes, either additions or deletions, to this scope of work.

At the request of management, COTTON will provide Material Safety Data Sheets (MSDS) on all chemicals brought on-site and used in the restoration, cleaning/decontamination process. All chemicals used are biodegradable. Proof of insurance will also be provided at the customer's request.

An outside contractor licensed and bonded in accordance with local and federal regulations will provide all asbestos work. Costs for abatement are not figured in this proposal.

### PRICING

COTTON proposes to perform the scope of services as outlined above on a time and materials contract based on the attached Schedule of Rates. Cotton and Liberty Mutual have set a not to exceed amount on this loss. The Not to Exceed price is: $ 350,000.00 Cotton will require an up-front draw in the amount of $100,000.00 after the sports Authority has received there initial advance.

### SCHEDULING

COTTON will approach this project on a best-effort basis. The estimated completion time is 11 working days based on a 12-hour workday.

It has been COTTON pleasure to submit this proposal to Mike Mavelle and Tom Tieman. Thank you for your consideration and cooperation.

Respectfully Submitted,

*JEFF KRONE*
*COTTON USA*
*REGIONAL RESTORATION DIRECTOR*
*SOUTHEAST REGION*

*813-887-3942 OFFICE*
*813-887-3943 FAX*

*813-299-7489 CELL*
*877-511-2962 (24hr CALL CENTER)*

## EXPENSE ITEM PURCHASE ORDER

| | | | |
|---|---|---|---|
| **EXPENSE ITEM PURCHASE ORDER** | **RFC#** | | **PURCHASE ORDER NUMBER** 125RM891 |
| **The Sports Authority Inc.** 1050 W. Hampden Ave. - Englewood, CO 80110 Phone (303) 200-5050 | **REQUESTING DEPT/STORE #** Risk Management - 963 | | **ACCOUNT TO BE CHARGED TO** 618-630-1204 |
| | **DATE OF ORDER** 3/21/2006 | | **DELIVERY REQUIRED BY** |

Cotton Catastrophe

| | DESCRIPTION | | | AMOUNT |
|---|---|---|---|---|
| 1405722 | emergency clean-up and repair (insurance deductible) | | | $ 100,000.00 |
| | | | | |
| | | | | |
| | | | **Total** | $ 100,000.00 |

_[signature]_ 3-21-06

TSA 00310



| | | | |
|---|---|---|---|
| Name | Mike Mavelic | Date: | 3/20/2006 |
| Corp. Company | The Sports Authority | Invoice #: | 1408722 |
| Corp. Address | 1050 W. Hampden Ave. | Terms: | Net 10 |
| City, State, Zip | Englewood, Colorado 80110 | Fed Id: | 76-0628204 |
| Tel: | (720) 475-2285 | | |
| Fax: | (720) 475-2118 | | |

| | | | |
|---|---|---|---|
| Loss Address: | 3211 Veterans Parkway | Store Number: | # 618 |
| City, State, Zip | Springfield, IL 62704 | | |
| Tel: | (217) 546-8132 | Insurance Company: | Liberty Mutual Property |
| Fax: | (217) 546-1073 | Insurance Adjuster: | Tom Tieman - EOA |

**RE:**  DRAW REQUEST # 1

*EMERGENCY SERVICES DRAW REQUEST AS A RESULT OF TORNADO DAMAGE TO THE ABOVE MENTIONED LOSS ADDRESS:*

| | | |
|---|---|---|
| | $ | 100,000.00 |
| SUBTOTAL | $ | 100,000.00 |
| TAX | $ | - |
| TOTAL DUE AND PAYABLE | $ | 100,000.00 |

THE ABOVE CHARGES ARE CONSISTANT WITH THE SERVICES PERFORMED BY COTTON CATASTROPHE
IN ACCORDANCE WITH THE SCOPE OF THE PROJECT

Any queries regarding this invoice should be sent to us within ten days of receipt of this
invoice otherwise we will expect prompt payment under our Invoicing and Payment Terms.

*All expenses received after final billing will be invoiced at a later date*

*For questions concerning your account, Please contact:*

Please remit payment to:
Cotton Catastrophe
14345 Northwest Freeway
Houston, Texas 77040

**\*\*Please include the invoice number on check\*\***

TSA 00311

## EXPENSE ITEM PURCHASE ORDER

| | |
|---|---|
| The Sports Authority Inc.<br>1050 W. Hampden Ave. - Englewood, CO 80110<br>Phone (303) 200-5050 | RFC#<br><br>PURCHASE ORDER NUMBER<br>125RM911 |
| | REQUESTING DEPT/STORE #<br>Risk Management - 963<br>ACCOUNT TO BE CHARGED TO<br>618-630-120 |
| | DATE OF ORDER<br>4/19/2006<br>DELIVERY REQUIRED BY |

Cotton Catastrophe

| QTY | ITEM # | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | 1408722 | remainder of emergency Services for Roof damage | | $ 219,428.67 |
| | | | | |
| | | | | |
| | | | | |
| | | | | $ 219,428.67 |

*Approved by Jack 4-26-06*

*Please Press ASAP*

*Neil Klawell* 4-26-06

x *Nap Him* 4.26.06

TSA 00312

*Store F.L. #618*



### COTTON

*National Disaster Recovery Services*

| | | | |
|---|---|---|---|
| Name | Mike Mavelle | Date: | 03/31/06 |
| Company | Sports Authority | Invoice #: | 1408722 |
| Address | 1050 W. Hampton Ave. | Terms: | Net 10 |
| City, State, Zip | Englewood, CO 80110 | Fed Id: | 76-0628204 |
| Tel: | (720) 475-3285 | | |
| Fax: | (720) 475-3285 | | |

| | | | |
|---|---|---|---|
| Loss Address: | 3211 South Veterans Parkway | Insurance Co: | Liberty Mutual Property |
| City, State, Zip | Springfield, IL 62704 | Insurance Adj: | Tom Tiernan |
| Tel: | (217) 546-0132 | Claim #: | X69A-003155-00 |
| Fax: | (217) 546-1073 | | |
| Re: | Tornado Damages in Springfield,IL | | |
| Re: | Final Bill With Not To Exceed Amount: | | |

*Not To Exceed Amount of $350,000.00 Set-Forth and agreed upon by the following parties:*

*Liberty Mutual Adjuster (TOM TIERNAN) Sports Authority POC (MIKE MAVELLE) & Cotton U.S.A. (JEFF KRONE)*

| | | |
|---|---|---|
| EMERGENCY SERVICES FINAL STIPULATED INVOICE SUM AMOUNT: | $ | 319,428.67 |
| COTTON HAS RECEIVED A INITIAL DRAW OF: | $ | (100,000.00) |
| SUBTOTAL                                    *REMAINING BALANCE* | $ | 219,428.67 |
| TOTAL DUE AND PAYABLE | $ | 219,428.67 |

THE ABOVE CHARGES ARE CONSISTANT WITH THE SERVICES PERFORMED BY COTTON USA, LLC
IN ACCORDANCE WITH THE SCOPE OF THE PROJECT

Any queries regarding this invoice should be sent to us within ten days of receipt of this
invoice otherwise we will expect prompt payment under our Invoicing and Payment Terms.

All expenses received after final billing will be invoiced at a later date

*For questions concerning your account, Please contact:*

Please remit payment to:

Cotton USA, LLC

14345 Northwest Freeway

Houston, Texas 77040

**Please include the invoice number on check**

03/31/06

TSA 00313

# Sports Authority

Sportmart #618
3211 South Verterans Parkway
Springfield, IL 62704

Date: 4/3/2006
Contractor: Wolford Retail Builders, Inc.
Union        Revised 5/7     J. Wolford

| Budgetary- Insurance- 32,513 sf | | BID BREAKDOWN | | |
|---|---|---|---|---|
| ITEM | MATERIAL | LABOR- Unit | PRICE/SQ.FT. | TOTAL |
| 1. Shoring- Stabilizing | | | Budget- Estimation | $28,000 |
| 2. Selective Demolition- Balance of Damage | | Added Scope | Budget- Estimation | $28,600 |
| 3. Structural- 110' sf Bar Joist & Deck | | 12,100 sf | Budget- Estimation | $67,600 |
| 4. Masonry- Beam Pockets etc. | Colm Line E | 1 elevation | Budget- Estimation | $41,500 |
| 5. Roofing & Roof Insulation | Verify Scope | 15,000 sf | Budget- Estimation | $39,500 |
| 6. Replace Existing Storefront & Glass | | Deduct Scope | Budget- Estimation | $29,900 |
| 7. Sprinkler- Rework Existing- Dam | | Deduct Scope | Budget- Estimation | $8,500 |
| 8. Fire Alarm- Minor Device Replacement | | | Budget- Estimation | $2,950 |
| 9. Ductwork- Replacement of Damaged Only | | | Budget- Estimation | $26,500 |
| 10. Drywall/Finish Taping Perimeter | Added Scope | 4' up at Perim | Budget- Estimation | $45,100 |
| 11. Minor ACT's- T-Bar Repalcement | Added Scope | 4,000 sf | Budget- Estimation | $11,300 |
| 12. Electrical- Safe off- Curcuit Verification | | | Budget- Estimation | $6,200 |
| 13. Light Fixture Installation Only | 50 Fixtures | Added Scope | Budget- Estimation | $48,500 |
| 14. Repaint- Entire Sales and Non- Sales | | Added Scope | Budget- Estimation | $22,300 |
| 15. Dismantling- Sales Floor Fixturin | Installation | Incl's Re-Insta | Budget- Estimation | $109,000 |
| 16. Existing Flooring Removal | Added Scope | Mics. Remaini | Budget- Estimation | $15,400 |
| 17. Floor Prep & Adhesive Removal | | .40 per ft | Budget- Estimation | $10,042 |
| 18. Entire Flooring Installation | | | Budget- Estimation | $37,900 |
| 19. RR- Plumbing Re-Installation | Added Scope | Install Only | Budget- Estimation | $8,800 |
| 20. Entire New Premier Millwork Inst | | Install Only | Budget- Estimation | $4,500 |
| 21. New Toilet Partitions/ Acessories | Salvage Partit | Deduct Scope | Budget- Estimation | $1,850 |
| 22. Final Cleaning- Deodorizing | | Union | Budget- Estimation | $11,000 |
| 23. Dumpsters | Added Units | 15 X $410.00 | Budget- Estimation | $6,150 |
| 24. Barricades- Dismantaling of Existing | | | Budget- Estimation | $2,100 |
| 25. General Conditions (Itemize) | | | | 25,250 |
| 26. Supervision | 9 Weeks | $2,375 Per W | Incld's Per- Diem | $21,375 |
| 27. City Required Fire Watch | | Verify | | $2,200 |
| SUBTOTAL | | | Revised | $682,017.00 |
| 28. Allowances | | | N/A | |
| SUBTOTAL | | | | |
| 29. Insurance | | | 1 Percent | $6,820.00 |
| 30. Profit & Overhead (10% Max.) | | | 8 Percent | $55,107.00 |
| TOTAL | | | Revised | $743,944.00 |
| List itemizations below: (#25 - Gen Cond.) | | | | |
| Mics. Construction Materials | | | Budget- Estimation | $2,400 |
| PM Travel- Misc Office & Field Costs | | | Budget- Estimation | $6,100 |
| Temp Phone- Cell Ph etc. | | | Budget- Estimation | $2,200 |
| Construction Laborer's & Clean-up | | | Budget- Estimation | $7,500 |
| Equipment Rental- Folk Lift | | | Budget- Estimation | $3,700 |
| Superintendent Travel | | | Budget- Estimation | $1,800 |
| Administration Time | | | Budget- Estimation | $1,550 |
| Site Verification (please circle): | | We have / have not verified site | | |
| | | Amount of time to procure permit: | wks. | |
| UNION  /  NON-UNION | | Amount of time for construction: | Weeks | |

| | | |
|---|---|---|
| 80% Cotton | | $22,880.00 |
| Demo only 10% by Cotton | | $2,650.00 |
| Demo only 15% by Cotton | | $6,765.00 |
| 30% Cotton- dismantling only | | $32,700 |
| 40% Cotton | | $6,160.00 |
| 40% adhesive removal | | $4,016.80 |
| 100% deordorizing only | | $11,000.00 |
| 50% Cotton | | $3,075.00 |
| 40% Cotton | | $10,100.00 |
| 33% Cotton | | $7,053.75 |
| **Cotton Sub-Total** | | **$106,400.55** |
| Prorate % | 1% Percent | $1,064.00 |
| Prorate % | 10% Percent | $10,746.46 |
| **Cotton Total- Against WRB Budget** | | **$118,211.01** |

