**E-FILED**
Monday, 21 January, 2008  04:38:45 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SWPLAZA III, LLC, an Illinois limited liability company, as successor to Illinois National Bank, as Trustee under Trust Agreement dated November 6, 2000 and known as Trust No. 00-0020, an Illinois banking institution, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.:06-3177 |
| TSA STORES, INC., as successor to Gart Brothers Sporting Goods Company, a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

## SWPLAZA III, LLC'S RESPONSE TO TSA'S MOTION FOR SUMMARY JUDGMENT

NOW COMES Plaintiff, SWPLAZA III, LLC, by and through its attorneys, Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., David A. Rolf, of Counsel, and pursuant to Federal Rule of Civil Procedure 26, and Local Rule 7.1, files its Response to TSA's ("Tenant") Motion for Summary Judgment.

### Introduction

SWPlaza III, LLC ("Landlord") opposes Tenant's Motion for Summary Judgment on the basis that Tenant has not, and cannot, meet its burden of proving that the cost of reconstruction and repair of the premises exceeded the 35% threshold needed for it to exercise the termination option. Apart from whether the Tenant is empowered to determine whether its termination right has matured, TSA cannot present evidence to meet the threshold because first, its estimate – by its own admission a judgment subject to a good faith and reasonable standard – did not comply with that standard, and secondly, it has no competent admissible evidence of the cost. Rather,

Tenant's purported estimate was not compiled by a contractor at all, but rather by its Vice President and was purposely a high estimate, rather than a good faith or reasonable estimate. Further, the estimate, or perhaps better "estimates" by its retained expert, Mr. Wolford, by the Tenant's own admission do not affect the analysis or the outcome, as he has now been described by Tenant as having completed a "post-suit analysis." It can, therefore, not be the basis of the Tenant's obligation to satisfy the option to terminate.

## **Undisputed Material Facts**

1 through 6, 8 through 15, 17 through 22, 25 through 29, 31 through 38, 44, 46, 48 through 50, 56 through 61, 65, and 66.

## **Material Fact Claimed to be Disputed**

39.     Mr. Wolford did not prepare an estimate for TSA until after it had terminated the Lease, and revised it several times after his site visit, which was post-termination notice. See Footnote 5 to TSA's Memorandum, also admitting, therefore, that fact 39 is immaterial.

42.     Mr. Wolford provided TSA with the 2001 costs and the percentage increase in those costs from 2001 to 2006, not a budget estimate. (Exhibit 3, 4/19/06 e-mail of Jeff Wolford to David Frieder).

43.     The original estimate was prepared by David Frieder. (See Exhibit 7 attached to SWPlaza III's Motion for Summary Judgment filed December 31, 2007).

45.     Mr. Sorensen did not speak to Landlord's knowledge, rather only his own.

55.     The cost were $321,384 for work that was completed.

64.     Cotton expenses are in Wolford's estimate. (Wolford deposition at p. 44).

## **Facts Claimed to be Immaterial to the Motion**

7.     The executed Lease was a negotiated document between two parties, both sophisticated commercial entities, experienced in leasing of commercial property. Relating construction of the Lease to construing it against the drafter is inapplicable and thus, Paragraph 7 is immaterial. (See TSA's Undisputed Fact #2).

16.     The material set forth in Undisputed Fact #16 is simply not a statement of fact, but rather, with the two footnotes therein, is an argumentative summary of a Lease provision. The Lease speaks for itself.

23.     TSA attributes its calculation of the 35% threshold solely to Mr. Wolford, absent whose opinion, TSA has no additional disclosed opinion on the cost of repair. Mr. Wolford did not rely on Mr. Cashman or Mr. Novell in his disclosed opinion. Therefore, the Affidavits of Cashman and Novell as to TSA's actions immediately following the tornado are immaterial, as are their observations of the facility immediately after the tornado.

24.     See Response to Undisputed Fact #23.

30.     See Response to Undisputed Fact #23.

40.     Mr. Wolford's qualifications are immaterial, as his "several estimates" affect neither the analysis, nor the outcome. (Footnote 5 to TSA's Memorandum).

