**E-FILED**
Friday, 04 April, 2008  09:53:39 AM
Clerk, U.S. District Court, ILCD

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SWPLAZA III, LLC, an Illinois limited liability company, as successor to Illinois National Bank, as Trustee under Trust Agreement dated November 6, 2000 and known as Trust No. 00-0020, an Illinois banking institution, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.  06-3177 |
| TSA STORES, INC., as successor to Gart Brothers Sporting Goods Company, a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

### <ins>TSA'S RESPONSE TO MOTION TO BAR TESTIMONY OF DAVID FRIEDER</ins>

### <ins>INTRODUCTION</ins>

Plaintiff's motion to bar the testimony of David Frieder constitutes nothing more than a desperate, last-ditch effort on Plaintiff's part to salvage its case.  Although TSA readily recognizes that the minutes of the meeting of its Real Estate Committee of April 18, 2006 is a document responsive to Plaintiff's discovery requests, TSA did not act in willful disregard of its discovery obligations.  Rather, the failure to produce it in a more timely fashion was completely inadvertent.  Candidly, if TSA had recollected the existence of the document earlier, it would have disclosed it under Rule 26(a)(1(B) as a document to support its claims and defenses in that it is instrumental in showing the sequence of events in TSA's decision-making and its reasonableness and good faith in its approach.

Plaintiff's feigned surprise that Mr. Frieder had a significant role in the estimate process, is, at best, disingenuous, as demonstrated herein. The sanction Plaintiff seeks is wholly unwarranted, unreasonable under the circumstances, and disproportionate to the infraction.

## BACKGROUND

As Plaintiff correctly notes, on May 3, 2006, TSA sent to Plaintiff its Notice of Termination of the lease under cover of a letter from David Frieder, TSA's Vice President of Construction.  That letter, attached as Exhibit A, provides in part:

> Attached hereto is an analysis which I prepared and which shows the current estimated total replacement cost of the premises and the estimated costs to repair the damage to the Premises caused by the recent tornadoes. . . . (Emphasis added.)

Before that, however, Mr. Frieder corresponded several times with Plaintiff and Plaintiff's counsel.  On March 23, 2006, Mr. Frieder sent a letter, a copy of which is attached as Exhibit B, notifying Plaintiff and its attorney that he was evaluating the damages with an eye toward the termination provision.

Mr. Rolf, Plaintiff's counsel, then wrote to Mr. Frieder on March 29, 2006 claiming without factual foundation that the 35% threshold had not been met (Exhibit C).  Lee Allen, Mr. Rolf's law partner, wrote to Mr. Frieder on April 28, 2006, (Exhibit D) providing an update on construction, and he wrote again (Exhibit E) on May 5, 2006, challenging "your [Mr. Frieder's] decision to calculate the 35% based upon an estimated cost of repair and reconstruction."

In its initial disclosures under Rule 26 (Exhibit F), TSA identified Mr. Frieder as a person TSA would use to support its claims and defenses and identified the subject of his information as follows:

> Mr. Frieder has information generally concerning the allegations of the Complaint, TSA's defenses, and TSA's counterclaim, including, but not limited to, the lease between the

parties, the damage to the premises as a result of the tornadoes, the damage assessment to the premises (costs of repair and reconstruction), and termination of the lease.  (Emphasis added.)

Mr. Frieder was again identified as a key figure in TSA's answers to Plaintiff's interrogatories (Exhibit G.)[1]

In his deposition, Mr. Wolford repeatedly stated that he worked with Mr. Frieder in preparing a budget estimate:

> A.     . . . I actually Emailed a budget over [to David Frieder]. . . .
>
>                               . . .
>
> Q.     Was all your correspondence on this project with Mr. Frieder? . . .
>
> A.     Yes.
>
>                               . . .
>
> Q.     And the Emails you've produced today - -
>
> A.     It's every Email correspondence I had with David.
>
>                               . . .
>
> Q.     Would that give us a fairly accurate time line as to which you got information and when you sent information back?
>
> A.     Yes.
>
> Q.     But leading up to what you were asked to do in defining this original scope was it just with Mr. Frieder?
>
> A.     That's correct, sir.

Wolford Deposition, taken October 30, 2007, p. 10-12, attached as Exhibit H.

---

[1]Plaintiff's remarks about the financial position of the store are irrelevant.  It should not come as a surprise to business persons as sophisticated as Plaintiff's principals that a business takes financial information into account in making decisions.    The motives for an alleged breach, however, are irrelevant.  *Plambeck v. Greystone Management & Columbia National Trust Co.*, 281 Ill.App.3d 260, 267 (1st Dist. 1996).

60172728v1 868372

In its motion for summary judgment, Plaintiff claimed that Mr. Frieder prepared an estimate of costs of repairs (Landlord's Statement of Undisputed Fact 13.) That has not been contested. That, however, does not mean that Mr. Wolford did not prepare an estimate, that he did not work with Mr. Frieder in the preparation of the estimate, or that Mr. Wolford played no role in preparing the estimate. In fact, the common meaning of the word "prepare" is "to work out the details of, . . . " *Webster's Ninth New Collegiate Dictionary* (1988). As Mr. Frieder indicated in his May 3, 2006, letter, he did work on the details of the estimate; as Mr. Wolford's deposition revealed, he also worked on the details of the estimate. If Plaintiff needed additional discovery based upon Mr. Wolford's deposition, or any other disclosure, it could have requested it, but for reasons of its own, it chose not to do so.

It should be noted that Mr. Frieder did not sit on the Real Estate Committee. Furthermore, that committee did not instruct Mr. Fielder to "prepare" an estimate. Rather, it directed the "confirm[ation of] cost to re-construct store with David Frieder". It gave no direction on how the cost estimate was to be derived. All that the document at issue reveals with respect to Mr. Frieder is that the committee wanted Mr. Frieder "confirm" the cost.

