UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| SWPLAZA III, LLC, an Illinois limited liability company, as successor to Illinois National Bank, as Trustee under Trust Agreement dated November 6, 2000 and known as Trust No. 00-0020, an Illinois banking institution,<br><br>    Plaintiff,<br><br>v.<br><br>TSA STORES, INC., as successor to Gart Brothers Sporting Goods Company, a Delaware corporation,<br><br>    Defendant. | Case No. 06-3177 |

## TSA'S POST TRIAL BRIEF

### INTRODUCTION

SWPlaza III, LLC (the "Landlord") has attempted to confuse the central issue of this matter by misapplying the implied duty of good faith and fair dealing. Although that duty is part of every contract, it does not trump the express terms of the contract; it requires neither altruism, politeness, nor decent behavior. Moreover, it does not act to convert a breach of contract cause of action into a quasi-tort action. On the contrary, under Illinois law, it is nothing more than a construction aid designed to assist the court, if necessary, in determining the intent of the parties in filling any gaps in the terms of the contract. In that vein, it requires a party vested with contractual discretion to exercise that discretion reasonably and not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

With these principles in mind, as elaborated herein, it becomes readily apparent that the actions of TSA and its agents after May 3, 2006, the date of the termination notice, are without consequence. Furthermore, the pre-termination actions of TSA are of consequence only to the

extent that they have probative value as to the reasonableness of TSA's exercise of contractual discretion.

Under the law of Illinois, the facts adduced at trial clearly demonstrate that TSA reasonably estimated the value of reconstruction and reasonably exercised its option to terminate the Lease, compelling judgment for TSA and against the Landlord.

### THERE IS NO EVIDENCE FROM WHICH TO REASONABLY INFER THAT TSA VIOLATED THE DUTY OF GOOD FAITH

While a tenant's reason to exercise a right to terminate a lease is generally not relevant to the question of whether the termination is valid (*Plambeck v. Greystone Management & Columbian National Trust Co.,* 281 Ill.App.3d 260, 267, 666 N.E.2d 670, 674, 217 Ill.Dec. 1, 5 (1st Dist. 1996)), leases, as all contracts governed by Illinois law, have an implied obligation of good faith and fair dealing between the parties to it. *Greer Properties, Inc. v. LaSalle National Bank,* 874 F.2d 457, 460 (7th Cir. 1989); *Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.,* 352 Ill.App.3d 160, 163, 815 N.E.2d 911, 914, 287 Ill.Dec. 267, 271 (1st Dist. 2004). The implied duty of good faith, however, neither creates an independent cause of action nor constitutes an independent source of enforceable duties. *Beraha v. Baxter Health Care Corporation,* 956 F.2d 1436, 1445 (7th Cir. 1992). Rather, the good faith duty is simply a guide or aid in the construction of a contract to determine the parties' intent (*Perez v. Citicorp Mortgage, Inc.,* 301 Ill.App.3d 413, 423-24, 703 N.E.2d 518, 525, 234 Ill.Dec. 657, 664 (1st Dist. 1998)), and a method "to devise terms to fill contractual gaps." *Continental Bank, N.A. v. Everett,* 964 F.2d 701, 705 (7th Cir. 1992), *cert. denied,* 506 U.S. 1035, 113 S.Ct. 816 (1992). Good faith "imposes a duty. . . to avoid taking advantage of gaps in a contract in order to exploit the vulnerabilities that arise when contractual performance is sequential rather than simultaneous" (*The Original Great American Chocolate Chip Cookie Co., Inc. v. River Valley*

*Cookies, Limited,* 970 F.2d 273, 280 (7th Cir. 1992)), and serves to prevent a party from taking "opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved by the parties." *Kham & Nate's Shoes No. 2 v. First Bank*, 908 F.2d 1351, 1357 (7th Cir. 1990).

Under Illinois law, the implied obligation of good faith in the performance of contracts governs only the exercise of contractual discretion possessed by the parties. *Beraha,* 956 F.2d at 1443.

> . . . [T]he doctrine of good faith performance imposes a limitation on the exercise of discretion vested in one of the parties to a contract. (Citation omitted.). . . [A] party vested with contractual discretion must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously or in a manner inconsistent with the reasonable expectations of the parties. . . .

