**E-FILED**
Wednesday, 16 April, 2008  04:40:18 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| SWPLAZA III, LLC, an Illinois limited liability company, as successor to Illinois National Bank, as Trustee under Trust Agreement dated November 6, 2000 and known as Trust No. 00-0020, an Illinois banking institution, | ) ) ) ) ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | |
| v. | ) ) | Case No.:  06-CV-3177 |
| TSA STORES, INC., as successor to Gart Brothers Sporting Goods Company, a Delaware corporation, | ) ) ) ) | |
| Defendant/Counter-Plaintiff. | ) | |

**PLAINTIFF'S POST-TRIAL SUBMISSION OF PROPOSED FINDINGS**

NOW COMES Plaintiff/Counter-Defendant, SWPLAZA III, LLC (hereinafter "SWPlaza"), an Illinois limited liability company, as successor to Illinois National Bank, as Trustee under Trust Agreement dated November 6, 2000 and known as Trust No. 00-0020, an Illinois banking institution, by and through its attorneys, Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., David A. Rolf, of Counsel, and hereby makes its Post-Trial Submission of Proposed Findings, based on the evidence presented at trial in this matter.  In addition, SWPlaza submits that the evidence supports all of Plaintiff's proposed findings and conclusions included in the Pre-Trial Order.

I.      **Introduction**

The Illinois Supreme Court has held that:

While courts of equity do not sit to enforce mere moral rules, whose only sanction is found in public opinion, yet it is a part of their mission to see that common

{S0577358.5  4/16/2008 DAR MAH}

honesty, good faith, and fair dealings shall be observed in the ordinary business affairs of life. McCormick v. Caroline Miller, 102 Ill. 208 (1882).

Good faith between contracting parties requires that party vested with contractual discretion must exercise its discretion reasonably and may not do so arbitrarily or capriciously. Greer Properties, Inc. v. LaSalle Nat. Bank, 874 F.2d 457 (7th Cir. 1989)(applying Illinois law). Timing and motive are both factors for a court to consider in determining whether Sports Authority terminated the Lease in good faith. See, e.g., Rao v. Rao, 718 F.2d 219, 223 (7th Cir. 1983)(applying Illinois law).

The evidence presented over the course of two days of trial in this matter can lead to no other conclusion, but that Sports Authority did not deal with SWPlaza honestly, nor in good faith, nor in fair dealing. Accordingly, the findings should be that Sports Authority breached the Lease and this court grant appropriate relief, namely finding that the Lease remains in place and enforceable.

## II.    Proposed Findings

A.    **The following findings that Sports Authority acted dishonestly are supported by the evidence presented at trial in this matter:**

1.    Sports Authority acted dishonestly in placing "prepared by Jeff Wolford" on the estimate which accompanied its May 3, 2006 notice of termination.

2.    Sports Authority acted dishonestly in representing in its May 18, 2006 letter that the estimate accompanying the May 3rd termination letter was prepared by Mr. Wolford.

3.    Sports Authority acted dishonestly in stating in its May 18, 2006 letter that Mr. Wolford was very familiar with the construction market in Springfield metropolitan area.

4.     Sports Authority acted dishonestly in stating in a May 18, 2006 letter that the work performed by Cotton was wholly unrelated to the inventory at the premises.

5.     Sports Authority acted dishonestly by instructing Jeff Wolford to misrepresent who he was when he finally was coming to visit the site on May 4, 2006.

6.     Sports Authority acted dishonestly by withholding from the landlord information that Sports Authority had already decided to terminate the Lease and in fact had terminated its employees.

7.     Sports Authority acted dishonestly by indicating to landlord's contractor on April 26, 2006 that Sports Authority could have carpet available on one week's notice.

**B.     The following findings that Sports Authority acted unreasonably are supported by the evidence presented at trial in this matter:**

1.     Sports Authority acted unreasonably in deciding to terminate the Lease based on financial incentives, before knowing if the threshold for cost of repair had been reached.

2.     Sports Authority acted unreasonably in manufacturing an estimate that exceeded the threshold for cost of repair, in order to support its previously reached decision to terminate the Lease.

3.     Sports Authority acted unreasonably in making sure its estimate for repair was high, in order to allow it room to negotiate termination of the Lease in accord with its previously reached decision to terminate the Lease.

4.     Sports Authority acted unreasonably in terminating the Lease on May 3, 2006 when on April 26, 2006 Sports Authority's expert, Mr. Wolford, based on what he knew then, thought a good faith estimate of the cost of repairs was $677,158, which number is less

than the 35% threshold necessary to terminate the Lease, and Sports Authority had no additional information at the time it terminated the Lease, May 3, 2006.

5.      Sports Authority acted unreasonably in responding to SWPlaza's response to the May 3, 2006 termination notice by misrepresenting and/or withholding information from SWPlaza in order to negotiate termination of the Lease in accord with its previously reached decision to terminate the Lease.

**C.     The budget estimate which Sports Authority presented to SWPlaza in support of its termination notice was unreasonable based on the evidence submitted at the trial of this matter in the following respects:**

1.      Sports Authority unreasonably included all of the Cotton expenses in its budget estimate included with the notice of termination on May 3, 2006 when it knew that Cotton's work was primarily for the protection of Sports Authority and its insurer Liberty Mutual's interests.