'05/08/2006 15:25 FAX 3038642102          GART SPORTS                                    010

2001 T.I,

# GART SPORTS COMPANY

Store: Sportmart # 618
Center: Southwest Plaza
          Springfield, IL

Date: 7-26-01
Contractor: VAUGHN CONTRACTING

| ITEM | MATERIAL | LABOR | PRICE/SQ.FT. | TOTAL |
|---|---|---|---|---|
| 1. Barricade | | | | |
| 2. Demolition | | | | 10,500 |
| 3. Slab | | | | |
| 4. Concrete | | | | 17,327 |
| 5. Carpentry | | | | 109,440 |
| 6. Studs and Drywall | | | | 0 |
| 7. Storefront Glass | | | | 1,860 |
| 8. Interior Mirrors | | | | 1,850 |
| 9. Acoustical Ceiling | | | | 36,838 |
| 10. Store Fixtures | | | | 18,640 |
| 11. Painting | | | | 105,885 |
| 12. Carpet Installation | | | | ABOVE |
| 13. Vinyl Tile and Base | | | | 37,334 |
| 14. Plumbing | | | | 39,023 |
| 15. Sprinklers | | | | 134,060 |
| 16. Electrical | | | | 4,650 |
| 17. Fire Alarm System | | | | 115,085 |
| 18. HVAC/Ventilation | | | | |
| 19. Dumpster | | | | 895 |
| 20. Insurance BUILDERS RISK | | | | |
| 21. Supervision | | | | 14,402 |
| 22. General Conditions (Itemize) | | | | 20,255 |
| 23. Other (Itemize below) | | | | |
| SUBTOTAL | | | | |
| 24. Profit & Overhead (10% Max.) | | | | 38,000 |
| 25. Taxes (Sales/State/Local) | | | | 3930 |
| TOTAL | $0 | $0 | $0 | $0 |
| List Itemizations below: (#22 - Gen Cond.) | | | | |
| 1. Final Cleaning | | | | |
| 2. Temporary Phones | | | | |
| 3. Tool Rental | | | | |
| List Itemizations below: (#23 - Other) | | | | |
| 1. DOORS & HARDWARE | | | | 15,685 |
| 2. TOILET PARTITIONS | | | | 2280 |
| 3. CONCRETE SEALING | | | | 2340 |
| 4. | | | | |

SUPERVISION

716,593
$22.18

736,848
$22.80

| Site Verification (please circle): | We have / have not verified site |
|---|---|
| | Amount of time to procure permit: 0 wks. |
| UNION / NON-UNION | Amount of time for construction: 0 wks. |
| % of Union Increase:        % | |

Qualifications to be listed on separate sheet

7-26-01

**EXHIBIT D**

*Springfield*

*#618*

*Vancil Contracting*

*Shell Bid*

*2001*

Sheet3

| Division | Title | | Sportmart No. 618 | |
|---|---|---|---|---|
| | | | Cost | |
| 1000 | General Requirements | | $25,829 | |
| 2000 | Excavate and Grade | | $80,542 | |
| 3000 | Concrete Foundations and slabs | | $177,482 | |
| 4000 | Masonry and Foam Insulation | | $188,235 | |
| 5000 | Structural, Joists, and Deck | | $177,827 | |
| 6000 | Rough Carpentry | | $18,276 | |
| 7000 | Roofing, Sht Mtl, Fire Safing | | $95,993 | |
| 8100 | Doors, Frames | | $2,949 | |
| 8300 | Overhead Doors | | $1,540 | |
| 8400 | Storefronts | | $21,469 | |
| 8460 | Auto Doors | | $11,171 | |
| 9230 | Cold Metal Framing, EIFS | | $24,840 | |
| 9990 | Exterior Painting | | $18,255 | |
| 11100 | Dock Equipment | | $5,804 | |
| 15400 | Plumbing Rough in | | $5,992 | |
| 15700 | HVAC Curbs | | $3,122 | |
| 16100 | Electrical Rough in | | $22,495 | |
| | | | $831,117 | |
| | Overhead and Profit | | $58,178 | |
| | | | $889,295 | |

$889,295.00 ÷ 32,308 ft² = $27.53 SQ FT.

LEASE AGREEMENT = $ 55.00 /SQ FT
                       $27.53

AMOUNT REMAINING FOR T.I = $27.47 SQ FT.

$ 1,777 total

Page 1



## Tracking the Surge in Construction Costs, 2001-2006

In early 2006, construction materials are continuing to rise in cost more than the overall rate of inflation, following a pattern that emerged in 2004 and 2005. But the price indexes for various types of construction and different materials have diverged from last year's cost drivers. The prospects for the remainder of 2006 are similarly mixed.

This report is intended to assist contractors, building owners and developers, public budgeting and planning officials, and others to understand changes in construction costs relative to the rest of the economy over the past five years, the impact of recent developments such as the Gulf coast hurricanes, and factors that are likely to affect costs in the next 12 months or so. The report relies on data from the Bureau of Labor Statistics (BLS), as well as information provided by contractors, suppliers and media.

The BLS data include the percentage change in the consumer price index for all urban consumers (CPI-U), numerous producer price indexes (PPIs), and the employment compensation index (ECI) for construction. Data are presented for the 12-month periods ending in December 2001 through 2005. The most recent data are subject to revision; in addition, the data are not seasonally adjusted, so the latest three months may not be representative of a typical 12-month movement in costs.

## Construction Materials Costs Have Outpaced
## Overall Consumer, Producer Prices

The CPI-U, which measures the prices consumers pay for a fixed "basket" of goods and services, is the most commonly cited measure of the rate of inflation. In 2001 through 2003, the CPI-U rose roughly two percent per year. The rate moved up to 3.3 percent in 2004 as the price of crude oil and specifically, petroleum products bought by consumers, jumped. The same factors pushed up consumer prices at a similar rate, 3.4 percent, in 2005. In the three months through January 2006 (the latest available), the rate dropped 0.5 percent, reflecting a recent drop in energy prices. (See Chart 1(Page 2) and Table 1 (Page 7).)

The most frequently cited PPI, that for finished goods, has been more volatile than the CPI, and has accelerated steadily from −1.6 percent in 2001 to +5.4 percent in 2005.

The sole PPI for a finished construction type is the PPI for new warehouse construction, which dates only to December 2004. That index rose 7.6 percent in 2005 and 1.6 percent in the past three months (a 6.6 percent annual rate). However, there are PPIs for construction equipment and materials. The PPIs for different producing industries are weighted separately into PPIs for construction industry segments. In addition, the ECI measures quarterly changes in wage and benefits costs.

CART SHOPPS

# AGC's Construction Inflation Alert

The cost of materials was flat in 2001, rose moderately in 2002 and 2003, then shot up by 10.1 percent in 2004. In 2005, that index climbed slightly more than the overall PPI, 6.1 percent vs. 5.4 percent. In the latest three months, the construction materials PPI has risen a steep 2.5 percent (an annual rate of 10 percent), while the CPI-U and overall PPI fell.

## Chart 1



The cost of construction machinery and equipment was nearly stable in 2001-03, then climbed six percent in 2004 and five percent in 2005. The 1.5 percent increase in the past three months corresponds to an annual rate of six percent.

The change in wages and benefits for construction, as measured by the ECI, has been relatively steady for the past five years, rising between 2.4 percent (in 2004) and 4.3 percent (in 2001). The latest reading, covering the quarter ending in December 2005, was up 0.3 percent, an annual rate of just 1.2 percent.

## Cost Changes for Highway and Heavy Construction Have Outstripped Building Construction

There has been substantial variation in the amount of inflation experienced by different construction segments in the past two years, although all segments have been hit by greater price increases than has the average business or consumer. The cost increases are approximated by BLS industry PPIs, which weight the producer prices of construction materials by the proportions used by that industry segment. As with commodity PPIs, industry PPIs do not take into account costs of labor, equipment or services. Five industry PPIs are shown below; BLS also produces PPIs for the residential and nonresidential repair and maintenance construction sectors. (See Chart 2 (Page 3) and Table 2 (Page 7).)

Prices for each of five segments moved very similarly in 2001-03. All declined in 2001, rose by one percent or less in 2002, and rose by 2-3 percent in 2003.

In 2004, prices by segment diverged sharply, reflecting different patterns in the materials most used by each segment. The PPIs for highway and street construction and other heavy construction shot up at rates of 10.8 percent and 13.4 percent, respectively, reflecting the huge increases in steel, concrete, diesel fuel and asphalt prices discussed below. The indexes for nonresidential and multi-unit residential buildings went up about nine percent each, while the PPI for materials used in single-unit residential construction rose seven percent.

In 2005, these differences persisted, although all of the industry PPIs moderated slightly, rising 6.9 percent (single-unit residential) to 9.4 percent (nonresidential buildings), except the highway and street construction PPI. That index rose 14.1 percent, pushed up by further large increases in diesel and asphalt prices. A flattening or drop in steel prices helped cool the increase in other construction industry PPIs. In addition, falling prices of lumber, plywood, and oriented-strand board (OSB) slowed the increase in residential construction costs.

05/03/2000 ...

## AGCs Construction Inflation Alert

... nonresidential construction ... buildings construction costs ... for non-residential construction but have risen 1.8 percent for multi-units and 1.4 percent for single-unit (annual rates of 4.0 percent and 5.7 percent), reflecting higher costs for brick, concrete, gypsum, plastic, and copper products but lower prices for wood and some steel products.



Chart 2

Changes in Costs Among Construction Types

- ⋯◆⋯ Nonresidential Buildings
- ⟶○⟶ Highway & Street Construction
- ⟶▲⟶ Other Heavy Construction
- ⟶■⟶ Multi-Unit Residential
- ⟶ Single-Unit Residential

## Cost Changes Vary Widely by Material

The indexes for specific materials show why the industry indexes vary so much, and why construction materials costs overall exceed the general rate of inflation. Changes in some construction materials prices closely follow price changes for the crude materials used to make them. Thus, this section draws on a mix of PPIs for crude materials, materials used in construction among other industries, and materials specific to construction. The discussion and table are grouped around metals; concrete and brick; petroleum and natural gas derivatives; and gypsum and wood products. (See Charts 3 and 4 (Page 4) and Table 3 (Page 7).)

Most PPIs for materials used in construction had either small increases throughout 2001-03 or a mix of increases and decreases. By 2004, however, there were several extreme increases.