41.     See Response to Undisputed Fact #40.

47.     TSA's "cost assessment and analysis" were purposefully high, in order to negotiate, were unreasonable and in bad faith, and thus immaterial.

51.     Repairs left uncompleted were the result of the refusal of TSA to provide information necessary for it to reoccupy the premises. (Exhibit 10 to SWPlaza III's Motion for Summary Judgment; Sorensen deposition at pp. 36-37).

52.     See Response to Undisputed Fact #51.

53.    See Response to Undisputed Fact #51.

54.    See Response to Undisputed Fact #51.

62.    TSA's failure to cooperate with Landlord prevented completion and, therefore, the costs are immaterial.

63.    Mr. Wolford's estimates, including the $743,944 attached as Exhibit 1 to his deposition is a result of several modifications based upon a site review well after most repairs were completed and other "additional information". Therefore, his estimate, and all of them, are not only inadmissible, but immaterial by TSA's own admission. (See footnote 5 to TSA's Memorandum in Support of Motion for Summary Judgment, "those modifications affect neither the analysis nor the outcome" the very definition of immaterial; see also, Motion to Strike Opinion Witness of SWPlaza III, LLC's filed previously herein).

## Additional Material Facts

1.    Tenant terminated most of its employees April 22, 2006, prior to giving notice of termination of the Lease to Landlord. (Exhibit 6 to SWPlaza III's Motion for Summary Judgment filed on December 31, 2007; Answer to Interrogatory No. 10).

2.    On April 26, 2006, four days after terminating its employees, Tenant informed Landlord's contractor undertaking the repairs that the carpeting would be available on a week notice. (**Exhibit 1**, April 26, 2006 e-mail of David Frieder to Mark Sorensen).

3.    Tenant believed a site visit was necessary to answer questions from Mr. Wolford on its' estimate of repairs. (**Exhibit 2**, April 26, 2006 e-mail of David Frieder to Jeff Wolford).

4.    Mr. Wolford did not visit the site until May 4, 2006, after Tenant's termination notice. (Wolford report at p. 3; Exhibit 12 to SWPlaza III's Motion for Summary Judgment filed December 31, 2007).

5.     Mr. Wolford provided Tenant with an estimate of the increase in costs over the five year period from 2001 to 2006.  (**Exhibit 3**, 4/19/06 e-mail of Jeff Wolford to David Frieder).

6.     TSA created its' estimate April 26, 2006.  (Exhibit 7 to SWPlaza III's Motion for Summary Judgment filed on December 31, 2007).

7.     Nine individual line items identifying repairs purportedly needed to the Premises in Tenant's estimate which accompanied its' notice of termination were removed from Wolford's latest estimate disclosed as his Rule 26 expert report, totaling $245,487, or approximately 23%. (Exhibit 8 to SWPlaza III's Motion for Summary Judgment filed on December 31, 2007; Wolford at p. 77).

8.     Eighteen individual line item estimates, other than those deleted in their entirety, changed from the Tenant's estimate which accompanied its' notice of termination from Wolford's last estimate disclosed as his Rule 26 expert report.  (Exhibit 8 to SWPlaza III's Motion for Summary Judgment filed on December 31, 2007; Wolford at p. 77).

<u>**Applicable Law**</u>

Tenant in its Motion for Summary Judgment cites extensive case law with regard to the construction of language in the Lease.  Generally speaking, the overriding concern is to ascertain the intent of the parties, and if possible, to do so from the language of the Lease.  <u>Chicago Housing Authority v. Rose</u>, 203 Ill.App.3d 208, 216, 560 N.E.2d 1131, 1136 (1st Dist. 1990); <u>Chicago Title and Trust Co. v. Northwestern University</u>, 36 Ill.App.3d 165, 168, 344 N.E.2d 52, 55 (1st Dist. 1976).  Consistent with this rule, and as stated by Tenant in its Motion, the words should be given their common and generally accepted meanings.  In this instance, the language or better yet word in the Lease which Tenant claims requires this Court to resort to all manners

of extrinsic evidence to interpret is quite simply the word "cost". There is no ambiguity as to what the cost of repair is, and thus the majority of the law cited by the Tenant, while an accurate recitation of the law, is quite simply inapplicable to the facts in this case.