It must be emphasized that Plaintiff chose to depose neither Mr. Frieder nor any person sitting on the Real Estate Committee, notwithstanding that all those persons were made known to Plaintiff by TSA long before the end of discovery. Plaintiff cannot honestly and in good faith now represent to this Court that it was unaware of Mr. Frieder's central role in the determination of the estimate prior to disclosure of the document in question. In fact, the only relevant information from that document that was not previously disclosed is the date of the decision to terminate the lease.

4

Plaintiff has not been prejudiced by the admittedly tardy disclosure of the document –
except to the extent that it shows the reasonableness and good faith actions of TSA and the
weakness of Plaintiff's case.  Plaintiff's requested sanction is needlessly draconian and must be
denied.

## RULE 37 SANCTIONS MUST BE PROPORTIONATE

Although the case law cited by Plaintiff stands for the propositions Plaintiff uses them
for, Plaintiff has failed both to put those cases in the context of this case and has failed to present
the complete holding of those cases.  Accordingly, those cases are factually inapposite to this
matter and having little bearing on how the court should rule.

In *Salgado v. General Motors Corp.*, 150 F.3d 735 (7th Cir 1988), the trial court excluded
an expert witness for a party because the expert report was not only filed late, but also because
the report was "'conclusory' in nature and therefore 'insufficient' under Rule 26(a)." *Id*. at 738.
The Seventh Circuit affirmed, holding with respect to a discovery violation:

> …[T]he sanction selected must be one that a reasonable jurist,
> apprised of all circumstances, would have chosen as <u>proportionate</u>
> <u>to the infraction</u>.  (Emphasis added.)

*Id*. at 740.

In *Crown Life Insurance Co. v. Craig*, 995 F.2d 1376 (7th Cir. 1993), the discovery
sanction of excluding critical witnesses and evidence was entered after a finding that the
violating party willfully failed to comply with discovery orders entered by the court.  That
decision was upheld, but the Court of Appeals noted that such a severe sanction was appropriate
only where the conditions of "willfulness and bad faith, at least 'contumacious conduct,'
'dilatory tactics,' or the failure of less drastic sanctions" were present.  *Id*. at 1382.

> . . .  [A]n award of sanctions must be proportionate to the
> circumstances surrounding the failure to comply with discovery.

60172728v1 868372

> Ultimately, all these cases support the district court's sanction in this case because the sanction is proportionate to [the violating party's] wilful failure to comply with discovery orders and [the violating party's]record of contumacious conduct.

*Id.*

Finally, the other case relied upon by Plaintiff is equally without value to Plaintiff's position. In *Patterson v. Coca-Cola Bottling Co.*, 852 F.2d 280 (7th Cir. 1988), the plaintiff was first ordered to show cause why it failed to respond to a motion to compel, and after it <u>failed to comply with a court order</u> to produce, the court dismissed plaintiff's case. The Seventh Circuit held:

> In the case at bar, the record indicates that plaintiffs had previously refused to respond to defendants' discovery requests and to orders of the district court until they were faced with dismissal of their complaint. No lesser sanction would seem to work where plaintiff's are concerned.

*Id.* at 284.

These cases are patently factually distinguishable from the matter before this Court and fail to provide Plaintiff any succor. There is absolutely no evidence of wilfullness, bad faith, contumacious conduct, dilatory tactics, or failure to abide by court orders on the part of TSA in this case. In fact, if necessary, TSA can produce evidence to show that Cynthia Cashman, an agent for TSA, was assigned the responsibility of compiling all documents in response to Plaintiff's discovery. If given the opportunity, she would explain that, when compiling the documents, she did not think to review the Real Estate Committee minutes. During the weekend of March 28-30, 2008, while she was preparing for trial at counsel's request, she discovered the minutes. The minutes were sent to TSA's counsel on Sunday, March 30, 2008, who provided them to Plaintiff's counsel on Monday morning, March 31, 2008. Although this case has demonstrated Plaintiff's creativity in formulating legal theories and concocting bad faith were

60172728v1 868372

none exists, other than its bald and bold conclusions, Plaintiff lacks any evidence of wilfullness or bad faith. The reason is simple: none exists.

Rather than the draconian sanction sought by Plaintiff, a sanction which would essentially emasculate TSA's case and deprive TSA of a fair hearing, Rule 37(c) of the Federal Rules of Civil Procedure addresses the failure to disclose information:

> A party that <u>without substantial justification</u> fails to disclose information required by Rule 26(a) or required by Rule 26(e)(2), <u>is not, unless such failure is harmless, permitted to use as evidence at trial at a hearing, or on a motion any witness or information not so disclosed.</u> In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. . . .

TSA respectfully submits that the failure to disclose the document was harmless and that the document should be allowed to be used at trial. In the event that the court deems a sanction appropriate, however, the only proportionate sanction is to disallow its use. The disallowance of Mr. Frieder as a witness, who had nothing to do with the failure to produce the document and did not sit on the committee, would be unconscionably disproportionate and, with respect, an abuse of the court's discretion.

## CONCLUSION

TSA apologizes to this Court and to the Plaintiff for not earlier locating the document in question. That failure, however, was not willful, but was inadvertent. Rather than acting in bad faith, TSA acted in good faith by disclosing the document to Plaintiff at its first opportunity.

Plaintiff's motion to bar Mr. Frieder is disproportionate, unrelated to the document at issue, not supported by the facts, and not warranted by law. Frankly, it is beyond the pale.

60172728v1 868372

TSA respectfully suggests that the tardy disclosure of the document was harmless, but in no circumstances should there be a sanction any more severe that disallowing the use of the document.   Accordingly, TSA prays that this Court deny Plaintiff's motion.

Dated:  April 4, 2008

Respectfully submitted,

TSA Stores, Inc, as successor to Gart Bros.
Sporting Goods Company, A Delaware Corp.

BY:  /s/Charles R. Schmadeke
        J. William Roberts, No. 2351714
        Charles R. Schmadeke, No. 2489813
        Hinshaw & Culbertson LLP
        400 S. 9th St., Suite 200
        Springfield, IL 62701
        Phone: 217-528-7375
        Fax: 217-528-0075
        E-mail: broberts@hinshawlaw.com
        E-mail:cschmadeke@hinshawlaw.com
        Attorneys for TSA Stores, Inc.