*Dayan v. McDonald's Corp.,* 125 Ill.App.3d 972, 990-91, 466 N.E.2d 958, 972, 81 Ill.Dec. 156, 170 (1st Dist. 1984). The contractual obligation of good faith is "contingent upon a condition peculiarly within the power of that party. . ." where "the controlling party could have avoided incurring the contractual obligation by refusing to bring about the relevant condition." *Id.*

Good faith does not mandate that a party "be nice" or "behave decently" (*Behara,* 956 F.2d at 1445) or "behave altruistically" to the other party. *The Original Great American Chocolate Chip Cookie Company, Inc.,* 970 F.2d at 280 (Contract law "does not proceed on the philosophy that I am my brother's keeper. That philosophy may animate the law of fiduciary obligations but parties to a contract are not each other's fiduciaries."). Most importantly, the duty of good faith does not abrogate, override, or trump the express terms of a contract. *Continental Bank, N.A.,* 964 F.2d at 705; *Mid-West Energy Consultants, Inc.,* 352 Ill.App.3d at 164, 815 N.E.2d at 914, 287 Ill.Dec. at 271. Rather, "[p]arties are entitled to enforce the terms of negotiated contracts to the letter without being mulcted for lack of good faith." *Resolution Trust*

*Corp. v. Holtzman,* 248 Ill.App.3d 105, 113, 618 N.E.2d 418, 424, 187 Ill.Dec. 827, 833 (1st Dist. 1993); *see also Saunders v. Michigan Avenue National Bank,* 278 Ill.App.3d 307, 316, 662 N.E.2d 602, 610, 214 Ill.Dec. 1036, 1044 (1st Dist. 1992), *appeal denied,* 167 Ill.2d 569, 667 N.E.2d 1063, 217 Ill.Dec. 670 (1996).

In the matter *sub judice,* the contract clearly allowed TSA to terminate it if the leased premises suffered damage by a casualty, the repair or reconstruction of which equaled or exceeded 35% of the then-total reconstruction value. There is no gap in its terms. That option had no other conditions; there was no condition requiring good cause or a condition limiting it to reasons other than financial considerations. It cannot be now contended that the parties had no reasonable expectation that, if the contractual damage threshold was met, TSA would not exercise its option to terminate. The express terms of the Lease authorized the exercise of its termination so long as TSA reasonably exercised its discretion in determining whether the 35% threshold has been met. That is all that the duty of good faith requires in this case, and that is exactly what happened.

Consequently, it is absolutely of no import that TSA's "Chicago lawyer" implied or expressed several months after the Lease was terminated that Wolford alone prepared the estimate. Moreover, the duty of good faith is not implicated by David Frieder's suggestion, after the termination of the Lease, that Wolford identify himself in a misleading manner when Wolford viewed the premises. And TSA did not breach the duty of good faith when Mr. Frieder, placed words on the estimate's spreadsheet indicating that it was prepared by Wolford, after he had previously stated in the same communication that he prepared the analysis with Wolford's assistance.

On the other hand, the evidence has shown that, after Mr. Frieder personally observed the premises on March 21, 2006, he wrote to the Landlord two days later advising that TSA's option

to terminate may have been triggered. Mr. Frieder, working with Wolford, began preparing estimates in early April 2006. Mr. Frieder was advised on or about April 18, 2006, that, based upon his estimates the Springfield store would be closed. Thereafter, Mr. Frieder with Wolford's assistance worked to hone the estimates to assure their validity, but the estimates never materially changed. The employees were notified on April 22, 2006, that they were laid-off, and on May 3, 2006, within the express terms of the Lease, TSA provided the Landlord notice of its termination. The relevant evidence demonstrates that TSA acted reasonably and in good faith in the exercise of its discretion and in the preparation of a reasonable estimate. Accordingly, TSA is entitled to judgment.

## CONCLUSION

TSA respectfully submits that its proposed findings of fact and conclusions of law as set forth in the Pretrial Order suffice.

Based upon the facts of this matter, as governed by Illinois law, TSA requests that judgment be entered in its favor.

Dated:  April 16, 2008        Respectfully submitted,

TSA Stores, Inc, as successor to Gart Bros.
Sporting Goods Company, A Delaware Corp.

BY:  /s/Charles R. Schmadeke
     J. William Roberts, No. 2351714
     Charles R. Schmadeke, No. 2489813
     Hinshaw & Culbertson LLP
     400 S. 9th St., Suite 200
     Springfield, IL 62701
     Phone: 217-528-7375
     Fax: 217-528-0075
     E-mail: broberts@hinshawlaw.com
     E-mail: cschmadeke@hinshawlaw.com
     Attorneys for TSA Stores, Inc.

60173165v1 868372

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 16, 2008, I electronically filed the TSA's POST TRIAL BRIEF with the Clerk of Court using the CM/ECF system that will send notification of such filing(s) to the following:

| | |
|---|---|
| David A. Rolf | Email: darolf@sorlinglaw.com |
| R. Lee Allen | Email: rlallen@sorlinglaw.com |

/s/Charles R. Schmadeke
J. William Roberts, No. 2351714
Charles R. Schmadeke, No. 2489813
Hinshaw & Culbertson LLP
400 S. 9th St., Suite 200
Springfield, IL 62701
Phone: 217-528-7375
Fax: 217-528-0075
E-mail: broberts@hinshawlaw.com
E-mail: cschmadeke@hinshawlaw.com
Attorneys for TSA Stores, Inc.

60173165v1 868372