2.      Sports Authority unreasonably included all of the Cotton expenses in its budget estimate which accompanied the May 3, 2006 termination letter when it knew or should have known that any work that could be considered reconstruction was already included within the scopes and estimates reviewed by Sports Authority's expert, Mr. Wolford.

3.      Sports Authority unreasonably included permit fees in the budget estimate accompanying its May 3, 2006 notice of termination when it knew or should have known based on Mr. Mavelle being in Springfield from March 13th through the 15th and Mr. Frieder being in Springfield on March 21st that there were no permit fee requirements.

4.      Sports Authority unreasonably included a 5% add-on for expedited work in the budget estimate accompanying its May 3, 2006 notice of termination when the Lease provided 240 days to complete the work.

5. Sports Authority unreasonably included a 4% contingency, or "fluff" factor to artificially inflate its estimate.

6. The April 26, 2006 estimated costs were used in the budget estimate which accompanied the May 3, 2006 termination notice, despite Sports Authority knowing that Jeff Wolford had never visited the site. The opinion of both expert contractors testifying in this case is that a site visit is required for a reasonable estimate.

7. Since Wolford did not visit the site until May 4th, after a substantial amount of work was completed, it was too late for such a visit to lend any degree of reasonableness to the earlier estimate.

8. The estimate of April 26th was purposefully formulated on the high side, and as supported by the testimony of Mark Sorensen, unreasonably so.

9. The Sports Authority budget estimate was in excess of 50% of the then total cost of reconstruction when Sports Authority knew or should have known that the damage to the premises affected nowhere near half of the premises.

**III. Sports Authority failed to provide sufficient evidence to supports its burden of proof, which in the primary sense rests on the party who has asserted the affirmative of an issue, in this case that its estimate was reasonable. Bauer v. Clark, 161 F.2d 397 (7th Cir. 1947). A party seeking to enforce a forfeiture provision bears the burden of proving that the right to a forfeiture clearly and unequivocally exists and that the exercise of forfeiture does not result in injustice. Moss v. Elofsson, 194 Ill.App.3d 256, 550 N.E.2d 1228 (1st Dist. 1990).**

A. There is no evidence that Jeff Wolford sent an estimate to David Frieder or Sports Authority at any time prior to April 19, 2006.

B. Apart from the April 26th e-mail from David Frieder to Jeff Wolford, Sports Authority did not present any evidence supporting prior exchanges of estimates, who prepared

estimates, how many were prepared, what any prior estimates were, or how they changed in amount or scope, nor why any changes may have been made.

C.      Sports Authority presented no evidence that the committee of eight which decided to terminate the Lease on or before April 18, 2006 considered any estimates or costs of repairs at all.

D.      There is no evidence that the actual costs, even if adding some initial clean up, exceeded the 35% threshold.

E.      Sports Authority presented no evidence of any estimate prior to May 3, 2006 that exceeded the 35% threshold.

IV.    **Additional Relevant Findings**

A.      Cotton's work, while of some benefit to the clean up of the premises, was undertaken for the interest of Sports Authority and its insurer, Liberty Mutual.

B.      It was reasonable for SWPlaza to question whether all of Cotton expenses should be considered as a cost of reconstruction.

C.      Jones-Blythe could have performed the clean up done by Cotton in far less time and expense if Sports Authority did not need to protect its property and inventory.

D.      Wolford's May 7, 2006 estimate is irrelevant for the following reasons:

1.      Sports Authority did not rely on it in making its decision to terminate the Lease on or before April 18, 2006.

2.      Sports Authority did not rely on it in conveying the notice of termination to SWPlaza on May 3, 2006.

3.      It was based on a site visit over seven weeks after repairs were underway, and much of which were substantially completed.

4.    Wolford was operating under the continued instruction to be on the high side for purposes of negotiations.

Respectfully submitted,

SWPLAZA III, L.L.C., an Illinois limited liability company, as successor to Illinois National Bank, as Trustee under Trust Agreement dated November 6, 2000 and known as Trust No. 00-0020, Plaintiff/Counter-Defendant,


By: _____/s/ David A. Rolf_____
        David A. Rolf, Bar #6196030
        Attorney for Plaintiff/Counter-Defendant
        Sorling, Northrup, Hanna,
        Cullen & Cochran, Ltd.
        Suite 800, Illinois Building
        Post Office Box 5131
        Springfield, IL 62705
        Telephone:  (217)544-1144
        Facsimile:  (217)522-3173

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served via hand delivery and by electronic service through the Court's ECF System to the following:

Mr. J. William Roberts
Mr. Charles R. Schmadeke
Hinshaw & Culbertson LLP
400 South 9th Street, Suite 200
Springfield, IL 62701

on the 16th day of April, 2008.

                                             /s/ David A. Rolf
                                             David A. Rolf, Bar #6196030
Attorney for Plaintiff/Counter-Defendant
Sorling, Northrup, Hanna,
Cullen & Cochran, Ltd.
Suite 800. Illinois Building
Post Office Box 5131
Springfield, IL 62705
Telephone: (217)544-1144
Fax: (217)522-3173
E-Mail: darolf@sorlinglaw.com