Steel mills raised their prices very suddenly and sharply in the first five months of 2004. Prices for automotive and appliance steel leveled off or retreated by year-end, but strong demand kept construction steel prices rising. For example, the average price of all steel mill products rose 48.8 percent, whereas the price of steel pipe and tube was up 66 percent. By 2005, slipping demand from automotive and appliance users of steel, plus an increase in imports, drove down the overall price of steel mill products by 3.6 percent. But continuing strong demand from contractors pushed up the price of fabricated iron and steel pipe, tube, and fittings (5.5 percent), fabricated structural metal for buildings (3.3 percent), and fabricated steel plate (one percent). In the past three months, these construction steel indexes have taken differing directions: 3.9 percent, -0.2 percent, and 1.9 percent, respectively. This reflects crosscurrents in the world steel market, in which predictions differ sharply among analysts about the likely supply-demand balance. In particular, China varies between importing steel for its infrastructure, private construction, and consumer products demand, and opening new mills that add to exports.



from worldwide demand for copper. Since aluminum is a major ingredient in steel, the entire price rise by 17.3 percent over the past three years. As a result, the PPI for copper and brass mill shapes rose roughly 30 percent in both 2004 and 2005, and was up another 11.2 percent in the last three months (annual rate of 57 percent).



Chart 3

Concrete prices have accelerated steadily, from –0.3 percent in 2002 to 9.8 percent in 2005, with a further 3.5 percent increase in the latest three months (annual rate of 14.8 percent). These increases have tracked an increase in the cost of cement, which rose 11.7 percent in 2005 and 3.2 percent in the last three months (annual rate of 13.4 percent). Costs for construction sand/gravel/crushed stone (up 7.5 percent in 2005, 2.9 percent in the past three months) and diesel fuel used to transport and mix concrete have also been rising at five to seven percent per year. Domestic cement production has been nearly stagnant, while consumption has been rising at 5-7 percent per year, making the U.S. steadily more dependent on imports. Although there is plenty of cement worldwide, ocean shipping costs, port congestion, and problems with rail and barge shipments have driven up cement prices

and caused widespread shortages. Cement and concrete producers in more than 30 states reported shutdowns or delivery interruptions in 2004 and 2005.

Diesel fuel and asphalt prices have been extremely volatile in the past several years, with an upward tilt. Both products come directly from crude oil. The index for domestically produced crude petroleum has varied from a drop of 42.4 percent in 2001 to a gain of more than 50 percent in 2002 and 2005, with a drop of 2 percent in the last three months. Correspondingly, the PPI for #2 diesel fuel fell 44.7 percent in 2001, rose by 18-54 percent in 2002-05, and fell 25.8 percent in the last three months. The PPI for asphalt was up 10-18 percent in 2005 (the first year it was calculated on its current basis) to 2005 and has fallen 8.1 percent in the latest quarter.

Industrial natural gas prices rose 20 percent in 2003 and 2004 and 31.5 percent in 2005 before falling 2.3 percent in the last three months. The 2005 increase was aggravated by damage from Hurricanes Katrina and Rita to offshore platforms and processing plants, which shrank supplies just before the winter heating season. Record warm temperatures in January drove natural gas futures prices down. The price increases are a major reason for the 22.6 percent increase in 2005 in the PPI for plastic construction products that use natural gas as a feedstock, such as polyvinyl chloride (PVC) pipe, membranes and geotextiles, paints and coatings, and some types of insulation and roofing material. Prices of those products rose 10.7 percent in the last three months, propelled partly by a severe shortage of PVC resin after a resin plant in Texas was shut down following two explosions. (The plant has reportedly resumed full production.) Natural gas is used as well to heat and dry some brick and structural clay tile, which rose 9.5 percent in price in 2005 and 5 percent in the last three months (22 percent annual rate).

Gypsum products prices rose 20 percent in 2004, 18.2 percent in 2005, and 5.6 percent in the last three months (24 percent annual rate). Very high demand from single- and multi-unit home building, home improvements, and some nonresidential building categories, in the face of relatively flat production, have kept prices soaring. Damage to plants and inventories from Hurricane Katrina worsened supply shortages.

Chart 4





# AGC Construction Inflation Alert

## Construction Demand and Costs Both Head Higher for 2006

Total construction spending rose nine percent in 2005. Double-digit increases occurred in single- and multi-family residential, hospital, multi-retail (general merchandise stores such as "big box" and warehouse-type stores, shopping centers, and shopping malls), manufacturing, highway and street, water and sewer construction. All of the nonresidential categories look as if they will do well again in 2006. In addition, hotels and resorts, freight transportation and distribution facilities, and other healthcare categories may improve from 2005. A mild slowdown in the residential categories appears likely, although perhaps not for the first few months.



### Hurricanes

Rebuilding from Hurricanes Katrina, Rita, and Wilma is not likely to have much impact on national markets for materials or labor. The rebuilding from Katrina will apparently be very protracted, and the overall level of construction in Louisiana will probably remain below pre-hurricane levels for several months at least. Construction employment in the state fell by 27,000, seasonally adjusted, from August to September. Only 7,000 jobs were added from September to December. Many of the two million evacuees from Katrina are likely to resettle elsewhere, adding to demand for housing, retail, consumer services, and some public construction in a variety of other states. In south Florida, demand for roofers and window installers for high-rise buildings will be elevated for several more months but there should be little market impact elsewhere.

With a generally strong outlook for construction activity, materials prices are likely to rise faster than the overall rate of consumer or producer prices again in 2006. The rate of increase for construction materials and components prices could be closer to the 10.1 percent rate of 2004 than the 6.1 percent rate of 2005. Once again, however, prices are likely to vary greatly by type of material and project.

### Metals

The outlook for metals is mixed. Steel prices are likely to stay close to their 2005 average but with significant month-to-month variations as the world supply-demand balance and shipping costs fluctuate. Recent record prices for copper on commodity exchanges suggest that copper pipe, fittings, and wire will also rise more. Raw aluminum prices also have been rising, implying that the price of architectural aluminum will rise more.

Cement and concrete prices seem headed still higher in 2006. Very little domestic cement capacity is expected to come online, while demand from nonresidential construction (which is more concrete-intensive than residential) will continue to rise. Exceptionally warm and dry weather in January allowed more concrete-pouring to occur than usual, which may mean shortages appear earlier this year than in years when cement makers and importers rebuilt stocks in the winter. One favorable development is an agreement between the U.S. and Mexico that aims to lower the antidumping duty on Mexican cement from the current $26 per ton to $3 per ton. If that takes effect in April, as expected, Mexican cement should start replacing cement from China, Korea, Thailand, Greece, or Venezuela, all of which currently supply more to the U.S. than Mexico does, despite the longer transit times and higher shipper rates. However, the agreement includes state and regional quotas on Mexican cement that will limit the relief.



### Oil & Natural Gas

Oil and natural gas prices have fallen sharply from their post-hurricane highs. However, production from the Gulf of Mexico is still down by more than 15 percent, keeping supplies tight. As of mid-March, the national average retail price of diesel fuel was around $2.55 per gallon, 60 cents below the record set after Rita but 35 cents (16 percent) higher than a year ago. In percentage terms, the off-highway diesel price, which does not include 45-50 cents of highway taxes, was up even more. It appears diesel prices for 2006 as a whole will be up 10-30 percent over 2005, with wide month-to-month variation. These prices affect contractors through the cost of operating off-road equipment and construction trucks, and in the fuel surcharges truckers add to delivery bills for materials, equipment, and debris hauling. Asphalt prices also will be elevated and may go higher by year-end, as refiners introduce more desulfurization equipment that leaves less liquid asphalt at the end of the refining process. Construction plastics prices should come down from recent highs but average 10-20 percent higher than year-ago levels. Other products that rely on natural gas or that have high transport costs, such as paints and coatings, insulation, and brick, are likely to rise 5-10 percent in price.



Equipment costs are expected to continue rising at the 5-6 percent rate of the past two years. Demand has remained strong, and components suppliers have had trouble filling orders in some cases. Tires for large equipment have been very hard to come by due to limited specialized tiremaking capacity and robust worldwide demand from mines and the U.S. military, in addition to the construction industry.

Labor costs have yet to accelerate from the 3.7 percent pace in 2005. Data from the Construction Labor Research Council suggest new contracts contain similar raises to previous contracts. Despite record construction employment (7.5 million in February, seasonally adjusted, up 4.7 percent from February 2005), most contractors have not reported greater difficulty than in the past in filling crafts positions. The most difficult positions to fill appear to be supervisors, project managers, and cost estimators.

### Conclusion

The construction industry has much less opportunity that many other industries have to reduce or substitute materials. As a result, rising construction activity is likely to mean higher materials costs, particularly when domestic production is barely rising for many materials transportation costs are high. All of these conditions are likely to continue in 2006. Therefore, 2006 is likely to be another year of elevated construction materials prices, with selective shortages.

In contrast, labor costs are likely to grow only moderately. The industry benefits from the large number of new "baby boomlet" entrants in the workforce. There are fewer job openings in manufacturing, normally an alternative to construction for many workers.



became Chief Economist of ...Contractors of America (AGC), the leading national ...for the construction industry, on September 10th,

...years of experience analyzing, advocating and communicat-...ing and tax issues. Before joining AGC, he spent three ...economic adviser in the Office of Advocacy of the U.S. ...istration and 13 years as vice president and chief ...American Trucking Associations. He also worked with ...ission on Industrial Competitiveness, the U.S. ...ce, the Federal Home Loan Bank Board, and an ...firm.

...page email newsletter that summarizes the latest eco-...author of AGC's monthly Construction Tax News, a ...tax developments affecting the industry.

...University of Chicago and an MA in economics from ...member of the National Association for Business

05/09/2008 15:54 FAX 3036942292    CART SPORTS    图019

# AGC's Construction Inflation Alert

Appendix B

## Table 1: Construction Material Costs vs. CPI-U and PRI

| | Percentage change in 12 months ending | | | | | |
|---|---|---|---|---|---|---|
| | 12/01 | 12/02 | 12/03 | 12/04 | 12/05 | Oct.05-Jan.06 |
| CPI-U | 1.6 | 2.4 | 1.9 | 3.3 | 3.4 | -0.5 |
| PPI for finished goods | -1.6 | 1.2 | 4.0 | 4.2 | 5.4 | -0.6 |
| New warehouse construction (finished cost) | N/A | N/A | N/A | N/A | 7.6 | 1.6 |
| Materials and components for construction | 0.0 | 0.8 | 3.0 | 10.1 | 6.1 | 2.6 |
| Construction machinery and equipment | -0.1 | 1.9 | 1.3 | 6.0 | 6.0 | 1.6 |
| | 4.6 | 3.2 | 3.4 | 2.4 | 3.7 | 0.3 (Sept-Dec.05) |

## Table 2: Changes in Costs Among Construction Types

| | Percentage change in 12 months ending | | | | | |
|---|---|---|---|---|---|---|
| | 12/01 | 12/02 | 12/03 | 12/04 | 12/05 | Oct.05-Jan.06 |
| | 0.0 | 0.7 | 0.4 | 7.4 | 7.4 | 0.1 |
| | -3.6 | 1.0 | 2.6 | 10.6 | 14.1 | 2.2 |
| Highway and street construction | -1.0 | 1.0 | 2.8 | 13.4 | 8.8 | -0.6 |
| Other heavy construction | -0.1 | 0.4 | 2.7 | 8.9 | 7.6 | 1.0 |
| Multi-unit residential | | | | | | |
| Single-unit residential | -0.4 | 0.6 | 3.6 | 7.0 | 6.9 | 1.4 |