Two other comments bear mentioning with respect to the applicable law as cited by the Tenant. The first is the provision that a contract should not be interpreted to produce absurd results. U.S. v. Burnett, 415 F.3d 690, 692 (7th Cir. 2005); Rueben v. Laser, 301 Ill.App.3d 60, 68, 703 N.E.2d 453, 459 (1st Dist. 1998). Despite this recitation of law, it is the interpretation which the Tenant urges this Court to make, which leads the absurd result. That absurd result is that the Tenant wants this Court to construe the term "cost" in the Lease as allowing Tenant to formulate its own estimate, an estimate which the Tenant admittedly makes as a high estimate, in order to get out of the Lease. It is truly an absurd result to allow a tenant to purposefully inflate a cost estimate in order to get out of a lease.

Knowing the true motive behind its termination, the Tenant, of course, cites to case law that says that the motive of the Tenant in exercising an option to terminate is irrelevant. Plambeck v. Greystone Management and Columbia National Trust Co., 281 Ill.App.3d 260, 666 N.E.2d 670 (1st Dist. 1996). Ignoring motive does not, however, excuse Tenant's obligation to operate in good faith and with reasonableness. See, LaSalle National Assoc. v. Moran Foods, Inc., 477 F.Supp.2d 932 (N.D. Ill. 2007); Northern Trust Co. v. VIII South Michigan Assoc., 246 Ill.App.3d 355, 16, 57 N.E.2d 1095 (1st Dist. 1998) cited in footnote 10 of Tenant's Motion. The issue is not why Tenant wanted out of the Lease. The issue is how far Tenant went in manipulating its "estimate" in order to accomplish it. Proper construction of the Lease term "cost" avoids both the absurd result from Tenant's unreasonable and bad faith excessive

estimate, all in an effort to hide its motive of trying to escape an unprofitable store, as evidenced by its termination of employees prior to even terminating the Lease.

**Argument**

**A.     Tenant has no reasonable estimate on which to rely.**

The crux of TSA's position is that its estimate was the only reasonable and relevant information TSA had within its sixty day window to exercise the option to terminate. That is precisely where TSA's position falls apart. Without conceding the rules of construction support that TSA gets to decide the issue, it is undisputed that if it gets to do so, it must do so in good faith and reasonably. As TSA states in its Memorandum, it is a "judgment which is subject to a good faith and reasonableness standard". (See page 21 of Memorandum; citation at Footnote 10).

TSA claims its decision is based on its objective analysis, but quite to the contrary, it was anything but objective. When it made its analysis, it had already decided it wanted to get out of the Lease. In fact, it had terminated its employees before ever terminating the Lease. (See Answers to Interrogatory No. 10 at Exhibit 6 to SWPlaza III, LLC's Motion for Summary Judgment). Despite that fact, in response to the Landlord's contractor's inquiry as to floor covering, as late as April 26, 2006, TSA responded that the floor covering could be available within a week. (Exhibit 1). Most importantly, TSA states in its Memorandum that the only evidence available to it within the sixty day window was the estimate prepared by it using Mr. Wolford's budget. However, it was not Mr. Wolford's budget, it was Mr. Frieder's budget. (See Exhibit 7 to SWPlaza IIII's Motion for Summary Judgment filed December 31, 2007). Mr. Frieder sent it to Mr. Wolford on April 26, 2006. The only thing Wolford contributed, if he did contribute anything at all, was the addition of Emergency Response from Cotton USA and

architectural engineering fees.[1]  It was not Wolford's estimate and it was not in good faith.  Mr. Frieder made that absolutely clear in his e-mail:

> …I want to make sure that the numbers are somewhere reasonable <u>but</u> <u>on</u> <u>the</u> <u>high</u> <u>side</u> since this is the start of negotiations…
> (See Exhibit 7 to SWPlaza III's Motion for Summary Judgment filed on December 31, 2007).