8

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2008, I electronically filed the TSA's Response to Motion to Bar Testimony of David Frieder with the Clerk of Court using the CM/ECF system that will send notification of such filing(s) to the following:

David A. Rolf          Email: darolf@sorlinglaw.com
R. Lee Allen           Email: rlallen@sorlinglaw.com

In addition, the document was faxed to Mr. Rolf at 9:30 a.m., April 3, 2008 to 217-522-3172.

/s/Charles R. Schmadeke
J. William Roberts, No. 2351714
Charles R. Schmadeke, No. 2489813
Hinshaw & Culbertson LLP
400 S. 9th St., Suite 200
Springfield, IL 62701
Phone: 217-528-7375
Fax: 217-528-0075
E-mail: broberts@hinshawlaw.com
E-mail: cschmadeke@hinshawlaw.com
Attorneys for TSA Stores, Inc.

9

E-FILED
Friday, 04 April, 2008  09:54:36 AM
Clerk, U.S. District Court, ILCD



# SPORTS AUTHORITY

1050 WEST HAMPDEN AVENUE, ENGLEWOOD, COLORADO 80110
303-200-5050 • FAX 720-475-2967

**SENT VIA FEDERAL EXPRESS**

May 3, 2006

Arthur Seppi
2144 South MacArthur Boulevard
Springfield, Illinois 62704

Charles E. Robbins, Realtor
2144 South MacArthur Boulevard
Springfield, Illinois 62704
Attention: Property Management

R. Lee Allen, Attorney
Sorling, Northrup, Hanna, Cullen & Cochran
620 East Adams Street, # 800
Springfield, Illinois 62705-5131

Re: Notice of Termination

Dear Mr. Seppi, Mr. Robbins, and Mr. Allen:

Reference is made to the Lease (the "Lease"), dated April 2, 2001, between TSA Stores, Inc., as successor to Gart Bros. Sporting Goods Company ("TSA"), and Illinois National Bank, Trustee ("Landlord").

Attached hereto is analysis which I prepared and which shows the current estimated total replacement cost of the Premises and the estimated costs to repair the damage to the Premises caused by the recent tornadoes. To determine the current estimated total replacement cost, I used the actual bid of the original contractor for the initial construction of the Premises in 2001, with increases for estimated change orders and inflation. To develop the budget for repair and reconstruction of the damage to the Premises caused by the tornadoes, I utilized the services of Jeff Wolford, a general contractor who has extensive experience in the Illinois and bid on the initial TI work for TSA in 2001. As demonstrated by the attached materials, the cost to repair the damage caused by the tornadoes significantly exceeds the 35% threshold set forth in Paragraph




**EXHIBIT**
*A*

15(b) of the Lease and therefore TSA is entitled to exercise its right to terminate the Lease.

Accordingly, this letter constitutes TSA's notice to Landlord that TSA has elected to terminate the Lease in accordance with Paragraph 15(b) of the Lease, said termination to be effective May 9, 2006.

Please call me if you have any questions.

Sincerely,

David Frieder
Vice President - Construction

cc: Nesa Hassanein
    Paul Gaudet
    Chris Day
    Cynthia J Cashman
    Missy Mayne
    Jay Stasz
    Russell Johnston

E-FILED
Friday, 04 April, 2008  09:55:13 AM
Clerk, U.S. District Court, ILCD



# SPORTS AUTHORITY.

1050 WEST HAMPDEN AVENUE, ENGLEWOOD, COLORADO 80110
303-200-5050 · FAX 720-475-2967

**SENT VIA FEDERAL EXPRESS**

March 23, 2006

Arthur Seppi
2144 South MacArthur Boulevard
Springfield, Illinois 62704

Charles B. Robbins, Realtor
2144 South MacArthur Boulevard
Springfield, Illinois 62704
Attention:  Property Management

R. Lee Allen, Attorney
Sorling, Northrup, Hanna, Cullen & Cochran
620 East Adams, Suite 800
Springfield, Illinois 62701

Re:   Lease, dated April 2, 2001, between TSA Stores, Inc., as successor to Gart Bros. Sporting Goods
      Company ("Tenant"), and Illinois National Bank, Trustee  ("Landlord")

Dear Mr. Seppi, Mr. Robbins, and Mr. Allen:

Thank you very much for meeting with me during my trip to Springfield this week.  As you know, the
Tenant has the option to terminate the Lease pursuant to Paragraph 15(b) of the Lease if the repair and
reconstruction cost resulting from the recent tornado is 35% or more of the then-total reconstruction cost of
the Premises and Common Areas.  Based on our initial review of the extensive damage to the Premises and
Common Areas, we believe that this threshold will be met, and as a result, Tenant has the right to elect to
terminate the lease within 60 days from the date of the casualty.   Although the Lease provides that the
Tenant has 60 days in which to notify the Landlord of its election to terminate the Lease, we want the
Landlord to be aware that we are considering terminating the Lease, and accordingly, any repairs or
reconstruction to our Premises are at the Landlord's risk.

Please call me if you have any questions.

Sincerely,

David Frieder
Vice President - Construction

cc:   Nena Hassanein
      Paul Gaudet
      Chris Day
      Cynthia J Cashman
      Missy Mayne



EXHIBIT
B

E-FILED
Friday, 04 April, 2008  09:55:30 AM
Clerk, U.S. District Court, ILCD



**SORLING**
NORTHRUP HANNA,
CULLEN & COCHRAN, LTD.
ATTORNEYS AT LAW

Suite 800 Illinois Building
607 East Adams Street
P.O. Box 5131
Springfield, IL 62705

P: 217-544-1144
F: 217-522-3173

Suite 301
401 S.W. Water Street
Peoria, IL 61602

P: 309-674-1144
F: 309-671-4368

www.sorlinglaw.com

David A. Rolf
Attorney at Law

R. Gerald Barris
Stephen A. Tagge
Michael A. Myers
C. Clark Germann
Gary A. Brown
Frederick B. Hoffmann
William R. Enlow
Michael C. Connelly
John A. Kassatof
James M. Morphew
Stephen J. Bochanek
David A. Rolf
Peggy J. Ryan
Mark K. Cullen
Thomas H. Wilson
Todd M. Tauser
R. Lee Allen
Charles I. Northrup
James D. Broadway
R. Zachary Dinardo