## Table 3: Changes in Costs for Specific/Basic Construction Inputs

| | Percentage change in 12 months ending | | | | | |
|---|---|---|---|---|---|---|
| | 12/01 | 12/02 | 12/03 | 12/04 | 12/05 | Oct.05-Jan.06 |
| Iron ore | 1.5 | -1.3 | 1.8 | 6.7 | 15.5 | 3.7 |
| Iron and steel scrap | -5.6 | 27.8 | 54.5 | 50.6 | -10.9 | 2.9 |
| Steel mill products | -6.1 | 11.1 | 1.7 | 46.6 | -3.6 | 3.0 |
| Hot-rolled bars, plates, and structural shapes | -4.3 | 2.1 | 11.3 | 33.3 | -0.9 | 0.1 |
| Galvanized | -3.7 | 6.1 | 3.3 | 66.0 | 1.1 | 2.3 |
| Steel pipe and tube | -19.6 | -- | -37.4 | 55.1 | 34.1 | N/A |
| Concrete reinforcing bars | -27.4 | 11.2 | 30.7 | 34.6 | 62.0 | 6.6 |
| Copper and brass mill shapes | -2.9 | -0.9 | -0.5 | 9.6 | 6.6 | 4.6 |
| Aluminum mill shapes | | | | | | |
| Structural, architectural, pre-engineered metal prods | -1.5 | -0.4 | 1.0 | 26.1 | 3.1 | 1.3 |
| Fabricated structural metal | -1.3 | -2.4 | 0.1 | 24.7 | 3.0 | 0.5 |
| Fabricated structural metal for buildings | -1.5 | -3.2 | -0.1 | 20.0 | 3.3 | 0.2 |
| Architectural and ornamental metalwork | -0.1 | 3.7 | 0.7 | 23.5 | 5.0 | 0.8 |
| Prefab metal iron and steel pipe, tube, and fittings | 0.6 | 0.1 | 1.2 | 32.6 | 5.5 | 3.9 |
| Nonferrous pipe, tube, and fittings | 0.9 | 0.6 | -0.4 | 3.6 | 26.1 | 7.5 |
| Fabricated steel plate | 0.0 | 4.0 | -0.7 | 35.5 | 1.0 | 1.9 |
| Prefabricated metal buildings | | | | | | 2.8 | -4.3 |
| Cement | 1.0 | 1.3 | -1.1 | 7.9 | 11.7 | 3.2 |
| Construction sand/gravel/crushed stone | 3.3 | 2.5 | 2.4 | 4.3 | 7.5 | 2.9 |
| Concrete products | 2.6 | -0.3 | 1.5 | 7.6 | 9.8 | 3.5 |
| Concrete block and brick | 2.8 | 1.5 | 3.2 | 4.7 | 8.1 | 2.3 |
| Gypsum pipe | 4.4 | 1.7 | 1.4 | 5.5 | 8.6 | 5.8 |
| Ready-mixed concrete | 2.5 | -1.1 | 2.1 | 8.7 | 11.8 | 4.1 |
| Precast concrete products | 0.7 | 0.9 | 2.5 | 6.0 | 6.4 | 1.2 |
| Prestressed concrete products | 5.3 | 1.6 | -0.2 | 6.2 | 0.8 | 0.9 |
| Brick and structural clay tile | 5.3 | 1.9 | 0.7 | 3.0 | 9.5 | 5.0 |
| Crude petroleum (domestic production) | -12.4 | 80.6 | 14.3 | 30.5 | 51.3 | -2.0 |
| Industrial natural gas | -35.7 | 12.2 | 20.3 | 20.1 | 31.5 | -2.3 |
| Plastic resins and materials | -6.8 | 9.2 | 6.4 | 26.8 | 11.5 | -2.9 |
| #2 diesel fuel | -44.7 | 54.4 | 13.0 | 37.9 | 46.3 | -25.8 |
| Asphalt | N/A | N/A | 10.0 | 16.3 | 17.8 | 8.1 |
| Paving mixtures and blocks | 0.9 | 2.0 | 3.7 | 4.0 | 14.2 | 4.3 |
| Asphalt felts and coatings | 4.6 | -0.6 | 6.5 | 9.1 | 17.1 | 6.4 |
| Prepared asphalt & tar roofing & siding products | 5.0 | -1.7 | 5.3 | 4.6 | 16.6 | 6.5 |
| Plastic construction products | -2.7 | 9.1 | 3.2 | 7.2 | 22.6 | 10.7 |
| Rubber and plastic plumbing products | -5.3 | 5.7 | 6.8 | 17.8 | 39.0 | N/A |
| Insulation materials | 0.4 | -1.5 | 2.0 | 2.8 | 2.8 | 4.0 |
| Architectural coatings | 2.9 | 0.6 | 3.9 | 5.3 | 9.2 | 2.8 |
| Gypsum products | 0.4 | 3.4 | 2.8 | 20.0 | 18.2 | 5.6 |
| Lumber and plywood | -2.8 | 1.4 | 3.1 | 9.4 | 5.0 | -1.7 |

# ACG's Construction Inflation Alert

## Appendix B: Producer Price Indexes Relevant to Construction

There is no overall price index that reflects all of the costs incurred by contractors. The only PPI so far for any type of finished construction work, an index for new warehouse construction, dates only from December 2004. BLS intends to roll out PPIs for other building types in the next few years. Nevertheless, the PPI does include numerous subindexes that indicate how specific construction costs are changing.

In general, PPIs measure the cost at a U.S. producer's loading dock or other point of sale. Thus, PPIs do not capture the transportation, insurance, freight, labor, equipment, and overhead costs or profit that the user (e.g., construction firm) incurs.

There are several types of PPIs. The published monthly PPI report (at www.bls.gov/ppi) shows PPIs for finished goods, including subindexes for various types of capital equipment; intermediate materials, supplies, and components; and crude materials for further processing. In addition, there are industry PPIs.

The PPI for finished goods, the most frequently cited, reflects the U.S. manufacturer or final producer's selling price of goods produced for final consumption. It differs from the CPI in that it does not capture the retailer or final vendor's additional costs and markup. Also, the PPI includes only goods, not the services that make up the bulk of consumer purchases. Although most finished goods PPIs are for goods sold to consumers, there is one that applies to construction-the PPI for construction machinery and equipment.

Another set of PPIs is for intermediate goods, materials, and components-items produced for other businesses that then produce finished goods. Like finished goods PPIs, these PPIs measure the price at the U.S. producer's point of sale. Although some intermediate PPIs are specific to one set of customers (e.g., concrete products are sold almost exclusively to construction-related business), other PPIs cover a range of products that many businesses buy (e.g., steel mill products). Thus, these PPIs vary in how closely they reflect the selling prices of items purchased for use in construction.

A third set of PPIs is for crude goods-the basic materials that are turned into intermediate and finished goods. These include both virgin materials, such as crude oil and ores, and scrap. The connection between crude goods and intermediate or finished goods can be relatively direct (e.g., cement and construction sand/gravel/crushed stone go directly into concrete products) or involve many stages. Moreover, the change in final prices may be influenced by substitution of other inputs, use of imports, etc. Thus, the movement of crude prices provides a hint, not a definite sign, of how final or intermediate prices will vary.

Industry PPIs show the weighted average of the producer prices of the goods bought by an industry for all of its purposes. In the case of construction industry types, most of the goods in the industry indexes are used to construct the project types (e.g., nonresidential, single- and multi-family residential buildings, highway, other heavy), but the indexes also include materials that contractors buy for their own overhead.

The indexes included in this report cover a range of items used for construction but not all. Specialty and subcontractors may find other PPIs more pertinent to their businesses at the "Get Detailed Statistics" section of the PPI home-page, www.bls.gov/ppi.

*The following BLS table, showing the list of material and supply inputs that are purchased by the construction sector and the percentage of the finished goods PPI that each represents, is reproduced from ftp://ftp.bls.gov/pub/special.requests/ppi/soprel05.txt.*

| SOP Code | Commodity Code | Index | Relative Importance |
|---|---|---|---|

## AGC's Construction Inflation Alert

| Code | Description | | |
|------|-------------|---|---|
| 067404 | Adhesives and sealants | .000 | .000 |
| 069000 | Other miscellaneous chemical products | .000 | .000 |
| 071201 | Tires | .018 | .018 |
| 071202 | Inner tubes | .000 | .000 |
| 071205 | Tread rubber, tire sundries, & repair | .003 | .003 |
| 071503 | Rubber and plastic belts and belting | .001 | .001 |
| 071504 | Rubber hose | .001 | .001 |
| 071505 | Miscellaneous rubber products, n.e.c | .011 | .011 |
| 072105 | Plastics construction products | .955 | .955 |
| 072200 | Unsupported plastic film/sheet/other s | .180 | .180 |
| 072205 | Laminated plastic sheets, rods, and tu | .018 | .018 |
| 072404 | Other plastic products | .081 | .081 |
| 072904 | Plastic construction products | .043 | .043 |
| 081000 | Flooring/siding, rough lumber stock | .269 | .269 |
| 081105 | Softwood lumber, not edge worked, not | .035 | .035 |
| 081107 | Softwood lumber, NHPMA | .019 | .019 |
| 082205 | Hardwood dimension | .058 | .058 |
| 081204 | Hardwood flooring | .075 | .075 |
| 081205 | Hardwood lumber, not edge worked, not | .015 | .015 |
| 081206 | Hardwood lumber, NHPMA | .780 | .780 |
| 082101 | General millwork | .254 | .258 |
| 082201 | Prefab wood buildings & components | .005 | .005 |
| 082301 | Miscellaneous millwork products | .102 | .094 |
| 083103 | Softwood veneer and plywood | — | .045 |
| 083201 | Hardwood plywood and related products | — | .017 |
| 083501 | Softwood veneer, not veneer backed | — | .018 |
| 083401 | Hardwood plywood veneer | .071 | — |
| 083501 | Hardwood veneer and plywood | .021 | .021 |
| 084905 | Wood ties, siding, shingles, & shakes | .003 | .003 |
| 084904 | Sawn wood/lumber stock, wood lat, and c | .142 | .142 |
| 086701 | Prefabricated wood buildings & compone | .146 | .153 |
| 087101 | Treated wood | .005 | .006 |
| 087102 | Contract wood preserving | .007 | .007 |
| 091303 | Packaging/industrial converting pa | .008 | .008 |
| 094305 | Coated and laminated paper, n.e.c | .006 | .006 |
| 091555 | Other building paper and board | .005 | .005 |
| 091508 | Pressed and molded pulp goods | .032 | .031 |
| 091599 | Misc. converted paper and board produc | .074 | .074 |
| 092201 | Particleboard and fiberboard | .015 | .015 |
| 092202 | Hardboard and laminated hardboard pro | .011 | .011 |
| 092201 | Paper, sanitary, hand pressed, insul... | .006 | .006 |
| 093201 | Oil/lotion | — | .001 |
| 093203 | Other periodicals, circulation/adverti | .008 | .008 |
| 093501 | Manifold business forms | .103 | .103 |
| 101502 | Pressure & soil pipe & fittings, cast | .092 | .092 |
| 101504 | Gray & ductile iron castings, other | .004 | .004 |
| 101505 | Malleable iron castings | .020 | .020 |
| 101506 | Carbon, stainless, and alloy investmen | .007 | .007 |
| 101507 | Other steel castings, carbon steel | .006 | .006 |
| 101508 | Other steel casting, high alloy & stai | .006 | .006 |
| 101509 | Other steel castings, low alloy steel | .057 | .057 |
| 101702 | Semifinished steel mill products | .149 | .144 |
| 101703 | Hot rolled sheet and strip, incl. tin | .126 | .127 |
| 101704 | Hot rolled bars, plates, & structural | .157 | .159 |
| 101705 | Steel wire | .014 | .014 |
| 102501 | Aluminum mill shapes | .018 | .018 |
| 102502 | Copper and brass mill shapes | .001 | .001 |
| 102504 | Nickel alloy mill shapes | .001 | .001 |
| 102505 | Titanium mill shapes | .002 | .002 |
| 102519 | Other mill shapes | | |
| 102603 | Nonferrous wire and cable | .410 | .413 |