Not only does Mr. Frieder make clear that the estimate TSA seeks to rely on is not reasonable, his statement refutes Tenant's very position – namely that it gets to decide the costs. Apparently, Mr. Frieder, and therefore the Tenant, believed that the number was to be arrived at through negotiations.   With that understanding of Paragraph 15(b) of the Lease, Tenant purposefully decided to start with an estimate it knew was higher than a reasonable good faith estimate.  Again, the Tenant's actions belie the argument it makes in its Motion.

All Wolford originally provided was an estimate of the increased cost over five years for the project as a whole.   (See Exhibit 3).   Apparently, since Wolford only performed a real analysis after Tenant sent its admittedly high estimate to Landlord, Tenant in its' Motion states he was only retained to confirm the reasonableness of it.  What Mr. Wolford was able to confirm is that Tenant's estimate was wholly unreasonable.  The very first item included were the Cotton expenses – in their entirety.  Tenant knew full well that those costs were not reconstruction costs. Yet Tenant included the entire amount in its estimate undoubtedly because it was the "start of negotiations."   Was it reasonable for Tenant to knowingly include in its' estimate over $200,000.00 of Cotton USA recovery expense that Tenant knew should not be included toward the cost of repair threshold?  Certainly not.  It was, however, reasonable for the Landlord, upon

---

[1]      The only additional items added to the table, sent by Tenant to Landlord, and represented as prepared by Wolford, in Exhibit 4 and the table prepared by Frieder and sent to Wolford April 26, 2006 is the addition of Cotton USA and Architectural and Engineering.  The rest of the difference is in the insurance, profit and overhead and expedited work, all of which are computed based a percentage of the total.

seeing the entire expense included in the Tenant's estimate, to conclude that Tenant's estimate was inflated, unreasonable, and likely made up to get out of the Lease.

Upon visiting the site, post-termination notice, Wolford changed over twenty-five of the thirty-five items in what TSA claims to have been his original budget estimate and which it describes as the only reasonable and relevant information it had. Nine items Tenant included in its' estimate were deleted, totaling over $243,000.00, or 23%. The estimate for eighteen other items changed in amount. Was it reasonable for Tenant to include items it took no steps to verify if they were applicable? Certainly not, when it knew Mr. Wolford had questions that only a site visit could answer. (Exhibit 2). Perhaps, if Tenant had been operating in good faith and reasonably, it would have asked Mr. Wolford to visit the site at an appropriate time. Indeed, for Tenant to claim in its' Motion that it operated on the only information available to it within the sixty days is a misrepresentation. It knew it needed Mr. Wolford to visit the site as of April 26, 2006. (See Exhibit 2). It just chose not to have him do so until after it terminated the Lease. Tenant cannot purposefully choose to ignore information available to it within the sixty days. That is unreasonable. It is no wonder Tenant, in Footnote 5 of its' Memorandum, states that all of Mr. Wolford's revisions should be ignored.[2] Mr. Wolford's revisions destroy any aspect of reasonableness and good faith, rather than confirm it. Tenant needed to start high to allow room to negotiate, a position at odds with the position it takes in its Motion for Summary Judgment.

It is further no surprise that TSA takes the position in its Memorandum that motive of the Tenant is irrelevant. While its motive, to get out a non-productive Lease, may be irrelevant to whether it can exercise the option to terminate, it still must exercise that option in good faith and reasonableness. It is not necessarily why it wanted out. It is how far it went to get out. The

---

[2]    Landlord incorporates by reference its' Motion to Bar Opinion Witness, and Memorandum and exhibits in support, filed December 31, 2007, as further support for the unreasonableness of Tenant's estimate, particularly pages 3 through 5.

undisputed material facts in this case are that Tenant can put on no evidence of a reasonable estimate as the basis for its termination of the Lease. Therefore, TSA cannot meet the burden, which it claims that it carries in order to terminate the Lease.