Elizabeth A. Urbance
James G. Fahey
Michael G. Horstman Jr.
Jennifer M. Ascher
Lisa A. Petrilli
Emily B. Fathauer
Brian D. Jones

Of Counsel:
Patrick V. Reilly
William S. Hanley
William B. Bates
Mark H. Ferguson

Retired:
Charles H. Northrup
Philip E. Hanna

Sorling, Catron and Hardin
1944-1975

March 29, 2006

<u>**VIA FEDERAL EXPRESS & FACSIMILE (720-475-2967)**</u>
Mr. David Frieder
Vice President — Construction
Sports Authority
1050 West Hampden Avenue
Englewood, CO 80110

Re:    Lease, dated April 2, 2001, between TSA Stores, Inc., as
       successor to Gart Bros. Sporting Goods Company ("Tenant"),
       and Illinois National Bank, Trustee ("Landlord")

Dear Mr. Frieder:

I am writing in response to your March 23, 2006 letter to Arthur Seppi,
Charles Robbins, and my partner, R. Lee Allen (in Mr. Allen's absence
from the office this week). I appreciate your courtesy in advising the
Landlord that you were considering terminating the Lease. We have now,
however, received an estimate from our contractor, Jones-Blythe
Construction Company, providing an opinion as to the extent of the
damage to the Premises leased to Sports Authority. As you can see from
this estimate, the damage does not exceed the 35% threshold referred to in
Paragraph 15(b) of the Lease. Pursuant to Paragraph 15(a) of that Lease,
the Landlord will be proceeding with repair and restoration of the
Premises, and expects that Sports Authority will abide by its continuing
obligations pursuant to that Lease.

Yours truly,

David A. Rolf

DAR/msh
Enclosure
cc:    Mr. William L. Hall, L.J. Shaw & Company
       Mr. Arthur Seppi
       Mr. Charles Robbins

{805043372 3/29/2006 DAR MAH}

EXHIBIT
C

E-FILED
Friday, 04 April, 2008   09:55:42 AM
Clerk, U.S. District Court, ILCD

# SORLING
## NORTHRUP HANNA
## CULLEN & COCHRAN, LTD.
### ATTORNEYS AT LAW

Suite 800 Illinois Building
607 East Adams Street
P.O. Box 5131
Springfield, IL 62705

P: 217-544-1144
F: 217-522-3173

Suite 301
401 S.W. Water Street
Peoria, IL 61602

P: 309-674-1144
F: 309-671-4368

www.sorlinglaw.com

**R. Lee Allen**
Attorney at Law
rlallen@sorlinglaw.com

R. Gerald Barris
Stephen A. Tagge
Michael A. Myers
C. Clark Germann
Gary A. Brown
Frederick B. Hoffmann
William R. Enlow
Michael C. Connelly
John A. Kauerauf
James M. Morphew
Stephen J. Bochenek
David A. Rolf
Peggy J. Ryan
Mark K. Cullen
Thomas H. Wilson
Todd M. Turner
R. Lee Allen
Charles J. Northrup
James D. Broadway
E. Zachary Dinardo

Elizabeth A. Urbance
James G. Fahey
Michael C. Horstman Jr.
Jennifer M. Ascher
Lisa A. Petrilli
Emily B. Pathauer
Brian D. Jones

Of Counsel:
Patrick V. Reilly
William S. Hanley
William B. Bates
Mark H. Ferguson

Retired:
Charles H. Northrup
Philip E. Hanna

Sorling, Catron and Hardin
1944-1975

April 28, 2006

Mr. David Frieder
Vice President-Construction
Sports Authority
1050 W. Hampden Avenue
Englewood, CO 80110

**Re:** **Lease, dated April 2, 2001, between TSA Stores, Inc., as successor to Gart Bros. Sporting Goods Company ("Tenant"), and Illinois National Bank, Trustee ("Landlord")**

Dear Mr. Frieder:

The Landlord asked me to update you with respect to the reconstruction of the Sports Authority store in Springfield, Illinois. Below is information relating to the status of that reconstruction, as received from Jones-Blythe Construction Co.

1. Roof structure replacement is complete.

2. Punched hole in roof on North side of building repaired on April 27, 2006.

3. Roof insulation and membrane at new roof structure completed on April 27, 2006.

4. Metal stud and drywall delivery due on April 27, 2006.

5. Temporary walls removed.

6. Metal stud work starts April 28, 2006.

7. Drywall hanging will start on Monday, May 1, 2006.

8. June 1 turnover to Tenant work includes all drywall taped and finished ready for Tenant finishes. Contractor is preparing pricing for painting and floor covering installation and will submit them as soon as possible.

If you have any further questions, please contact me or Arthur Seppi.

{S0507136.1 4/28/2006 RLA LMP}



EXHIBIT
D

SORLING, NORTHRUP, HANNA, CULLEN & COCHRAN, LTD.
APRIL 28, 2006
PAGE 2

Sincerely,

R. Lee Allen

RLA/lp

cc:    Arthur F. Seppi
       Mark A. Sorenson

E-FILED
Friday, 04 April 2008  09:55:58 AM
Clerk, U.S. District Court, ILCD

**SORLING**
NORTHRUP HANNA
CULLEN & COCHRAN, LTD.
ATTORNEYS AT LAW

REPLY TO:

Suite 800 Illinois Building
607 East Adams Street
P.O. Box 5131
Springfield, IL 62705