Assoc. Construction Initiation Alert

| Code | Description | | |
|---|---|---|---|
| | Millwork | .049 | .048 |
| | Other plywood products | .016 | .016 |
| | Hardwood dimension and flooring | .039 | .040 |
| | Hardwood veneer and plywood | .089 | .049 |
| | Vitreous china fixtures | .136 | .136 |
| | Plumbing fixture fitting and trim | .185 | .185 |
| 105602 | Enameled iron & metal sanitary ware | .051 | .051 |
| 105601 | Steam and hot water equipment | .001 | .001 |
| 105601 | Floor & wall furnace heaters/parts | .082 | .083 |
| 105501 | Other heating; nonelec., parts | .074 | .074 |
| 106001 | Domestic heating stoves | .011 | .011 |
| 106601 | Water heaters, domestic | .030 | .031 |
| 106601 | Metal doors and frames, exc. storm | .169 | .170 |
| 107402 | Metal window sash and frames, exc. stg | .209 | .205 |
| 107405 | Metal molding and trim and storefront | .021 | .022 |
| 107704 | Storm sash and doors | .019 | .019 |
| 107705 | Screens and weatherstrip | .061 | .062 |
| 107106 | Metal tanks | .108 | .107 |
| 107201 | Sheet metal products | .542 | .547 |
| 107301 | Nonferrous pipe, tube, and fittings | .022 | .022 |
| 107404 | Fabricated structural metal | .392 | .395 |
| 107405 | Miscellaneous metal work | .118 | .119 |
| 107407 | Architectural and ornamental metalwork | .191 | .192 |
| 107406 | Fabricated iron & steel pipe, tube & f | .099 | .100 |
| 107409 | Heat exchangers and condensers | .046 | .046 |
| 107501 | Fabricated steel plate | .059 | .059 |
| 107601 | Steel power boilers | .009 | .009 |
| 107701 | Nuclear steam supply systems | .008 | .008 |
| 107801 | Prefab. metal bldg systems ex. farm | .131 | .132 |
| 107901 | Other prefab. & portable metal buildin | .047 | .046 |
| 107902 | Panel sys. & associated structural | .016 | .016 |
| 107903 | Externally thread. fasteners, exc. bolt | .005 | .005 |
| 108102 | Internally thread. fasteners, exc. nuts | .001 | .001 |
| 108103 | Nonthreaded fasteners, & connectors | .002 | .002 |
| 108104 | Other formed fastener | .001 | .001 |
| 108106 | Residential | .027 | .028 |
| 108302 | Commercial, institutional & industrial | .099 | .099 |
| 108305 | Lighting equipment | .059 | .059 |
| 108305 | Ferrous wire rope, cable and strand | .056 | .057 |
| 108801 | Steel nails and spikes | .027 | .028 |
| 108802 | Ferrous wire cloth, other woven wire p | .007 | .007 |
| 108807 | Other fabricated ferrous wire products | .088 | .088 |
| 108809 | Other metal products | .036 | .037 |
| 108905 | Metal stampings n.e.c. | .005 | .005 |
| 108907 | Industrial pumps | .012 | .012 |
| 114102 | Parts & attach for air & gas compresso | .004 | .004 |
| 114107 | Industrial spraying equipment | .004 | .004 |
| 114108 | Other pumps, including parts | .011 | .011 |
| 114112 | Domestic water systems | .002 | .002 |
| 114113 | Air & gas compressors and vacuum pumps | .001 | .001 |
| 114115 | Elevators & escalators | .044 | .044 |
| 114201 | Conveying equipment | .002 | .002 |
| 114402 | Fans and blowers, except portable | .047 | .047 |
| 114701 | Heat transfer equipment | .187 | .186 |
| 114801 | Unitary air conditioners | .236 | .285 |
| 114802 | Other a/c and refrigeration equipment | .017 | .017 |
| 114806 | Parts & accessories for a/c & refrig. | .007 | .007 |
| 114809 | Metal valves, except fluid power | .144 | .143 |
| 114902 | Metal pipe fittings, flanges, and unio | .043 | .043 |
| 114903 | Filters and strainers | .006 | .006 |
| 114908 | Other miscellaneous general purpose eq | .011 | .011 |
| 114911 | Current carrying | .162 | .161 |
| 117101 | | | |

| Code | Description | Former | Revised |
|---|---|---|---|
| | X-ray and other electromedical apparatus | .159 | .159 |
| 11723 | Radio, television, communication equip | .120 | .159 |
| 11721 | Semiconductors & related devices | .000 | .000 |
| 117700 | Electron tubes, receiving and tubes | .008 | .008 |
| 11720A | Electronic batteries | .002 | .002 |
| | Environmental controls | .181 | .186 |
| 118405 | Process control instruments | .000 | .000 |
| 118201 | Fluid meters and counting devices | .002 | .002 |
| 118901 | Aircraft engine instruments | .000 | .000 |
| 118904 | Nuclear radiation detect & monitoring | .001 | .001 |
| 118905 | Physical properties and kinematic test | .000 | .000 |
| | Commercial geophysical & general instrmen | .083 | .083 |
| 121101 | Metal household furniture | .002 | .002 |
| 12180A | Reupholstered lawn furniture | .047 | .047 |
| 122401 | Wood office furniture and store fixtur | .032 | .032 |
| 122304 | Partitions and fixtures | .009 | .009 |
| 122309 | Public building furniture | .093 | .092 |
| 124701 | Carpets & rugs | .031 | .031 |
| 124201 | Hard surface floor coverings | .036 | .036 |
| 124404 | Other major appliances | .002 | .002 |
| 124501 | Vacuum cleaners | .007 | .007 |
| | Small household appliances | .008 | .008 |
| 131105 | Sheet, plate, and float glass | .079 | .079 |
| 13220A | Cement | .094 | .094 |
| 13311 | Structural block | .011 | .011 |
| 133121 | Decorative block | .007 | .007 |
| 133901 | Concrete brick | .012 | .012 |
| 133901 | Paving blocks | .091 | .091 |
| 13320A | Concrete pipe | .160 | .160 |
| 133501 | Ready mixed concrete | .024 | .024 |
| | Precast concrete products | | |
| 133601 | Prestressed concrete products | .077 | .077 |
| | Brick except ceramic, glazed & refrac | .069 | .069 |
| 134201 | Glazed brick struct, hollow & facing | .004 | .004 |
| 134401 | Ceramic floor and wall tile | .027 | .027 |
| 134501 | Structural clay products, n.e.c. | .006 | .006 |
| 135201 | Clay refractories | .025 | .024 |
| 135AD1 | Refractories, non clay | .032 | .032 |
| 136301 | Prep. asphalt & tar roofing & siding p | .208 | .208 |
| 136201 | Other asphalt roofing | .038 | .038 |
| 137101 | Gypsum products | .172 | .172 |
| 139201 | Mineral wool for structural insulation | .129 | .129 |
| 139401 | Paving mixtures and blocks | .312 | .312 |
| 139501 | Cut stone and stone products | .029 | .026 |
| 139801 | Gaskets and gasketing material | .002 | .002 |
| 139902 | Packing and sealing | .002 | .002 |
| 139902 | Other nonmetallic minerals, n.e.c. | .027 | .027 |
| 139903 | Nonmetallic mineral products, n.e.c. | .002 | .002 |
| 15AAD4 | Signs and advertising displays | .008 | .008 |

1/ The relative importance of a component of the PPI represents its value weight that is allocated to a particular stage-of-processing (SOP) category—Finished Goods, Intermediate Materials, or Crude Materials. This value is expressed as a percentage of the total weight of the SOP category. The "Revised" column shows relative importance figures from December 2005, based on 1997 ship-ment values from the Census of Manufactures and other sources, and reflects all sample revisions effective January 2006. The "Former" column provides relative importance figures for the same month before any sample revision. Groupings and subtotals may not add exactly to totals because of rounding. A dash in the "Former" column indicates that the series was introduced in January 2006, and a dash in the "Revised" column indicates that the series was discontinued as of January 2006. The value "0.000" represents any percentage less than 0.0005.

## SUMMARY OF REPLACEMENT AND REPAIR COSTS

5/1/2006

**Sports Authority**
**#618 Springfield**

Below is the summary comment on the costs as related to the required repairs needed from the tornado damage. The Shell and TI cost was the actual bid from Vancil Contracting in 2001. Since I didn't know the change orders from this project, I assumed that they were about the same as any one of our typical new store projects which is about 3%. In order to accurately adjust the cost for the work for inflation, I used actual historical increases in construction costs as defined by The Associated General Contractors of America. I multiplied this total building replacement cost by 35% as defined in the lease to establish the threshold allowing the tenant to terminate the lease. The estimated repair cost was developed by a contractor who had bid on the TI work in 2001 and is very familiar with the Illinois construction market.

Original construction costs from 2001 as defined by the general contractor of record, Vancil Contracting

|  |  |
|---|---|
| Shell Costs | $889,295 Includes all grading, foundation and slab |
| TI Costs | $716,593 |
| Sub-Total | $1,605,888 |
|  |  |
| *3% estimate for original project changes | $48,177 |
| Sub-Total | $1,654,065 |
|  |  |
| **18.5% estimated 5 year cost increase | $306,002 |
|  |  |
| TOTAL BUILDING REPLACEMENT COST | $1,960,067 |
|  |  |
| 35% threshold as defined by the lease | $686,023 |
| Estimated Repair costs (detail attached) | $1,046,701 |

* Exact increases, if any are unknown to Sports Authority. 3% estimate based on worst case scenario for ground up project.
**Increase of approximately 18.5% for construction costs increases over a 5 year period since the original construction. Increase based on analysis of Chief Economist Ken Simonson. Associated General Contractors of America, March 2006. See attached.

## EXHIBIT F

05/09/2006 15:25 FAX 3038642102    GART SPORTS    ☑009

## BUDGET ESTIMATE

**Sports Authority**
#418
3221 South Veterans Parkway
Springfield, IL 62704
Budget by: 42419.sf

Budget based on Union Labor costs
*Prepared by Jeff Wolford, Wolford Retail Builders, inc.