**B.    Tenant has no evidence that Landlord's actual costs exceeded 35%.**

Lastly, Tenant claims that the Landlord has failed to show that the actual costs were less than the 35% threshold. Tenant missed the point of Mr. Sorensen's March 29, 2006 estimate. It is admittedly an estimate of the percentage of the various building components that sustained damage. It was provided to Tenant in response to Tenant's letter of March 23, 2006 wherein it said an "initial review" of the damage led Tenant to conclude that the threshold would be met. Mr. Sorensen only stated that if the components are not damaged over 35%, nor nowhere near that, then it stood to reason that the cost of repair would not exceed the 35%. It is not what Landlord relies on, although it is certainly more substantive than the "belief" Mr. Frieder expressed based on his "initial review." Tenant is also in error when it concludes it could not get a cost within sixty days. Its' expert testified that it could get a bid for the work. (Exhibit 8 to SWPlaza III's Motion for Summary Judgment; Wolford deposition at pp. 54-55). Indeed, the Landlord had a bid for the floor installation. The only reason it was not installed is that the Tenant never ordered the material, despite telling Landlord's contractor it could be there in a week when Tenant had already terminated its employees. Query how Tenant views that deliberate misrepresentation and concealment as being compliant with its' obligation to act reasonably and in good faith.

Even Tenant's expert provides no criticisms of Landlord's expert's report. His only criticism was that he needed to review supporting documentation. (Exhibit 8 to SWPlaza III's

Motion for Summary Judgment at pp. 49-50). Those were provided prior to Mr. Wolford's deposition and Tenant has offered no criticism or error therein.

What is apparent is that Tenant, claiming that it has a right, and therefore, burden to prove the threshold was exceeded in order to exercise the option, has provided no evidence that the Landlord's costs exceeded the threshold. Rather, the only evidence which Tenant has presented on costs is what the Landlord's costs are represented to be. Tenant alleges that there should be additional costs from Cotton USA added. If accepting Tenant's expert's portion of $118,000 is added to Landlord's cost, the total is still less than the 35% threshold. TSA then notes various other items of reconstruction that it claims were not completed or for which no costs were provided. However, TSA provides no such information, without which there is no evidence that the costs exceed the 35% threshold. Therefore, on Tenant's theory that it bears the burden of proving the 35% threshold is exceeded, its' Motion for Summary Judgment should be denied, as there is no genuine issue of material fact that it has provided no evidence that the actual costs exceed the 35% threshold.

Respectfully submitted,

SWPLAZA III, L.L.C., an Illinois limited liability company, as successor to Illinois National Bank, as Trustee under Trust Agreement dated November 6, 2000 and known as Trust No. 00-0020,
Plaintiff,


By:    /s/ David A. Rolf
      David A. Rolf, Bar # 6196030
      Attorney for Plaintiff
      Sorling, Northrup, Hanna,
      Cullen & Cochran, Ltd.
      Suite 800, Illinois Building
      Post Office Box 5131
      Springfield, IL 62705
      Telephone:  (217)544-1144
      Facsimile:  (217)522-3173

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served by electronic service through the Court's ECF System to the following:

Mr. J. William Roberts
Mr. Charles R. Schmadeke
Hinshaw & Culbertson LLP
400 South 9th Street, Suite 200
Springfield, IL 62701

on the 21st day of January, 2008.