P: 217-544-1144
F: 217-522-3173

Suite 301
401 S.W. Water Street
Peoria, IL 61602

P: 309-674-1144
F: 309-671-4368

www.sorlinglaw.com

R. Lee Allen
Attorney at Law
rallen@sorlinglaw.com

R. Gerald Barris
Stephen A. Tagge
Michael A. Myers
C. Clark Germann
Gary A. Brown
Frederick B. Hoffmann
William R. Enlow
Michael C. Connelly
John A. Kauerauf
James M. Morphew
Stephen J. Bochenek
David A. Rolf
Peggy J. Ryan
Mark K. Cullen
Thomas H. Wilson
Todd M. Turner
R. Lee Allen
Charles J. Northrup
James D. Broadway
E. Zachary Dinardo

Elizabeth A. Urbance
James G. Fahey
Michael G. Horseman Jr.
Jennifer M. Ascher
Lisa A. Petrilli
Emily B. Fathauer
Brian D. Jones

Of Counsel:
Patrick V. Reilly
William S. Hanley
William B. Bates
Mark H. Ferguson

Retired:
Charles H. Northrup
Philip E. Hanna

Sorling, Catron and Hardin
1944-1975

May 5, 2006

**Via Fax:  720-475-2967**
David Frieder
Vice President-Construction
Sports Authority
1050 West Hampden Avenue
Englewood, CO 80110

Re:    **Sports Authority Notice of Termination Dated May 3, 2006**

Dear Mr. Frieder:

As attorney for Mr. Robbins and Mr. Seppi, I have been asked to respond to your letter dated May 3, 2006. In that letter you have claimed that Gart Bros. Sporting Goods Company ("TSA") has a right to terminate the lease pursuant to paragraph 15(b) of the lease dated April 2, 2001 between TSA Stores, Inc. and Illinois National Bank, Trustee. You have based that determination using an estimated total replacement cost based on the original contract price increased for estimated change orders and inflation and a budget for repair and construction of the damage to the Premises. The budget is based upon an estimate from a contractor who is located in the Chicago area and, while was one of the contractors selected by your company to originally bid on the project, was not awarded the original contract.

I would like to say that your letter came as a surprise, particularly since we addressed this issue with you in an earlier letter several weeks ago. However, over the last two weeks the Landlord has heard rumors from your local store personnel, who have since been fired, that you were not reopening the store. We understand that you have a strong desire not to reopen the store due primarily as we understand it to the poor performance of the store in the Springfield market since the opening of Dick's Sporting Goods. While we recognize that you may prefer not to reopen the store, we disagree that you have a right to terminate the lease based on the tornado damage or "go dark".

First of all, your decision to calculate the 35% based upon an estimated cost of repair and reconstruction of the damage is not appropriate given

(S0507675.2 5/5/2006 RLA LMP)



SORLING, NORTHRUP, HANNA, CULLEN & COCHRAN, LTD.
MAY 5, 2006
PAGE 2

the fact that we have informed you all along that the estimates for the work are below the 35% threshold. Instead of asking to review our local contractor's estimate, you have hired a contractor in the Chicago area, over 200 miles away from Springfield in a major metropolitan area to prepare a "Budget Estimate" as the basis for your claim of a right of termination. Your contractor, Jeff Wolford's "Budget Estimate" includes expenses that simply are not to be included in the calculation of the repair and reconstruction cost. For instance, $319,428 payable to Cotton USA was for work hired by Sports Authority to remove tenant trade fixtures, equipment and inventory, a cost that is not a part of the repair and reconstruction cost for the Premises, as defined in the Lease. Moreover, some of the expenses that your contractor has posted in the budget estimate are much too high according to our local contractor who is completing the reconstruction.

The Landlord has kept you informed of the status of the repair to the building. The property will be available to turn over to you by the end of this month if not sooner. As a result of such progress, we have actual costs for the repair and reconstruction of the Premises, which as a percentage of the current reconstruction costs of the Premises (even using your estimates of such current reconstruction costs for the Premises) will not exceed the 35% threshold.

We will be providing you with documentation from our contractor setting forth the actual costs incurred in the reconstruction as well as an accurate date for delivery of the premises to you. We disagree that you have a right to terminate the lease or "go dark" and we intend to challenge your wrongful termination. To that end, we will not agree to change the utilities for the property, as has been requested by one of your staff. Moreover, we will be proceeding with delivery of the premises to you, well within the time frames allowed for us to have repaired the premises.

Please contact the undersigned if you have any questions.

Sincerely,

R. Lee Allen

RLA/lp

cc:    Charles E. Robbins
       Arthur F. Seppi

{S0507675.2  5/5/2006 RLA LMP}

**E-FILED**
Friday, 04 April, 2008  09:56:10 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SWPLAZA III, LLC, an Illinois limited liability company, as successor to Illinois National Bank, as Trustee under Trust Agreement dated November 6, 2000 and known as Trust No. 00-0020, an Illinois banking institution, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 06-CV-3177 |
| vs. | ) ) | |
| TSA STORES, INC., as successor to Gart Brothers Sporting Goods Company, a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

## TSA'S RULE 26(a)(1) INITIAL DISCLOSURES

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure and CDIL-LR 26.2,

Defendant, TSA STORES, INC., a Delaware corporation, as successor to Gart Bros. Sporting

Goods Company (incorrectly identified in the Complaint as "Gart Brothers Sporting Goods

Company") (hereinafter "TSA"), by its attorneys, Hinshaw & Culbertson LLP, hereby provides

the following disclosures. These disclosures are based upon information presently available to

TSA, and TSA reserves the right to supplement as provided in Fed.R.Civ.P. 26(e) based upon

further investigation and discovery to the extent further disclosures are warranted and not

mooted by future discovery responses.



EXHIBIT
F

60153654v1 868372

**Rule 26(a)(1)(A)**

The following is a list of individuals likely to have discoverable information that TSA may use to support its claims and defenses.

1.  David Frieder
    Vice President – Construction
    TSA

Mr. Frieder has information generally concerning the allegations of the Complaint, TSA's defenses, and TSA's counterclaim, including, but not limited to, the lease between the parties, the damage to the premises as a result of the tornadoes, the damage assessment to the premises (costs of repair and reconstruction), and the termination of the lease.