| ITEM | MATERIAL | NOTES | TOTAL |
|---|---|---|---|
| | | | $813,828 |
| Emergency Roof Repair from Cotton USA | | Invoice attached | $36,000 |
| Architectural and Engineering | | | $15,000 |
| Structural Engineering | | | $67,100 |
| Selective Demolition - Balance of Damage | | 4000 sq ft | $75,600 |
| Demolition & Reanchor 4" Deck | | elevation | $40,000 |
| Weather Proof Roof Deck | Own Line E | | $21,600 |
| Replace New Structural masonry wall | | 18k sq ft, $82,000 for entire roof | $30,000 |
| Roofing Installation | | | $82,000 |
| Replace Existing Storefront & Glass | | | $20,000 |
| Provide New Exterior Entry damaged | | | $82,850 |
| Electric & Mech Devices Replacement | | | $32,000 |
| Deckwork Remove and replace | | | $23,800 |
| Fix & Prep Intended for Deck | | 4" up at Perim | $61,600 |
| Drywall Finish Ceiling Perimeter 4' U/S of Deck | | 4,000 sf | $44,880 |
| Minor Stucco Patch & replacement | | | $62,280 |
| Electrical Service & Circuit Verification | | Sales Floor | $15,500 |
| Light Fixture Installation Only | 50 Fixtures | Materials | $14,850 |
| Light Fixtures | 50 Fixtures | | $9,000 |
| Break Concrete & Install New levels | | .40 per ft | $110,845 |
| Floor Repair & Adhesive Removal | | | $68,500 |
| Entire Flooring Installation | | Materials | $57,280 |
| Flooring materials | | Install Only | $57,250 |
| RRP Demolition & Re-Installation | | Install Only | $26,000 |
| Entire New Premise Millwork Installation | | Materials | $32,550 |
| Millwork | | | $41,000 |
| Install Toilet Partitions / Accessories | | Union | $4,100 |
| Final Cleaning & Deodorizing | | 10 X $410.00 | $62,500 |
| Dumpsters | | | $12,500 |
| Barricades Dismantling of Existing | | | $56,295 |
| Protection / Of misc materials | | | $25,600 |
| Misc Rental Equipment | | 4% | $24,550 |
| Contingency | | | $21,875 |
| General Conditions (Itemize) | 9 Weeks | $2,375 Per Wk | $22,200 |
| Supervision | | | $4,000 |
| City Required Fire Watch | | | $966,746 |
| Permit | | | |
| SUBTOTAL | | N/A | |
| Allowances | | | |
| SUBTOTAL | | 1.50% | $16,081 |
| Insurance | | 10% | $96,675 |
| Profit & Overhead | | 5% | $48,987 |
| Premium for expedited work | | | $1,040,701 |
| TOTAL | | | |
| List itemizations below: (#25 - Gen Cond.) | | | $2,400 |
| Misc. Construction Materials | | | $5,100 |
| PM Travel, Misc Office & Field Costs | | | $22,200 |
| Temp Phone, Cell Phone | | | $7,500 |
| Construction Laborers & Clean-up | | | $1,800 |
| Superintendent Travel | | | $1,550 |
| Administration Time | | | |

*Jeff Wolford has been a general contractor based in Illinois for 23 years and for 6 years prior to that in New York.
He bid on the original Springfield TI work in 2001.

| UNION    /    NON-UNION | Amount of time for construction: | wks | Weeks |
|---|---|---|---|
| % of Union Increase:    % | | | |

E-FILED
Thursday, 17 January, 2008  04:10:13 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

SPRINGFIELD DIVISION

COPY

| | | |
|---|---|---|
| SWPLAZA III, LLC, an Illinois Limited | ) | |
| Liability Company, as successor to | ) | |
| Illinois National Bank, as Trustee | ) | |
| under Trust Agreement dated | ) | |
| November 6, 2000 and known as Trust | ) | |
| No. 00-0020, an Illinois banking | ) | |
| institution, | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 06-3177 |
| TSA STORES, INC., as successor to Gart | ) | |
| Brothers Sporting Goods Company, | ) | |
| a Delaware Corporation, | ) | |
| Defendant. | ) | |

The discovery deposition of JEFFREY WOLFORD,

taken in the above-entitled cause, before Christine

M. Jachimiak, a notary public of Cook County,

Illinois, on the 30th day of October, 2007 at

222 North LaSalle Street, Suite 300, Chicago,

Illinois, pursuant to Notice, at the hour of 1:30.

Reported by:  Christine M. Jachimiak, CSR

License No.:  084-004064

1

EXHIBIT 2

1    been previously produced.

2        MR. ROLF:  Is that all the material you had in

3    your file for this particular project?

4        MR. WOLFORD:  That's correct, yes.

5        MR. SCHMADEKE:  I should say he has other

6    material, but I think you have everything else.

7    BY MR. ROLF:

8        Q.   So as of today you've produced your entire

9    file either before or after?

10       A.   Yes.

11       Q.   When were you first contacted about this,

12   Mr. Wolford?

13       A.   I believe the date was March 27th, 2006.

14       Q.   Who contacted you?

15       A.   David Freider.

16       Q.   What did he explain to you that they were

17   in need of?

18       A.   They were looking for a preliminary budget

19   for a replacement cost, construction cost for the

20   Sports Authority Store number 618 in Springfield,

21   Mass because of an unnatural disaster of the

22   tornado.

23       Q.   I think you just said Springfield, Mass.

24   Is it Illinois?

                                                    5

1          A.    I'm sorry, I'm bidding a job there, too.

2    Springfield, Illinois, store number 618.

3          Q.    Can you be more specific about what he

4    asked you to do?

5          A.    Because of the March 12th tornado

6    implosion of that space and the site he asked me to

7    put together a replacement cost of selective damage

8    that he described verbally either per an Email with

9    some very basic construction replacement scopes and

10   that means subcontractor scopes of the damages.

11         Q.    And he provided you with that information

12   then on March 27th?

13         A.    At that point a very basic budget or work

14   scope to put numbers on as he knew it in that time

15   frame.

16         Q.    Do you recall what the scope was that you

17   described?

18         A.    Not offhand without reading the Email.

19         Q.    Would there be an Email that that was in?

20         A.    Yes, there should be an Email.

21         Q.    Do you have that with you today?

22         A.    It should be.  That's actually the first

23   one they sent to me on March 27th it looks like.

24   It's specific to this Email to the 27th that I

6

1    BY MR. ROLF:

2        Q.    So you produced a report like this that

3    has the various items listed?

4        A.    That would be the final.  That would be

5    the final budget after the scopes were more

6    defined.

7        Q.    What was contained within your original

8    scope particularly in terms of the items listed?

9    Is there any way to tell that?

10        A.    Not at this point because it was overlaid

11    and more details as it went on after the site visit

12    and those types of things.

13        Q.    What kind of number did you come up with

14    based on this March 27th, 2006 Email?

15        A.    I could not tell you.  It wasn't that far

16    off.  Some of the numbers went up or down depending

17    on what I field determined and further information,

18    site photos, damage photos that were sent to me

19    after this Email.

20        Q.    How soon was it after the March 27th Email

21    that you got back to Mr. Freider?

22        A.    May I go through these Emails?

23        Q.    Sure.

24        A.    For this original budget?

9

1    Q.   Yes.

2    A.   Looking at the Email it looks like I did

3    an attachment April 19th. I believe there would not

4    be a copy of that because of that original budget

5    that I would have because I overlaid and it was a

6    work in progress over say plus or minus a month.

7    Q.   Is this the Email you're looking at?

8    A.   Yes, it is.

9    Q.   And you think that's the first time you

10   had an actual --

11   A.   That I actually Emailed a budget over, a

12   hard copy, yes.

13   Q.   We wouldn't be able to have a copy of

14   that?

15   A.   No.

16   Q.   Was all your correspondence on this

17   project with Mr. Freider?  Is that a yes?

18   A.   Yes.

19   MR. SCHMADEKE:  At that time?

20   THE WITNESS:  At that time.

21   BY MR. ROLF:

22   Q.   Who else from TSA have you had

23   correspondence with?

24   A.   Douglas Garrett, David Freider and

10

1      A.    90 percent of it was by Email.

2      Q.    Did you talk with anyone other than

3    Mr. Freider about the damage that was out at the

4    location in Springfield?

5      A.    Jeff Crohn with Cotton defining his

6    scopes. I spoke to several of the subcontractors

7    when I was there on May 4th, 2006 per the site

8    visit defining the scopes and damage.

9      Q.    But leading up to what you were asked to

10    do in defining this original scope was it just with

11    Mr. Freider?

12      A.    That's correct, sir.

13      Q.    Did Crohn -- did you talk to him to get a

14    description of any of the damage to the facility

15    when you were preparing your table?

16      A.    That is correct.

17      Q.    When were those conversations?

18      A.    Those were during the month of April at

19    some point.  I never document.  There was no phone

20    log.

21      Q.    Was that all by phone?

22      A.    It was all by phone.

23      Q.    This has been marked as Exhibit 1 which is

24    your report in this matter.  I want to run through

                                                    12

1    some of it. You list several projects there in the

2    introduction that you've done for Sports Authority?

3        A.    Yes.

4        Q.    We touched on this already.  Most of those

5    I take it are the tenant build-out where you have

6    the interior.  Is that what you mean?

7        A.    That is correct.

8        Q.    Are there any on there where you were from

9    the ground out?

10       A.    From the ground up and the shell itself?

11       Q.    Yeah.

12       A.    No.  None of those are straight ground up

13   projects.

14       Q.    Why don't you describe for me the business

15   of Wolford Retail Builders?

16       A.    I'm primarily a big box contractor, retail

17   contractor.  I do no residential work whatsoever.

18   It's strictly retail work.

19       Q.    Who besides Sports Authority do you do

20   work for?

21       A.    Since I have been in business for myself

22   in two and a half years I've done a couple of other

23   clients, but primarily Sports Authority is my

24   biggest client by far.

                                        13

1          Q.    You've been in business for yourself for

2     two and a half years?

3          A.    Yes.

4          Q.    What were you doing prior to that?

5          A.    I was building Sports Authority work for

6     another contractor as a direct employee, that would

7     be the third employee that I had worked for doing

8     Sports Authority work.  They followed me over the

9     years.

10         Q.    You say Sports Authority followed you?

11         A.    Well, I've been able and lucky enough to

12    do their work over the last eight years with three

13    different other employers.

14         Q.    What's your educational background?

15         A.    Higher education?

16         Q.    Yes.

17         A.    I have four years from Pratt Institute in

18    Brooklyn, New York.

19         Q.    What does that get you?

20         A.    Nothing.

21         Q.    What is it designed to get you?

22         A.    That was an architectural school.

23         Q.    Does it take five and you only did four?

24         A.    That's exactly right.

                                                        14

1    documentation, yes.

2        Q.   You didn't get the job in that instance,

3    right?

4        A.   That's correct.

5        Q.   Paragraph seven states that on May 2nd,

6    2006 you were asked to go to the premises?

7        A.   That is correct.

8        Q.   Actually to review the premises and also

9    review certain other matters identified herein to

10   provide an opinion.  What were the certain other

11   matters identified herein that you're referring to?

12       A.   How secure the space was, how the space

13   was secure with temporary barricades because of the

14   implosion of the space the storefront had blown

15   out, where they were as far as cleanup, water

16   control, some of the Cotton recovery team where

17   they were and to redefine the other trade work

18   scope such as how much that would supercede this

19   March 27th general outline from David Freider, what

20   the truer work scopes truly were.

21       Q.   And that was done after May 2nd then?

22       A.   I was there on Thursday, May 4th, '06.

23       Q.   Who did you talk to from Cotton when you

24   were there?

                                                    24

1    quadrisection that was still there. I can't

2    remember.  I do not recall but at some point it was

3    all going to be replaced.

4        Q.   How is it that you're familiar with the

5    construction costs in the Springfield area?

6        A.   Besides originally bidding the project and

7    having substantial bid coverage and that means

8    subcontractor coverage for each trade originally

9    and my past history working in multiple markets

10   throughout the country, union and nonunion and a

11   very parallel market in Delafield, Wisconsin which

12   is a union market and the labor rates are very

13   consistent with that I was able to formalize and

14   that assisted me in this budget, this replacement

15   budget.

16       Q.   When you were talking about familiarity

17   with it originally you're talking back in 2001?

18       A.   That is correct.

19       Q.   So those numbers wouldn't be good anymore?

20       A.   With pricing the Sports Authority work all

21   over the country doing them in 12 or 14 different

22   states, knowing the Springfield, Illinois market

23   with comparable markets I felt that the budget that

24   I produced was a very comprehensive budget and the

                                                    29

1    past history.

2        Q.    Did you know any of the subcontractors who

3    were performing work on this job?

4        A.    No, I did not.

5        Q.    Did you ever work with any of them before?

6        A.    Didn't have the opportunity.

7        Q.    You have never worked in Springfield?

8        A.    I have not worked in Springfield.

9        Q.    Springfield, Illinois?

10       A.    That's what I meant, I'm sorry.

11       Q.    In paragraph 12 of your report you say

12   it's your opinion based on a reasonable certainty

13   that the total building replacement cost on or

14   about March 12th, 2006 were $1,841,856?