/s/ David A. Rolf
David A. Rolf, Bar # 6196030
Attorney for Plaintiff
Sorling, Northrup, Hanna,
Cullen & Cochran, Ltd.
Suite 800. Illinois Building
Post Office Box 5131
Springfield, IL 62705
Telephone: (217)544-1144
Facsimile: (217)522-3173
E-Mail: darolf@sorlinglaw.com

E-FILED
Monday, 21 January, 2008  04:39:07 PM
Clerk, U.S. District Court, ILCD

David Frieder

From:          David Frieder
Sent:          Wednesday, April 26, 2006 6:22 PM
To:            'Mark Sorensen'
Subject:       RE: Springfield Store


Mark,
We have availability of carpeting with a notice of less then a week to the manufacturer
for shipping. Let's talk tomorrow.  Thanks. David

-----Original Message-----
From: Mark Sorensen [mailto:MSorensen@jones-blythe.com]
Sent: Wednesday, April 26, 2006 10:31 AM
To: David Frieder
Subject: Springfield Store

David,

Art Sepi asked me to let you know that we will be ready for floor covering materials to be
delivered the week of May 15.

Installation needs to be coordinated since painting will be ongoing through the end of
May.

Please contact me to coordinate flooring and fixture installation.

Mark A. Sorensen
Jones-Blythe Construction Co.
1030 West Reynolds
P.O. Box 5113
Springfield, IL 62705
217-787-1640 office
217-787-1666 fax
217-725-2170 cell

EXHIBIT

1

TSA RULE 26 DISCLOSURES
0106

## Jeff Wolford

**From:** David Frieder [dfrieder@thesportsauthority.com]
**Sent:** Wednesday, April 26, 2006 7:15 PM
**To:** Jeff Wolford
**Subject:** RE: Springfield repair costs

It looks like it may be helpful afterall.  A lot of the work is already done but I do need to nail the costs as closely as possible and a visit might crystallize some of the questions that you currently have.  Thanks. David

---

**From:** Jeff Wolford [mailto:jwolford@wolfordretailbuilders.com]
**Sent:** Wednesday, April 26, 2006 3:48 PM
**To:** David Frieder
**Subject:** RE: Springfield repair costs

David, please let me know if you need me to go down to the Springfield location, if you need a more comprehensive scope..As I said before I would happy to do so, see you this coming Friday. Jeff

Jeff Wolford
Owner
*WOLFORD RETAIL BUILDERS, INC.*
jwolford@wolfordretailbuilders.com
847-394-4504 main
847-309-9675 mobile
847-394-4506 fax

> -----Original Message-----
> **From:** David Frieder [mailto:dfrieder@thesportsauthority.com]
> **Sent:** Wednesday, April 26, 2006 11:22 AM
> **To:** jwolford@wolfordretailbuilders.com
> **Subject:** Springfield repair costs
>
> Jeff,  Please take a look at this and see what you think.  I think that I'm under on these costs as a first pass estimate.  I want to make sure that the numbers are somewhere reasonable but on the high side since this is the start of the negotiations.  Let me know what adjustments you would make.  Thanks. David

No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.467 / Virus Database: 269.7.3/809 - Release Date: 5/17/2007 5:18 PM

10/29/2007

EXHIBIT
2
Blumberg No. 5208

## Jeff Wolford

| | |
|---|---|
| **From:** | David Frieder [dfrieder@thesportsauthority.com] |
| **Sent:** | Wednesday, April 19, 2006 8:05 PM |
| **To:** | Jeff Wolford |
| **Subject:** | RE: 4 year labor & material Increase- Springfield |

This helps a lot. Where do the numbers come from? Your estimates or from somewhere else? If we end up in litigation, I'll need to cite a source.

---

**From:** Jeff Wolford [mailto:jwolford@wolfordretailbuilders.com]
**Sent:** Wednesday, April 19, 2006 5:04 PM
**To:** David Frieder
**Subject:** 4 year labor & material Increase- Springfield

Dave, union Illinois market went up approx **18.50%** labor 16.25% and materials 20.50% ( due to China, other steel product and fuel/ trucking costs ) hope this helps

Jeff Wolford
Owner
***WOLFORD RETAIL BUILDERS, INC.***
jwolford@wolfordretailbuilders.com
847-394-4504 main
847-309-9675 mobile
847-394-4506 fax


No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.467 / Virus Database: 269.7.3/809 - Release Date: 5/17/2007 5:18 PM

EXHIBIT
3