2.  Cynthia Cashman
    Director of Real Estate
    TSA

Ms. Cashman has information generally concerning the allegations of the Complaint, TSA's defenses, and TSA's counterclaim, including, but not limited to, the lease between the parties, the damage to the premises as a result of the tornadoes, and the damage assessment to the premises (costs of repair and reconstruction), the termination of the lease, and amounts paid by TSA as rent and for utilities pertaining to the premises attributable to periods after the lease termination date.

3.  Margaret Dormish
    Supervisor of Real Estate Accounting
    TSA

Ms. Dormish has information regarding amounts paid by TSA as rent and for utilities pertaining to the premises attributable to periods after the lease termination date.

4.  Mark Grogan
    District Manager
    TSA

Mr. Grogan has information concerning damage to the premises as a result of the tornadoes.

5.  Jackie Hokuf
    Director of Facilities
    TSA

Ms. Hokuf has information generally concerning the allegations of the Complaint, TSA's defenses, and TSA's counterclaim, including but not limited to, the lease between the parties, the

60153654v1 868372

**E-FILED**
Friday, 04 April, 2008  09:56:24 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SWPLAZA III, LLC, an Illinois limited liability company, as successor to Illinois National Bank, as Trustee under Trust Agreement dated November 6, 2000 and known as Trust No. 00-0020, an Illinois banking institution, | ) ) ) ) ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | Case No. 06-CV-3177 |
| vs. | ) ) | |
| TSA STORES, INC., as successor to Gart Brothers Sporting Goods Company, a Delaware corporation, | ) ) ) ) | |
| Defendant/Counter-Plaintiff. | ) ) ) | |

**DEFENDANT'S ANSWERS AND OBJECTIONS TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Pursuant to Fed.R.Civ.P. 26 and 33, Defendant/Counter-Plaintiff TSA Stores, Inc., a

Delaware Corporation, as successor to Gart Bros. Sporting Goods Company (incorrectly

identified in the Complaint as "Gart Brothers Sporting Goods Company")(hereafter "TSA" or

"Defendant"), by its attorneys Hinshaw & Culbertson LLP, hereby answers or objects as follows

to Plaintiff's First Set of Interrogatories:

**GENERAL OBJECTIONS APPLICABLE TO ALL INTERROGATORIES**

1.      Defendant objects to all of Plaintiff's Interrogatories to the extent they purport to

impose burdens on Defendant that exceed its obligations under the Federal Rules of Civil

Procedure on the ground that they are burdensome and oppressive and exceed the scope of

permissible discovery in this action.

**EXHIBIT
G**

60155755v1 868372

2.      Defendant objects to each Interrogatory to the extent it seeks information protected by the attorney-client and/or work product privileges.  Defendant does not waive and intends to preserve and is preserving the attorney-client privilege, work product privilege, and every other privilege with respect to each and every communication and/or document protected by such privilege.  To the extent that any Interrogatory is so vague or ambiguous that it may be interpreted to call for privileged or protected information, Defendant interprets each such request as not to call for any privileged or protected information.

3.      When Defendant's response to any given Interrogatory states that Defendant invokes its option to produce documents pursuant to Fed.R.Civ.P. 33(d), that response means Defendant has produced or will produce documents or exact copies thereof in its custody, possession, or control that are not subject to a privilege, work product confidentiality, or other immunity from discovery.

4.      Defendant's responses and objections are based on information now known.  Defendant has not completed its investigation of all the facts involved in this case nor has it completed its discovery or its preparation for trial.  Defendant, therefore, reserves its right, but undertakes no obligation beyond that required under the Federal Rules of Civil Procedure, to seasonably amend, change, and/or supplement its responses to Plaintiff's Interrogatories, if it later determines that such is necessary.

5.      Defendant objects to each Interrogatory to the extent it seeks information concerning times not at issue in this litigation and information beyond the subject of the claims at issue in this litigation.

6.      Defendant objects to each Interrogatory to the extent it purports to require Defendant to disclose information outside Defendant's possession, custody, or control.

2

7.    In responding to these Interrogatories, Defendant does not waive, and intends to preserve, and is preserving:

a.    all objections to competency, relevancy, materiality, and admissibility as evidence for any other purpose and in any proceeding, including the trial of this action or any other action.

b.    all rights to object on any grounds to the use of the responses herein in any subsequent proceeding, including the trial of this or any other action;

c.    all objections as to vagueness and ambiguity; and

d.    all rights to object on any grounds as to further discovery requests.

8.    Defendant objects to the Interrogatories to the extent that the Interrogatories are overbroad on their face, the Interrogatories are unduly burdensome and oppressive, and the information sought is not relevant and not reasonably calculated to lead to the discovery of admissible evidence in this litigation.

9.    Defendant objects to the Interrogatories to the extent that the Interrogatories seek information in the possession or control of individuals or entities other than Defendant.

10.    Defendant objects to the Interrogatories to the extent that the Interrogatories seek information already within Plaintiff's possession.

Defendant incorporates the foregoing general objections into each and every objection and any responses to the specific Interrogatory propounded by Plaintiff.  Defendant does not intend to waive, and is not waiving, any general objections in response to any specific Interrogatory.

INTERROGATORY NO. 1:    Identify the person answering these Interrogatories:

**ANSWER:    Cynthia Cashman, Director of Real Estate, TSA**

3

INTERROGATORY NO. 2: Identify any person assisting in answering these interrogatories and the interrogatory for which they provided assistance.

**ANSWER:    The following assisted in preparing responses to these interrogatories:**

a)    **Charles R. Schmadeke**
      **Attorney for Defendant**

b)    **Medora Mayne**
      **Associate General Counsel / Real Estate**
      **TSA**

c)    **Paul Gaudet**
      **Senior Vice President, Construction – Visual**
      **TSA**

d)    **David Frieder**
      **Vice President, Construction**
      **TSA**

e)    **Mike Mavelle**
      **Vice President, Risk Management**
      **TSA**

INTERROGATORY NO. 3: Set for the calculation in support of the claim for damages under Count II of the Counterclaim.