15       A.    12 right?

16       Q.    Yeah, paragraph 12.

17       A.    And repeat your question.

18       Q.    That's your opinion?

19       A.    That is my opinion, yes.

20       Q.    How did you arrive at that?

21       A.    That was all replacement cost and all the

22   national accounts and my past history and knowing

23   some of these hard numbers in replacement.  That's

24   the number I formalized as a total replacement

                                                    30

1        A.    I didn't have a complete closeout package.

2        Q.    Flipping back to this kind of goes after

3    your resume.  You've got a list there of your

4    Sports Authority store locations?

5        A.    Yes.

6        Q.    Is that just all of them you've done since

7    it looks like the list goes back to '99?

8        A.    Yes, that's the list I produced.

9        Q.    It says at the top it says, retail project

10    manager and estimator.  There's a difference

11    between an estimator and project manager, right?

12        A.    There can be.

13        Q.    You were doing both jobs?

14        A.    I was always doing both projects, yes,

15    both sides.

16        Q.    When you say estimator that's exactly what

17    it says you try to estimate what it will cost?

18        A.    That is correct.

19        Q.    That is different in fact than a bid,

20    would it not be?

21        A.    No, it's the same thing.

22        Q.    When you use the term an estimate it's the

23    same as a bid?

24        A.    An estimate is the same as a bid, yes.

                                                    51

1

2

3

4       IN THE UNITED STATES DISTRICT COURT
        FOR THE CENTRAL DISTRICT OF ILLINOIS
             SPRINGFIELD DIVISION

5

6

7    SWPLAZA III, LLC, an Illinois    )
     limited liability company, as    )
8    successor to Illinois National   )
     Bank, as Trustee under Trust     )
9    Agreement dated November 6, 2000 )
     and known as Trust No. 00-0020,  )
10   an Illinois banking institution, )
                                      )
11                       Plaintiff    )
                                      )
12        -vs-                        )NO.06-CV-3177
                                      )
13   TSA STORES, INC., as successor   )
     to Gart Brothers Sporting Goods  )
14   Company, a Delaware corporation, )
                                      )
                         Defendant    )
15

16

17        Deposition of MARK A. SORENSEN taken at

18   the instance of the Defendant, on the 22nd day

19   of October, 2007, at 607 East Adams Street,

20   Suite 800, Springfield, Illinois, before

21   Sandra K. Haines, CSR and Notary Public,

22   pursuant to notice.

23

24                          CSR NO. 084-002423

**EXHIBIT 3**

1    exceed 30 percent of the total replacement

2    cost of the premises.

3         Q.    On what basis did you form that

4    opinion?

5         A.    It was really just a gut feel from

6    experience in doing this for 23 years, knowing

7    that certain components of a structure or of a

8    project usually costs a certain percentage of

9    the value of that structure, and just having a

10   feel for that in my opinion it was not going

11   to exceed that amount.

12        Q.    Did you consult a structural engineer

13   about the damage to the facility at all?

14        A.    At this time, no.

15        Q.    Did you subsequently?

16        A.    No, the owner, Art Seppi, had Hanson

17   Engineers, they hired them directly, and they

18   were doing all of the structural engineering

19   review for us or for the project.  So, they

20   were the ones making the determinations as to

21   what needed to be replaced, and to what extent

22   it needed to be replaced.

23             MR. SCHMADEKE:  Mark that as Two.

24

1    compare our actual cost on an item by item

2    basis against the estimated cost of

3    replacement.

4        Q.    Whose estimated cost?

5        A.    Not of replacement, of repair.

6        Q.    And whose estimate were you

7    comparing?

8        A.    Would have been Jeff Wolford, I

9    believe is the name.

10       Q.    Just to explain this, the first

11   column is the type of work we are talking

12   about?

13       A.    Yes.

14       Q.    And then the second column is what?

15       A.    That is a breakdown that was prepared

16   by Jeff Wolford as to the reconstruction cost.

17       Q.    And the third column is what?

18       A.    Our actual incurred cost to do the

19   reconstruction.

20       Q.    And the fourth column labeled owner,

21   what does that refer to?

22       A.    Those were items that I wasn't really

23   involved in, but I know the owner was, the

24   owner had contracted directly like with the

1    engineer for items of work that we did not do,

2    but we knew there was a cost associated with

3    it that reflected the overall reconstruction

4    cost.

5         Q.    So, I want to refer then to the first

6    item, which is emergency response from Cotton

7    USA.

8         A.    Right.

9         Q.    Mr. Wolford put in $319,428.00.

10         A.    Uh-huh.

11         Q.    And you put owner?

12         A.    Right.

13         Q.    Meaning what?

14         A.    It was the owner's responsibility.   I

15    didn't know what the owner was responsible

16    for, some or if -- I wasn't responsible for

17    that.  The emergency response stuff was

18    essentially the owner's responsibility.

19         Q.    So, that part of the work of Cotton

20    USA that you would consider to be part of

21    construction or reconstruction wasn't put in

22    here?

23         A.    Could you rephrase that, please.

24         Q.    The part of the work performed

1    by Cotton USA that you would consider

2    reconstruction was not put in this chart?

3        A.    The part of the work -- yes.

4        Q.    The architectural and engineering, so

5    if I am reading this properly, Mr. Wolford

6    estimated it to be $8,000.00, but you

7    determined that it was actually $9,510.00?

8        A.    That's correct.  That was the

9    engineering fees that the owner paid Hanson

10    Engineers.

11        Q.    So, then shoring stabilizing Mr.

12    Wolford estimated at 18,500, and the actual

13    cost was $14,439.00?

14        A.    Correct.

15        Q.    I want to skip down to where it says

16    masonry beam pockets, et cetera.

17        A.    Okay.

18        Q.    Do you see that?

19        A.    Yes.

20        Q.    First of all, what does that mean?

21    What are masonry beam pockets, et cetera?

22        A.    Beam pockets are typically a bearing

23    location where a bar joist or a beam is going

24    to come into a masonry wall, and it is a place

1    for it to pick up its bearing.  The reason I

2    say below is those two items go together.  You

3    don't do the beam pockets without redoing the

4    walls.  So, they are related.  So, you really

5    have to look at those two numbers to compare

6    to the 29,218 that it actually cost.

7        Q.    So, if I read this properly, and I

8    don't mean to put words in your mouth, if

9    those two items are related, Mr. Wolford's

10   estimate would have been 32,000?

11       A.    Correct.

12       Q.    And yours was actual cost was

13   $29,218.00?

14       A.    That's correct.

15       Q.    Fairly close?

16       A.    Fairly close.

17       Q.    Roofing insulation Mr. Wolford

18   estimated at 39,500, but the actual cost as

19   far as you were told was 86,038?

20       A.    Correct.

21       Q.    Where did you learn that number?

22       A.    I contacted the roofing contractor

23   that did the work, and he told me what the

24   amount was.  The same with the store front and

1    glass.

2        Q.    Going down to the item labeled duct

3    work, remove and replace, okay, do you see

4    that item?  Mr. Wolford put $7,600.00.  You

5    have put in HVAC.  What do you mean by that?

6        A.    That's in the heating, ventilation,

7    and air conditioning work, and it is HVAC

8    repair right below it, HVAC repair existing

9    units 16,426.

10        Q.    And the item right above that which I

11    missed, fire alarm minor device replacement,

12    you put in electrical.  Where were you

13    referring to?

14        A.    That would be down below.  There

15    should be an electrical item.  I guess it

16    would be in these electrical costs.  I

17    basically took our entire electrical contract

18    with B & B Electric.  Am I just missing it

19    here?  It has to be in the light fixtures

20    money, those two items, the 25,322 and the

21    10,678.  Give me one moment, please.

22        Q.    Take your time.

23        A.    Yes, that's where it is at.

24    Basically in general contractor terms those

1    are all electrical items, and that was the

2    only real breakdown I had from the

3    electrician, and the other things were thrown

4    in as just ancillary items.

5        Q.    Going down further to the item

6    labeled floor prep and adhesive removal --

7        A.    Yes.

8        Q.    -- you put NIC.

9        A.    Not in contract, it was just a

10   general contractor term that I used, and we

11   did not have, we did not contract for the

12   flooring materials for this project.  I had

13   secured bids on it, and then once TSA decided

14   not to move back into the space, we stopped

15   construction on all flooring materials.

16       Q.    So, the word below means what there?

17       A.    Below means right below here you go

18   to flooring materials, the 114,800, that was

19   the bid I got for flooring replacement, and

20   that included floor prep and adhesive removal.

21       Q.    Was that a bid amount, or was the

22   114,800, was that actually paid, do you know?

23       A.    No, it was not.

24       Q.    That's an estimate?

1     A.   The work was never done.  I had

2  secured a bid in anticipation of the work

3  being done, and then it was canceled before

4  the materials were ordered.

5     Q.   That was canceled because of what,

6  why?

7     A.   Because of TSA, because of the

8  situation with TSA not moving back in.  It was

9  a special -- their space utilizes several

10  special floorings, rubber and stuff that

11  normal tenants wouldn't use.  So, Art didn't

12  want to spend the money on all the special

13  flooring materials if they weren't going to

14  move back in.

15     Q.   But for the reconstruction purposes

16  that would have been something, if you were

17  going to complete the reconstruction that

18  would have been a figure that you would have

19  included?

20     A.   Absolutely, that's why it is included

21  in that column.

22     Q.   Going back to final cleaning,

23  deodorizing, Mr. Wolford estimated 11,000.  Do

24  you see that?

1       A.    I am not sure where you're at.

2       Q.    It is about two thirds of the way

3    down.

4       A.    Right here, final cleaning, okay.

5       Q.    You put the word below.

6       A.    Below, it would have been just down

7    here in our general cleanup, construction

8    laborers cleanup 4,634 down at the very

9    bottom, second number up, no, bottom number

10   actually, I guess.

11      Q.    And then continuing going down

12   protection of finish materials Mr. Wolford had

13   put 12,500.  You put below.

14      A.    Protection of finish materials, yes,

15   again I guess it must just be some of these

16   items, this is Mr. Wolford's list of

17   activities that he thought may or may not be

18   done, or may need to be done, and some of

19   this, I mean there really was no protection of

20   things, but it was required.  So, when I say

21   below, it is in our total cost below.  If

22   there was any protection required, if we had

23   to hang Visqueen over some stuff to keep it

24   from getting further damaged, or some other

1    work going on in the area, that it is in

2    there.

3        Q.    Going two lines lower contingency you

4    had 25,600, and you put N/A.  Does that mean

5    not applicable?

6        A.    Yes.

7        Q.    Why is it not applicable?

8        A.    We are working there on a time and

9    material basis.  We have no contingencies

10   built in.

11       Q.    Continuing lower, city required fire

12   watch, $2,200.00 estimated by Mr. Wolford, do

13   you see that?

14       A.    Yes.

15       Q.    Again you said not applicable, what

16   does that mean there?

17       A.    Again fire watch was not required.

18   Our fire watch is in our crew when we are

19   doing the work.

20       Q.    So, then if I am reading correctly

21   taking your actual costs column, which is the

22   middle column of the number, your total is

23   $321,384.00, correct?

24       A.    Yes.

1    Q.    That's where you come up with that

2    particular number for the basis of your

3    opinion in paragraph three on Page 2 of your

4    report, correct?

5    A.    Yes.

6    Q.    Which says the actual repair cost,

7    construction costs are 321 dollars and 384

8    cents?

9        MR. ROLF:    Incorrect.

10    Q.    I am sorry, 300 --

11    A.    $321,384.00.

12    Q.    Correct?

13    A.    Yes.

14    Q.    That doesn't include the items in the

15    owner column on Exhibit C, correct?