**ANSWER:    As provided by Fed.R.Civ.P. 33(d), Defendant responds to Interrogatory No. 3 by stating that it has produced documents responsive to the Interrogatory.   See TSA's Rule 26(a)(1) Initial Disclosures and documents produced therewith (including TSA Rule 26 Disclosures 0283-0294).**

INTERROGATORY NO. 4. Identify by every employee of TSA's Springfield store located at the Premises during 2005 and 2006.

**ANSWER:    Defendant objects to this Interrogatory in that the information sought is neither relevant to this litigation nor reasonably calculated to lead to the discovery of any admissible evidence regarding the subject matter of this litigation.**

INTERROGATORY NO. 5.  Identify every individual at TSA involved in the decision to terminate the Lease.

4

**ANSWER:**

a)  John D. Morton
    Chief Executive Officer
    TSA

b)  Greg Waters
    Chief Operating Officer
    TSA

c)  Nessa Hassanein
    Executive Vice President / General Counsel
    TSA

d)  Lucy Kelton
    former Vice President / Real Estate
    TSA

e)  Dan Boose
    Vice President / Financial Planning-Analysis
    TSA

f)  David Campisi
    President
    TSA

g)  Chris Day
    former Senior Vice President / Real Estate
    TSA

h)  Jon Hourvitz
    Group Manager / Financial Planning-Analysis
    TSA

INTERROGATORY NO. 6.: Identify each employee or agent of TSA that was present in

Springfield, Illinois at the Premises at any time following March 12, 2006, and the dates which

they were present.

ANSWER:   To the extent that this Interrogatory requests the identity of every
employee or agent of TSA that may have been present at the Premises on the dates
specified, Defendant objects in that the information sought is neither relevant to this
litigation nor reasonably calculated to lead to the discovery of admissible evidence
regarding the subject matter of this action. Defendant further objects to this Interrogatory
as unduly burdensome and oppressive. Subject to and without waiving the objections,
Defendant states that the following were present at the Premises following March 12, 2006:

60155755v1 868372

a)     **Jeff Krone**
**Regional Sales Manager**
**Cotton USA**
**5432-A West Crenshaw Street**
**Tampa, FL 33634**
**03-12-06 to 03-16-06; 03-22-06**

b)     **Corey Cochran, National Account Manager**
**Cotton USA**
**14345 Northwest Freeway**
**Houston, TX 77040**
**713-849-9300**

c)     **As provided by Fed.R.Civ.P. 33(d), other Individuals from Cotton USA identified in documents produced under Rule 26(a)(1)**

d)     **Jeff Wolford**
**Wolford Retail Builders, Inc.**
**102 South Wheeling Road**
**Prospect Heights, IL 60070**
**847-394-4504**
**May 4, 2006**

e)     **Mike Mavelle, Vice-President, Risk Management**
**TSA**
**March 13-15, 2006**

f)     **Quentin Scott Ragan, Structural Engineer**
**EFI Global**
**455 West Kehoe Blvd., Suite 106**
**Carol Stream, IL 60188**
**630-462-6898**
**March 14, 2006**

g)     **David Frieder, Vice President Construction**
**March 21, 2006**

h)     **Carl Holmes, Manager / Energy**
**TSA**
**March 21, 2006**

i)     **Amy Jennings, Purchasing Assistant**
**TSA**
**March 21, 2006**

60155755v1 868372

**j)**    **Mark Grogan, District Manager**
**TSA**
**Several times per week between 03-13-06 and 05-05-06**

**k)**    **Tom Tiernan, General Adjuster**
**Liberty Mutual**
**200 Galleria Parkway, Suite 1100**
**Atlanta, GA**
**800-241-5435 ext. 477**

**l)**    **Terri Higdon, Claims Manager**
**Lockton Companies**
**8110 East Union Avenue, Suite 700**
**Denver, CO**
**303-414-6435**
**March 13-15, 2006**

**m)**    **David Lee, Former Store Manager**
**TSA**

**n)**    **Other TSA employees as identified in documents provided pursuant to Fed.R.Civ.P. 33(d).**

INTERROGATORY NO. 7: Identify each person or entity who was engaged in any salvage and/or repair operations on behalf of or at the request of TSA at the Premises at any time on or after March 12, 2006.

**ANSWER:**

**a)**    **Cotton USA**
**5432-A West Crenshaw Street**
**Tampa, Florida  22634**

**b)**    **EFI Global**
**455 West Kehoe Blvd, Suite 106**
**Carol Stream, IL  60188**

**c)**    **Ace Sign**
**402 North 4th Street**
**Springfield, IL 62702**
**217-522-8417**

**d)**    **Interior Construction Experts (ICE)**
**10836 Fox Sedge Way**
**Highlands Ranch, CO**
**720-344-3422**

7

60155755v1 868372

e)    **Stoner & Company**
      **Chad Foster, Vice President**
      **107 Tonbridge Road**
      **Richmond, VA**
      **404-307-7332**

INTERROGATORY NO. 8:  Identify each person or entity TSA contacted or consulted with regard to reviewing, estimating, or approximating the costs of repair of the Premises after March 12, 2006.

**ANSWER:**

a)    **Cotton USA**
      **5432-A West Crenshaw Street**
      **Tampa, FL  22634**

b)    **Wolford Retail Builders, Inc.**
      **102 South Wheeling Road**
      **Prospect Heights, IL  60070**

c)    **EFI Global**
      **455 West Kehoe Blvd, Suite 106**
      **Carol Stream, IL  60188**

INTERROGATORY NO. 9:  Describe all efforts made by TSA to sublet the Premises at any time during the term of the Lease, up to and including to the present.

**ANSWER:    None.**

INTERROGATORY NO. 10: State the date and manner in which employees of TSA at the premises were notified of the closing of TSA facility at the Premises, and whether any such notice was in writing.

**ANSWER:    Defendant objects to this Interrogatory in that the information sought is neither relevant to this litigation nor reasonably calculated to lead to the discovery of any admissible evidence regarding the subject matter of this litigation.**

INTERROGATORY NO. 11: Identify any insurer to which TSA submitted a claim for property, business income, or other loss by TSA from the events in March, 2006 at the Premises.