16    A.    Wait a minute, let me back up here.

17    Yes, that $321,384.00 is our actual costs

18    only.  I could not attest to what the other

19    actual costs may or other costs may be.

20    Q.    I want to go back then to Exhibit C

21    and the column labeled owner.

22    A.    Okay.

23    Q.    If I remember properly, you already

24    testified that the $114,800.00 estimate for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

SWPLAZA III, LLC, an Illinois limited )
liability company, as successor to )
Illinois National Bank, as Trustee under )
Trust Agreement dated November 6, 2000 )
and known as Trust No. 00-0020, )
an Illinois banking institution, )
)
      Plaintiff, )
)
v. )    Case No.: 06-CV-3177
)
TSA STORES, INC., as successor to Gart )
Brothers Sporting Goods Company, )
a Delaware corporation, )
)
      Defendant. )

RECEIVED
APR 0 2 2007
Hinshaw & Culbertson
*SPRINGFIELD*

## RULE 26(a)(2) EXPERT WITNESS REPORT OF MARK SORENSEN

The Terms used herein are those as defined in the Lease which is the subject of this action.

1.    The repair and reconstruction costs to the Premises and/or Common Areas resulting from the March 12, 2006 tornadic event in Springfield, Illinois were less than 35% of the then total replacement costs of the Premises and/or Common Area.

2.    Upon initial inspection of the damages to the Premises and/or Common Areas, a fair and reasonable estimate of the percentage of damage to the Premises and/or Common Area based on the component parts is as set forth in **Exhibit** A hereto, a letter dated March 29, 2006 to Mr. Seppi. Based on the percentage of damage to the components of the Premises, and the relation of the components to the total Premises, it was reasonable to estimate that the repair and reconstruction costs to the Premises and/or Common Areas were less than 35% of the then total replacement costs of the Premises and/or Common Area.

{S0540019.4 3/30/2007 DAR MAH}

EXHIBIT

5

SH 10-22-07

3.   The actual repair and reconstruction costs, which includes contractors mark-up for overhead and profit of the Premises and/or Common Areas as a result of the damage from the March 12, 2006 tornadic event in Springfield, Illinois was as set forth in **Exhibit B** hereto, and supported by the attachments thereto, specifically $321,384. This figure includes $14,439 for studs and tarps installed solely to protect TSA's merchandise, and for TSA's insurer paid one-half. To that number should be added roofing and insulation ($86,038), storefront and glass ($18,506) and flooring materials ($114,800) as provided by Owner, and a portion of A&E ($9,510). Accepting the total replacement costs of $1,960,067, the actual repair and reconstruction costs of the Premises and/or Common Areas was less than 35% of the then total replacement costs of the Premises and/or Common Areas.

4.   Attached as **Exhibit C** is a spreadsheet comparing TSA's estimate of the repair and replacement costs with the actual costs for the items included within said estimate. The estimate for the repair and replacement costs provided by TSA is excessive in a number of regards, as reflected in the exhibit.

5.   The actual costs incurred in the repair and replacement of the Premises as shown in Exhibit B were actually higher than they would have been if the owner had proceeded on a non-expedited basis. Specifically, if the project proceeded on a customary schedule as for new construction, more competitive bids would have been sought and received. In addition, the roof membrane could have been repaired as only 7,000 square feet of it required repair. In order to expedite the repairs and replacements the entire roof membrane was replaced at a cost of $86,038. Further, the store front could have been repaired at a cost of less than the actual cost of $18,506. Further, the front wall of the premises could have been repaired at a cost less than the

{S0540019.4 3/30/2007 DAR MAH}

total replacement of $17,518. In addition, the entire facility was repainted which would not have been required.

6.    Most of the work performed by Cotton U.S.A. was to protect and/or salvage TSA's personal property, and not a cost attributable to repair or replacement of the Premises. Some work by Cotton U.S.A. was not necessary and unnecessarily increased the cost of repair. For example, Cotton U.S.A. removed all of the flooring when that was not necessary for the rubber flooring. In addition, Cotton U.S.A. removed the bathroom partitions and fixtures which was not necessary. Jones-Blythe recovered the partitions and fixtures from the scrap and reused them. The cost Cotton U.S.A. charged for removal of drywall was excessive, based on the total cost incurred by Jones-Blythe to replace all the drywall that was necessary.

The basis for my opinions are my experience in the industry, actual physical inspection of the damage to the Premises and/or Common Area, the actual supervision of the repair and reconstruction to the Premises and/or Common Areas, Lease dated April 2, 2001, the ENR Cost Index, and review of the documents provided by TSA Bates stamped SWPLAZA III Initial Rule 26 Production, 11/26/06, Pages 89-104.

My qualifications are set forth in the attached Curriculum Vitae.

I have authored no publications in the last ten years.

I am not being compensated for my work on this project other than as an employee of Jones-Blythe, the contractor on the job.

I have not testified as an expert at trial or by deposition within the preceding four years.

_Mark G. Sorensen_
MARK SORENSEN

Subscribed and sworn to before me this 30th day of _____ March _____, 2007.

Notary Public

OFFICIAL SEAL
DAVID A. ROLF
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 3-26-2008

Via Fax 525-0545

March 29, 2006

Charles E. Robbins Realtor
Commercial Division
2144 South MoArthur
Springfield, IL 62704

Attn: Ari Seppi

Re: Sports Authority
Tornado damage

Dear Mr. Seppi,

Per your request, following is our opinion of the extent of damage to the building leased to Sports Authority:

| Building Component | | % Damage |
|---|---|---|
| Foundation system | | 0% |
| Floor slab | | 0% |
| Bearing walls | 124lf / 970lf / 2 | 7% (Half is Gordmans) |
| Roof structure | 6,650sf / 50,000sf | 13% |
| Roof membrane | | unknown (patched and not leaking) |
| Flashing & sheet metal | | minimal |
| Doors & frames | | 0% |
| Glass & glazing | | 83% (minimal glass cost overall) |
| Automatic doors | | 10% |
| Studs & drywall | | 25% |
| Painting | | <30% |
| Sprinkler | | 10% |
| Plumbing | | 0% |
| HVAC | | Unknown (RTU $20k/each if replaced) |
| Electrical | | <10% (just a few damaged light fixtures) |

With the majority of major building components being undamaged, in my opinion, the overall damage to the structure will not exceed 30% of the total replacement cost of the premises.

If you have any questions or need additional information, please contact me.

Sincerely,

JONES-BLYTHE CONSTRUCTION CO.

Mark A. Sorensen

EXHIBIT

A

Date : <u>June 26, 2006</u>

<u>Charles E. Robbins Realtor</u>
<u>2144 S. Macarthur Blvd</u>
<u>Springfield, IL 62704</u>



## JONES-BLYTHE CONSTRUCTION CO.
### 1030 WEST REYNOLDS STREET
P. O. BOX 5113
SPRINGFIELD, IL 62705

Phone: 217-787-1640

Fax: 217-787-1666

Re: Southwest Plaza III Shopping Center
Progress Billing #3, Final Bill
Tornado Damage Repair

Gordmans
| | | |
|---|---|---|
| Labor | 50,554 | |
| Labor Burden | 40,026 | |
| Material | 36,592 | |
| Subcontractor | 300,734 | |
| Equipment | 12,747 | |
| Cost subtotal | | 440,653 |

Sports Authority
| | | |
|---|---|---|
| Labor | 46,227 | |
| Labor Burden | 37,500 | |
| Material | 28,753 | |
| Subcontractor | 143,961 | |
| Equipment | 11,379 | |
| Cost subtotal | | 267,820 |

Bed Bath & Beyond
| | | |
|---|---|---|
| Labor | 7,081 | |
| Labor Burden | 5,974 | |
| Material | 4,549 | |
| Subcontractor | 13,665 | |
| Equipment | 172 | |
| Cost subtotal | | 31,441 |

| | | |
|---|---|---|
| | | 739,914 |
| Overhead @ 10% | | 73,991 |
| Profit @ 10% | | 73,991 |

Total Cost to Date...............................$ 887,896
Previous Payments.........................................($ 517,587)

Total Due...............................................$ 370,309



EXHIBIT

B



| Item | | Estimated Cost | Actual Cost | Owner |
|---|---|---|---|---|
| Emergency Response from Cotton USA | | $319,228 | Owner | |
| Architectural and Engineering | | 788,000 | Owner | 9,510 (Entire Plaza) |
| Shoring-Stabilizing | | $18,500 | 14,439 | |
| Selective Demolition-Balance of Damage | | $97,400 | 32,128 | |
| Structural-124'lf Bar Joist & Deck | | $80,500 | below | |
| Masonry-Beam Pockets etc | | $21,500 | 29,218 | |
| Replace 124' Structural masonry wall | | $39,500 | Owner | 86,038 |
| Roofing and Insulation | | $24,000 | Owner | 18,506 |
| Replace Existing Storefront & Glass | | $28,200 | 9,247 | |
| Sprinkler-Rework Existing-Damaged | | $2,950 | In electrical | |
| Fire Alarm - Minor Device Replacement | | $7,600 | In HVAC | |
| Ductwork- Remove and Replace | | $9,600 | 16,426 | |
| HVAC repair existing units | | $31,000 | 18,205 | |
| Drywall/Finish Taping Perimeter 4' U/S of Deck | | $5,900 | 2,570 | |
| Minor ACT's - T-Bar Replacement | | $6,200 | In Electrical | |
| Electrical-Safe off-Circuit Verification | | $18,500 | 25,322 | |
| Light Fixture Installation Only | | $4,850 | 10,676 | |
| Light Fixtures | | $9,800 | 27,812 | |
| Paint to match at lower levels | | $10,042 | NIC | below |
| Floor Prep & Adhesive Removal | | $49,500 | 1,105 | |
| Entire Flooring Installation | | $68,500 | NIC | 114,800 |
| Flooring Materials | | $1,200 | 4,096 | |
| RR-Plumbing Re-installation | | $5,700 | NIC | |
| Entire New Premier Millwork Installation | | $26,000 | 1,777 | |
| Millwork | | $3,550 | 545 | |
| Install Toilet Partitions/Accessories | | $11,000 | below | |
| Final Cleaning-Deodorizing | | $4,100 | 5,616 | |
| Dumpsters | | $2,100 | 1,005 | |
| Barricades-Dismanteling of Existing | | $12,500 | below | |
| Protection of finish materials | | $8,200 | 7,908 | |
| Misc. Rental Equipment | | $25,600 | N/A | |
| Contingency | | $21,550 | 7,742 | |
| General Conditions (Itemize) | | $21,375 | 4,841 | |
| Supervision | | $2,200 | N/A | |
| City Required Fire Watch | | $4,000 | 189 | |
| Permit | | $938,745 | 267,820 | 228,854 |
| SUBTOTAL | | | | |
| Allowances | n/a | | N/A | |
| SUBTOTAL | | | | |
| Insurance | 1.50% | $14,081 | in OH&P | |
| Profit & Overhead | 10% | $93,875 | 26,782 | |
| Premium for expedited work | 5% | $46,937 | 26,782 | |
| TOTAL | | $1,093,638 | 321,384 | 228,854 |
| | | | | |
| List itemizations below:(#25 Gen Cond) | | | | |
| Misc. Construction Materials | | $2,400 | 3,108 | |
| PM Travel-Misc Office & Field Costs | | $6,100 | 3,108 | |
| Temp Phone-Cell Ph., etc. | | $2,200 | | |
| Construction Laborer's & Clean-Up | | $7,500 | 4,634 | |
| intendent ravel | | $1,800 | | |

EXHIBIT

C

540175

| Administration Time | | $1,550 | |

(entire Plaza)