8

**ANSWER:**    **Liberty Mutual Fire Insurance Company**
                **Tom Tiernam**
                **200 Galleria Parkway, NE, Suite 1100**
                **Atlanta, GA**

DATED:      January _____, 2007.


Legal Objections By: _____

                      Charles R. Schmadeke,
                      One of Defendant's Attorneys


Answers By: _____

                  Cynthia J. Cashman


J. William Roberts (#2351714)
Charles R. Schmadeke (#2489813)
HINSHAW & CULBERTSON LLP
400 South Ninth Street, Suite 200
Springfield, IL 62701
217/528-7375 (phone)
217/528-0075 (fax)

60155755v1 868372

## CERTIFICATE OF SERVICE

The foregoing Defendant's Answers and Objections to Plaintiff's First Set of Interrogatories was served upon Plaintiff/Counter-Defendant by placing a true and correct copy thereof in the United States mail to:

David A. Rolf
R. Lee Allen
Sorling Northrup Hanna Cullen & Cochran LTD
Illinois Building
607 E. Adams Street, Suite 800
Springfield, IL 62701
darolf@sorlinglaw.com

on this _____ day of January, 2007.


_____

J. William Roberts (#2351714)
Charles R. Schmadeke (#2489813)
HINSHAW & CULBERTSON LLP
400 South Ninth Street, Suite 200
Springfield, IL 62701
217/528-7375 (phone)
217/528-0075 (fax)

60155755v1 868372

E-FILED
Friday, 04 April, 2008 09:41:58 AM
Monday, 31 December, 2007 02:00:49 PM LCD
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

SPRINGFIELD DIVISION

COPY

SWPLAZA III, LLC, an Illinois Limited )

Liability Company, as successor to    )

Illinois National Bank, as Trustee    )

under Trust Agreement dated           )

November 6, 2000 and known as Trust   )

No. 00-0020, an Illinois banking      )

institution,                          )

       Plaintiff,                     )

   vs.                                )  No. 06-3177

TSA STORES, INC., as successor to Gart)

Brothers Sporting Goods Company,      )

a Delaware Corporation,               )

       Defendant.                     )

The discovery deposition of JEFFREY WOLFORD,

taken in the above-entitled cause, before Christine

M. Jachimiak, a notary public of Cook County,

Illinois, on the 30th day of October, 2007 at

222 North LaSalle Street, Suite 300, Chicago,

Illinois, pursuant to Notice, at the hour of 1:30.

Reported by:  Christine M. Jachimiak, CSR

License No.:  084-004064

1

EXHIBIT
H


```
1       APPEARANCES:

2               SORLING, NORTHRUP, HANNA, CULLEN

3               & COCHRAN, LTD., by

4               MR. DAVID A. ROLF

5               Suite 800 Illinois Building

6               607 East Adams Street

7               P.O. Box 5131

8               Springfield, Illinois, 62705

9               (217) 544-1144

10                  Representing the Plaintiff,

11

12              HINSHAW & CULBERTSON, LLP, by

13              MR. CHARLES R. SCHMADEKE

14              400 South Ninth Street, Suite 200

15              Springfield, Illinois, 62701-1908

16              (217) 528-7375

17                  Representing the Defendant.

18

19       ALSO PRESENT: Douglas Garrett

20

21

22

23

24
                                                    2
```

```
 1      Q.   Yes.

 2      A.   Looking at the Email it looks like I did

 3  an attachment April 19th. I believe there would not

 4  be a copy of that because of that original budget

 5  that I would have because I overlaid and it was a

 6  work in progress over say plus or minus a month.

 7      Q.   Is this the Email you're looking at?

 8      A.   Yes, it is.

 9      Q.   And you think that's the first time you

10  had an actual --

11      A.   That I actually Emailed a budget over, a

12  hard copy, yes.

13      Q.   We wouldn't be able to have a copy of

14  that?

15      A.   No.

16      Q.   Was all your correspondence on this

17  project with Mr. Freider?  Is that a yes?

18      A.   Yes.

19      MR. SCHMADEKE:  At that time?

20      THE WITNESS:  At that time.

21  BY MR. ROLF:

22      Q.   Who else from TSA have you had

23  correspondence with?

24      A.   Douglas Garrett, David Freider and
```
                                                        10

1    Charles.

2        Q.    What was your contact with Doug Garrett?

3        A.    My contact with Mr. Garrett was later on

4    but not during this original budgetary spreadsheet

5    and defining the scope process for replacement

6    costs.  It was solely to my best recollection with

7    David Freider.

8        Q.    And the Emails you've produced today --

9        A.    It's every Email correspondence I had with

10   David.

11       Q.    Is that the method in which you

12   corresponded with Mr. Freider?

13       A.    Primarily.

14       Q.    Would that give us a fairly accurate time

15   line as to when you got information and when you

16   sent information back?

17       A.    Yes.

18       Q.    Would there be anything missing if we

19   looked at those Emails?

20       A.    It was every chronological starting oldest

21   to the top to the newest that I had with David,

22   every one.

23       Q.    Would there be phone calls that would

24   supplement that or you pretty much did it by Email?

11

1       A.    90 percent of it was by Email.

2       Q.    Did you talk with anyone other than

3    Mr. Freider about the damage that was out at the

4    location in Springfield?

5       A.    Jeff Crohn with Cotton defining his

6    scopes. I spoke to several of the subcontractors

7    when I was there on May 4th, 2006 per the site

8    visit defining the scopes and damage.

9       Q.    But leading up to what you were asked to

10    do in defining this original scope was it just with

11    Mr. Freider?

12       A.    That's correct, sir.

13       Q.    Did Crohn -- did you talk to him to get a

14    description of any of the damage to the facility

15    when you were preparing your table?

16       A.    That is correct.

17       Q.    When were those conversations?

18       A.    Those were during the month of April at

19    some point. I never document. There was no phone

20    log.

21       Q.    Was that all by phone?

22       A.    It was all by phone.

23       Q.    This has been marked as Exhibit 1 which is

24    your report in this matter. I want to run through

                                                          12